## IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **EAST POINT SYSTEMS, INC., et al.** | ) | **CIVIL CASE NO. #3:13-cv-00215-VLB** |
| | ) | |
| **Plaintiffs** | ) | |
| | ) | |
| **vs.** | ) | |
| | ) | |
| **STEVEN MAXIM, et al.** | ) | |
| | ) | |
| **Defendants** | ) | **APRIL 29, 2013** |

### <u>ANSWER OF MAXIM ENTITIES, COUNTERCLAIM AND CROSS-CLAIM</u>
#### (Jury Demand Endorsed Hereon)

Now come defendants Steven Maxim (hereinafter "Mr. Maxim"), S2k, Inc. (hereinafter "S2k"), Maxim Enterprises, Inc. (hereinafter "Maxim Enterprises"), and Maxim Field Service Supply, Inc. (hereinafter "Maxim Field Supply") (all of whom sometimes collectively are "Maxim Entities"), through their attorneys, and for their Answer, Counterclaim and Cross-claim state and aver as follows:

1. Maxim Entities deny, for want of information sufficient to form an opinion or belief, paragraph #1 of the complaint.

2. Maxim Entities deny, for want of information sufficient to form an opinion or belief, paragraph #2 of the complaint.

3. Maxim Entities deny, for want of information sufficient to form an opinion or belief, paragraph #3 of the complaint.

4. Maxim Entities deny, for want of information sufficient to form an opinion or belief, paragraph #4 of the complaint.

5. Maxim Entities admit paragraph #5 of the complaint

23120.000/580793.1

6. Maxim Entities admit paragraph #6 of the complaint, except to state that the address for S2k is 6726 Wales Avenue, N.W., Massillon, OH  44645.

7. Maxim Entities admit paragraph #7 of the complaint, except to state that the address for Maxim Enterprises is 6726 Wales Avenue, N.W., Massillon, OH  44645.

8. Maxim Entities admit paragraph #8 of the complaint, except to state that the address for Maxim Field Supply is 6726 Wales Avenue, N.W., Massillon, OH  44645.

9. Maxim Entities deny, for want of information sufficient to form an opinion or belief, paragraph #9 of the complaint.

10. Maxim Entities deny, for want of information sufficient to form an opinion or belief, paragraph #10 of the complaint.

11. Maxim Entities deny paragraph #11 of the complaint, as constituting a legal conclusion to be determined by this court; specifically, but without limiting the generality of the foregoing, Maxim Entities state that a majority of the activities alleged within the complaint took place within the state of Ohio, where an action previously was commenced against the co-defendants herein, Edwin Pajemola and Cleveland Field Systems, LLC, in that action before the Stark County, Ohio, Common Pleas Court, styled <u>Maxim Field Service Supply, Inc. v. Pajemola, et al.</u>, case #2012-CV-03613, which action pre-dates the filing of the complaint in the captioned action, involving the same issues as have been raised herein.

12. **Maxim Entities deny paragraph #12 of the complaint, as constituting a legal conclusion to be determined by this court; specifically, but without limiting the generality of the foregoing, Maxim Entities state that a majority of the activities alleged within the complaint took place within the state of Ohio, where an action previously was commenced against the co-defendants herein, Edwin Pajemola and Cleveland Field Systems, LLC, in that action before the Stark County, Ohio, Common Pleas Court, styled <u>Maxim Field Service Supply, Inc. v. Pajemola, et al.</u>, case #2012-CV-03613, which action pre-dates the filing of the complaint in the captioned action, involving the same issues as have been raised herein.**

13. **Maxim Entities deny paragraph #13 of the complaint, as constituting a legal conclusion to be determined by this court; specifically, but without limiting the generality of the foregoing, Maxim Entities state that a majority of the activities alleged within the complaint took place within the state of Ohio, where an action previously was commenced against the co-defendants herein, Edwin Pajemola and Cleveland Field Systems, LLC, in that action before the Stark County, Ohio, Common Pleas Court, styled <u>Maxim Field Service Supply, Inc. v. Pajemola, et al.</u>, case #2012-CV-03613, which action pre-dates the filing of the complaint in the captioned action, involving the same issues as have been raised herein.**

14. **Maxim Entities deny paragraph #14 of the complaint, as constituting a legal conclusion to be determined by this court; specifically, but without limiting the generality of the foregoing, Maxim Entities state that a**

23120.000/580793.1

majority of the activities alleged within the complaint took place within the state of Ohio, where an action previously was commenced against the co-defendants herein, Edwin Pajemola and Cleveland Field Systems, LLC, in that action before the Stark County, Ohio, Common Pleas Court, styled <u>Maxim Field Service Supply, Inc. v. Pajemola, et al.</u>, case #2012-CV-03613, which action pre-dates the filing of the complaint in the captioned action, involving the same issues as have been raised herein.

15. Maxim Entities deny paragraph #15 of the complaint, as constituting a legal conclusion to be determined by this court; specifically, but without limiting the generality of the foregoing, Maxim Entities state that a majority of the activities alleged within the complaint took place within the state of Ohio, where an action previously was commenced against the co-defendants herein, Edwin Pajemola and Cleveland Field Systems, LLC, in that action before the Stark County, Ohio, Common Pleas Court, styled <u>Maxim Field Service Supply, Inc. v. Pajemola, et al.</u>, case #2012-CV-03613, which action pre-dates the filing of the complaint in the captioned action, involving the same issues as have been raised herein.

16. Relative to paragraph #16 of the complaint, Maxim Entities admit to the authenticity of <u>Exhibit</u> "<u>A</u>" attached thereto, but deny the remaining allegations as constituting a legal conclusion to be determined by this court.

17. Maxim Entities deny, for want of information sufficient to form an opinion or belief, paragraph #17 of the complaint.

4

18. **Maxim Entities admit paragraph #18 of the complaint.**

19. **Maxim Entities deny, for want of information sufficient to form an opinion or belief, paragraph #19 of the complaint.**

20. **Maxim Entities deny, for want of information sufficient to form an opinion or belief, paragraph #20 of the complaint.**

21. **Maxim Entities deny, for want of information sufficient to form an opinion or belief, paragraph #21 of the complaint.**

22. **Regarding paragraph #22 of the complaint, Maxim Entities admit that S2k is an entity owned or controlled by Mr. Maxim, but not by other of the Maxim Entities.**

23. **Regarding paragraph #23 of the complaint, Maxim Entities admit that Maxim Enterprises is an entity owned or controlled by Mr. Maxim, but not by other of the Maxim Entities.**

24. **Maxim Enterprises provides property preservation services on behalf of mortgagees, and S2k sells hardware to businesses that service the property preservation industry, but Maxim Entities deny the remainder of the allegations in paragraph #24 of the complaint; specifically, but without limiting the generality of the foregoing, neither Maxim Enterprises nor S2k provide computer-based software systems or related services to field service companies.**

25. **Maxim Entities deny every allegation contained in paragraph #25 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they**

were a customer of East Point Systems, Inc. (hereinafter "East Point"), any related or predecessor companies of East Point, prior to the summer of 2004.

26. Maxim Entities deny, for want of knowledge sufficient to form an opinion or belief, the allegations contained in paragraph #26 of the complaint.

27. Maxim Entities deny every allegation contained in paragraph #27 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that Field-Com.net was the only mortgage field service software in existence at the time Maxim Entities first began their relationship with East Point, any related or predecessor companies.

28. Maxim Entities deny every allegation contained in paragraph #28 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that Mr. Maxim lacked knowledge about software design specific to the mortgage field service industry.

29. Maxim Entities deny every allegation contained in paragraph #29 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that Field-Com.net was the only mortgage field service software in existence at the time Maxim Entities first began their relationship with East Point, any related or predecessor companies.

6

30. Maxim Entities deny every allegation contained in paragraph #30 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities state it is their understanding that East Point Systems, LLC, went out of business and that East Point was formed as a new entity.

31. Relative to paragraph #31 of the complaint, Maxim Entities admit that S2k was solicited to invest in East Point, and was fraudulently induced to contribute $250,000 in return for an interest as a shareholder and appointment of Mr. Maxim as a board member.

32. Maxim Entities admit paragraph #32 of the complaint.

33. Relative to paragraph #33 of the complaint, S2k was fraudulently induced to contribute $250,000, for which it received shares equal to a 5.8% interest in East Point, and Mr. Maxim was placed on the board of directors.

34. Maxim Entities deny the allegations contained in paragraph #34 of the complaint for want of information sufficient to form an opinion or belief; specifically, but without limiting the generality of the foregoing, while there is a Shareholder Agreement attached to the complaint as Exhibit "L" it is not identified as such within paragraph #34 and Maxim Entities are unsure as to whether plaintiffs are referencing the same document.

35. Maxim Entities admit the authenticity of the document attached as Exhibit "B" to the complaint, as alleged in paragraph #35, but deny its validity as a restrictive covenant against competition.

23120.000/580793.1

36. **Maxim Entities admit the authenticity of the document attached as Exhibit "C" to the complaint, as alleged in paragraph #36, but deny its validity as a restrictive covenant against competition.**

37. **Maxim Entities deny the allegations contained in paragraph #37 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that Exhibits "B" or "C" to the complaint are valid restrictive covenants against competition, and further state that East Point allowed and authorized all actions taken by Maxim Entities.**

38. **Maxim Entities deny the allegations contained in paragraph #38 of the complaint, for want of information sufficient to form an opinion or belief; specifically, but without limiting the generality of the foregoing, while there is a Shareholder Agreement attached to the complaint as <u>Exhibit "L"</u> it is not identified as such within paragraph #38 and Maxim Entities are unsure as to whether plaintiffs are referencing the same document.**

39. **Maxim Entities admit the authenticity of the document attached as Exhibit "D" to the complaint, as alleged in paragraph #39, but deny its validity.**

40. **Maxim Entities admit the authenticity of the document attached as Exhibit "D" to the complaint, as referenced in paragraph #40, but deny its validity.**

41. **Maxim Entities admit paragraph #41 of the complaint.**

23120.000/580793.1

42. Maxim Entities deny the allegations contained within paragraph #42 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny any inference that Mr. Maxim or S2k received anything "for free", but state they were fraudulently induced to invest $250,000 towards the purchase of shares in East Point through the active solicitation and misrepresentation of plaintiffs.

43. Maxim Entities deny the allegations contained within paragraph #43 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they received value from the use of Field-Comm.net software as the system never was functional.

44. Maxim Entities deny the allegations contained within paragraph #44 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they received value from East Point's labor and support of the Field-Comm.net software as the system never was functional.

45. Maxim Entities deny the allegations contained within paragraph #45 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they received value from Mr. Margarido's services in support of the Field-Comm.net software as the system never was functional but, to the contrary, Maxim Entities state it was Mr. Maxim who spent hours with

Mr. Margarido, and others at East Point, attempting to educate them as to what was needed in East Point's field service software system.

46. Maxim Entities deny the allegations contained within paragraph #46 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they received value from East Point's man hours developing and creating specialized functions for the Field-Comm.net software as the system never was functional.

47. Maxim Entities deny the allegations contained within paragraph #47 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they received value from East Point's man hours developing and creating specialized functions for the Field-Comm.net software as the system never was functional but, to the contrary, Maxim Field Systems had to hire a specialist to make said system functional.

48. Maxim Entities deny the allegations contained within paragraph #48 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they received value from use or "specializations" of the Field-Comm.net software as the system never was functional, which resulted in damages and lost revenues to Maxim Entities because of design failures that never were cured.

23120.000/580793.1

49. Maxim Entities deny the allegations contained within paragraph #49 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny they used any confidential information of East Point that either possessed commercial value or that was not already known either to Maxim Entities or the public in general, and any information used, even if confidential, was authorized by plaintiffs.

50. Because he is a director of East Point, Mr. Maxim admits he was entitled to access to some of East Point's records, as alleged within paragraph #50 of the complaint, but denies that he ever has been granted access to all East Point's financial records or to accurate financial records, irrespective of his demands.

51. Regarding paragraph #51 of the complaint, because he was a director of East Point, Mr. Maxim admits he attempted to participate in its management but denies that he ever has been granted access to all East Point's financial records or to accurate financial records, which prevented his efforts to be involved in management of the business.

52. Mr. Maxim admits he was re-elected to the Board of Directors, as alleged within paragraph #52 of the complaint, but denies that his participation was "without reservation," or that he was involved in management.

53. Relative to paragraph #53 of the complaint, because he was a director of East Point, Mr. Maxim admits he participated in the business of the

23120.000/580793.1

board of directors but denies that he ever has been granted access to all East Point's financial records or to accurate financial records.

54. Relative to paragraph #54 of the complaint, because he was a director of East Point, Mr. Maxim admits he participated on the board of directors but denies that he ever was made privy to all information regarding product enhancement, company growth and development plans; specifically, but without limiting the generality of the foregoing, Mr. Maxim states important information was withheld from him as part of defendants' scheme to defraud S2k out of $250,000.

55. Relative to paragraph #55 of the complaint, because he was a director of East Point, Mr. Maxim admits he participated on the board of directors but denies that he ever was allowed to participate fully in decisions involving the company; specifically, but without limiting the generality of the foregoing, Mr. Maxim states that he was prohibited from participating in such decisions as part of defendants' scheme to defraud S2k out of $250,000.

56. Maxim Entities admit that East Point hired Mr. Bardzilauskus, as alleged within paragraph #56 of the complaint, but deny that his services were of any value; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they received value from use of the Field-Comm.net software as the system never was functional, which resulted in damages and lost revenues to Maxim Enterprises because of design failures that never were cured.

57. Maxim Entities admit that East Point hired Mr. Bardzilauskus, as alleged within paragraph #57 of the complaint, but deny for want of information sufficient to form an opinion or belief what all Mr. Bardzilauskus was hired to do; further, Maxim Entities specifically deny that they received value from use of the Field-Comm.net software as the system never was functional, which resulted in damages and lost revenues to Maxim Entities because of design failures that never were cured.

58. Relative to paragraph #58 of the complaint, Maxim Entities deny for want of information sufficient to form an opinion or belief knowledge as to the reason why Mr. Bardzilauskus services with East Point were terminated, but deny that his services were of any value to Maxim Entities; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they received value from use of the Field-Comm.net software as the system never was functional, which resulted in damages and lost revenues to Maxim Entities because of design failures that never were cured.

59. Maxim Entities admit that Maxim Enterprises hired Mr. Bardzilauskus, but deny the remainder of paragraph #59 of the complaint.

60. Maxim Entities admit paragraph #60 of the complaint, and state that Mr. Bardzilauskus was recommended and authorized by East Point for this function.

61. Maxim Entities deny, for want of information sufficient to form an opinion or belief, the allegations contained in paragraph #61 of the complaint.

62. Maxim Entities admit paragraph #62 of the complaint.

63. Maxim Entities admit paragraph #63 of the complaint.

64. Maxim Entities admit that Maxim Enterprises hired Mr. Pajemola to develop "task tracker", and other items needed to operate its software system, all with the knowledge and approval of plaintiffs, but deny the remainder of paragraph #64 of the complaint.

65. Maxim Entities deny the allegations contained in paragraph #65 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they took any action to develop software specific to its needs without first informing and obtaining the consent of East Point.

66. Maxim Entities deny the allegations contained in paragraph #66 of the complaint, and each allegation separately, in that it took no action to develop software specific to its needs without first informing and obtaining the consent of East Point; specifically, but without limitation, Maxim Entities notified and obtained the approval of East Point of the need for system development because of the failure of the Field-Comm.net software.

67. Maxim Entities deny the allegations contained in paragraph #67 of the complaint, and each allegation separately, in that they took no action to

14

develop software specific to their needs without first informing and obtaining the consent of East Point; specifically, but without limitation, Maxim Entities notified and obtained the approval of East Point of the need for system development required due to the failure of the Field-Comm.net software, and offered to sell to East Point upon terms that were to be forthcoming.

68. Maxim Entities admit paragraph #68 of the complaint.

69. Maxim Entities admit paragraph #69 of the complaint.

70. Maxim Entities admit that both their system and Field-Comm.net purportedly contained features in common, but deny the remainder of the allegations contained in paragraph #70 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that the Field-Comm.net system contained technology that was not known to other software providers within the industry, which already was being used by other vendors of such systems, and deny that Field-Comm.net ever worked satisfactorily in spite of Maxim Entities' investment of $250,000 and considerable time, expense and lost revenue.

71. Maxim Entities deny the allegations contained in paragraph #71 of the complaint, and each allegation separately, in that they took no action to develop software specific to their needs without first informing and obtaining the consent of East Point; specifically, but without limitation, Maxim Entities notified and obtained the approval of East Point of the

23120.000/580793.1

need for system development required due to the failure of the Field-Comm.net software, and advised that the product it was developing worked for Maxim Enterprises, where Field-Comm.net did not.

72. Maxim Entities admit that they took no action to develop software specific to their needs without first informing and obtaining the consent of East Point to any such action, as alleged within paragraph #72 of the complaint, and that what was developed was intended for Maxim Enterprises' use only, but they deny the remaining allegations, and each separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that the Field-Comm.net system ever worked satisfactorily in spite of Maxim Entities' investment of $250,000 and considerable time, expense and lost revenue.

73. Maxim Entities admit they obtained the assistance of East Point, as alleged within paragraph #73 of the complaint, but deny the remaining allegations, and each separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that the Field-Comm.net system ever worked satisfactorily in spite of Maxim Entities' investment of $250,000 and considerable time, expense and lost revenue, but that Maxim Entities was required to spend its own money to create the system that had been promised and not delivered by East Point.

74. Maxim Entities admit they obtained the assistance of East Point, as alleged within paragraph #74 of the complaint, but deny the remaining

allegations, and each separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that the Field-Comm.net system ever worked satisfactorily in spite of Maxim Entities' investment of $250,000 and considerable time, expense and lost revenue, but that Maxim Entities was required to spend its own money to create the system that had been promised and not delivered by East Point.

75. As to paragraph #75 of the complaint, Maxim Entities admit the signature of Maxim Enterprises to the document attached to the complaint as <u>Exhibit "E"</u>, but deny that same was a conditional requirement; Maxim Entities deny for lack of information sufficient to form an opinion or belief any allegations regarding Mr. Pajemola.

76. Maxim Entities admit paragraph #76 of the complaint; Maxim Entities deny for lack of information sufficient to form an opinion or belief any allegations regarding Mr. Pajemola.

77. Maxim Entities admit the authenticity of the document attached as Exhibit "E" to the complaint; Maxim Entities deny for lack of information sufficient to form an opinion or belief any allegations regarding Mr. Pajemola.

78. Maxim Entities admit the authenticity of the document attached as Exhibit "F" to the complaint; Maxim Entities deny for lack of information sufficient to form an opinion or belief any allegations regarding Mr. Pajemola.

79. Maxim Entities admit the authenticity of the document attached as Exhibit "M" to the complaint.

80. Maxim Entities admit they were granted access to information after signing the agreements, but deny the remaining allegations in paragraph #80 of the complaint; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that the reason for their receiving access was their signature to the said agreements.

81. Maxim Entities deny the allegations contained in paragraph #81 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they obtained or made improper use of any confidential information of East Point.

82. Maxim Entities deny the allegations contained in paragraph #82 of the complaint, for want of information sufficient to form an opinion or belief.

83. Maxim Entities deny the allegations contained in paragraph #83 of the complaint, for want of information sufficient to form an opinion or belief.

84. Maxim Entities deny the allegations contained in paragraph #84 of the complaint, for want of information sufficient to form an opinion or belief.

85. Maxim Entities admit that Mr. Pajemola left its employ at one point during the time of the transactions that are the subject of the complaint, but deny the remaining allegations contained in paragraph #85.

86. Maxim Entities deny the allegations contained in paragraph #86 of the complaint, for want of information sufficient to form an opinion or belief.

87. Maxim Entities admit that they have attempted to obtain the compliance of Mr. Pajemola to his contractual obligations, but deny the remaining allegations contained in paragraph #87 of the complaint.

88. Maxim Entities admit that they have attempted to obtain the compliance of Mr. Pajemola to his contractual obligations, but deny the remaining allegations contained in paragraph #88 of the complaint.

89. Maxim Entities admit that they have attempted to obtain the compliance of Mr. Pajemola to his contractual obligations, but deny the remaining allegations contained in paragraph #89 of the complaint.

90. Maxim Entities admit that Mr. Maxim told Mr. Margarido that Mr. Pajemola agreed to take down the website, and that Mr. Pajemola was hired by Maxim Field Supply, but deny the remaining allegations in paragraph #90 of the complaint.

91. Maxim Entities admit paragraph #91 of the complaint.

92. Maxim Entities deny the allegations contained in paragraph #92 of the complaint, for want of information sufficient to form an opinion or belief.

93. Maxim Entities deny the allegations contained in paragraph #93 of the complaint, for want of information sufficient to form an opinion or belief.

94. Maxim Entities deny the allegations contained in paragraph #94 of the complaint, for want of information sufficient to form an opinion or belief.

95. Maxim Entities deny the allegations contained in paragraph #95 of the complaint, for want of information sufficient to form an opinion or belief;

however, Maxim Entities deny that they, or any one of them, is or ever was an owner of Cleveland Field Systems, LLC.

96. Maxim Entities admit the allegation regarding a demonstration during a webinar of its capabilities, but deny the remainder of paragraph #96 of the complaint; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they separately market the sale or licensing of computer software, but that they supply computer-based processing as part of the package of services they provide to their subcontractors in order to track and account for mortgage field service subcontract operations and invoicing to Maxim Entities' mortgage foreclosure customers.

97. Maxim Entities admit the allegation regarding a demonstration during a webinar of its capabilities, but deny the remainder of paragraph #97 of the complaint; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they separately market the sale or licensing of computer software, but that they supply computer-based processing as part of the package of services they provide to their subcontractors in order to track and account for mortgage field service subcontract operations and invoicing to Maxim Entities' mortgage foreclosure customers.

98. Maxim Entities admit the allegation regarding a demonstration during a webinar of its capabilities, but deny the remainder of paragraph #98 of the complaint; specifically, but without limiting the generality of the

23120.000/580793.1

foregoing, Maxim Entities deny that they separately market the sale or licensing of computer software, but that they supply computer-based processing as part of the package of services they provide to their subcontractors in order to track and account for mortgage field service subcontract operations and invoicing to Maxim Entities' mortgage foreclosure customers.

99. Maxim Entities admit the allegation regarding a demonstration during a webinar of its capabilities, but deny the remainder of paragraph #99 of the complaint; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they separately market the sale or licensing of computer software, but that they supply computer-based processing as part of the package of services they provide to their subcontractors in order to track and account for mortgage field service subcontract operations and invoicing to Maxim Entities' mortgage foreclosure customers.

100. Maxim Entities admit the allegation regarding a demonstration during a webinar of its capabilities, but deny the remainder of paragraph #100 of the complaint; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they separately market the sale or licensing of computer software, but that they supply computer-based processing as part of the package of services they provide to their subcontractors in order to track and account for mortgage field service

subcontract operations and invoicing to Maxim Entities' mortgage foreclosure customers.

101.   Maxim Entities admit the allegation regarding a demonstration during a webinar of its capabilities, but deny the remainder of paragraph #101 of the complaint; specifically, but without limiting the generality of the foregoing, Maxim Entities previously used Field-Comm.net to supply computer-based processing as part of the package of services they provided to their subcontractors in order to track and account for mortgage field service subcontract operations and invoicing to Maxim Entities' mortgage foreclosure customers, which, because the Field-Comm.net software system never was functional, resulted in significant damage to Maxim Entities and its subcontractors because a substantial percentage invoices were refused by the banks for services that actually were performed satisfactorily but that could not be substantiated.

102.   Maxim Entities admit the allegation regarding a demonstration during a webinar of its capabilities, but deny the remainder of paragraph #102 of the complaint; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they separately market the sale or licensing of computer software, but that they supply computer-based processing as part of the package of services they provide to their subcontractors in order to track and account for mortgage field service subcontract operations and invoicing to Maxim Entities' mortgage foreclosure customers, and they no longer could use the Field-

Comm.net software system because its non-functionality had cost Maxim Entities and their subcontractors very significant damages.

103.    Maxim Entities admit that Maxim Field Supply developed and owns the software it now uses with its subcontractors, as alleged in paragraph #103 of the complaint.

104.    Maxim Entities admit the allegation regarding a demonstration during a webinar of its capabilities, but deny the remainder of paragraph #104 of the complaint; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they separately market the sale or licensing of computer software, but that they supply computer-based processing as part of the package of services they provide to their subcontractors in order to track and account for mortgage field service subcontract operations and invoicing to Maxim Entities' mortgage foreclosure customers, and they no longer could use the Field-Comm.net software system because its non-functionality had cost Maxim Entities and their subcontractors very significant damages.

105.    Maxim Entities deny the allegations contained in paragraph #105 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they "partnered" with Mr. Pajemola, but assert they employed Mr. Pajemola to develop a computer-based system to utilize for Maxim Enterprises and its subcontractors.

106.   Maxim Entities admit they claim title to the computer-based system developed through the employment of Mr. Pajemola, as alleged in paragraph #106 of the complaint.

107.   Maxim Entities admit that users of their computer-based system are subcontractors, as licensees, who perform maintenance and weatherization services on foreclosed properties repossessed by mortgage lenders, but deny the remainder of the allegations contained in paragraph #107 of the complaint; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they separately market the sale or licensing of computer software, but that they supply computer-based processing as part of the package of services they provide to their subcontractors in order to track and account for mortgage field service subcontract operations and invoicing to Maxim Entities' mortgage foreclosure customers.

108.   Maxim Entities deny the allegations contained in paragraph #108 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, the computer-based system developed at great expense by Maxim Entities is not a copy of Field-Comm.net.

109.   Maxim Entities deny the allegations contained in paragraph #109 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, the computer-based system

23120.000/580793.1

developed at great expense by Maxim Entities is not derivative of Field-Comm.net, or of its major function.

110.   Maxim Entities deny the allegations contained in paragraph #110 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, the computer-based system developed at great expense by Maxim Entities is not derivative of Field-Comm.net.

111.   Maxim Entities deny the allegations contained in paragraph #111 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, the computer-based system developed at great expense by Maxim Entities is not derivative of Field-Comm.net, but was necessitated because the non-functionality of Field-Comm.net software system had cost Maxim Entities and their subcontractors very significant damages when Maxim Entities' mortgage foreclosure customers failed to pay for services performed that could not be substantiated.

112.   Maxim Entities deny the allegations contained in paragraph #112 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that a meeting was properly noticed or conducted.

113.   Maxim Entities admit that the Connecticut shareholders have attempted to force S2k to sell its shares in Eastpoint Systems, Inc., but deny the remaining allegations contained in paragraph #113 of the

complaint; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that there is a right to force the sale of S2k's shares that properly was exercised.

114.   Maxim Entities deny the allegations contained in paragraph #114 of the complaint for want of information sufficient to form an opinion or belief.

115.   Maxim Entities admit paragraph #115.

116.   Maxim Entities admit they obtained the valuation attached as <u>Exhibit</u> "<u>J</u>" to the complaint, but deny the remaining allegations contained in paragraph #116 of the complaint; specifically, but without limiting the generality of the foregoing, the foregoing valuation was prepared without performing an audit, which Maxim Entities believe would reveal substantial misrepresentations of material facts by the plaintiffs that improperly suppressed the valuation.

117.   Maxim Entities admit that Atty. Michael Kopsick expressed plaintiffs' desire to purchase the S2k shares in East Point Systems, Inc. for $57,700, but deny the remaining allegations contained within paragraph #117 of the complaint; specifically, but without limiting the generality of the foregoing, the foregoing valuations were prepared without performing an audit, which Maxim Entities believe would reveal substantial misrepresentations of material facts by the plaintiffs that improperly suppressed the valuation.

118.   Maxim Entities admit paragraph #118 of the complaint.

23120.000/580793.1

119.   Maxim Entities admit paragraph #119 of the complaint.

120.   As paragraph #120 makes no allegation of material fact, Maxim Entities neither admit nor deny same, other than to restate their responses contained elsewhere herein.

121.   Maxim Entities deny paragraph #121 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities state that this is a legal conclusion that must be determined by the court at  trial.

122.   Maxim Entities deny paragraph #122 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they copied Field-Comm.net.

123.   Maxim Entities deny paragraph #123 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they have taken any customer revenue from plaintiffs, specifically denying that they have sold anything they developed to any unrelated entity.

124.   Maxim Entities deny paragraph #124 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they have breached the Shareholder Agreement, and further deny that they cost East Point revenue.

23120.000/580793.1

125.   As paragraph #125 makes no allegation of material fact, Maxim Entities neither admit nor deny same, other than to restate their responses contained elsewhere herein.

126.   Maxim Entities deny paragraph #126 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities state that this is a legal conclusion that must be determined by the court at trial.

127.   Maxim Entities deny paragraph #127 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they copied the Field-Comm.net architecture and design, or otherwise violated any agreement.

128.   Maxim Entities deny paragraph #128 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they have taken any revenue from plaintiffs, and deny that they have sold software to any unrelated entity.

129.   Maxim Entities deny paragraph #129 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they have breached the Confidentiality and Non-competition Agreement, and deny that they have done anything to cause plaintiffs to lose revenue.

23120.000/580793.1

130.   As paragraph #130 makes no allegation of material fact, Maxim Entities neither admit nor deny same, other than to restate their responses contained elsewhere herein.

131.   Maxim Entities deny paragraph #131 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities state that this is a legal conclusion that must be determined by the court at trial.

132.   Maxim Entities deny paragraph #132 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they copied Field-Comm.net.

133.   Maxim Entities deny paragraph #133 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they have taken any revenue from plaintiffs, and deny that they have sold software to any entity not related to Maxim Entities.

134.   Maxim Entities deny paragraph #134 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny they have breached the Confidentiality and Non-competition Agreement, deny copying software and deny selling software to any entity no related to Maxim Entites.

135.   As paragraph #135 makes no allegation of material fact, Maxim Entities neither admit nor deny same, other than to restate their responses contained elsewhere herein.

136.   Maxim Entities deny paragraph #136 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities state that this is a legal conclusion that must be determined by the court at trial.

137.   Maxim Entities deny paragraph #137 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they copied Field-Comm.net.

138.   Maxim Entities deny paragraph #138 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they have taken any revenue from plaintiffs and deny that they have sold software to any entity not related to Maxim Enterprises.

139.   Maxim Entities deny paragraph #139 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny they have breached the Confidentiality and Non-competition Agreement and deny that they have caused plaintiffs to lose revenue.

140.   As paragraph #140 makes no allegation of material fact, Maxim Entities neither admit nor deny same, other than to restate their responses contained elsewhere herein.

141.   Maxim Entities deny paragraph #141 of the complaint, and each allegation separately; specifically, but without limiting the generality of

the foregoing, Maxim Entities state that this is a legal conclusion to be determined by this court at trial.

142.   Maxim Entities deny paragraph #143 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they copied Field-Comm.net.

143.   Maxim Entities deny paragraph #143 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they created any product derivative of Field-Comm.net.

144.   Maxim Entities deny paragraph #144 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they created any product derivative of Field-Comm.net.

145.   Maxim Entities deny paragraph #145 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they have taken any revenue from plaintiffs.

146.   Maxim Entities deny paragraph #146 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny they have breached the Software Source Code and Indemnity Agreement.

23120.000/580793.1

147.   As paragraph #147 makes no allegation of material fact, Maxim Entities neither admit nor deny same, other than to restate their responses contained elsewhere herein.

148.   Maxim Entities deny paragraph #148 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities state that this is a legal conclusion to be determined by this court at trial.

149.   Maxim Entities deny paragraph #149 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they copied Field-Comm.net.

150.   Maxim Entities deny paragraph #150 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they created any product derivative of Field-Comm.net.

151.   Maxim Entities deny paragraph #151 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they created any product derivative of Field-Comm.net.

152.   Maxim Entities deny paragraph #152 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they have taken any revenue from plaintiffs.

153.   Maxim Entities deny paragraph #153 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny they have breached the Software Source Code and Indemnity Agreement.

154.   As paragraph #154 makes no allegation of material fact, Maxim Entities neither admit nor deny same, other than to restate their responses contained elsewhere herein.

155.   Maxim Entities admit that Mr. Maxim was a member of East Point's board of directors, as alleged in paragraph #155 of the complaint for a period of time.

156.   Maxim Entities deny paragraph #156 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities state that this is a legal conclusion to be determined by this court at trial.

157.   Maxim Entities deny paragraph #157 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they created any product derivative of Field-Comm.net, and denies that S2k ever has developed software of any kind.

158.   Maxim Entities deny paragraph #158 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they created any product

derivative of Field-Comm.net, and deny that any of the Maxim Entities has marketed a competing software package.

159.   Maxim Entities deny paragraph #159 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they have taken any revenue from plaintiffs, and deny that they have marketed any software to any entity not related to Maxim Entities.

160.   As paragraph #160 makes no allegation of material fact, Maxim Entities neither admit nor deny same, other than to restate their responses contained elsewhere herein.

161.   Maxim Entities admit that Mr. Maxim was a member of East Point's board of directors, as alleged in paragraph #161 of the complaint, but deny that this was done on behalf of S2k.

162.   Maxim Entities deny paragraph #162 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities state that this is a legal conclusion to be determined by this court at trial.

163.   Maxim Entities deny paragraph #163 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they created, or "suborned" the creation of any product derivative of Field-Comm.net.

164.   Maxim Entities deny paragraph #164 of the complaint, and each allegation separately; specifically, but without limiting the generality of

34

the foregoing, **Maxim Entities deny that they created any product derivative of Field-Comm.net, and deny marketing any competing software package to any entity not related to Maxim Entities.**

165. **Maxim Entities deny paragraph #165 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they have taken any revenue from plaintiffs.**

166. **As paragraph #166 makes no allegation of material fact, Maxim Entities neither admit nor deny same, other than to restate their responses contained elsewhere herein.**

167. **Maxim Entities deny paragraph #167 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities state that this is a legal conclusion to be determined by this court at trial.**

168. **Maxim Entities deny paragraph #168 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities state that this is a legal conclusion to be determined by this court at trial.**

169. **As previously stated within their response to substantially identical allegations made in paragraph #116 of the complaint, Maxim Entities admit they obtained the valuation attached as <u>Exhibit</u> "<u>J</u>" to the complaint, but deny the remaining allegations contained in paragraph #169; specifically, but without limiting the generality of the foregoing,**

the foregoing valuation was prepared without performing an audit, which Maxim Entities believe would reveal substantial misrepresentations of material facts by the plaintiffs that improperly suppressed the valuation.

170. As previously stated within their response to substantially identical allegations made in paragraph #117 of the complaint, Maxim Entities admit that Atty. Michael Kopsick expressed plaintiffs' desire to purchase the S2k shares in East Point Systems, Inc. for $57,700, but deny the remaining allegations contained within paragraph #170 of the complaint; specifically, but without limiting the generality of the foregoing, the foregoing valuations were prepared without performing an audit, which Maxim Entities believe would reveal substantial misrepresentations of material facts by the plaintiffs that improperly suppressed the valuation.

171. Maxim Entities admit they refused to deliver their shares of East Point Systems, Inc. to plaintiffs, but deny the remaining allegations contained within paragraph #171 of the complaint; specifically, but without limiting the generality of the foregoing, Maxim Entities deny there was an obligation to deliver the shares.

172. Maxim Entities deny the allegations contained in paragraph #172 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny there was an obligation to deliver the shares, under the circumstances at bar.

173.   Maxim Entities deny the allegations contained in paragraph #173 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny there was an obligation to deliver the shares.

174.   Maxim Entities deny the allegations contained in paragraph #174 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny there was an obligation to deliver the shares, under the circumstances of their purchase.

175.   As paragraph #175 makes no allegation of material fact, Maxim Entities neither admit nor deny same, other than to restate their responses contained elsewhere herein.

176.   Maxim Entities deny the allegations contained within paragraph #176 of the complaint, for want of information sufficient to form an opinion or belief.

177.   Maxim Entities deny the allegations contained within paragraph #177 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, the relationships with Berghorst Enterprises, A & M Recovery Services, and their contractors and subcontractors, were originally with Maxim Entities, who referred such businesses to plaintiffs only after Maxim Entities were fraudulently induced by plaintiffs into paying $250,000.00 to purchase shares in East

23120.000/580793.1

Point Systems, Inc., that plaintiffs now claim are worth a fraction of that amount.

178.   Maxim Entities deny the allegations contained in paragraph #178, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they have taken any revenue from plaintiffs and deny that they have interfered with business relationships of plaintiffs.

179.   Maxim Entities deny the allegations contained in paragraph #179, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they have taken any revenue from plaintiffs and deny any misrepresentation to customers of plaintiffs.

180.   Maxim Entities deny paragraph #180 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they created any product derivative of Field-Comm.net.

181.   Maxim Entities deny the allegations contained in paragraph #181, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they have taken any revenue from plaintiffs and have made no misrepresentations to customers of plaintiffs.

182.   Maxim Entities deny the allegations contained in paragraph #182, and each allegation separately; specifically, but without limiting the

generality of the foregoing, Maxim Entities deny that they have taken any revenue from plaintiffs and further deny that they have interfered with any business relationships of plaintiffs.

183.   Maxim Entities deny the allegations contained in paragraph #183, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they have taken any revenue from plaintiffs.

184.   Maxim Entities deny the allegations contained in paragraph #184, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they have taken any revenue from plaintiffs.

185.   As paragraph #185 makes no allegation of material fact, Maxim Entities neither admit nor deny same, other than to restate their responses contained elsewhere herein.

186.   Maxim Entities deny the allegations contained in paragraph #186 of the complaint, for want of information sufficient to form an opinion or belief; in addition, Maxim Entities deny that plaintiffs developed a functioning computer-based system capable of satisfying the needs of the mortgage field service industry.

187.   Maxim Entities deny the allegations contained in paragraph #187 of the complaint, for want of information sufficient to form an opinion or belief; in addition, Maxim Entities deny that plaintiffs developed a

23120.000/580793.1

functioning computer-based system capable of satisfying the needs of the mortgage field service industry.

188.   Maxim Entities deny the allegations contained in paragraph #188 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that plaintiffs developed a functioning computer-based system capable of satisfying the needs of the mortgage field service industry, and state that the program developed by plaintiffs was composed of information generally known to, or readily obtainable by others in the industry.

189.   Maxim Entities deny the allegations contained in paragraph #189 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that plaintiffs developed a functioning computer-based system capable of satisfying the needs of the mortgage field service industry, and deny that the program developed by plaintiffs was not comprised of information generally known to, or readily obtainable by others in the industry, but that plaintiffs' ability to sell to contractors and subcontractors within the mortgage field service industry was a direct result of plaintiffs' relationship with Maxim Entities.

190.   Maxim Entities deny the allegations contained in paragraph #190 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that plaintiffs developed a functioning computer-based system capable of

40

satisfying the needs of the mortgage field service industry, and deny that the program developed by plaintiffs was not comprised of information generally known to, or readily obtainable by others in the industry.

191.   Maxim Entities deny the allegations contained in paragraph #191 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that plaintiffs developed a functioning computer-based system capable of satisfying the needs of the mortgage field service industry, and deny that the program developed by plaintiffs was comprised of information not generally known to, or readily obtainable by others in the industry.

192.   Maxim Entities deny the allegations contained in paragraph #192 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they used or disseminated any of plaintiffs' confidential information.

193.   Maxim Entities deny the allegations contained in paragraph #193, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they have taken any revenue from plaintiffs and deny they are using confidential or proprietary trade secrets.

194.   Maxim Entities deny the allegations contained in paragraph #194, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they used or

23120.000/580793.1

disseminated any of plaintiffs' confidential information, deny that they have taken any revenue from plaintiffs, and assert that the allegations regarding the application of Connecticut statutes are legal conclusions to be determined by this court at trial.

195.   Maxim Entities deny the allegations contained in paragraph #195, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they used or disseminated any of plaintiffs' confidential information, deny that they have taken any revenue from plaintiffs, and assert that the allegations regarding the application of Connecticut statutes are legal conclusions to be determined by this court at trial.

196.   Maxim Entities deny the allegations contained in paragraph #196, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they used or disseminated any of plaintiffs' confidential information, deny that they have taken any revenue from plaintiffs, and assert that the allegations regarding the application of Connecticut statutes are legal conclusions to be determined by this court at trial.

197.   Maxim Entities deny the allegations contained in paragraph #197, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they used or disseminated any of plaintiffs' confidential information, deny that they have taken any revenue from plaintiffs, and assert that the allegations

regarding the application of Connecticut statutes are legal conclusions to be determined by this court at trial.

198.   Maxim Entities deny the allegations contained in paragraph #198, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they used or disseminated any of plaintiffs' confidential information, deny that they have taken any revenue from plaintiffs, and assert that the allegations regarding the application of Connecticut statutes are legal conclusions to be determined by this court at trial.

199.   As paragraph #199 makes no allegation of material fact, Maxim Entities neither admit nor deny same, other than to restate their responses contained elsewhere herein.

200.   As in their response to the substantially identical allegations within paragraph #186, Maxim Entities deny the allegations contained in paragraph #200 of the complaint, for want of information sufficient to form an opinion or belief; in addition, Maxim Entities deny that plaintiffs developed a functioning computer-based system capable of satisfying the needs of the mortgage field service industry.

201.   As in their response to the substantially identical allegations within paragraph #187, Maxim Entities deny the allegations contained in paragraph #201 of the complaint, for want of information sufficient to form an opinion or belief; in addition, Maxim Entities deny that plaintiffs

developed a functioning computer-based system capable of satisfying the needs of the mortgage field service industry.

202.   As in their response to the substantially identical allegations within paragraph #188, Maxim Entities deny the allegations contained in paragraph #202 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that plaintiffs developed a functioning computer-based system capable of satisfying the needs of the mortgage field service industry, and deny that the program developed by plaintiffs was not comprised of information generally known to, or readily obtainable by others in the industry.

203.   As in their response to the substantially identical allegations within paragraph #186, Maxim Entities deny the allegations contained in paragraph #203 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that plaintiffs developed a functioning computer-based system capable of satisfying the needs of the mortgage field service industry, and deny that the program developed by plaintiffs was not comprised of information generally known to, or readily obtainable by others in the industry, but that plaintiffs' ability to sell to contractors and subcontractors within the mortgage field service industry was a direct result of plaintiffs' relationship with Maxim Entities.

204.   As in their response to the substantially identical allegations within paragraph #190, Maxim Entities deny the allegations contained in paragraph #204 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that plaintiffs developed a functioning computer-based system capable of satisfying the needs of the mortgage field service industry, and deny that the program developed by plaintiffs was not comprised of information generally known to, or readily obtainable by others in the industry.

205.   As in their response to the substantially identical allegations within paragraph #191, Maxim Entities deny the allegations contained in paragraph #205 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that plaintiffs developed a functioning computer-based system capable of satisfying the needs of the mortgage field service industry, and deny that the program developed by plaintiffs was comprised of information not generally known to, or readily obtainable by others in the industry.

206.   Maxim Entities deny the allegations contained in paragraph #206 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they improperly used or disseminated any of plaintiffs' confidential information.

45

207.   Maxim Entities deny the allegations contained in paragraph #207, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they have made any unauthorized use, disclosure or copy of the data in plaintiffs' computer system, and assert that the allegations regarding the application of Connecticut statutes are legal conclusions to be determined by this court at trial.

208.   Maxim Entities deny the allegations contained in paragraph #208, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they misused or disseminated any of plaintiffs' confidential computer system information, and assert that the allegations regarding the application of Connecticut statutes are legal conclusions to be determined by this court at trial.

209.   Maxim Entities deny the allegations contained in paragraph #209, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they misused or disseminated any of plaintiffs' confidential computer system information, and assert that the allegations regarding the application of Connecticut statutes are legal conclusions to be determined by this court at trial.

210.   Maxim Entities deny the allegations contained in paragraph #210, and each allegation separately; specifically, but without limiting the

23120.000/580793.1

generality of the foregoing, Maxim Entities deny that they misused or disseminated any of plaintiffs' confidential computer system information, and assert that the allegations regarding the application of Connecticut statutes are legal conclusions to be determined by this court at trial and deny that any of their actions were willful or malicious.

211.   Maxim Entities deny the allegations contained in paragraph #211, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they misused or disseminated any of plaintiffs' confidential computer system information, further deny any irreparable harm or monetary damages, and assert that the allegations regarding the application of Connecticut statutes are legal conclusions to be determined by this court at trial.

212.   Maxim Entities deny the allegations contained in paragraph #212, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they misused or disseminated any of plaintiffs' confidential computer system information, and assert that the allegations regarding the application of Connecticut statutes are legal conclusions to be determined by this court at trial.

213.   Maxim Entities deny the allegations contained in paragraph #213, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they used or disseminated any of plaintiffs' confidential information, deny that they

have taken any revenue from plaintiffs, and assert that the allegations regarding the application of Connecticut statutes are legal conclusions to be determined by this court at trial.

214.   Maxim Entities deny the allegations contained in paragraph #214, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they used or disseminated any of plaintiffs' confidential information, deny that they have taken any revenue from plaintiffs, further deny any willful or malicious conduct, and assert that the allegations regarding the application of Connecticut statutes are legal conclusions to be determined by this court at trial.

215.   Maxim Entities deny the allegations contained in paragraph #215, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they used or disseminated any of plaintiffs' confidential information, deny that they have taken any revenue from plaintiffs, and assert that the allegations regarding the application of Connecticut statutes are legal conclusions to be determined by this court at trial.

216.   As paragraph #216 makes no allegation of material fact, Maxim Entities neither admit nor deny same, other than to restate their responses contained elsewhere herein.

217.   As in their response to the substantially identical allegations within paragraphs #186 and 200, Maxim Entities deny the allegations contained

in paragraph #217 of the complaint, for want of information sufficient to form an opinion or belief; in addition, Maxim Entities deny that plaintiffs developed a functioning computer-based system capable of satisfying the needs of the mortgage field service industry.

218.   As in their response to the substantially identical allegations within paragraphs #187 and 201, Maxim Entities deny the allegations contained in paragraph #218 of the complaint, for want of information sufficient to form an opinion or belief; in addition, Maxim Entities deny that plaintiffs developed a functioning computer-based system capable of satisfying the needs of the mortgage field service industry.

219.   As in their response to the substantially identical allegations within paragraphs #188 and 202, Maxim Entities deny the allegations contained in paragraph #219 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that plaintiffs developed a functioning computer-based system capable of satisfying the needs of the mortgage field service industry, and deny that the program developed by plaintiffs was not comprised of information generally known to, or readily obtainable by others in the industry.

220.   As in their response to the substantially identical allegations within paragraphs #186 and 203, Maxim Entities deny the allegations contained in paragraph #220 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim

49

Entities deny that plaintiffs developed a functioning computer-based system capable of satisfying the needs of the mortgage field service industry, and deny that the program developed by plaintiffs was not comprised of information generally known to, or readily obtainable by others in the industry, but that plaintiffs' ability to sell to contractors and subcontractors within the mortgage field service industry was a direct result of plaintiffs' relationship with Maxim Entities.

221.   As in their response to the substantially identical allegations within paragraphs #190 and 204, Maxim Entities deny the allegations contained in paragraph #221 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that plaintiffs developed a functioning computer-based system capable of satisfying the needs of the mortgage field service industry, and deny that the program developed by plaintiffs was not comprised of information generally known to, or readily obtainable by others in the industry.

222.   As in their response to the substantially identical allegations within paragraphs #191 and 205, Maxim Entities deny the allegations contained in paragraph #222 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that plaintiffs developed a functioning computer-based system capable of satisfying the needs of the mortgage field service industry, and deny that the program developed by plaintiffs was

50

comprised of information not generally known to, or readily obtainable by others in the industry.

223.   As in their response to the substantially identical allegations within paragraphs #191 and 206, Maxim Entities deny the allegations contained in paragraph #223 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they improperly used or disseminated any of plaintiffs' confidential information.

224.   Maxim Entities deny the allegations contained in paragraph #224 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that Mr. Maxim breached any duty owed to East Point Systems, Inc.

225.   Maxim Entities deny the allegations contained in paragraph #225 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities state they were in the business of providing field services for mortgage industry long before they were fraudulently induced by plaintiffs to pay $250,000 for stock in East Point Systems, Inc., that plaintiffs now claim is essentially worthless, and throughout the time of the transactions that form the basis of this action.   Mr. Maxim specifically denies being a board member, officer of shareholder of Cleveland Field Systems, LLC, and Maxim Entities deny they received any revenue from sales of computer systems to entities not related to Maxim Entities.

226. **Maxim Entities deny that they employed Mr. Pajemola to compete with plaintiffs, state that Mr. Pajemola was employed during the relevant time period by Maxim Field Supply, and deny the remainder of the allegations in paragraph #226 of the complaint for want of information sufficient to form an opinion or belief.**

227. **Maxim Entities deny the allegations contained in paragraph #227 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities state they were in the business of providing field services for mortgage industry long before they were fraudulently induced by plaintiffs to pay $250,000 for stock in East Point Systems, Inc., that plaintiffs now claim is essentially worthless, and throughout the time of the transactions that form the basis of this action, and that their actions do not constitute unfair competition or deceptive acts or practices.**

228. **Maxim Entities deny the allegations contained in paragraph #228 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they are in competition with plaintiffs in the "field of field services for the mortgage industry", and assert that the allegations regarding the application of Connecticut statutes are legal conclusions to be determined by this court at trial.**

229. **Maxim Entities deny the allegations contained in paragraph #229 of the complaint, and each allegation separately; specifically, but without**

limiting the generality of the foregoing, Maxim Entities deny that they are in competition with plaintiffs in the "field of field services for the mortgage industry," and further deny that any action was with reckless indifference or were willful or wanton.

230.   Maxim Entities deny the allegations contained in paragraph #230 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they are in competition with plaintiffs in the "field of field services for the mortgage industry".

231.   Maxim Entities deny the allegations contained in paragraph #231 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they are in competition with plaintiffs in the "field of field services for the mortgage industry", and assert that the allegations regarding the application of Connecticut statutes are legal conclusions to be determined by this court at trial.

232.   Maxim Entities deny the allegations contained in paragraph #232 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they are in competition with plaintiffs in the "field of field services for the mortgage industry", further deny that they took, copied or derived any software from plaintiffs, and assert that the allegations regarding the

application of Connecticut statutes are legal conclusions to be determined by this court at trial.

233.   Maxim Entities deny the allegations contained in paragraph #233 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they are in competition with plaintiffs in the "field of field services for the mortgage industry", further deny that they took, copied or derived any software from plaintiffs and assert that the allegations regarding the application of Connecticut statutes are legal conclusions to be determined by this court at trial.

234.   Maxim Entities deny the allegations contained in paragraph #234 of the complaint, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they are in competition with plaintiffs in the "field of field services for the mortgage industry", further deny that they took, copied or derived any software from plaintiffs and assert that the allegations regarding the application of Connecticut statutes are legal conclusions to be determined by this court at trial.

235.   As paragraph #235 makes no allegation of material fact, Maxim Entities neither admit nor deny same, other than to restate their responses contained elsewhere herein.

236.    Maxim Entities deny the allegations contained in paragraph #236, for want of information sufficient to form an opinion or belief, and state that same are legal conclusions to be determined by this court at trial.

237.    Maxim Entities deny the allegations contained in paragraph #237, for want of information sufficient to form an opinion or belief, and state that the scope and extent of any claimed copyright is a legal conclusion to be determined by this court at trial.

238.    Maxim Entities deny the allegations contained in paragraph #238, for want of information sufficient to form an opinion or belief, and state that the scope and extent of any claimed copyright is a legal conclusion to be determined by this court at trial.

239.    Maxim Entities deny the allegations contained in paragraph #239, for want of information sufficient to form an opinion or belief, and state that the scope and extent of any claimed copyright is a legal conclusion to be determined by this court at trial.

240.    Maxim Entities deny the allegations contained in paragraph #240, for want of information sufficient to form an opinion or belief, and state that the scope and extent of any claimed copyright is a legal conclusion to be determined by this court at trial.

241.    Maxim Entities deny the allegations contained in paragraph #241, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they created derivative works without authorization or permission from plaintiffs.

242. Maxim Entities deny the allegations contained in paragraph #242, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they created derivative works without authorization or permission from plaintiffs.

243. Maxim Entities deny the allegations contained in paragraph #243, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they created derivative works without authorization or permission from plaintiffs, and state that the existence of any claimed copyright infringement is a legal conclusion to be determined by this court at trial.

244. Maxim Entities deny the allegations contained in paragraph #244, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they created derivative works without authorization or permission from plaintiffs, and state that the existence of any claimed copyright infringement is a legal conclusion to be determined by this court at trial.

245. Maxim Entities deny the allegations contained in paragraph #245, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they created derivative works without authorization or permission from plaintiffs, and deny they have taken any revenue from plaintiffs.

246. Maxim Entities deny the allegations contained in paragraph #246, and each allegation separately; specifically, but without limiting the

23120.000/580793.1

generality of the foregoing, Maxim Entities deny that they created derivative works without authorization or permission from plaintiffs, and state that the existence of any claimed copyright infringement is a legal conclusion to be determined by this court at trial.

247.   Maxim Entities deny the allegations contained in paragraph #247, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they created derivative works without authorization or permission from plaintiffs, and state that the existence of any claimed copyright infringement is a legal conclusion to be determined by this court at trial.

248.   Maxim Entities deny the allegations contained in paragraph #248, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they created derivative works without authorization or permission from plaintiffs.

249.   As paragraph #249 makes no allegation of material fact, Maxim Entities neither admit nor deny same, other than to restate their responses contained elsewhere herein.

250.   Maxim Entities deny the allegations contained in paragraph #250, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they possess property, revenue or proceeds illegally derived from their access to East Point Systems, Inc.'s program or source code without authorization or permission from plaintiffs.

23120.000/580793.1

251.   Maxim Entities deny the allegations contained in paragraph #251, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they possess property, revenue or proceeds illegally derived from their access to East Point Systems, Inc.'s program or source code without authorization or permission from plaintiffs, but that they acted in a manner consistent with the agreed purpose to benefit Maxim Entities' business.

252.   Maxim Entities deny the allegations contained in paragraph #252, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they possess property, revenue or proceeds illegally derived from their access to East Point Systems, Inc.'s program or source code without authorization or permission from plaintiffs, and deny they provided wrongful access to the other defendants.

253.   Maxim Entities deny the allegations contained in paragraph #253, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they possess property, revenue or proceeds improperly or derived from their access to East Point Systems, Inc.'s program or source code without authorization or permission from plaintiffs.

254.   Maxim Entities deny the allegations contained in paragraph #254, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they possess

property, revenue or proceeds illegally derived from their access to East Point Systems, Inc.'s program or source code without authorization or permission from plaintiffs and have no property to which they are not entitled.

255.   Maxim Entities deny the allegations contained in paragraph #255, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they hold title to plaintiffs' property in trust, constructive or otherwise, and deny that they have been unjustly enriched.

256.   Maxim Entities deny the allegations contained in paragraph #256, and each allegation separately; specifically, but without limiting the generality of the foregoing, Maxim Entities deny that they hold title to plaintiffs' property in trust, constructive or otherwise, and deny that they have been unjustly enriched.

## AFFIRMATIVE DEFENSES

257.   Plaintiffs' complaint fails to state a claim upon which relief may be granted and should be dismissed under Fed. R. Civ. R. 12(b)(6).

258.   Plaintiffs' actions, or failures to act, prevent them from seeking the relief requested within the complaint on the basis of estoppel or waiver.

259.   Plaintiffs' failures to follow the procedures required within the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. sec.41-110a, *et seq*, prevent them from obtaining the relief requested within complaint.

260.   This court does not possess the subject matter jurisdiction to consider the claims within the complaint, or over the persons who are parties hereto; or, possessing jurisdiction, this court constitutes an improper venue for a full and just resolution of the matters that are the subject hereof, or constitute a forum of non-convenience; specifically, but without limiting the generality of the foregoing, Maxim Field Supply filed a civil action against the co-defendants herein, Edwin Pajemola and Cleveland Field Systems, LLC, in that action before the Stark County, Ohio, Common Pleas Court, styled <u>Maxim Field Service Supply, Inc. v. Pajemola, et al.</u>, case #2012-CV-03613, which action pre-dates the filing of the complaint in the captioned action, involving the same issues as have been raised herein.

261.   Plaintiffs have failed to name a party necessary to the resolution of these proceedings.

262.   Plaintiffs are precluded from seeking the relief requested within the complaint due to the operation of the applicable statute of limitations or laches.

263.   Plaintiffs are precluded from seeking the relief requested within the complaint because the effect of same would be to enforce an anti-competitive restraint of trade.

264.   The clauses cited by plaintiffs within the documents attached as Exhibits to the complaint are not binding because of failure of consideration, and otherwise are contrary to public policy.

60

265.   The information supposedly taken by Maxim Entities is readily known within the relevant industry, or can be developed using existing technology or software, and is not unique to plaintiffs.

266.   The clauses cited by plaintiffs within the documents attached as Exhibits to the complaint unduly restrict Maxim Entities' ability to pursue his, its or their trade or occupation.

267.   The clauses cited by plaintiffs within the documents attached as Exhibits to the complaint extend for an excessive length of time.

268.   The clauses cited by plaintiffs within the documents attached as Exhibits to the complaint extend to an excessive geographic area.

269.   The clauses cited by plaintiffs within the documents attached as Exhibits to the complaint provide unjustly disproportionate protection to the plaintiffs.

270.   The clauses cited by plaintiffs within the documents attached as Exhibits to the complaint unduly interfere with the public's interest.

271.   The clauses cited by the plaintiffs within the documents attached as Exhibits to the complaint fail for lack of consideration, and are unenforceable because no good will or other property was sold to East Point Systems, Inc., but rather it was S2k who paid $250,000 for shares that have proven to be worth a fraction of that cost, .

272.   The shares of stock in East Point are owned by S2k, and not any of the other Maxim Entities.

273.   The property preservation computer system developed as a result of East Point's failure to produce a system functional to Maxim Enterprises was produced, paid for and owned by Maxim Field Supply, and not any of the other Maxim Entities.

## COUNTERCLAIM

## FIRST COUNT

274.   Maxim Entities incorporates by this reference each and every allegation made within paragraphs #1 through 256 hereof as if rewritten.

275.   Maxim Enterprises is and has been in the property preservation business as an Ohio corporation since April 29, 1999.  S2k is in the business of importing and selling various hardware, including locks, to companies in the property preservation industry.  Mr. Maxim is the sole shareholder of Maxim Enterprises and owns 91% of the shares of S2k.

276.   Maxim Enterprises and numerous other property preservation companies work with clients who have homes in foreclosure that must be maintained.  This is accomplished through use of subcontractors, some of whose work is in a localized area, others of whom work in a large geographic area.

277.   Maxim Enterprises uses subcontractors supplying property preservation services from the east coast to the Mississippi River and slightly beyond.

278. **The property preservation business has been driven and has developed its ability to meet the needs of its clients by the use of specialized property preservation software.**

279. **The specialized property preservation software allows the client to post information concerning the job that is to be done in the Maxim Entities' system, where the subcontractor pulls the information and bids the work.  The client, typically a bank, accepts or rejects the bid and provides the time frames in which the work is to be accomplished.**

280. **Utilizing the aforesaid property preservation software, the contractor performs the work, invoices and provides pictures before the work commences and after the work is completed.  This invoice is reviewed by the client and is entered for payments and is tracked in the same software.**

281. **If the work was performed and invoiced timely and satisfactorily, the client pays Maxim Enterprises, and Maxim Enterprises pays the subcontractors, withholding a portion of the payment for its services.**

    A. **Maxim Enterprises Meets and Invests in East Point Systems, Inc.**

282. **Mr. Maxim attended a California trade show and met plaintiff Thomas Margarido (hereinafter "Tom Margarido"), president of East Point Systems, Inc.'s predecessor, ultimately buying a property preservation program from East Point's predecessor (hereinafter "Old East Point"). Mr. Maxim found that this program did not perform as promised and contacted Tom Margarido regarding same.**

23120.000/580793.1

283.    Tom Margarido advised that he would need TWO HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($250,000.00) to further develop the software and that without it his company, Old East Point, would fail.

284.    Mr. Maxim caused S2k to purchase approximately six percent (6%) of East Point System, Inc.'s initial stock offering for the said TWO HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($250,000.00).  The rest of the stock was purchased by Old East Point's shareholders (hereinafter the "Connecticut Shareholders") through the transfer Old East Point's software (which did not work as represented) in accordance with the East Point Systems, Inc., Shareholder Agreement attached to the complaint as **Exhibit** "**L**".

285.    The Connecticut Shareholders formed the defendant East Point Systems, Inc. (hereinafter "New East Point"), after which both S2k and Mr. Maxim, individually, signed the purported non-compete agreements with New East Point, without consideration.

B.  **New East Point's System does not Perform as Represented and Mr. Maxim Proposes a Solution.**

286.    Irrespective of the S2k stock purchase payment, New East Point was not able to   produce a computer-based software system that could satisfactorily perform tasks necessary to the property preservation industry.

287.    The New East Point software frequently failed and, ultimately, cost the Maxim Entities their contracts with various clients.  Maxim Entities also lost various subcontractors because the information provided by

64

New East Point's computer software system was not up-to-date or was otherwise not workable.

288.   Due to the failure of the New East Point computer software system, Maxim Entities overpaid subcontractors in one pay period alone approximately ONE HUNDRED THOUSAND AND NO/100 DOLLARS ($100,000.00), most of which was not able to be recovered.

289.   In 2007, Mr. Maxim approached Tom Margarido and shared with him ideas concerning a software system that Mr. Maxim could develop in-house that would resolve the New East Point shortfalls.

290.   Tom Margarido confirmed that Maxim Entities should proceed on their own and provided the name of a potential software expert to be hired, Mr. Alex Bardzilauskus, who is referenced in paragraphs #56, and following, of the complaint.

291.   After expending from two (2) to three (3) years of time and approximately FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($500,000.00), Maxim Entities have developed a software system that meets the needs of the property preservation industry, which is successfully being used internally at Maxim Enterprises.

C.   <u>Dissimilarity of Software</u>.

292.   The software developed by Maxim Entities is web-based, New East Point's computer-based software system is not.  The central operating features of Maxim Entities' system are not derived from information obtained from New East Point.

293. New East Point's computer-based software system is not user friendly. Maxim Entities' system is cheaper, faster and more accurate, with a much lower failure rate.

**FIRST COUNT – Breach of Contract**

294. For the First Count of Maxim Entities' Counterclaim they incorporate by this reference each and every allegation contained in paragraphs #1 through 256, and #272 through 290 as if rewritten.

295. Plaintiffs breached their contract with S2k, attached as **Exhibit "L"** to the complaint, resulting in damages for the total loss of defendants' investment.

296. Maxim Entities have hired Atty. Sidney N. Freeman and Robert F. McNamara, McNamara, Demczyk Co., L.P.A., Uniontown, Ohio, and Atty. Brian O'Donnell, Reid and Riege, P.C., as Connecticut local counsel, to represent them in this matter, and have agreed to pay said attorneys a reasonable fee and expenses for their services herein.

297. Defendants are entitled to damages for breach of contract in the amount of TWO HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($250,000.00), and interest at the maximum rate allowable by law from the date the contract was violated and continuing through the date the judgment herein is satisfied.

**SECOND COUNT - Fraud**

23120.000/580793.1

298.  For  the Second Count of Maxim Entities' Counterclaim they incorporate by this reference each and every allegation contained in paragraphs #1 through 256, and #272 through 294  as if rewritten.

299.  Plaintiffs intentionally and willfully misrepresented the value of the assets of Old East Point, the viability of the subject computer software system and the ability of plaintiffs to write a system to Maxim Entities' satisfaction.

300.  Plaintiffs intentionally led the Maxim Entities to believe the New East Point business to be formed was worth a sufficient amount that would make the value of Maxim Entities' investment equal to the TWO HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($250,000.00) paid.

301.  In fact, plaintiffs knew, or had reason to know, that New East Point was worth nowhere close to an amount sufficient to make the value of Maxim Entities' investment equal to the TWO HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($250,000.00) paid.

302.  In fact, such intentional misrepresentations of material fact were part of a scheme to obtain illegally from Maxim Entities the amount they paid for the purchase of New East Point stock.

303.  In fact, plaintiffs used the TWO HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($250,000.00) for their own purposes, instead of utilizing the money to advance the business of New East Point.

304.  The intentional misrepresentations of material fact aforesaid constitutes a fraud upon the Maxim Entities, entitling them to recover

67

damages in the amount of their investment, TWO HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($250,000.00).

<u>THIRD COUNT – <em>Quantum Meruit</em></u>

305.   For the Third Count of Maxim Entities' Counterclaim they incorporate by this reference each and every allegation contained in paragraphs #1 through 256, and #272 through 301 as if rewritten.

306.   The acts of plaintiffs aforesaid caused Maxim Entities to spend the amount necessary to purchase the approximately six percent (6%) shareholder interest in New East Point for the price of TWO HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($250,000.00).

307.   The payment of such price was for the purpose of investment, and plaintiffs either knew or should have known that same was not a gratuitous or charitable act.

308.   Maxim Entities also paid to develop their own software, once it became apparent plaintiffs could not do so and with plaintiffs' knowledge and approval, which cost Maxim Entities an additional FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($500,000.00).

309.   If this court should conclude that Maxim Entities may not fully exploit commercially the computer software system they developed plaintiffs will be unjustly enriched in such amounts.

310.   If this court should conclude that Maxim Entities may not fully exploit commercially the computer software system they developed Maxim Entities are entitled to recover from plaintiffs for the fair value of

the asset, in the amount of **SEVEN HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($750,000.00)**, on the basis of *quantum meruit* for goods had and received, either in contract implied in-fact or at-law.

### FOURTH COUNT - Accounting

311.  For the Fourth Count of Maxim Entities' Counterclaim they incorporate by this reference each and every allegation contained in paragraphs #1 through 256, and #272 through 307 as if rewritten.

312.  The acts of plaintiffs, as aforesaid, entitle Maxim Entities to a full accounting of the financial affairs of plaintiffs from the date of Maxim Entities' investment through the date of trial.

### FIFTH COUNT – Specific Performance

313.  For the Fifth Count of Maxim Entities' Counterclaim they incorporate by this reference each and every allegation contained in paragraphs #1 through 256, and #272 through 309 as if rewritten.

314.  In the event there is no adequate remedy at law, Maxim Entities request the court grant specific performance to enforce the subject contracts, and force the sale of S2k's stock back to plaintiffs.

315.  In the event there is no adequate remedy at law, and in the further event that it should be determined the software system developed by Maxim Entities cannot be commercially exploited by them, it will result in a financial windfall to plaintiffs.

23120.000/580793.1

316.   The financial windfall to be received by plaintiffs if Maxim Entities are not permitted to commercially exploit their software system will increase greatly the value of New East Point's stock.

317.   The resulting increase in stock value similarly will increase the value of New East Point's stock in Maxim Entities' hands, to the amount of SEVEN HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($750,000.00).

318.   In the event this court should determine there is no adequate remedy at law available to Maxim Entities, the said defendants demand the subject buy-sell provisions of the documents attached as Exhibits to the complaint be specifically enforced, and that Maxim Entities receive SEVEN HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($750,000.00) in return for the sale of such shares.

**SIXTH COUNT – Connecticut Unfair Trade Practices Act**

319.   For   the Sixth Count of Maxim Entities' Counterclaim they incorporate by this reference each and every allegation contained in paragraphs #1 through 256, and #272 through 315 as if rewritten.

320.   Irrespective of the valuation, plaintiffs always represented to Maxim Entities that they would be paid in full for the aforesaid investment and that they would be repaid fully before any other shareholders and before employees took any raises or bonuses.

321.   The representations aforesaid proved to be false, as the Connecticut Shareholders have received salary increases and bonuses without

23120.000/580793.1

making provision for the repayment of the Maxim Entities for the full price of their investment.

322.   Plaintiffs previously have misused buy-sell agreements such as those alleged by plaintiffs herein as part of a scheme to force minority shareholders to sell at a price far below that which such minority shareholders paid for their interests in New East Point.

323.   By contrast, Connecticut Shareholders are not bound by the same adhesive, unconscionable terms of same as those they claim are binding against Maxim Entities within the complaint, but may have their interest in New East Point purchased through a procedure designed to procure a far higher value.

324.   Plaintiffs are attempting in this action to effect the same result on Maxim Entities through the presumed enforcement of a buy-sell agreement that provides grossly unfair compensation to Maxim Entities, in an amount far less than the price paid by Maxim Entities for their interest in New East Point, for the obvious purpose of retaining Maxim Entities' money by deceit.

325.   The actions aforesaid by plaintiffs constitute a violation of the Connecticut Unfair Trade Practices Act, Conn. Gen Stat. sec.42-110a, *et seq.*

326.   The actions aforesaid entitle Maxim Entities to damages from the plaintiffs, in the amount of ONE MILLION AND NO/100 DOLLARS

($1,000,000.00), plus the reasonable fees and expenses of their attorneys.

## SEVENTH COUNT – Rescission or Reformation

327. For   the Seventh Count of Maxim Entities' Counterclaim they incorporate by this reference each and every allegation contained in paragraphs #1 through 256, and #272 through 323 as if rewritten.

328.   Maxim Entities were unaware of the unfair and inequitable provisions contained within the documents attached to the complaint, and the attempted enforcement of the terms as expressed by plaintiffs herein constitutes a surprise.

329.   The purported contract documents attached as Exhibits to the complaint, if found valid, constitute acts of adhesion.

330.   The deception of plaintiffs in inducing Maxim Entities to purchase what now appear to be virtually worthless shares in New East Point, combined with Maxim Entities' lack of knowledge of facts that rendered the purchase inequitable, entitle Maxim Entities to rescission or reformation.

## EIGHTH COUNT – Punitive Damages

331. For the Eighth Count of Maxim Entities' Counterclaim they incorporate by this reference each and every allegation contained in paragraphs #1 through 256, and #272 through 327 as if rewritten.

23120.000/580793.1

332. The scheme to deprive Maxim Entities of most of their investment was willful, intentional, and was conceived from a malicious intention to obtain Maxim Entities' money without value.

333. The actions of plaintiffs aforesaid are unconscionable and show a corrupt state of affairs.

334. The plaintiffs will continue such activity unless this court imposes a penalty to prevent repetition.

335. Maxim Entities are entitled to recover from plaintiffs, and each of them separately, punitive damages in an amount designed to deter similar future conduct, plus the reasonable costs and expenses of their attorneys in prosecuting this action.

## NINTH COUNT – Injunction

336. For the Ninth Count of Maxim Entities' Counterclaim they incorporate by this reference each and every allegation contained in paragraphs #1 through 256, and #272 through 335 as if rewritten.

337. Maxim Field Supply has spent substantial amounts of time and money to develop the programming and engineering of the Field Navigator computer system, in an effort to build a loyal client base, all of which required years of effort in development and $500,000 in development costs, all with the knowledge, approval and authorization of plaintiffs.

338.   Maxim Field Supply attempted to test market its system, but halted such efforts when it became aware of plaintiffs' claims of disputed ownership.

339.   Defendants Mr. Pajemola and Cleveland Field Systems, LLC, also claim ownership over the disputed computer system developed at the expense of Maxim Field Supply.

340.   Unless defendants Mr. Pajemola, Cleveland Field Systems, LLC, and plaintiffs, and each of them, are enjoined and restrained from using or disclosing, directly or indirectly, Maxim Field Supply Confidential Information in order to divert customers and profits from Maxim Field Supply to plaintiffs or defendants Mr. Pajemola, Cleveland Field Systems, LLC,  during the pendency of this action, and for a period thereafter consistent with the agreements between them, law and equity, Maxim Field Supply will suffer immediate and irreparable injury, including (without limitation) loss of the money it invested in created the computer-based system, its competitive position in the industry and loss of its customers and potential customers.

## TENTH COURT – Declaratory Judgment

341.   For the Tenth Count of Maxim Entities' Counterclaim they incorporate by this reference each and every allegation contained in paragraphs #1 through 256, and #272 through 340 as if rewritten.

342.   Maxim Entities state that the status of the agreements by and among the parties, and the rights and obligations imposed by law and equity

74

are such that the matters require resolution by means of declaratory judgment, in order that ownership of the computer-based software system that is the subject hereof may be established by this court.

## CROSS-CLAIM

### FIRST COUNT– Indemnification, Contribution, Reimbursement

343.   For the First Count of Maxim Entities' Cross-claim they incorporate by this reference each and every allegation contained in paragraphs #1 through 256, and #272 through 340 as if rewritten.

344.   In the event that plaintiffs prevail against Maxim Entities the conduct that gave rise to plaintiffs' claims resulted from the misuse of New East Point's confidential information, or from a breach of the non-competition and non-disclosure agreements by the defendants Edwin Pajemola or Cleveland Field Systems, LLC, and not the actions of Maxim Entities.

345.   Maxim Entities took reasonable precautions to ensure that New East Point's confidential information was protected.

346.   Any violation of such non-disclosure and non-competition agreements as alleged within the complaint were because of the actions of defendants Edwin Pajemola or Cleveland Field Systems, LLC, in spite of the reasonable precautions taken by Maxim Entities to prevent any such misuse.

347.   Maxim Entities have hired Atty. Sidney N. Freeman and Robert F. McNamara, McNamara, Demczyk Co., L.P.A., Uniontown, Ohio, and Atty.

Brian O'Donnell, Reid and Riege, P.C., as Connecticut local counsel, to prosecute this Cross-claim, and have agreed to pay said attorneys a reasonable fee and expenses for their services herein.

348.   Edwin Pajemola and Cleveland Field Systems, LLC, are liable to Maxim Entities for the payment of any damages that may result from a finding of liability upon the complaint, on the basis of indemnification or contribution.

349.   Further, in the event this court should find that the Maxim Entities may not exploit the computer software system developed by them because it is a copy or derivative of the system developed by East Point, such violations were the result of intentional misrepresentations to Maxim Entities of material facts regarding the use and protection of such confidential information by Mr. Pajemola and Cleveland Field Systems, LLC, who are liable to reimburse Maxim Entities for their development costs and expenses, in the amount of FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($500,000.00), for breach of contract or fraud.

## SECOND COUNT – Injunction

350.   For the Second Count of Maxim Entities' Cross-claim they incorporate by this reference each and every allegation contained in paragraphs #1 through 256, and #272 through 347 as if rewritten.

351.   Maxim Field Supply has spent substantial amounts of time and money to develop the programming and engineering of the Field

Navigator computer system, in an effort to build a loyal client base, all of which required years of effort in development and $500,000 in development costs, all with the knowledge, approval and authorization of plaintiffs.

352.   Maxim Field Supply attempted to test market its system, but halted such efforts when it became aware of plaintiffs' claims of disputed ownership.

353.   Defendants Mr. Pajemola and Cleveland Field Systems, LLC, also claim ownership over the disputed computer system developed at the expense of Maxim Field Supply.

354.   Unless defendants Mr. Pajemola, Cleveland Field Systems, LLC, and plaintiffs, and each of them, are enjoined and restrained from using or disclosing, directly or indirectly, Maxim Field Supply Confidential Information in order to divert customers and profits from Maxim Field Supply to plaintiffs or defendants Mr. Pajemola, Cleveland Field Systems, LLC,  during the pendency of this action, and for a period thereafter consistent with the agreements between them, law and equity, Maxim Field Supply will suffer immediate and irreparable injury, including (without limitation) loss of the money it invested in created the computer-based system, its competitive position in the industry and loss of its customers and potential customers.

<u>THIRD COURT – Declaratory Judgment</u>

77

355.  **For the Second Count of Maxim Entities' Cross-claim they incorporate by this reference each and every allegation contained in paragraphs #1 through 256, and #272 through 354 as if rewritten.**

356.  **Maxim Entities state that the status of the agreements by and among the parties, and the rights and obligations imposed by law and equity are such that the matters require resolution by means of declaratory judgment, in order that ownership of the computer-based software system that is the subject hereof may be established by this court.**

WHEREFORE, having fully Answered, Maxim Entities respectfully request that the captioned action be set for proceedings in accordance with the pleadings.  Regarding their Counterclaim and Cross-claim, Maxim Entities demand the following relief:

I.    Against plaintiffs, jointly, severally and unconditionally, in the amount of TWO HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($250,000.00) for either breach of contract or fraud;

II.   Against plaintiffs, jointly, severally and unconditionally, for recovery of the sums spent by Maxim Entities to develop its software system, and for loss of its value, in the amount of SEVEN HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($750,000.00) for contract implied in-fact or at-law (*quantum meruit)*;

III.  In the alternative, against plaintiffs, jointly, severally and unconditionally, for specific performance in the amount of SEVEN

78

HUNDRED FIFTY THOUSAND AND NO/100 DOLLARS ($750,000.00)

IV.    Against plaintiffs, jointly, severally and unconditionally, for recovery under the Connecticut Unfair Trade Practices Act in the amount of ONE MILLION AND NO/100 DOLLARS ($1,000,000.00);

V.    Against plaintiffs, for rescission or reformation of the Shareholder Agreement;

VI.    Against defendants Edwin Pajemola and Cleveland Field Systems, LLC, jointly, severally and unconditionally, for any sums found owing to plaintiffs under the complaint, on the basis of indemnification or contribution;

VII.    Against defendants Edwin Pajemola and Cleveland Field Systems, LLC, jointly, severally and unconditionally, for breach of contract or fraud in the amount of FIVE HUNDRED THOUSAND AND NO/100 DOLLARS ($500,000.00);

VIII.    Against plaintiffs, jointly, severally and unconditionally, or defendants Edwin Pajemola and Cleveland Field Systems, LLC, jointly, severally and unconditionally, for the reasonable fees and expenses of Maxim Entities attorneys herein;

IX.    For interest at the maximum rate allowable by law from the date the acts aforesaid were committed and continuing until the date judgment herein is satisfied;

X.      For a preliminary and permanent injunction against plaintiffs and defendants Mr. Pajemola and Cleveland Field Systems, LLC, restraining and enjoining each from marketing, exploiting or otherwise using the computer-based system for the property preservation industry developed by Maxim Field Supply;

XI.     For an order in declaratory judgment establishing ownership of the subject computer software system in Maxim Field Supply;

XII.    The costs hereof; and

XIII.   Such further and additional relief as this court may deem just or equitable.

Defendants
Steven     Maxim,     S2k,     Inc.,     Maxim
Enterprises, Inc.,
and Maxim Field Service Supply, Inc.


/s/ Brian O'Donnell
Brian O'Donnell
Federal Bar No. ct16041
Mary E. Mintel
Federal Bar No. ct28994
Reid and Riege, P.C.
One Financial Plaza
Hartford, CT  06103
Phone 860.278.1150
Fax 860.240.1002
bodonnell@rrlawpc.com
mmintel@rrlawpc.com

23120.000/580793.1

## JURY DEMAND

I hereby demand that the trial of this action be conducted before a jury of twelve (12) persons, as to matters so triable.


/s/ Brian O'Donnell
Brian O'Donnell  (Federal Bar No. ct16041)

23120.000/580793.1

## CERTIFICATE OF SERVICE

I hereby certify that, on this 29th day of April, 2013, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

/s/ Brian O'Donnell
**Brian O'Donnell  (Federal Bar No. ct16041)**

23120.000/580793.1