# EXHIBIT A

# EMPLOYMENT AGREEMENT

This Employment Agreement (the "Agreement") is made and entered into as of August 13th, 2010, by and between Maxim Field Service Supply, Inc., an Ohio corporation (the "Company"), and Edwin Pajemola, of 4223 Morley Dr, Reminderville, Ohio 44202 (the "Employee").

**RECITAL**

The Company desires to employ the Employee from August 16, 2010, (the "Effective Date") until expiration of the term of this Agreement. Employee is willing to be employed by Company during that period, on the terms and subject to the conditions set forth in this Agreement.

In consideration of the mutual covenants and promises of the parties, the Company and Employee covenant and agree as follows:

**AGREEMENT**

**1. Duties**

During the term of this Agreement, Employee will be employed by the Company as the person responsible for designing, planning, programming, maintaining and managing all aspects of the Field Navigator web based system and for carrying out such additional duties as the Board of Directors from time to time requires. Employee's duties shall specially include, but are not limited to design, development, programming and maintenance of the Field Navigator system, a web based system which manages work orders, contracts, photos, contractors score cards, order entry, payables, receivables, completed jobs, changed job orders and canceled job orders, administering and controlling the entire client/subcontractor program for property preservation companies. Specifically, Field Navigator will manage the business of the subcontractor as it relates to the property preservation business.

During the term of this Agreement, Employee shall devote all of his business efforts to the Company and shall not provide any services whatsoever to any other business whatsoever. During the term of this Agreement any direction required shall be provided by Steve Maxim, President, unless otherwise directed by the Board of Directors of Company.

**2. Term of Employment**

   **2.1 Basic Term**

The term of employment of Employee by the Company will commence on the Effective Date and will extend through the period ending on August 15, 2011, (the "Termination Date"). This Agreement may be extended according to Section 2.5 below.

   **2.2 Termination for Cause**

Under this Agreement "*Termination for Cause*" shall mean termination by Company of Employee's employment (i) by reason of Employee's willful dishonesty towards, fraud upon, or

Exhibit "1"

EP SM

deliberate injury or attempted injury to, the Company, (ii) by reason of Employee's material breach of this Agreement or (iii) by reason of Employee's gross negligence or intentional misconduct with respect to the performance of Employee's duties under this Agreement. Termination for Cause may be effected by Company at any time during the term of this Agreement and may be effected by written notification to Employee. Upon Termination for Cause, Employee is to be paid all accrued salary and incentive compensation within thirty (30) days from the date of termination.
Also, if Maxim elects to terminate or discontinue for other reasons than listed in 2.2 or 2.3, Employees will retain the 50% of profits gained from 3rd party use of software for a period of three (3) years.

### 2.3    Termination Due to Disability

In the event that, during the term of this Agreement, Employee should, in the reasonable judgment of the Board, fail to perform Employee's duties under this Agreement because of illness or physical or mental incapacity ("Disability"), and such Disability continues for a period of more than one (1) month, Company has the right to terminate Employee's employment under this Agreement by written notification to Employee and payment to Employee of all accrued salary and incentive compensation to the extent earned, all to the date of termination. Any determination by the Board with respect to Employee's Disability must be based on a determination of competent medical authority or authorities, a copy of which determination must be delivered to the Employee at the time it is delivered to the Board. In the event the Employee disagrees with the determination described in the previous sentence, Employee will have the right to submit to the Board a determination by a competent medical authority or authorities of Employee's own choosing to the effect that the aforesaid determination is incorrect and that Employee is capable of performing Employee's duties under this Agreement. If, upon receipt of such determination, the Board wishes to continue to seek to terminate this Agreement under the provisions of this section, the parties will submit the issue of Employee's Disability to arbitration in accordance with the provisions of this Agreement.

### 2.4    Death

In the event of Employee's death during the term of this Agreement, Employee's employment will be deemed to have terminated as of the last day of the week during which Employee's death occurred, and Company will pay to Employee's spouse (or if unmarried to Employee's estate) any and all accrued salary and incentive compensation to the extent earned, all to the date of termination.

### 2.5    Extension

At the end of the term of this Agreement or any extension hereunder, the term of this Agreement shall automatically renew for an additional one (1) year term (unless thirty (30) days written notice is given by either party to the other), provided all of the following conditions precedent have been met:

   1.   Employee is not in default of any provisions of this Agreement.

2

EP SM

### 3. Compensation

#### 3.1 Base Salary

As payment for the services to be rendered by Employee as provided in Section 1 and subject to the terms and conditions of Section 2, Company agrees to pay to Employee an annualized "Base Salary," payable in two week periods. The annualized Base Salary payable to Employee under this Section for the first year of the initial term of this Agreement will be Ninety Thousand Dollars ($90,000.00). Beginning in the second year of the initial term of this Agreement and continuing for all subsequent terms of this Agreement, the annualized Base Salary payable to Employee under this Section will be One Hundred Thousand Dollars ($100,000.00). All payments of salary shall be subject to deductions for all taxes as required by law.

#### 3.2 Bonus

Employee shall be paid an annual bonus dependent upon the annual net sales of the Company calculated as follows:

Company will market and sell Field Navigator which will manage the business relationship between the Property Preservation Company and its subcontractors. Company currently has a contract with Maxim Enterprises, Inc. (Maxim) to provide Field Navigator which currently manages subcontractor business. Employee shall receive one per cent (1%) of amount received by Maxim from its clients in the Employment Agreement's initial term, conditioned upon Maxim Enterprises, Inc. having collected ninety percent (90%) of the amount it billed to its client in said one year period. If the ninety percent (90%) of the amount billed is not collected within a one year period, then the Employee will receive 1% of the amount paid to the contractor from the one year period. Additionally, Employee shall receive fifty per cent (50%) of all collected revenues from property preservation companies other than Maxim Enterprises, Inc and/or S2K Inc.

Any Bonus shall be calculated and paid within forty five (45) days of the end of the quarter period of this agreement.

#### 3.3 Benefits

Employee shall get one (2) week paid vacation per year. Said vacation shall vest after working for Company for six (6) months. The Company shall provide Employee with health insurance benefits in accordance with the health insurance benefit provided to employees of Maxim Enterprises, Inc. and with a retirement program in accordance with the retirement program provided to employees of Maxim Enterprises, Inc. subject only to Employee's ability to obtain and/or qualify for same.

3

### 3.4 Withholding of Taxes

The Employee understands that the services to be rendered by Employee under this Agreement will cause the Employee to recognize taxable income, which is considered under the Internal Revenue Code of 1986, as amended, and applicable regulations thereunder as compensation income subject to the withholding of income tax (and Social Security or other employment taxes). The Employee hereby consents to the withholding of such taxes as are required by law and/or by Company.

### 3.5 Sale

If Company is sold or if the Field Navigator system is sold by Company within two (2) years of Execution of this agreement, Company shall pay employee NINETY THOUSAND DOLLARS ($90,000.00) upon payment of the full purchase from Purchaser to Company, unless Employee is hired by Purchaser either as an employee or an independent contractor.

## 4. Confidentiality and Noncompetition

### 4.1 Confidentiality

Because of Employee's employment and association with Company, Employee will have access to trade secrets and confidential information about Company, its products, services, customers, and methods of doing business (the "Confidential Information "). During and after the termination of Employee's employment by the Company, Employee may not directly or indirectly disclose or use any such Confidential Information; provided, that Employee will not incur any liability for disclosure of information which (a) is required in the course of Employee's employment by the Company, (b) was permitted in writing by the Company or (c) is within the public domain or comes within the public domain without any breach of this Agreement. Further, the Employee will have positive and favorable discussions with all clients, customers, vendors and agents about the Company, its business, and its future prospects.

### 4.2 Noncompetition

In further consideration of this Agreement, Employee agrees that during this Agreement and for a period of three (3) years from Employee's separation from the Company, Employee will not, directly or indirectly, compete with the business of the Company, by developing, designing, programming or marketing web based management systems, as the business of the Company may then be constituted, within all geographic areas where the Company conducts business. "Direct Competition" shall mean development, production, promotion, or sale of products or services competitive with those of Company. "Indirect Competition" means employment whether as an employee, independent contractor or consultant by any competitor or third party providing products or services which compete with Company's products and services, for whom Employee will perform the same or similar function as he performs for Company. In addition, for a period of three (3) years after Employee's separation from the Company, Employee will not induce or attempt to induce any

4

*EP    SM*

other employee of the Company to discontinue his or her employment with the Company, nor will Employee initiate discussions, negotiations or contacts with persons known by Employee to be a customer or supplier of the Company at the time of Employee's separation of employment from the Company.

Employee has previously been an independent contractor working with Maxim Enterprises, Inc., wherein the design/programming of the web based Field Navigator was commenced. After leaving the employ of Maxim Enterprises, Inc. Employee continued to develop and program the Field Navigator system. The Company shall pay to Employee an additional payment of SIXTY-FOUR THOUSAND THREE HUNDRED TWENTY AND NO/100 DOLLARS ($64,320.00) as payment for any interest that Employee has in the Field Navigator web based system and Employee hereby transfers any right or claim of ownership or use which Employee has in the said Field Navigator system whether developed at Maxim Enterprises, Inc., individually after leaving Maxim Enterprises, Inc., during his employment with Company or otherwise. The said SIXTY-FOUR THOUSAND THREE HUNDRED TWENTY AND NO/100 DOLLARS ($64,320.00) shall be paid as follows:

SIXTEEN THOUSAND THREE HUNDRED TWENTY AND NO/100 DOLLARS ($16,320.00) upon execution of this Agreement;

Thereafter, six (6) payments of EIGHT THOUSAND AND NO/100 DOLLARS ($8,000.00) each on September 1, 2010, November 1, 2010, January 1, 2011, March 1, 2011, May 1, 2011, July 1, 2011.

The purchase shall specifically include, but is not limited to the items set forth on attached Exhibit A.

### 4.3  Injunctive Relief

Employee acknowledges that in addition to any remedies available to the Company under the law, the Company would suffer irreparable harm by Employee's breach of Sections 4.1 and 4.2 of this Agreement and Employee consents to a court of competent jurisdiction entering a temporary restraining order, preliminary injunction and permanent injunction against him for any and all violations of said sections. Employee agrees to pay all court costs and reasonable attorneys' fees incurred by Company in obtaining a temporary restraining order and/or an injunction against breaches and violation of Sections 4.1 and 4.2 of this Agreement.

## 5.  Miscellaneous

### 5.1  Waiver

The waiver of any breach of any provision of this Agreement will not operate or be construed as a waiver of any subsequent breach of the same or other provision of this Agreement.

### 5.2  Entire Agreement; Modification

5

*[handwritten initials: EP, SM]*

This Agreement represents the entire understanding among the parties with respect to the subject matter of this Agreement, and this Agreement supersedes any and all prior understandings, agreements, plans, and negotiations, whether written or oral, with respect to the subject matter hereof, including without limitation, any understandings, agreements, or obligations respecting any past or future compensation, bonuses, reimbursements, or other payments to Employee from Company.

All modifications to the Agreement must be in writing and signed by the party against whom enforcement of such modification is sought.

### 5.3   Notice

All notices and other communications under this Agreement must be in writing and must be given by personal delivery, facsimile, or first class mail, certified or registered with return receipt requested, and will be deemed to have been duly given upon receipt if personally delivered, three (3) days after mailing, if mailed, or twenty four (24) hours after transmission, if delivered by facsimile, to the respective persons named below:

| | |
|---|---|
| If to Company: | Maxim Field Service Supply, Inc.<br>c/o Maxim Enterprises, Inc.<br>5080 Aultman Road<br>North Canton, Ohio 44720<br>Fax: (330) 499-9128<br>Attn: Steve Maxim, President |
| w/ a copy to: | McNamara, Demczyk & DeHaven Co., L.P.A.<br>12370 Cleveland Ave. NW<br>Uniontown, Ohio 44685<br>Fax: 330-699-4803<br>Attn: Robert McNamara |
| If to Employee: | Edwin Pajemola |

Any party may change such party's address for notices by notice duly given pursuant to this Section.

### 5.4   Headings

The Section headings of this Agreement are intended for reference and may not by themselves determine the construction or interpretation of this Agreement.

6

EP  SM

### 5.5 Governing Law

This Agreement, and all transactions contemplated hereby, shall be governed by, construed and enforced in accordance with the laws of the State of Ohio. The parties herein agree to submit to the personal jurisdiction and venue of a court of subject matter jurisdiction located in Stark County, State of Ohio. In the event that litigation results from or arises out of this Agreement or the performance thereof, the parties agree to reimburse the prevailing party's reasonable attorney's fees, court costs, and all other expenses, whether or not taxable by the court as costs, in addition to any other relief to which the prevailing party may be entitled.

### 5.6 Survival of Company's Obligations

This Agreement will be binding on, and inure to the benefit of, the executors, administrators, heirs, successors, and assigns of the parties; provided, however, that except as expressly provided in this Agreement, this Agreement may not be assigned either by Company or by Employee.

### 5.7 Counterparts

This Agreement may be executed in one or more counterparts, all of which taken together will constitute one and the same Agreement.

### 5.8 Withholdings

All sums payable to Employee under this Agreement will be reduced by all federal, state, local, and other withholdings and similar taxes and payments required by applicable law.

### 5.9 Enforcement

If any portion of this Agreement is determined to be invalid or unenforceable, that portion of this Agreement will be adjusted, rather than voided, to achieve the intent of the parties under this Agreement.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement on the 13th day of August, 2010.

Company

*[signature]*

Maxim Field Service Supply, Inc.

7

*EP   su*

Employee

*Edw Pajemola*
Edwin Pajemola

M:\debbie 7\bob\maxim\maxim field service supply inc\Employment Agreement.edwin pajemola.doc

8

EP  SM

# EXHIBIT A

The transfer of rights or claims in the Field Navigator system, specifically includes but is not limited to the following:

A. All Source Codes Maxim Field System

B. BAC Uploader program

C. Source code for contractor work flow

D. Source code for office work flow

9

E.P  Su