UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **EAST POINT SYSTEMS, INC.,** | : | **CIVIL ACTION NO. 3:13-cv-215** |
| **THOMAS MARGARIDO, JASON** | : | |
| **MARGARIDO, AND PAUL TAFF** | : | |
| | : | |
| **Plaintiffs,** | : | |
| | : | |
| **vs.** | : | |
| | : | |
| **STEVEN MAXIM, S2K, INC., MAXIM** | : | |
| **ENTERPRISES, INC., MAXIM FIELD** | : | |
| **SERVICE SUPPLY, INC., EDWIN** | : | |
| **PAJEMOLA, AND CLEVELAND FIELD** | : | |
| **SYSTEMS, LLC** | : | |
| | : | |
| **Defendants.** | : | **JUNE 11, 2013** |

## 26(F) REPORT OF PARTIES' PLANNING MEETING

**Date Complaint Filed:**          **February 15, 2013**

**Date Complaint Served:**        **March 26 and 27, 2013**[1]

**Date of Defendant's Appearance:**   **April 19 and 29, 2013**[2]

Pursuant to Fed. R. Civ. P. 16(b), 26(f) and D. Conn. L. Civ. R. 16, a

conference was held on May 23, 2013. The participants were:

- **Bruce Raymond, Esq., and Jay Wolman, Esq., for plaintiffs EAST POINT SYSTEMS, INC., THOMAS MARGARIDO, JASON MARGARIDO and PAUL TAFF**

- **Brian O'Donnell, Esq., Robert McNamara, Esq., and Sidney Freeman, Esq., for defendants STEVEN MAXIM, S2K, INC., MAXIM ENTERPRISES, INC., and MAXIM FIELD SERVICE SUPPLY, INC. (the "Maxim Defendants")**

---

[1] **Service was waived by defendants Steven Maxim, S2K, Inc., Maxim Enterprises, Inc., and Maxim Field Service Supply, Inc., on March 26, 2013, and by defendants Edwin Pajemola and Cleveland Field Systems, LLC on March 27, 2013.**
[2] **Defendants Steven Maxim, S2K, Inc., Maxim Enterprises, Inc., and Maxim Field Service Supply, Inc., appeared on April 19, 2013, and defendants Edwin Pajemola and Cleveland Field Systems, LLC on April 29, 2013.**

- **Edward Scofield, Esq., and Tim McGarry, Esq., for defendants EDWIN PAJEMOLA and CLEVELAND FIELD SYSTEMS, LLC (the "Pajemola Defendants")**

## I.  Certification

Undersigned counsel certify that, after consultation with their clients, they have discussed the nature and basis of the parties' claims and defenses and any possibilities for achieving a prompt settlement or other resolution of the case and, in consultation with their clients, have developed the following proposed case management plan. Counsel further certify that they have forwarded a copy of this report to their clients.

## II.  Jurisdiction

### A.  Subject Matter Jurisdiction

Plaintiffs have alleged that this Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338 as this action arises under the Unites States copyright laws. Plaintiffs have further alleged that this Court has subject matter jurisdiction of this action pursuant to 28 U.S.C.§ 1332 as there is complete diversity of citizenship. Plaintiffs are citizens of Connecticut and Defendants, including the member of Defendant Cleveland Field Systems, LLC, are citizens of Ohio. Plaintiffs have further alleged that this Court may further exercise supplemental jurisdiction over the state law claims per 28 U.S.C. § 1367 as they are so related to the other claims within this Court's original jurisdiction that they form part of the same case or controversy.

Defendants Steven Maxim, S2K, Inc. ("S2K"), Maxim Enterprises, Inc. ("Maxim Enterprises"), and Maxim Field Service Supply, Inc. ("Maxim Field"), have denied these alleged bases for subject matter jurisdiction as constituting a legal

2

conclusion to be determined by this Court; specifically, but without limiting the generality of the foregoing, stating that a majority of the activities alleged within the complaint took place within the state of Ohio, where an action previously was commenced against the Pajemola Defendants in that action before the Stark County, Ohio, Common Pleas Court (the "Ohio Court"), styled Maxim Field Service Supply, Inc. v. Pajemola, et al., case #2012-CV-03613 (the "Ohio Case"), which action pre-dates the filing of the complaint in the captioned action, involving the same issues as have been raised herein. The Maxim Defendants agree that in the furtherance of judicial economy and consistency, it is preferable to try all claims by and among the parties in a single forum, and that this Court is convenient for the effective resolution of all issues, provided: (1) a firm inspection schedule for the software systems is reached among all parties; and (2) the Maxim Defendants are permitted to amend their pleadings herein to include all of the claims and defenses raised in the Ohio Case on or before June 27, 2013. Maxim Field already has notified the Ohio Court of its intention to dismiss that action for refiling herein, pending adoption by this Court of the foregoing.

Defendants Edwin Pajemola and Cleveland Field Systems, LLC, have denied these alleged bases for subject matter jurisdiction as constituting a legal conclusion to be determined by this court. However, the Pajemola Defendants have agreed to jurisdiction in Connecticut in order to resolve all disputes between the parties in one case.

3

B.    **Personal Jurisdiction**

Plaintiffs have alleged that this Court may exercise personal jurisdiction over all defendants pursuant to Connecticut's Long-Arm Statute, C.G.S. § 52-59b(a)(1),(2),(3), & (5).

Defendants Steven Maxim, S2K, Maxim Enterprises, and Maxim Field have denied the allegation of personal jurisdiction as constituting a legal conclusion to be determined by this Court; specifically, but without limiting the generality of the foregoing, stating that a majority of the activities alleged within the complaint took place within the state of Ohio, where an action previously was commenced against the Edwin Pajemola Defendants in the Ohio Case, which action pre-dates the filing of the complaint in the captioned action, involving the same issues as have been raised herein. The Maxim Defendants agree that in the furtherance of judicial economy and consistency, it is preferable to try all claims by and among the parties in a single forum, and that this Court is convenient for the effective resolution of all issues, provided: (1) a firm inspection schedule for the software systems is reached among all parties; and (2) the Maxim Defendants are permitted to amend their pleadings herein to include all of the claims and defenses raised in the Ohio Case on or before June 27, 2013. Maxim Field already has notified the Ohio Court of its intention to dismiss that action for refiling herein, pending adoption by this Court of the foregoing.

Defendants Edwin Pajemola and Cleveland Field Systems, LLC, have denied these alleged bases for personal jurisdiction as constituting a legal conclusion to be determined by this court. However, the Pajemola Defendants

4

have agreed to jurisdiction in Connecticut in order to resolve all disputes between the parties in one case.

III.   Brief Description of Case

The parties could not agree on a joint statement summarizing the claims and defenses of all parties and describing the relief sought. Accordingly, each party drafted its own statement.

A.   Claims and Defenses of Plaintiffs/Counterclaim Defendants

This action arises from a dispute concerning the violation of trust placed in Defendant Steven Maxim, by and through his related entities, S2K, Maxim Field, and Maxim Enterprises, as a shareholder, board member, and valued customer of Plaintiff East Point Systems, Inc., and its shareholders Plaintiffs Jason Margarido, Thomas Margarido, and Paul Taff. See generally, Verified Complaint (Docket No. 1), incorporated herein by reference. Plaintiff East Point Systems, Inc., creates and licenses software (Field-Comm.net) relative to the mortgage field service industry, being that industry managing properties in foreclosure. See, *id.*, at paragraphs 17-20. In July 2004, Defendant Maxim, through Defendant S2K, purchased 5.8% of the shares of East Point Systems and joined the Board of Directors, executing a Shareholder Agreement, Cross Purchase Agreement, and Non-Disclosure and Confidentiality Agreement binding upon them. See, *id.*, at paragraphs 30-41.

In the summer of 2008, Maxim sought access to the confidential source code of Field-Comm.net on behalf of Maxim Enterprises, and executed a Software Source Code Access and Indemnification Agreement and a Confidentiality and

5

Non-Competition Agreement to obtain such access. See, *id.*, at paragraphs 73-80. Such source code is protected by a registered copyright. See, *id.*, at paragraph 82.

Plaintiffs subsequently learned that Maxim was marketing a competitor product to Field-Comm.net, using source code likely copied from Plaintiff East Point System, Inc. See, *id.*, at paragraphs 96-108. In response to this betrayal, Plaintiffs Jason Margarido, Thomas Margarido and Paul Taff voted to remove Defendant S2K, as a board member and exercise their rights to purchase its shares under the Cross-Purchase Agreement. See, *id.*, at paragraphs 112-113. Said plaintiffs have complied with their obligations, but S2K has refused to deliver its shares. See, *id.*, at paragraphs 113-118. Whereupon Plaintiffs have brought the instant litigation for breach of contract, statutory and common law breach of fiduciary duty, specific performance, tortious interference with business expectancy, violations of the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. §§ 35-50, *et. seq.*, violations of the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42-110g, *et. seq.* ("CUTPA"), computer-related offense, Conn. Gen. Stat. § 53a-251, copyright infringement pursuant to 17 U.S.C. § 501, and for imposition of a constructive trust. Plaintiffs seek specific performance of the Cross Purchase Agreement, obligating S2K to sell its shares for the agreed price. Plaintiffs further seek actual and punitive damages for the loss of revenue and value in their copyright protected work, with Defendants enjoined from committing further infringing acts and violations of their confidentiality covenants and obligations.

As defendants in counterclaim, Plaintiffs have moved to dismiss the counterclaims of Maxim Enterprises for failure to state a claim. They deny that they wronged the Maxim Defendants and that the Maxim Defendants have been damaged by any alleged wrong or is entitled to any other relief.

As defendants in counterclaim, Plaintiffs have not yet responded to the counterclaims of the Pajemola Defendants, filed on May 29, 2013. They deny that they wronged the Pajemola Defendants and that the Pajemola Defendants have been damaged by any alleged wrong or is entitled to any other relief. Plaintiffs reserve the right to file a motion to dismiss the counterclaims.

### B.   Claims and Defenses of Defendants/Counterclaim Plaintiffs

#### 1.   The Maxim Defendants

Maxim Enterprises is and has been in the property preservation business as an Ohio Corporation since April 28, 1999. S2k is in the business of importing and selling various hardware, including locks, to companies in the property preservation industry. Steven Maxim is the sole shareholder of Maxim Enterprises and owns ninety-one percent (91%) of the shares of S2k.

The property preservation business has been driven and has developed its ability to meet the needs of its clients by the use of specialized property preservation software. Maxim Enterprises and numerous other property preservation companies work with clients who have homes in foreclosure which must be maintained. This is accomplished through use of subcontractors, some of whose work is in a localized area, others of whom work in a large geographic area. Maxim Enterprises utilizes subcontractors supplying property preservation services from the east coast to the Mississippi River and slightly beyond.

7

Working at its best, the client posts information concerning the job that is to be done in the Maxim system, the subcontractor pulls that information and bids the work. The client accepts or rejects the bid and provides the time frames in which the work is to be accomplished. The contractor performs the work, invoices and provides pictures before the work commences and after the work is completed. This invoice is reviewed by the client and is entered for payment and able to be tracked in the same software. If the work was performed and invoiced timely and satisfactorily, the client pays Maxim Enterprises and Maxim Enterprises pays the subcontractor, withholding a portion of the payment for its services.

Maxim Enterprises attended a California trade show and met Tom Margarido, President of East Point's predecessor, ultimately buying a property preservation program from East Point's predecessor (hereinafter "Old East Point"). Maxim found that this program did not perform as promised and contacted Mr. Margarido regarding same. Tom Margarido advised that he would need $250,000 to further develop the software and that without it his company, East Point's predecessor, would fail.

Mr. Maxim caused his corporation S2k to purchase approximately six percent of East Point's initial stock offering. The rest of the stock was purchased by Old East Point's shareholders (the "Connecticut Shareholders") through the transfer of their software (which did not work as represented) in accordance with the purchase agreement. The Connecticut Shareholders formed the plaintiff East Point Systems, Inc. (hereinafter "New East Point"), after which both S2k and

8

Steven Maxim, individually, signed non-compete agreements with New East Point, without consideration.

Irrespective of the S2k stock purchase payment, New East Point was not able to provide the software needed by the Maxim Enterprises. The New East Point's software frequently would fail and ultimately, cost Maxim Enterprises its contract with various clients. Maxim Enterprises also lost various subcontractors because the information provided was not up to date or was not workable. In fact, due to failure by the New East Point software, Maxim Enterprises, overpaid its subcontractors in one pay period by approximately $100,000, most of which was not able to be recovered.

In 2007, defendant Steven Maxim approached plaintiff Thomas Margarido and shared with him ideas concerning a software system that Mr. Maxim could develop in-house that would resolve the New East Point shortfalls. Mr. Margarido confirmed that Mr. Maxim should proceed on his own and provided the name of a potential software expert previously employed by Plaintiffs, Mr. Alex Bardzilauskus, to Maxim to be hired. In turn, Mr. Bardzilauskus referred Maxim Enterprises to Defendant Edwin Pajemola for such purpose, whose services were retained by Maxim Field, with the express approval of Plaintiffs. After expending between two and three years of time and approximately $500,000, all with the express knowledge and approval of Plaintiffs, defendant Maxim Field, has developed a software system that meets the needs of the property preservation industry, which is successfully being used internally at Maxim Enterprises. None of the Maxim Defendants has sold or leased this software to anyone else,

**9**

although they have been approached with purchase offers for use of the software and would like to commence selling same.

The complaint, and the answer, counterclaim and cross-claim by the Maxim Defendants in the captioned action seek to resolve ownership to the aforesaid software, and determine continued participation by defendants S2k and Mr. Maxim in plaintiff East Point Systems. The counterclaims assert, among other things, that the Plaintiffs conspired to defraud Mr. Maxim and S2k, out of the $250,000 contribution by intentionally misstating the viability of the investment. This misconduct renders any contracts signed either invalid or rescindable, violates the Shareholder Agreement attached as Exhibit "L" to the Complaint as well as CUTPA, entitling S2k and Mr. Maxim to return of their investment, compensatory, consequential and exemplary damages. Also, Plaintiffs continue not to recognize S2k's rights as a shareholder and Mr. Maxim's rights as a director by failing to provide proper, timely notice and minutes of corporate meetings.

Defendant Maxim Field's cross-claims arise by virtue of violation by the Pajemola Defendants of non-disclosure and non-competition agreements signed in connection with the work performed on behalf of Maxim Field. The Maxim Defendants currently seek remedies for contribution, indemnification or reimbursement of any amounts ultimately deemed owed the Plaintiffs, but will include all additional claims asserted by Maxim Field within the Ohio Case, for direct damages resulting from the theft and misuse by the Pajemola Defendants of the Maxim Defendants' confidential information.

2. **The Pajemola Defendants**

The Pajemola Defendants deny that they copied East Point's software. Edwin Pajemola developed his software, Field Navigator, separately from East Point's software. The Pajemola Defendants have never had access to the source code for East Point's software. Maxim Field Service and Pajemola entered into an agreement whereby Maxim Field Service intended to purchase Field Navigator, but Maxim Field Service materially breached that agreement and thus no longer has any rights to Field Navigator.

The Pajemola Defendants assert that East Point has made numerous untrue statements about them, which constitutes defamation, tortious interference with business relations and a violation of Conn.'s unfair trade practices act. Additionally, the Pajemola Defendants assert that East Point has brought these claims for the sole purpose of inflicting damage upon the Pajemola Defendants, and not because of any alleged copying.

C.   <u>Claims and Defenses of Third Party Defendants</u>

Not applicable.

IV.   <u>Statement of Undisputed Facts</u>

Counsel certify that they have made a good faith attempt to determine whether there are any material facts that are not in dispute. The parties state that the following material facts are undisputed:

1.   At all times, Defendant Steven Maxim was and is a natural person and resident of the State of Ohio with an address of 6314 Glengarry Avenue NW, Canton, Ohio.

2.      Defendant Maxim Field Service Supply, Inc. was and is an Ohio corporation with its principal place of business at 6726 Wales Avenue, NW, in Massillon, Stark County, Ohio 44645.

3.      Defendant S2k, Inc., was and is an Ohio corporation with its principal place of business at 6726 Wales Avenue, N.W., Massillon, Stark County, Ohio 44645.

4.      Maxim Enterprises, Inc. was and is an Ohio corporation with its principal place of business at 6726 Wales Avenue, N.W., Massillon, Stark County, Ohio 44645.

5.      Arbitration between Plaintiffs and Defendants Maxim, S2K, MEI, and MFSS pursuant to the agreements between them has been dismissed without prejudice by stipulation in favor of the instant litigation.

6.      East Point Systems, Inc. is a "C" corporation.

7.      Alex Bardzilauskus introduced the Maxim Defendants to designer/programmer Edwin Pajemola.

8.      Maxim Field hired Edwin Pajemola to create a vendor website for its field vendors to send reports and documentation photos.

V.      <u>Case Management Plan</u>

A.      <u>Standing Order on Scheduling in Civil Cases</u>

The parties request modification of the deadlines in the Standing Order on Scheduling in Civil Cases as follows and as further described below: Extension of discovery deadline to May 23, 2014, and dispositive motion deadline to June 22, 2014.

B.    Scheduling Conference with the Court

The parties request a pretrial conference with the Court before entry of a scheduling order pursuant to Fed. R. Civ. P. 16(b). The parties prefer a conference by telephone.

C.    Early Settlement Conference

1.    The parties certify that they have considered the desirability of attempting to settle the case before undertaking significant discovery or motion practice. Settlement may be enhanced by use of the following procedure:

> Although there are many issues involved in this litigation, the single largest issue is the ownership and function of the mortgage field service software systems claimed by the respective parties. The parties believe that discovery, including expert examination of the Plaintiffs' and Defendants' software systems for comparison purposes, will help establish to what extent, if any, Defendants' software systems are copies of or derived from Plaintiffs' software system, and the functionality of each. Once such discovery and analysis has been completed, which is expected to take six months, the parties may then be in a position to engage in a settlement conference or other form of ADR.

2.    The parties do not request an early settlement conference.

3.    Should the parties desire a settlement conference at a later date, the parties prefer a settlement conference with a magistrate judge.

4.    The parties do not request at this time a referral for alternative dispute resolution pursuant to D. Conn. L. Civ. R. 16.

D.    Joinder of Parties and Amendment of Pleadings

1.    Plaintiffs should be allowed until June 27, 2013 to file motions to join additional parties and until June 27, 2013 to file motions to amend the pleadings.

2.    Defendants should be allowed until June 27, 2013 to file motions to join additional parties. Defendants have already responded to the complaint.

13

3.      On or before June 27, 2013, Defendants will dismiss the action between them in the Ohio Case, involving some or all of the same issues as have been raised herein, and bring such cross-claims between them as were raised in the Ohio Case for resolution before this Court in the instant action. To this end, the parties agree that the Maxim Defendants and the Pajemola Defendants have until June 27, 2013 to file amendments to their pleadings, if necessary to accomplish that result. Because those amendments likely will impact the substance of the defendants' cross-claims against each other, the deadline for defendants' responses to the cross-claims will be July 18, 2013.

4.      Additionally, the Maxim Defendants should be allowed until September 15, 2013, to file motions to join additional parties and to amend their pleadings. Plaintiffs disagree and suggest that part V.D.2 above, setting a deadline of June 27, 2013, should govern; however, if the Maxim Defendants are to be allowed until September 15, 2013, to join additional parties, Plaintiffs and the Pajemola Defendants should have such allowance as well.

E.      Discovery

a.      The parties anticipate that discovery will be needed on the following subjects:

1.      Valuation and sale of the shares of East Point Systems, Inc.;

2.      The circumstances surrounding the execution of the agreements attached to the Verified Complaint by Defendants, including negotiation and drafting;

3.      How the Field Navigator software or other similar software was developed by Defendants;

14

4.     The source code for the parties' software systems;

5.     Whether Maxim Field or Pajemola breached the contract between them;

6.     A review of the original document attached to the Complaint as Exhibit F;

7.     Whether East Point made the statements attributed to it in the Pajemola Defendants' Counterclaim;

8.     The performance of the parties with regard to the documents attached to the pleadings;

9.     The terms of all documents attached to the pleadings, including the meaning of any terms that any party claims to be ambiguous;

10.    The ownership claims of the parties to the various computer software systems;

11.    The nature and quality of the goods or services provided by plaintiffs to the Maxim Defendants;

12.    The nature and quality of the performance by defendant Edwin Pajemola under his contract with Maxim Field;

13.    Whether defendant Edwin Pajemola is in violation of his restrictive covenants with Maxim Field, its successors, agents, representatives, etc.;

14.    Communications between the parties relevant to the allegations of the pleadings;

15.     Communications by any and all parties with any third persons regarding any matter relevant to the allegations contained within the pleadings; and

16.     Any other matters relevant to the allegations contained within the pleadings, or the defenses thereto.

This list is not all-inclusive, and the parties reserve their rights to request discovery outside these subject areas. In addition, responses to any such discovery may be subject to suitable confidentiality agreements.

b.     All discovery, including depositions of expert witnesses pursuant to Fed. R. Civ. P. 26(b)(4), will be commenced on or after June 6, 2013, and completed (not propounded) by May 23, 2014.

c.     Discovery will be conducted in phases, as described below.

e.     The parties anticipate that Plaintiffs will require a total of 5 to 10 depositions of fact witnesses and that Defendants will require a total of 15 depositions of fact witnesses. The depositions will commence on or after July 1, 2013, and all defendants propose that they be completed by May 23, 2014, while Plaintiffs propose that they be completed by September 30, 2013.

f.     The parties will not request permission to serve more than 25 interrogatories.

g.     All parties intend to call expert witnesses at trial. With regard to issues upon which any party bears the burden of proof at trial and, all parties will designate their trial experts and provide opposing counsel with reports from

retained experts pursuant to Fed. R. Civ. P. 26(a)(2) by December 13, 2013. Depositions of any such experts will be completed by January 31, 2014.

h.      All parties will designate their rebuttal trial experts and provide opposing counsel with reports from retained rebuttal experts by March 15, 2014. Depositions of any such experts will be completed by April 30, 2014.

i.      A damages analysis will be provided by any party who has a claim or counterclaim for damages by December 13, 2013.

j.      Notwithstanding the above schedule, discovery regarding the parties' computer systems experts will follow a separate, expedited discovery schedule, under which the reports related to these experts will be completed by November 23, 2013.

1.      Plaintiffs will serve all opposing counsel with the identities of all such experts by July 15, 2013, whereupon the parties will permit inspection and testing by the other parties' identified experts.

2.      Each party will complete its or his inspection and testing on or before October 15, 2013.

3.      Each party will submit to the other parties the reports of their computer experts on or before November 23, 2013.

k.      Undersigned counsel have discussed the disclosure and preservation of electronically stored information ("ESI"), including, but not limited to, the form in which such data shall be produced, search terms to be applied in connection with the retrieval and production of such information, the location and format of ESI, appropriate steps to preserve ESI, and the allocation

of costs of assembling and producing such information. The parties agree to the following procedures for the preservation, disclosure and management of ESI:

     1.    With respect to the software systems at issue, the parties will submit to the Court a joint proposed stipulated protective order which addresses confidentiality issues and reflects the parties' agreed-upon procedures.

     2.    With respect to all other ESI, undersigned counsel have discussed, and are in the process of determining processes regarding, the disclosure and preservation of ESI, including, but not limited to, the form in which such data shall be produced, search terms to be applied in connection with the retrieval and production of such information, the location and format of electronically stored information, appropriate steps to preserve electronically stored information, and the allocation of costs of assembling and producing such information.

    k.    Undersigned counsel have discussed discovery procedures that minimize the risk of waiver of privilege or work-product protection, including procedures for asserting privilege claims after production. The parties agree to the following procedures for asserting claims of privilege after production:

     1.    The parties agree to comply with Fed. R. Civ. P. 26(b)(5) and D. Conn. L. Civ. R. 37.

     2.    The undersigned parties recognize that each party may possess documents and ESI that may be subject to discovery in this litigation.

3.      If information is produced in discovery that is subject to a claim of privilege or of protection as trial-preparation material, the producing party making the claim shall notify the receiving party that received the information of the claim and the basis for it within five business days after recognition that the privileged or protected information was produced.

4.      If the receiving party does not dispute the producing party's claim of privilege, the receiving party will return and/or destroy the specified information and any copies it has within five business days after being notified of the inadvertent disclosure, and shall certify to the receiving party that such action has been taken.

5.      If the receiving party disputes the producing party's claim of privilege, the receiving party will return, sequester or destroy the specified information and any copies it has and shall not use or disclose the information until the claim is resolved. The receiving party may present the information to the court under seal for a determination of the producing party's claim.

6.      Inadvertent production by any party of any privileged or protected materials as described herein shall not constitute a waiver of any such privilege or protection.

7.      In determining the merits of any claim of privilege or protection, the fact or circumstances of the inadvertent production shall not be considered. The determination of whether such privilege or protection exists, and if so, its scope, shall be made as if the information had not been inadvertently produced.

19

### F.    Dispositive Motions

Dispositive motions will be filed on or before July 25, 2014.

### G.    Joint Trial Memorandum

The joint trial memorandum required by the Standing Order on Trial

Memoranda in Civil Cases will be filed fifteen days prior to trial.

## VI.    Trial Readiness

The case will be ready for trial by September 15, 2014. The parties may

seek to waive jury trial and proceed to bench trial before the Magistrate Judge or

District Judge.

As officers of the Court, undersigned counsel agree to cooperate with each

other and the Court to promote the just, speedy and inexpensive determination of

this action.

Date:    June 11, 2013              By:    /s/ Jay M. Wolman
                                          Jay M. Wolman ct29129
                                          Bruce H. Raymond ct04981
                                          Raymond Law Group LLC
                                          90 National Drive, Suite 3
                                          Glastonbury, CT 06033
                                          P: 860-633-0580
                                          F: 860-633-0438
                                          wolman@raymondlawgroup.com
                                          Raymond@raymondlawgroup.com

                                          Michael J. Kopsick, ct03656
                                          Kahan, Kerensky & Capossela, LLP
                                          45 Hartford Turnpike
                                          Vernon, CT 06066
                                          P: 860-487-1744
                                          F: 860-647-8302
                                          mkopsick@kkc-law.com

                                          *Attorneys for Plaintiffs*

By:     **/s/ Sidney Freeman**
        **Sidney N. Freeman,** *pro hac vice*
        **Robert McNamara,** *pro hac vice*
        **McNamara, Demczyk Co., L.P.A.**
        **12370 Cleveland Avenue**
        **Uniontown, OH 44685**
        **P: 330-699-6703**
        **F: 330-699-4803**
        **snfreeman@mddattorneys.com**
        **rmcnamara@mddattorneys.com**

        **Brian O'Donnell ct16041**
        **Mary E. Mintel ct28994**
        **Reid and Riege, P.C.**
        **One Financial Plaza**
        **Hartford, CT 06103**
        **Phone 860.278.1150**
        **Fax 860.240.1002**
        **bodonnell@rrlawpc.com**
        **mmintel@rrlawpc.com**

        *Attorneys for Defendants Steven*
        *Maxim, S2K, Inc., Maxim Enterprises,*
        *Inc., and Maxim Field Service Supply,*
        *Inc.*

By:     **/s/ Edward R. Scofield**
        **Edward R. Scofield**
        **Zeldes, Needle & Cooper, P.C.**
        **1000 Lafayette Blvd., Suite 500**
        **Bridgeport, CT 06604**
        **Tel: 203-333-9441**
        **Fax: 203-333-1489**
        **escofield@znclaw.com**

        **Timothy L. McGarry**
        **Henderson & Schmidlin Co., LPA**
        **840 Brainard Road**
        **Highland Heights, OH 44143**
        **Phone: 440-720-0379**
        **Fax: 440-720-0385**
        **tmcgarry@hendersonschmidlin.com**

        *Attorneys for Defendants Edwin*
        *Pajemola and Cleveland Field*
        *Systems, LLC*

21

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date a copy of foregoing pleading was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

Date:      June 11, 2013                          <u>/s/ Brian O'Donnell</u>
                                                   Brian O'Donnell