## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EAST POINT SYSTEMS, INC., | : | |
| THOMAS MARGARIDO, JASON | : | |
| MARGARIDO, AND PAUL TAFF | : | |
| | : | |
| Plaintiffs, | : | CIVIL ACTION NO.: |
| | : | 3:3-cv-00215-VAB |
| v. | : | |
| | : | |
| STEVEN MAXIM, S2K, INC., MAXIM | : | |
| ENTERPRISES, INC., MAXIM FIELD | : | |
| SERVICE SUPPLY, INC., EDWIN | : | |
| PAJEMOLA, AND CLEVELAND FIELD | : | SEPTEMBER 21, 2015 |
| SYSTEMS, LLC | : | |
| | : | |
| Defendants. | : | |

## RULING AND ORDER

## I.      INTRODUCTION

Plaintiffs, East Point Systems, Inc. ("EPS"), Thomas Margarido, Jason

Margarido, and Paul Taff, filed this action against Defendants, Steven Maxim, S2K, Inc.

("S2K"), Maxim Enterprises, Inc. ("MEI"), Maxim Field Service Supply, Inc. ("MFSS"),

Edwin Pajemola, and Cleveland Field Systems, LLC ("CFS") for breach of contract,

statutory and common law breach of fiduciary duty, specific performance, tortious

interference with business expectancy, violations of the Connecticut Uniform Trade

Secrets Act, Conn. Gen. Stat. §§ 35-50, *et seq.* ("CUTSA"), violations of the Connecticut

Unfair Trade Practices Act, Conn. Gen. Stat. §§ 42a-110a, *et. seq.* ("CUTPA"), computer-

related offense under Conn. Gen. Stat. § 53a-251, copyright infringement under 17

U.S.C. § 501, and imposition of a constructive trust.

In their original Answer, Steven Maxim, S2K, MEI, and MFSS (collectively, the "Maxim Defendants") counterclaimed for breach of contract, fraud, quantum meruit, accounting, specific performance, violations of CUTPA, rescission or reformation, punitive damages, injunction, and declaratory judgment. ECF No. 22 at 62-75.

Plaintiffs moved to dismiss all of those counterclaims. ECF No. 29. The Court granted Plaintiffs' motion by order dated February 7, 2014 (the "First Order"). ECF No. 59. In the First Order, the Court concluded that the Maxim Defendants had not pleaded fraud with sufficient particularity, and granted them leave to re-plead only those claims sounding in fraud – specifically, fraud, quantum meruit based on fraud, CUTPA based on fraud, and rescission or reformation based on fraud. *See id.* at 13, 16, 20, 23.

The Maxim Defendants then filed an Amended Answer. ECF No. 63. In it, the Maxim Defendants re-asserted all of the dismissed counterclaims except the independent count for punitive damages, and added a new counterclaim for breach of implied warranty. *See generally id.* at 72-99.

Plaintiffs have moved to dismiss all of the counterclaims asserted in the Maxim Defendants' Amended Answer. ECF No. 66. Plaintiffs also have moved for summary judgment as to those amended counterclaims. ECF No. 134.

The Maxim Defendants ultimately realized that the First Order had not given them leave to re-plead certain of the counterclaims asserted in their Amended Answer. They have moved to withdraw those counterclaims, specifically, counts 1, 2, 4, 5, 9, and 10, as well as paragraphs 380 through 383 of count 6. ECF No. 123. Plaintiffs ask that the Court dismiss those claims with prejudice. ECF No. 126.

### A.    Motion to Withdraw Amended Counterclaims [ECF No. 123]

The Maxim Defendants' motion to withdraw counterclaims (ECF No. 123) is GRANTED.  Counts 1, 2, 4, 5, 9, and 10 are dismissed with prejudice consistent with the First Order.  Paragraphs 380 through 383 of count 6 are withdrawn.  The counterclaims that remain are addressed in the Court's below ruling on Plaintiffs' motion to dismiss.

### B.    Motion to Dismiss Amended Counterclaims [ECF No. 66]

Plaintiffs have moved under Federal Rules of Civil Procedure 9(b) and 12(b)(6) to dismiss all remaining counterclaims in the Maxim Defendants' Amended Answer.  For the reasons stated below, the motion is GRANTED.

#### 1.    Standard of Review

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a plaintiff must state a claim for relief that is plausible on its face.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  A claim is facially plausible if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  Although "detailed factual allegations" are not required, a complaint must offer more than "labels and conclusions," or "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of "further factual enhancement."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 557 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).

In determining whether the plaintiff has met this standard, the Court must accept the allegations in the complaint as true and draw all reasonable inferences in the light most favorable to the non-moving party, *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89,

95 (2d Cir. 2007), and generally may consider only "the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007).

A plaintiff alleging statutory or common law fraud must also comply with Federal Rule of Civil Procedure 9(b), which requires a party to state the circumstances constituting fraud "with particularity." Fed. R. Civ. P. 9(b). "Specifically, the complaint must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Mills v. Polar Molecular Corp.*, 12 F.3d 1170, 1175 (2d Cir. 1993); *Lundy v. Catholic Health Sys. of Long Island Inc.*, 711 F.3d 106, 119 (2d Cir. 2013) ("[T]he 'complaint must adequately specify the statements it claims were false or misleading, give particulars as to the respect in which plaintiff contends the statements were fraudulent, state when and where the statements were made, and identify those responsible for the statements.'") (quoting *Cosmas v. Hassett*, 886 F.2d 8, 11 (2d Cir. 1989)). Although a plaintiff may plead generally the requisite fraudulent intent, he must allege facts giving rise to a strong inference of fraudulent intent, which may include facts showing that the defendant(s) had both motive and opportunity to commit fraud, or facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness. *Lerner v. Fleet Bank, N.A.*, 459 F.3d 273, 290-91 (2d Cir. 2006); *see also O'Brien v. Nat'l Prop. Analysts Partners*, 936 F.2d 674, 676 (2d Cir. 1991) (inference of scienter must be supported by "ample factual basis").

### 2.    Discussion

#### a.    Count Three – Fraud

In the First Order, the Court concluded that the Maxim Defendants had failed to state a fraud claim because their allegations were "conclusory assertions of generalized misrepresentations" and did not specify "who actually made the statements, when the statements were made, and to whom they were made."  ECF No. 59 at 12-13.  Thus, the allegations did not comply with Rule 9(b)'s requirement to allege fraud with particularity.  *Id.*

The Maxim Defendants have added allegations pertaining to the content, dates, and speakers of the alleged misrepresentations, but a fundamental lack of particularity remains, and therefore the amended fraud counterclaim must be dismissed.

Under Connecticut law, the elements of a fraud claim are "(1) a false representation was made as a statement of fact; (2) it was untrue and known to be untrue by the party making it; (3) it was made to induce the other party to act upon it; and (4) the other party did so act upon that false representation to his injury."  *Sturm v. Harb Dev., LLC*, 2 A.3d 859, 872 (Conn. 2010).  A fraudulent representation is one that is "knowingly untrue, or made without belief in its truth, or recklessly made and for the purpose of inducing action upon it."  *Id.* (quoting *Kramer v. Petisi*, 940 A.2d 800, 806 n.9 (Conn. 2008)).

In support of their amended fraud counterclaim, the Maxim Defendants allege essentially four misrepresentations.

#### i.    Financial Projections

First, the Maxim Defendants allege that in late 2003, "Plaintiffs put together financial projections for the purpose of finding investors to contribute money to [EPS's

predecessor], which financial projections showed that [EPS's predecessor] would generate profits in future years sufficient to justify the investment of $250,000." ECF No. 63 ¶ 288. The financial projections allegedly were not prepared by an accountant, but rather by a person retained by Plaintiffs who is described, in an unattributed quote, as "'someone who knew something about how to put a document together.'" *Id.* ¶ 289. The Maxim Defendants allege that "the projections intentionally misrepresented the future financial performance and expectation of profitability." *Id.* In reliance on the projections, Steven Maxim allegedly caused S2K to purchase approximately six percent of EPS's initial stock offering for $250,000. *Id.* ¶¶ 295, 297. The Maxim Defendants allege that they would not have made that investment had they known, in part, that the projections were not prepared by a financial professional in accordance with generally accepted accounting principles. *Id.* ¶ 301.a.

As to scienter, the Maxim Defendants allege that "Plaintiffs knew or should have known" that the projections were false or were made with reckless disregard for the truth because EPS's predecessor had not maintained any balance sheets, profit and loss statements, or cash flow statements upon which an accurate projection could be based. *Id.* ¶ 291.

These allegations fail to state with particularity a plausible claim for fraud because they do not give rise to a strong inference of fraudulent intent.

"For forward looking statements, such as projections about the future performance of an investment, Rule 9(b) requires that a complaint allege particular facts demonstrating that the defendant knew or recklessly disregarded that the projections were false *at the time* that such projections were made." *In re Colonial Ltd. P'ship*

*Litig.*, 854 F. Supp. 64, 97 (D. Conn. 1994) (citing *DiVittorio v. Equidyne Extractive Indus., Inc.*, 822 F.2d 1242, 1248 (2d Cir. 1987)) (emphasis in original).

Although a plaintiff may plead generally the requisite fraudulent intent, he must allege facts giving rise to a strong inference of fraudulent intent, which may be done in two ways: (1) by alleging facts showing that the alleged fraudster "had both motive and opportunity to commit fraud" or (2) by alleging facts that constitute "strong circumstantial evidence of conscious misbehavior or recklessness." *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 267 (2d Cir. 1996).

To establish fraudulent intent through motive and opportunity, one cannot rely on motives possessed by virtually all corporate entities and insiders, such as the motive to maintain an appearance of profitability and success, or the motive to maintain a high stock price or credit rating. *Novak v. Kasaks*, 216 F.3d 300, 307 (2d Cir. 2000). Rather, the motive must be to benefit in a concrete and personal way, such as to sell one's own shares at an artificially high price. *Id.* at 307-08.

Here, the Maxim Defendants allege that Plaintiffs made the projections for the purpose of finding investors to contribute money to EPS's predecessor in order to save it from going out of business. *See* ECF No. 63 ¶¶ 287-88. The motive to raise capital in order to keep a business solvent is not the sort of selfish motive that gives rise to a strong inference of fraudulent intent. *See Novak*, 216 F.3d at 307.

The Maxim Defendants also have failed to establish fraudulent intent through strong circumstantial evidence of conscious misbehavior or recklessness. First, their conclusory allegation that Plaintiffs "intentionally misrepresented" future profits does not constitute an ample factual basis from which the Court may infer intentional or conscious misbehavior. *O'Brien*, 936 F.2d at 676 (inference of scienter must be

supported by "ample factual basis"); *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1129 (2d Cir. 1994) (allegations that defendants "intentionally concealed" vulnerability were "so broad and conclusory as to be meaningless"). Second, the Court does not find strong circumstantial evidence of recklessness in the Maxim Defendants' allegations that the projections were prepared by someone who was not an accountant or financial professional, and that EPS's predecessor did not maintain balance sheets, profit and loss statements, or cash flow statements.

"[R]eckless conduct is, at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Chill*, 101 F.3d at 269 (quoting *Rolf v. Blyth, Eastman Dillon & Co.*, 570 F.2d 38, 47 (2d Cir. 1978)). "An egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of . . . recklessness." *Id.* (quoting *Goldman v. McMahan, Brafman, Morgan & Co.*, 706 F. Supp. 256, 259 (S.D.N.Y. 1989)).

The Second Circuit has observed that recklessness is alleged plausibly where there are specific allegations regarding the "defendants' knowledge of facts or access to information contradicting their" alleged fraudulent statements. *Novak*, 216 F.3d at 308.

The Maxim Defendants have not alleged that Plaintiffs, at the time the projections were made, had knowledge of facts or access to information relating to the future financial performance of EPS's predecessor that contradicted the projections. So long as the projections were consistent with data reasonably available to Plaintiffs, and there is no particularized allegation that they were not, Plaintiffs "need[ed] not present an overly gloomy or cautious picture of current performance and future prospects." *Id.*

at 309; *accord Shields*, 25 F.3d at 1129-30 ("People in charge of an enterprise are not required to take a gloomy, fearful or defeatist view of the future; subject to what current data indicates, they can be expected to be confident about their stewardship and the prospects of the business that they manage.").

The Second Circuit has refused to allow plaintiffs to proceed with allegations based on "fraud by hindsight." *Novak*, 216 F.3d at 309. "Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them." *Id.* The Maxim Defendants have not alleged that the projections were contradicted by or inconsistent with information available to Plaintiffs at the time they were made. *See Shields*, 25 F.3d at 1129-30 (plaintiff failed to allege fraudulent intent with sufficient particularity where allegations did "not say . . . that the company's disclosures were inconsistent with current data.").

The Second Circuit also has found recklessness where the plaintiffs alleged "facts demonstrating that defendants failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud." *Novak*, 216 F.3d at 309. However, the Maxim Defendants have failed to allege with any particularity what figures were offered in the projections, or how they were false at the time they were made. *See Lundy*, 711 F.3d at 119 ("[T]he complaint must adequately specify the statements it claims were false or misleading, [and] give particulars as to the respect in which plaintiff contends the statements were fraudulent . . . ."). As a result, the Court cannot infer that the projections were so inflated that the Plaintiffs must have been aware of their falsity, or that the Plaintiffs could be said to have "ignored obvious signs of fraud," *Novak*, 216 F.3d at 309, "egregious[ly] refus[ed] to see the obvious, or to investigate the doubtful." *Chill*, 101 F.3d at 269.

For the foregoing reasons, the Maxim Defendants' allegations pertaining to the financial projections fail to state with sufficient particularity a plausible claim for fraud.

### ii.     Promise to Return Investment

Second, the Maxim Defendants allege that, at or around the time that S2K invested in EPS in late 2003, Plaintiff Tom Margarido[1] told Steven Maxim that he would "receive the return of his investment" before any of EPS's predecessor's other shareholders (which included Plaintiffs Tom Margarido, Jason Margarido, and Paul Taff) received any return on their investments.  ECF No. 63 ¶ 296.  This allegation fails to state a plausible and particularized fraud claim for two reasons.

First, the Maxim Defendants have failed to allege with particularity that the statement was false.  *See Sturm*, 2 A.3d at 872 (first element of a fraud claim is a false representation made as a statement of fact).  The Maxim Defendants do not expressly allege that any shareholders actually received returns before Mr. Maxim, which shareholders allegedly received such returns, or when they allegedly received such returns.  Instead, the Maxim Defendants simply allege that the "promise turned out to be false."  ECF No. 63 ¶ 296.  To state a fraud claim with particularity, "the complaint must . . . explain why the statements were fraudulent."  *Mills*, 12 F.3d at 1175.  Here, the Maxim Defendants have failed to allege with any particularity how the alleged statement "turned out to be false."  *See* ECF No. 63 ¶ 296.

Second, at most, the Maxim Defendants have alleged that Tom Margarido made a promise and breached that promise.  A simple breach does not amount to fraud.  *Sallies*

---

[1] The Maxim Defendants allege at paragraph 296 of the Amended Answer that "Plaintiffs" made this representation, ECF No. 63 ¶ 296, but allege at paragraph 339.b of the Amended Answer, *id.* ¶ 339.b, and at page 14 of their opposition memorandum, ECF No. 72 at 14, that Plaintiff Tom Margarido made this representation.  Drawing all reasonable inferences in the Maxim Defendants' favor with a view toward the requirement to attribute statements to specified speakers, the Court will assume that only Plaintiff Tom Margarido is alleged to have made this representation.

*v. Johnson*, 81 A. 974, 975 (Conn. 1911) ("The breach of an honest promise to perform can never support an action of fraud.")  However, "the promise to do a future act coupled with a present intention not to fulfill the promise will constitute a fraudulent promise." *Id.*  But the Maxim Defendants have not alleged facts giving rise to a strong inference that Tom Margarido had such a fraudulent intention when he allegedly made this representation to Mr. Maxim.

As to motive and opportunity, the Maxim Defendants allege that all of the alleged fraudulent statements "were made by the Plaintiffs for their own benefit."  ECF No. 63 ¶ 342.  This broad and conclusory allegation is not sufficiently particularized to give rise to a strong inference that Tom Margarido was possessed of a motive to enrich himself in some concrete and personal way by making this representation, especially given the fact that, despite S2K's shareholder access to EPS's books and records, the Maxim Defendants have not alleged in their Amended Answer that Tom Margarido actually received a return before Mr. Maxim.

As to strong circumstantial evidence of conscious misbehavior or recklessness, apart from the broad and conclusory allegations that Tom Margarido made this alleged misrepresentation "for [his] own benefit," *id.* ¶ 342, as part of a "scheme to deprive Maxim Entities of most of their investment," *id.* ¶ 348, in a "corrupt state of affairs," *id.* ¶ 349, the Maxim Defendants have not alleged any facts existing at the time of the alleged misrepresentation strongly evidencing Tom Margarido's intention to distribute returns to other shareholders before Mr. Maxim.  The Court finds no other allegations in the Amended Answer that would give rise to a strong inference of "highly unreasonable" conduct that represents "an extreme departure from the standards of reasonable care,"

*Novak*, 216 F.3d at 308, or that could provide the "ample factual basis" on which the Court must base an inference of scienter, *O'Brien*, 936 F.2d at 676.

### iii.    Capability of Developing Software

Third, the Maxim Defendants allege that, at or around the time that S2K invested in EPS in late 2003, Plaintiff Tom Margarido[2] assured Steven Maxim that EPS "possessed the capability of providing a computer software program that could satisfy the needs of Maxim Enterprises."  ECF No. 63 ¶¶ 295, 339.c.  The Maxim Defendants allege that EPS ultimately did not produce software that satisfied their needs.  *See id.* ¶¶ 302-04.

These allegations attempt to proceed on the prohibited theory of "fraud by hindsight."  *Stevelman v. Alias Research Inc.*, 174 F.3d 79, 85 (2d Cir. 1999).  The Maxim Defendants characterize Tom Margarido's alleged statement regarding EPS's ability to develop software as "over-optimistic."  ECF No. 63 ¶ 340.  "Management's optimism that is shown only after the fact to have been unwarranted does not, by itself, give rise to an inference of fraud."  *Stevelman*, 174 F.3d at 85.  "Cheerleading only becomes fraud if defendants had access to contrary facts," *Frazier v. VitalWorks, Inc.*, 341 F. Supp. 2d 142, 154 (D. Conn. 2004), and the Maxim Defendants have not alleged with any particularity that Tom Margarido knew or should have known of limitations on EPS's ability to develop software that would satisfy Maxim's needs sufficient to render his statement knowingly false.  More fundamentally, the Maxim Defendants have not

---

[2] Again, the Maxim Defendants allege at paragraph 295 of the Amended Answer, ECF No. 63 ¶ 295, that Plaintiffs made this representation, but allege at paragraph 339.c of the Amended Answer, *id.* ¶ 339.c, and at page 14 of their opposition memorandum, ECF No. 72 at 14, that Plaintiff Tom Margarido made this representation.  As above, the Court will assume that only Plaintiff Tom Margarido is alleged to have made this representation.

alleged plausibly that this statement was false when made.  A representation that one is capable of doing something is not false simply because the speaker later fails to execute.

### iv.    Threat of Insolvency

Fourth and finally, the Maxim Defendants allege that, in late 2003, Plaintiff Tom Margarido told Mr. Maxim that EPS "might go out of business without a significant cash contribution and, if it 'went down' because one of the Maxim Entities did not make such investment, Maxim Enterprises would not be able to locate another company that could deliver the necessary computer software program."  ECF No. 63 ¶ 287.  The Maxim Defendants allege that Tom Margarido knew that MEI had come to rely upon EPS's software and that MEI would suffer harm if that software was no longer serviced.  *Id.* ¶ 339.d.

This allegation fails to state a claim for fraud because the Maxim Defendants have not alleged that the statement was false.  *Sturm*, 2 A.3d at 872 (first element of a fraud claim is a false representation made as a statement of fact); *Mills*, 12 F.3d at 1175 ("the complaint must . . . explain why the statements were fraudulent.").  In short, they have not alleged that EPS would not go out of business without a cash infusion and therefore be unable to service the software.

For the foregoing reasons, the Amended Answer fails to state a plausible and particularized claim for fraud.  Count Three of the Amended Answer's Counterclaim is dismissed with prejudice.  *See Shields*, 25 F.3d at 1132 (district court did not abuse its discretion in dismissing fraud claim with prejudice where plaintiff had amended her complaint once before and did not request further leave to amend).

### b.      Count Six – CUTPA

The Maxim Defendants' original CUTPA counterclaim was grounded in two sets of allegations.  One set concerned alleged fraudulent misrepresentations.  ECF No. 22 ¶¶ 319-21.  The other set concerned alleged attempts to use buy-sell agreements to force minority shareholders to sell their shares at depressed prices.  *Id.* ¶¶ 322-324.  In the First Order, the Court dismissed the original CUTPA counterclaim and gave the Maxim Defendants leave to re-plead only on the basis of the fraud allegations, not the buy-sell agreements.  *See* ECF No. 59 at 20-21.  Nonetheless, the amended CUTPA counterclaim alleges both grounds again.  ECF No. 63 ¶¶ 375-83.  However, the Maxim Defendants have withdrawn the paragraphs pertaining to the buy-sell agreements.  ECF No. 123.

As to the fraud ground, the Maxim Defendants rely on the four alleged misrepresentations discussed above, and allege that those misrepresentations constituted "immoral, unethical, oppressive or unscrupulous" conduct in violation of CUTPA.  *See* ECF No. 63 ¶¶ 375-79, 384.  As it did in the First Order, ECF No. 59 at 20, the Court concludes that because the Maxim Defendants have failed to plead fraud with sufficient particularity, their fraud allegations cannot support a CUTPA claim.  *See Aviamax Aviation Ltd. v. Bombardier Aerospace Corp.*, 3:08–cv–1958 (CFD), 2010 WL 1882316, at *9 (D. Conn. May 10, 2010) ("When a plaintiff in federal court bases a CUTPA claim on fraud allegations, the plaintiff must satisfy the particularity requirement of Federal Rule of Civil Procedure 9(b)."); *Tatum v. Oberg*, 650 F. Supp. 2d 185, 195 (D. Conn. 2009) ("CUTPA claims brought in federal court only must satisfy Rule 9(b) if such claims are based on fraud allegations.").  Accordingly, Count Six of the Amended Answer's Counterclaim is dismissed with prejudice.

### c.      Count Seven – Rescission and Reformation

In the First Order, the Court dismissed the Maxim Defendants' counterclaim for reformation because they had not pled any mistake and because the alleged fraudulent misrepresentations on which the claim apparently was based were not alleged with sufficient particularity.  ECF No. 59 at 22.  The Court also dismissed the Maxim Defendants' claim for rescission because it was based on insufficiently particularized fraud allegations.  *Id.* at 23.  The amended counterclaims fail for the same reasons.

"A cause of action for reformation of contract rests upon the equitable theory that the instrument sought to be reformed does not conform to the real contract agreed upon and does not express the intention of the parties and that it was executed as the result of mutual mistake, or mistake of one party coupled with actual or constructive fraud, or inequitable conduct on the part of the other."  *Trenwick America Reinsurance Corp. v. W.R. Berkley Corp.*, 54 A.3d 209, 216 (Conn. App. Ct. 2012) (quoting *Greenwich Contracting Co. v. Bonwit Constr. Co.*, 239 A.2d 519, 521 (Conn. 1968)).  Thus, "[r]eformation is appropriate in cases of mutual mistake . . . [and] when the instrument does not express the true intent of the parties owing to the mistake of one party coupled with fraud, actual or constructive, or inequitable conduct on the part of the other."  *Harlach v. Metro. Prop. & Liab. Ins. Co.*, 602 A.2d 1007, 1009-10 (Conn. 1992).  "Mistake means a state of mind that is not in accord with the facts."  *Milford Yacht Realty Co. v. Milford Yacht Club*, 72 A.2d 482, 484 (Conn. 1950).

The amended counterclaim for reformation fails because the Maxim Defendants have not alleged plausibly a mutual mistake or unilateral mistake coupled with fraud or inequitable conduct.

First, they allege that the "Maxim Entities' lack of knowledge of facts . . . rendered the purchase [of stock] inequitable," but do not allege the material facts of which they allegedly were unaware.  ECF No. 63 ¶ 395.

Second, they allege that a non-competition agreement by and between EPS and Steven Maxim contains provisions that are "one-sided," ECF No. 63 ¶ 396, but allege no facts from which the Court could plausibly infer that the non-competition agreement, even if "one-sided," was executed as the result of mutual mistake or unilateral mistake coupled with inequitable conduct.  Mr. Maxim signed, and presumably reviewed, the non-competition agreement.  ECF No. 1-13 at 4.  *See* 17A Am. Jur. 2d Contracts § 209 (2015) ("One who accepts a written contract is conclusively presumed to know its contents and to assent to them.  A party signing a written contract has a duty to inform him or herself of its contents before executing it.  Thus, absent fraud or mistake, ignorance of a written contract's contents will not negate its effect or affect the liability of one who signs it or who accepts it otherwise than by signing it.") (internal citations omitted).  The Maxim Defendants essentially allege that they entered into a bad contract, but not that the terms of that contract were at variance with the parties' intent.  "Reformation is not granted for the purpose of alleviating a hard or oppressive bargain, but rather to restate the intended terms of an agreement when the writing that memorializes that agreement is at variance with the intent of both parties."  *Lopinto v. Haines*, 185 Conn. 527, 532, 441 A.2d 151 (1981).

Third and finally, they allege that Tom Margarido and Steven Maxim agreed that the Maxim Defendants could develop software and use it for their business without paying Plaintiffs, and that because the software that the Maxim Defendants ultimately developed is not derivative of Plaintiffs' software "there is no reasonable rationale to

support any requirement contained within the 2008 Non-compete Agreement (Doc. #1-13) to transfer or disclose any code, design, architecture or other proprietary information" to Plaintiffs.  ECF No. 63 ¶¶ 397-98.

These allegations do not support an inference that the non-competition agreement did "not express the intention of the parties and . . . was executed as a result of" mistake.  *Trenwick*, 54 A.3d at 216.  Indeed, the agreement's terms comport with the Maxim Defendants' understanding.  The agreement prohibits Steven Maxim from using EPS's "Confidential Information" for his own benefit.  ECF No. 1-13 ¶ 2.B.  Excluded from "Confidential Information" is information that is available to the public, was previously known to Maxim, or was independently developed by Maxim without the aid, application, or use of EPS's "Confidential Information."  ECF No. 1-13 ¶ 1.B.  It may bear out in this lawsuit that the Maxim Defendants' software was developed without the use of EPS's "Confidential Information" and that the Maxim Defendants need not turn over any code or other information under the non-competition agreement.  Indeed, that is one of the Maxim Defendants' defenses in this action.  *See, e.g.*, ECF No. 63 ¶ 109.  But that potential outcome does not suggest any mistake with respect to the non-competition agreement.  Maxim executed the non-competition agreement, and there is no plausible allegation that either party's intent was not reflected in its terms.

For the foregoing reasons, the Maxim Defendants have failed to state a plausible claim for reformation.  *See, e.g.*, *Harlach v. Metropolitan Prop. and Liabl. Ins. Co.*, 602 A.2d 1007, 1010 (Conn. 1992) (reversing reformation where there was no proof or claim of mistake, fraud, or inequitable conduct coupled with mistake); *Richards v. Richards*, 829 A.2d 60, 65 n.7 (2003) (plaintiff not entitled to reformation because "[t]here was no finding of mistake . . . .").

"[R]escission based on a mistaken understanding of the terms of an agreement is available only where the mistake is mutual, or where one party's mistake has been caused by the other party's fraud." *Gebbie v. Cadle Co.*, 714 A.2d 678, 684 (Conn. App. Ct. 1998). Because the Maxim Defendants have not plausibly alleged fraud or mistake, their rescission counterclaim fails as well.

For the foregoing reasons, Count Seven of the Amended Answer's Counterclaim is dismissed with prejudice.

### d.    Count Eight

There is no Count Eight in the Amended Answer. *See* ECF No. 63 at 91-96.

### 3.    Conclusion

For the foregoing reasons, Plaintiffs' motion to dismiss the Maxim Defendants' amended counterclaims (ECF No. 66) is GRANTED.

## C.    Motion for Summary Judgment as to Amended Counterclaims [ECF No. 134]

Plaintiffs moved for summary judgment as to the Maxim Defendants' amended counterclaims. Because those counterclaims have been dismissed, this motion (ECF No. 134) is FOUND AS MOOT.


SO ORDERED at Bridgeport, Connecticut this twenty-first day of September, 2015.


 /s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE