UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EAST POINT SYSTEMS, INC., THOMAS MARGARIDO, JASON MARGARIDO, AND PAUL TAFF | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| vs. | ) ) ) | CIVIL ACTION NO. 3:13-cv-215-VAB |
| STEVEN MAXIM, S2K, INC., MAXIM ENTERPRISES, INC., MAXIM FIELD SERVICE SUPPLY, INC., EDWIN PAJEMOLA, AND CLEVELAND FIELD SYSTEMS, LLC | ) ) ) ) ) ) | |
| Defendants. | ) | NOVEMBER 20, 2015 |

## JOINT TRIAL MEMORANDUM

Plaintiffs East Point Systems, Inc., Thomas Margarido, Jason Margarido and

Paul Taff, along with Defendants Steven Maxim, S2K, Inc., Maxim Enterprises, Inc. and

Maxim Field Service Supply, Inc. ("Maxim Defendants") respectfully submit their Joint

Trial Memorandum as follows:

1. **Trial Counsel**

    A. Plaintiffs

        Bruce H. Raymond of
        Raymond Law Group LLC
        90 National Drive, Suite 3
        Glastonbury, CT 06033
        P: 860-633-0580

    B. Defendants Steven Maxim, S2K, Inc., Maxim Enterprises, Inc. and Maxim
       Field Service Supply, Inc.

        Brian O'Donnell and
        Mary Mintel Miller of
        Reid and Riege, P.C.

1

One Financial Plaza, 21st Floor
Hartford, CT 06103
P: 860-240-1012

2. **Jurisdiction**

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331 and

1338 as the action arises under the United States copyright laws.  Further, the

amount in dispute exceeds $75,000.00.  Finally, the Court has jurisdiction over

this matter pursuant to 28 U.S.C. § 1332 as there is complete diversity of

citizenship.

3. The above matter is scheduled for a **Court** trial.

4. **Nature of the Case**

### Claim 1: Breach of Contract (Shareholder Agreement)

Plaintiffs formed an agreement with the defendants through its Shareholder Agreement,

precluding the defendants from sharing EPS's trade secrets disclosed to them.  To the present

date the plaintiffs have fulfilled their obligations under the Shareholder Agreement.  However, by

copying EPS's Field-Comm.net architecture and design for commercial gain, the defendants

violated the shareholder agreement.  As a result, the plaintiffs suffered damages as a proximate

result of customers using defendants' derivative software products instead of EPS's Field-

Comm.net system.  Such lost revenue is a proximate result of the breach by the defendants of

the Shareholder Agreement.  As a result, the plaintiffs seek Compensatory Damages; Statutory

Damages; Punitive Damages; Attorneys' Fees and Costs; and Interest.

### Claim 2: Breach of Contract (Confidentiality and Non-Competition Agreement)

Plaintiffs entered into a binding Confidentiality and Non-Competition Agreement on July 26,

2014. To the present date the plaintiffs have fulfilled their obligations under this agreement.

2

However, by copying EPS's Field-Comm.net architecture and design for commercial gain, the defendants violated the Confidentiality and Non-Competition Agreement of July 26, 2014.  As a result the plaintiffs have suffered damages as a proximate result of customers using defendants' derivative software products instead of EPS's Field-Comm.net system.  Such lost revenue is a proximate result of the breach by the defendants of the Confidentiality and Non-Competition Agreement of July 26, 2014. As a result, the plaintiffs seek Compensatory Damages; Statutory Damages; Punitive Damages; Attorneys' Fees and Costs; and Interest.

### Claim 3: Breach of Contract (Source Code Access and Indemnity Agreement)

Plaintiffs entered into a Software Source Code Access and Indemnity Agreement, executed by defendants, which was binding on Maxim Defendants.  To the present date the plaintiffs have fulfilled their obligations under the Software Source Code Access and Indemnity Agreement.  However, by copying EPS's Field-Comm.net architecture and design for commercial gain, the defendants violated the Source Code Access and Indemnity Agreement.  As a result, the plaintiffs have suffered damages as a proximate result of customers, including but not limited to, Berghorst Enterprises, and A & M Recovery Services using defendants' derivative software products instead of EPS's Field-Comm.net system.  Such lost revenue is a proximate result of the breach by the defendants of the Shareholder Agreement. As a result, the plaintiffs seek Compensatory Damages; Statutory Damages; Punitive Damages; Attorneys' Fees and Costs; and Interest.

### Claim 4: Breach of statutory fiduciary duties under Conn. Gen. Stat. §33-756

During the relevant times, Maxim acted as a member of EPS's Board of Directors.  Pursuant to Conn. Gen. Stat. §33-756, Maxim had a duty to the plaintiffs to act in good faith, with ordinarily prudent care, in a manner believed to be in the best interest of the plaintiffs.  By creating or suborning the derivative version of EPS's software and subsequently marketing a

3

competing software package to third parties Maxim breached its duty to the plaintiffs.  Such breach resulted in monetary damages to the plaintiffs. As a result, the plaintiffs seek Compensatory Damages; Statutory Damages; Punitive Damages; Attorneys' Fees and Costs; and Interest.

### Claim 5: Breach of common law fiduciary duties

During the relevant times, Maxim acted as a member of EPS's Board of Directors.  Maxim had a duty of loyalty to the plaintiffs to act in good faith, with ordinarily prudent care, in a manner believed to be in the best interest of the plaintiffs.  By creating or suborning the derivative version of EPS's software and subsequently marketing a competing software package to third parties, Maxim breached its duty to the plaintiffs.  Such breach resulted in monetary damages to the plaintiffs. As a result, the plaintiffs seek Compensatory Damages; Statutory Damages; Punitive Damages; Attorneys' Fees and Costs; and Interest.

### Claim 6: Breach of contract – specific performance of cross-purchase agreement

The Cross Purchase Agreement executed by Maxim is a binding contract between the plaintiffs and the defendant Maxim.  Pursuant to Section 4B of the agreement, Maxim was required to sell its shares of EPS to Plaintiff's Thomas Margarido, Jason Margarido, and Paul Taff.  Plaintiffs tendered payment for the shares at the price, proposed by Maxim's expert appraiser, and Maxim accepted.  Such refusal and failure constitutes a breach of the Cross Purchase Agreement.  Due to the unique and special nature of the shares, monetary damages are an inappropriate remedy for breach of the Cross Purchase Agreement.  Therefore, the plaintiffs seek specific performance of the aforementioned Cross Purchase Agreement and attendant costs.

**Claim 7: Tortious Interference with business expectancy**

EPS maintained numerous business relationships with clients and prospects, including, but not limited to, Berghorst Enterprises, A & M Recovery Services, and their contractors and subcontractors. During and after Defendants obtained access to EPS's program and source code, Defendants interfered with business relationships of EPS and potential future contracts and business opportunities of EPS with Berghorst Enterprises, A & M Recovery Services, and their contractors and subcontractors. Defendants intentionally interfered with the business relationships of EPS while knowing of the relationships. Upon information and belief, Defendants misrepresented to the said clients and prospects ownership of a competing software package to EPS's software. At all relevant times, such competing software was actually a derivative and infringing work to which Defendants had no rights. Based upon such misrepresentations, the said clients and prospects availed themselves of Defendants' software in lieu of EPS's product.  Defendants had no justification to interfere with the business relationships of EPS, and did so with an improper motive or purpose and by improper means. As a direct and proximate result of the interference, EPS has sustained actual loss and damages.  As a result, the plaintiffs seek Compensatory Damages; Statutory Damages; Punitive Damages; Attorneys' Fees and Costs; and Interest.

**Claim 8: Violation of Connecticut Uniform Trade Secrets Act – Conn. Gen. Stat. 35-50 et seq.**

Plaintiffs confidentially developed EPS's program and source code through substantial business efforts over the years. Plaintiffs have invested significant money, time, and resources in developing and maintaining confidential information. Such program and source code generates independent economic value from not being known to others who could obtain value from its disclosure. If it were known to others, its methods could be easily duplicated and EPS would be unable to sell the use of the compiled program to its clients. Plaintiffs have taken reasonable measures in the circumstances to protect such confidential and proprietary

5

information. The information and data was not generally known and available to the public or anyone outside those permitted access by Plaintiffs.  Defendants discovered or obtained such information and data through Maxim and Pajemola, each of whom had a duty to keep such information confidential and or to limit its use for benefit of Plaintiffs.  Defendants used Plaintiffs' confidential and proprietary trade secrets to compete with EPS, including usurping opportunities and soliciting clients and prospects of EPS. Such use is a violation of the provisions of the Connecticut Uniform Trade Secrets Act, Conn. Gen. Stat. §§ 35-50, et seq.  Plaintiffs have suffered irreparable harm and money damages as a direct and proximate result of Defendants' misappropriation of trade secrets. In consequence of such harm, Plaintiffs are entitled to an injunction to prevent the continued improper use of its trade secrets, per Conn.Gen.Stat. § 35-52. Plaintiffs are further entitled to recover the monetary damages incurred in consequence of the Defendants' misappropriation of its trade secrets, including actual loss and unjust enrichment caused by misappropriation that is not taken into account in computer damages for actual loss per Conn.Gen.Stat. § 35-53(a).  Plaintiffs may further recover an award of punitive damages of twice the monetary damages awarded, as well as reasonable attorneys' fees, per Conn.Gen.Stat. § 35-53(b).

**Claim 9: Action for computer-related offenses**

Plaintiffs developed their confidential program and source code through substantial business efforts over the years.  Plaintiffs have invested significant money, time, and resources in developing and maintaining this confidential information. Such program and source code generates independent economic value from not being known to others who could obtain value from its disclosure. If it were known to others, its methods could be easily duplicated and EPS would be unable to sell the use of the compiled program to its clients. Plaintiffs have taken reasonable measures in the circumstances to protect its confidential and proprietary information. The information and data was not generally known and available to the public or

6

anyone outside those permitted access by Plaintiffs.  Defendants discovered or obtained such information and data through Maxim and Pajemola, each of whom had a duty to keep such information confidential and or to limit its use for benefit of Plaintiffs.  Defendants, through Maxim's and Pajemola's access to EPS's computer system, have misused computer system information by intentionally making an unauthorized use, disclosure and copy of the data in EPS's computer system, within the meaning of Conn.Gen.Stat. § 53a-251(e)(1). Defendants, through Maxim's and Pajemola's access to EPS's computer system, have misused computer system information by knowingly receiving and retaining EPS's data, within the meaning of Conn.Gen.Stat. § 53a-251(e)(3). Defendants, through Maxim's and Pajemola's access to EPS's computer system, have misused computer system information by knowingly using and disclosing EPS's data, within the meaning of Conn.Gen.Stat. § 53a-251(e)(4). Such conduct by Defendants was willful and malicious. Plaintiffs have suffered irreparable harm and money damages as a direct and proximate result of Defendants' misuse of its computer system information. In consequence of such harm, Plaintiffs are entitled to an injunction to prevent the continued improper use of its information per Conn.Gen.Stat. § 52-570b(a) & (b). Plaintiffs are further entitled to recover the monetary damages incurred in consequence of the Defendants' misuse of its computer system information, including restitution, actual damages, and damages for unjust enrichment not taken into account in computing damages for actual loss, per Conn.Gen.Stat. § 52-570b(c). Due to the willful and malicious conduct of Defendants, Plaintiffs are entitled to treble damages per Conn.Gen.Stat. § 52-570b(c). Plaintiffs are entitled to recover reasonable costs and attorneys' fees, per Conn.Gen.Stat. § 52-570b(e)

### Claim 10: Connecticut Unfair Trade Practices Act

Plaintiffs developed their confidential program and source code through substantial business efforts over the years. Plaintiffs have invested significant money, time, and resources in developing and maintaining this confidential information. Such program and source code

generates independent economic value from not being known to others who could obtain value from its disclosure. If it were known to others, its methods could be easily duplicated and EPS would be unable to sell the use of the compiled program to its clients. Plaintiffs have taken reasonable measures in the circumstances to protect its confidential and proprietary information. The information and data was not generally known and available to the public or anyone outside those permitted access by Plaintiffs.  Defendants discovered or obtained such information and data through Maxim and Pajemola, each of whom had a duty to keep such information confidential and or to limit its use for benefit of Plaintiffs.  Maxim, individually and as a duly authorized officer of S2K, had a duty not to directly compete with EPS based on the status of being a member of EPS's board of directors. The actions of Maxim, individually and as a duly authorized officer of S2K, MEI,  MFS, & CFS were carried out in the conduct of business(es) in the field of field services for the mortgage industry intended to and do operate in direct competition with EPS.

The actions of Pajemola, individually and as a duly authorized officer of CFS, and employee of Maxim and/or S2K, were carried out in the conduct of his separate business(es) in the field of field services for the mortgage industry intended to and do operate in direct competition with EPS. Such actions by Defendants constitute unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade and commerce. Such actions by Defendants violated the Conn.Gen.Stat. § 42-110b(a). The actions of Defendants were done with a reckless indifference to the rights of Plaintiffs or were an intentional and wanton violation of those rights. The actions of Defendants caused and will continue to cause Plaintiffs to suffer an ascertainable loss of money and have also negatively affected EPS's proprietary rights and interests in its products, name and goodwill. In consequence of such harm, Plaintiffs are entitled to an injunction to prevent the continued unfair trade practices per Conn.Gen.Stat. § 42-110g(a). Plaintiffs are further entitled to recover the monetary damages it incurred in consequence of the Defendants' unfair trade practices, per Conn.Gen.Stat. § 42-110g(a). Plaintiffs are entitled to

recover punitive damages, per Conn.Gen.Stat. § 42-110g(a). Plaintiffs are entitled to recover reasonable costs and attorneys' fees, per Conn.Gen.Stat. § 42-110g(d).

### Claim 11: Copyright Infringement

EPS is the author of the Field-Comm.net software (hereinafter "the work"). EPS holds a registered copyright in the Field-Comm.net software. EPS complied in all respects with the requirements of the Copyright Act and received from the Register of Copyrights a Certificate of Registration bearing the number(s): TX 7-603-779 EPS's copyright in such work is valid. EPS is the current owner of the copyright in such workDefendants have created derivative works using a substantial portion of the work without authorization or permission from EPS. Defendants have used the work for commercial gain without the consent of EPS.

Such creation and use constitutes willful infringement of EPS's copyright in the work within the meaning of 17 U.S.C. § 504(c)(2). Such creation and use does not constitute fair use of the work where the purpose is of a commercial nature. EPS has suffered damages as a result of Defendants' actions.   Each act of infringement constitutes a separate base for statutory damages under 17 U.S.C. § 504. EPS seeks to recover its damages and the profits earned by Defendants arising from the copyright infringement. EPS seeks to permanently enjoin Defendants from infringing EPS's copyright in the work and that the work, including all derivative works, be impounded from Defendants.

### Claim 12 – Constructive Trust for Unjust Enrichment

Upon information and belief Defendants are in possession of property, revenue, and proceeds derived from their access to EPS's program and source code of which EPS is the beneficial owner. EPS provided access to the program to Defendants with the intent to benefit EPS's business and customers. Instead of using the property to benefit EPS's business and customers, Defendants retained the property and provided wrongful access to it to the other Defendants. Defendants have wrongfully failed to use the property to the benefit of Plaintiff's

customers and to return the property to its rightful owner.  By virtue of their wrongful acts, Defendants should not in equity and good conscience have obtained nor continue to hold and enjoy said property, revenue or proceeds. One or more of the Defendants have been unjustly enriched. By virtue of their wrongful acts, Defendants hold title to the said property in constructive trust for EPS.

5. **Stipulation of Fact and Law**

   Maxim Defendants will stipulate to the admissibility of many of Plaintiffs' exhibits, specifically Plaintiffs' Exhibits 1-7, 13-15, 17-18 and 20, as noted below.

6. **Plaintiffs' Contentions**

As to the plaintiff's contentions as to the causes of action alleged in the plaintiffs' verified complaint, the plaintiffs would direct the Court's attention to the above-numbered section 4 entitled "nature of the case."

The plaintiffs additionally contend, with relation to the affirmative defenses, raised by the defendants, in their June 27, 2013 answer to the plaintiff's verified complaint as follows:

Failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6):  As illustrated in the plaintiffs verified complaint and the "nature of the case" set forth in section 4 of this document, the plaintiffs have stated ample grounds on which this Court may grant relief.

Waiver and Estoppel: Defendants do not, and cannot point to any actions or failures to act by the plaintiffs, which would estop or waive any of the claims raised by the plaintiffs in their verified complaint.

Failure to follow procedures required under the Connecticut Unfair Trade Practices Act ("CUTPA") – Conn. Gen. Stat. §41-110a, *et seq.*: Defendants do not identify any specific procedures that the plaintiffs have failed to follow under CUTPA, nor have the plaintiffs actually failed to follow any procedures under CUTPA that would preclude them from recovering any damages or other remedial relief under it.

Lack of Subject-Matter Jurisdiction:  Contrary to the assertions of the defendants in their answer, this Court has Subject-Matter Jurisdiction pursuant  to 28 U.S.C. §1332(a)(1) because the amount in controversy exceeds $75,000 and the suit is between parties of different states. Further, this case is brought pursuant to United States Copyright law under 28 U.S.C. §1331 and §1338.  This Court may also exercise supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. §1367 as they are related to the other claims within the Court's original jurisdiction that they form part or the same case or controversy.

Lack of Personal Jurisdiction: This Court has personal jurisdiction because the defendants have made such "minimum contacts" with the State of Connecticut as to invoke the jurisdiction of the District Court of Connecticut.  All Maxim defendants are subject to personal jurisdiction of this court pursuant to Conn. Gen. Stat. §52-59b(1),(2),(3),&(5).

Improper Venue:  The venue is proper for the present action pursuant to  28 U.S.C. 1391(b)(2) because a substantial part of the events or omissions giving rise to the claim occurred and a substantial part of the property that is a subject of the action is situated in the District of Connecticut.  Further, defendants have consented to the jurisdiction of

this Court as well as the venue pursuant to the agreement to dismiss arbitration, dated July 25, 2012.

<u>Failure to Join Necessary Party</u>:

Plaintiff has joined all necessary parties to the present litigation.

<u>Statute of Limitations or Laches</u>

No statute of limitation nor laches preclude the any part of the plaintiffs' current action against the defendants.  Further, the agreement to dismiss arbitration, referenced in Section 12.A.1 of this document, waived the defendants' to assert such defenses as an express condition of the contract.

<u>Preclusion Due to Anti-Competitive restraint of Trade</u>

The relief that the plaintiffs seek does not constitute an anti-competitive restraint of trade

<u>Information taken by Maxim Defendants Readily Known</u>

The plaintiffs contend that the information taken by the Maxim defendants was not readily known within the relevant industry, and could not be developed using existing technology or software.

<u>Defects of Contract</u>

None of the clauses of any of the contracts invoked by the plaintiffs fail for any reason under any applicable law of the State of Connecticut.


7. **Maxim Defendants' Contentions**

Maxim Defendants hereby incorporate their findings of fact and conclusions of law filed contemporaneously herewith. Maxim Defendants do not here address

Plaintiffs' contentions or Plaintiffs' description of the nature of the case, as presented above. The reason is that Plaintiffs' counsel sent this material to Maxim Defendants' counsel at 6:46 p.m. on November 20, 2015 – less than six hours before the Court's amended filing deadline. This occurred despite repeated requests by counsel, by telephone and email, that Plaintiffs' counsel provide a complete draft of their portions of this joint pre-trial memorandum. Maxim Defendants should not be required to respond in a matter of hours. Maxim Defendants request permission to make a supplemental filing to the extent that one is necessary.

8. **Legal Issues**

Please see Plaintiffs' and Maxim Defendants' conclusions of law filed contemporaneously herewith.

9. **Voir Dire Question**

Not applicable.

10. **List of Witnesses**

A.  Plaintiffs' Witness List

1.  **Thomas Margarido**, East Point Systems, Inc. 290 Roberts Street, Suite 205, East Hartford, CT 06108.  Mr. Margarido is expected to testify consistently with his deposition testimony regarding his dealings with the defendants and the resulted harm caused to East Point Systems, Inc. as a result.

2.  **Jason Margarido** 13450 NE 148th St, Woodinville, WA 98072. Mr. Margarido is expected to testify consistently with is deposition testimony

regarding the work he did at East Point Systems, Inc. and the interactions he had with the defendants.

3. **Paul Taff**, East Point Systems, Inc. 290 Roberts Street, Suite 205, East Hartford, CT 06108.  Mr. Taff is expected to testify consistently with his deposition testimony regarding the financial aspects of East Point Systems, Inc. and the interactions he had with the defendants.

4. **John P. Morgan** 5 Irving Terrace, Cambridge, MA 02138.  Mr. Morgan, along with Dr. Greenspun, created a report which compares the databases provided by East Point Systems, Inc. and the Defendants to determine whether or not they contain common elements.  Mr. Morgan is expected to testify based on the findings in his report.

5. **Dr. Philip Greenspun** East Coast Aero Club 200 Hanscom Drive, Suite 111, Bedford, MA 01730.  Dr. Greenspun, along with Mr. Morgan, created a report which compares the databases provided by East Point Systems, Inc. and the Defendants to determine whether or not they contain common elements.  Dr. Greenspun is expected to testify based on the findings in his report.

6. **Philip Nemphos,** CPA, CVA, Montovani, Murray, Nemphos & Tierinni, LLC 160 Chapel Road, Suite 301, Manchester, CT 06042.  Mr. Nemphos drafted a valuation report that was attached to Plaintiff's Verified Complaint which set forth the then-value of the shares of East Point Systems, Inc.  Mr. Nemphos is expected to testify based on his findings in this report.

7. **Kevin Flaherty**, CPA, Matson, Driscoll & D'Amico LLP 10 High Street, Suite 1000 Boston, MA 02110.  Mr. Flaherty has reviewed the Plaintiffs' records to determine their economic losses as a result of the defendants' actions.  Mr. Flaherty is expected to testify based on his findings.

8. **John Muller,** Marketing on Demand, 720 Mountain Road, West Hartford, CT 06117.  Mr. Muller is expected to testify regarding the call that he participated in to view Mr. Maxim and Mr. Pajemola's software.

9. **Jennifer Muller,** Marketing on Demand, 720 Mountain Road, West Hartford, CT 06117.  Ms. Muller is expected to testify regarding the call that she participated in to view Mr. Maxim and Mr. Pajemola's software.

10. **Fred Johanns III,** 69 Old Farm Road, South Windsor, CT 06074. Mr. Johanns is expected to testify regarding his work while employed at East Point Systems, Inc. as a software developer. Specifically Mr. Johanns is expected to testify about his interactions with Steve Maxim and Edwin Pajemola.

B. Maxim Defendants' Witness List

1. **Steven Maxim**, c/o Mary Mintel Miller, Reid and Riege, LLC, One Financial Plaza, Hartford, CT 06103. Mr. Maxim is expected to testify consistent with his deposition and the Maxim Defendants' findings of facts, attached hereto.

2. **Greg Kelley**, Vestige Ltd, 23 Public Square, Ste. 250, Medina, OH 44256. Mr. Kelley created a report that compares the databases, source codes and user interfaces of Plaintiffs' Field-Comm.net computer system to

Maxim Defendants' Field Navigator computer system. Mr. Kelley is expected to testify based on the findings in his report.

11. **Exhibits**

A. Plaintiffs' Exhibit List

1. Agreement to Dismiss Arbitration

2. East Point Systems, Inc. Confidentiality and Non-Competition Agreement signed on July 26, 2004 by S2K, Inc. (Maxim Exhibit 4)

3. East Point Systems, Inc. Confidentiality and Non-Competition Agreement signed on July 26, 2004 by Mr. Maxim (Maxim Exhibit 5)

4. East Point Systems, Inc. Cross Purchase Agreement signed by S2K, Inc. (Maxim Exhibit 6)

5. Software Source Code Access and Indemnity Agreement signed by Steve Maxim (Maxim Exhibit 3)

6. Software Source Code Access and Indemnity Agreement signed by Edwin Pajemola (Pajemola Exhibit 2)

7. Certificate of Copyright Registration for Maxim Build

8. Affidavit of John and Jennifer Muller

9. Video and Audio recording of Pajemola and Maxim Sales Pitch

10. Montovani, Murry, Nemphos & Tierinni, LLC Business Valuation Report for East Point Systems, Inc. as of April 30, 2010 (Maxim Exhibit 7)

11. Meyers, Harrison & Pia Valuation Report of 606 Common Shares in East Point Systems, Inc. as of July 11, 2011 (Maxim Exhibit 8)

12. Email from Attorney Michael Kopsick to Attorneys McNamara, Freeman and O'Donnell regarding valuation figure (Maxim Exhibit 9)

13. East Point Systems, Inc. Shareholder Agreement signed by S2K (Maxim Exhibit 10)

14. East Point Systems, Inc. Confidentiality and Non-Competition Agreement signed by Steve Maxim and Maxim Enterprises, Inc. (Maxim Exhibit 11)

15. Software License Agreement between Cleveland Field Systems, LLC and Berghorst Enterprises (Maxim Exhibit 12)

16. Outline of Issues for Maxim Enterprises (Maxim Exhibit 13)

17. Employment Agreement between Maxim Field Service Supply, Inc. and Edwin Pajemola (Pajemola Exhibit 1)

18. A&M Recovery Services, Inc. Vendor QuickReport (Strickland Exhibit 4)

19. Damages Summary (demonstrative)

20. Certificate of Copyright Registration for Edwin Pajemola's Computer File

B. Defendants' Exhibit List

Defendants have no additional exhibits to add to the above list.

12. **Deposition Testimony**

A. Plaintiffs' Deposition Testimony List

1. Heather Berghorst, Plaintiff designates entirety of deposition transcript, while reserving the right to omit certain portions.

2. Ira Andrew Strickland, Plaintiff designates entirety of deposition transcript, while reserving the right to omit certain portions.

3.  Edwin Pajemola (designation and cross-designation attached)[1]

B.  Maxim Defendants' Deposition Testimony List

Maxim Defendants do not wish to designate any additional depositions to those listed above, but will be offering designations in those three depositions, as explained in more detail in their motion <u>in limine</u> filed contemporaneously herewith.

13. **Request for Jury Instructions.**

Not applicable.

14. **Anticipated Evidentiary Problems.**

Maxim Defendants have filed four motions <u>in limine</u> related to: (a) the Affidavit of John and Jennifer Muller, (b) the Outline of Issues for Maxim Enterprises, (c) Kevin Flaherty, and (d) Plaintiffs' blanket designations of the depositions and Muller audio and video recordings.

15. **Proposed Findings and Conclusions.**

Plaintiffs and Maxim Defendants will separately file their proposed findings of fact and conclusions of law contemporaneously herewith.

16. **Trial Time.**

Counsel estimate that the trial will last for five days.

17. **Courtroom Technology**

---

[1]  After writing this text, Plaintiffs' counsel elected <u>all</u> portions of "the depos" by email, and subsequently agreed to the Pajemola designation not being attached. Defendants will be objecting in a contemporaneous filing to this and all of Plaintiffs' blanket designations.

Plaintiffs reserve the right to use a computer generated video display with audio

for exhibits and summary and will be submitting the Request for Courtroom

Technology Form no later than November 23.

18. **Further Proceedings.**

Not applicable.

19. **Election for Trial by Magistrate.**

The parties have not agreed to have the case tried by a United States

Magistrate.


**MAXIM DEFENDANTS**

By :  /s/ Brian O'Donnell
    Brian O'Donnell
    Federal Bar No. ct16041
    Mary Mintel Miller
    Federal Bar No. ct28994
    Reid and Riege, P.C.
    One Financial Plaza
    Hartford, CT  06103
    P: 860-278-1150
    F: 860-240-1002
    bodonnell@rrlawpc.com
    mmiller@rrlawpc.com

**PLAINTIFFS**

By: /s/ Bruce H. Raymond
    Bruce H. Raymond
    Federal Bar No. ct04981
    Raymond Law Group LLC
    90 National Drive, Suite 3
    Glastonbury, CT 06033
    P: 860-633-0580
    F: 860-633-0438
    raymond@raymondlawgroup.com

## CERTIFICATE OF SERVICE

I hereby certify that on this date a copy of foregoing pleading was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

And by MAIL TO

Edwin Pajemola
4223 Morely Drive
Reminderville, OH 44202

Cleveland Field Systems, LLC
4223 Morely Drive
Reminderville, OH 44202

Date: November 20, 2015                          /s/ Mary Mintel Miller
                                                 Mary Mintel Miller

20