**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| EAST POINT SYSTEMS, INC., | : | |
| THOMAS MARGARIDO, JASON | : | |
| MARGARIDO, AND PAUL TAFF, | : | |
| | : | |
|    Plaintiffs, | : | CIVIL ACTION NO.: |
| | : | 3:13-cv-00215 (VAB) |
| v. | : | |
| | : | |
| STEVEN MAXIM, S2K, INC., MAXIM | : | |
| ENTERPRISES, INC., MAXIM FIELD | : | |
| SERVICE SUPPLY, INC., EDWIN | : | |
| PAJEMOLA, AND CLEVELAND FIELD | : | DECEMBER 4, 2015 |
| SYSTEMS, LLC, | : | |
| | : | |
|    Defendants. | : | |

**RULING ON MOTIONS IN LIMINE**

**I.      INTRODUCTION**

This matter is set for a bench trial in three days.  Defendants Steven Maxim, S2k, Inc.,

Maxim Enterprises, Inc., and Maxim Field Service Supply, Inc. (collectively, the "Maxim

Defendants") have filed four motions *in limine*.

**II.      STANDARD OF REVIEW**

The purpose of a motion in limine is to allow the trial court to rule in advance of trial on

the admissibility and relevance of certain forecasted evidence.  *See Luce v. United States*, 469

U.S. 38, 40 n.2 (1984); *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996).  "Evidence should

be excluded on a motion *in limine* only when the evidence is clearly inadmissible on all potential

grounds."  *Levinson v. Westport Nat'l Bank*, No. 3:09-CV-1955 (VLB), 2013 WL 3280013, at *3

(D. Conn. June 27, 2013) (quoting *Highland Capital Mgmt., L.P. v. Schneider*, 379 F. Supp. 2d

461, 467 (S.D.N.Y. 2005)).  A court considering a motion *in limine* may reserve judgment until

1

trial, so that the motion is placed in the appropriate factual context.  *See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 287 (S.D.N.Y. 1996).

## III.   DISCUSSION

### A.   Motion to Preclude Recordings and Depositions (ECF No. 169)

Maxim Defendants move to preclude (1) video and audio recordings of a two-and-one-half-hour telephone call among John Muller, Jennifer Muller, and certain defendants, and (2) transcripts of the depositions of Edwin Pajemola, Ira Andrew Strickland, and Heather Berghorst. The motion is GRANTED IN PART AND DENIED IN PART.

The recordings contain unsworn, out-of-court statements.  To the extent that such statements are offered to prove the truth of the matters asserted therein, they are hearsay.  Fed. R. Evid. 801(c).  The Federal Rules of Evidence except from the rule against hearsay an unavailable witness's former testimony given as a witness at a trial, hearing, or lawful deposition offered against a party who had an opportunity and similar motive to develop such testimony through examination.  Fed. R. Evid. 804(b)(1).

First, Plaintiffs have not established that the persons recorded are unavailable under Fed. R. Evid. 804(a).  The Joint Trial Memorandum indicates that John and Jennifer Muller are expected to testify.  Joint Trial Memo. at 15, ECF No. 167.

Second, the unsworn recording does not contain testimony given by a witness at a trial, hearing, or lawful deposition at which the Maxim Defendants had an opportunity to cross-examine, and therefore does not fall within the exception.  The recordings are precluded, but may be used for impeachment purposes if a witness denies having made statements he or she made in the recordings, or contradicts statements made therein.  *See* Fed. R. Evid. 613(b); *see also United States v. Demosthene*, 334 F. Supp. 2d 378, 382 (S.D.N.Y. 2004) *aff'd,* 173 F. App'x 899 (2d

2

Cir. 2006) (precluding tape-recorded conversation as hearsay not falling within any exception, but allowing it to be used for impeachment).  If either party wishes to use any statements in the recordings for impeachment purposes, the Court would prefer, in order to alleviate concerns about making timely objections in response to a video or audio recording, that such statements be offered in the form of a transcript, as discussed during the final pre-trial conference.

The deposition testimony, to the extent that it was made under oath and the party or parties against whom it is offered had an opportunity and similar to develop it, is not precluded if the declarant or declarants are unavailable to testify at trial, Fed. R. Evid. 804(b), and the testimony otherwise complies with the Federal Rules of Evidence.

**B.      Motion to Preclude Alleged Expert Testimony (ECF No. 170)**

The Maxim Defendants move to preclude the testimony of a certified public accountant, Kevin Flaherty, regarding financial losses allegedly suffered by Plaintiffs.  The Maxim Defendants contend that Mr. Flaherty would testify as an expert and that the Court should preclude him from so testifying because Plaintiffs, despite initially disclosing him as an expert, never provided a written expert report, *see* Fed. R. Civ. P. 26(a)(2)(B), or summary of facts and opinions, *see* Fed. R. Civ. P. 26(a)(2)(C).  Plaintiffs now maintain that Mr. Flaherty will not testify as an expert, but instead will, as a fact witness, "testify about his observations of Plaintiffs' records regarding losses suffered" and not offer expert opinion regarding them.  ECF No. 179 at 3.

Plaintiffs provided the Court with no authority for the proposition that a certified public accountant not employed by the plaintiff company, and who had no personal involvement with the plaintiff company or its financial records during the relevant time periods, may testify as a fact witness, following his review of the business's financial records, about financial losses (*i.e.*,

damages) allegedly suffered by the plaintiff company. The Court's independent research revealed that, in cases where accountants were allowed to testify as fact witnesses, the accountants were personally familiar with the relevant business's records, or the accounting of the transactions at issue. *See, e.g.*, *United States v. Rigas*, 490 F.3d 208, 222-25 (2d Cir. 2007) (accountant properly was allowed to testify as fact witness to summarize books and records because he had personal knowledge of those books and records – he worked full-time at the company for nearly twenty months reviewing documents within the company and correcting its financial statements); *United States v. Cuti*, 720 F.3d 453, 456, 458 (2d Cir. 2013) (partner of company's lead outside auditor and company's chief in-house accountant, both of whom personally participated in the accounting transactions at issue, could testify as fact witnesses because "although not qualified as experts, [they] were . . . personally familiar with the accounting of the transactions at issue."); *Wechsler v. Hunt Health Sys., Ltd.*, 198 F. Supp. 2d 508, 529 (S.D.N.Y. 2002) (accountant could submit affidavit as fact witness, but not an expert, because he was "personally involved in the compilation of [the defendant's] financial statements" and "was personally involved with the financial statements of [the defendant] during the relevant time period") (internal quotation marks omitted); *JGR, Inc. v. Thomasville Furniture Indus., Inc.*, 370 F.3d 519, 524-26 (6th Cir. 2004) (district court erred in allowing certified public accountant to testify as a lay witness about lost profits and loss of business value because he had never been an owner, officer, or director of the company, relied on information provided by the company's principal without independently verifying it, and therefore had no basis upon which to offer lay opinion testimony about lost profits or business value); *DIJO, Inc. v. Hilton Hotels Corp.*, 351 F.3d 679, 685-87 (5th Cir. 2003) (district court erred in allowing financial consultant

who "had little significant actual knowledge about [the company] and its operations" to testify as lay witness about lost profits).

The Court does not have enough information at this time to determine whether Mr. Flaherty has personal knowledge.  It appears, from the filings before the Court, that he was not employed by the Plaintiffs and was not personally involved with the compilation or maintenance of the Plaintiffs' financial records during the relevant time periods, and therefore could not testify as a fact witness.  But the Court will allow Plaintiffs an opportunity to lay a foundation for his personal knowledge, if they can.  Thus, insofar as the Maxim Defendants' motion *in limine* seeks to preclude Mr. Flaherty from testifying as an expert, it is GRANTED.  However, if Plaintiffs demonstrate that Mr. Flaherty has personal knowledge, under the standards of the case law identified *supra*, Mr. Flaherty will be permitted to testify only about his personal knowledge.

### C.      Motion to Preclude Affidavit (ECF No. 171)

The Maxim Defendants move to preclude the affidavit of John and Jennifer Muller. Plaintiffs have not opposed this motion.  The motion is GRANTED.

Statements in the affidavit offered to prove the truth of the matter asserted therein are hearsay, Fed. R. Evid. 801(c), and the prior testimony exception does not apply because the Mullers apparently are available and expected to testify, Joint Trial Memo. at 15, ECF No. 167; Fed. R. Evid. 804(b)(1).  The affidavit is precluded to the extent that statements therein are offered to prove the truth of the matter asserted.  But the affidavit may be used to impeach John and/or Jennifer Muller.  *See* Fed. R. Evid. 613(b).

### D.      Motion to Preclude Allegedly Privileged Materials (ECF No. 172)

The Maxim Defendants move to preclude Exhibit 13 and deposition testimony related to Exhibit 13 on the ground that this evidence is covered by the attorney-client privilege, is

irrelevant, and its probative value is substantially outweighed by a danger of prejudice.

First, Exhibit 13 allegedly was inadvertently produced during discovery.

Second, Exhibit 13 was used during the deposition of Steven Maxim.  In apparent recognition that Exhibit 13 was subject to the attorney-client privilege, defense counsel objected during the deposition and reserved the right to "clawback" the document under a protective order provision allegedly providing that "[I]nadvertent production of documents . . . subject to . . . attorney-client privilege . . . shall not constitute a waiver of the . . . privilege, provided that the disclosing party notifies the Receiving Party in writing via facsimile, electronic mail, or first class mail, of such inadvertent production immediately upon learning the same." ECF No. 172 at 2.  Nonetheless, defense counsel allowed Exhibit 13 to continue to be used during the deposition, and allowed Mr. Maxim to testify about it.

Second, Defendants again disclosed Exhibit 13 by publicly filing it in this case, making no effort to file it under seal or *in camera*.  *See* ECF No. 172.  It is now available to the public, was transmitted via the Court's CM/ECF system to all parties accepting electronic notifications, and, according to Defendant's certification, *see* ECF No. 172 at 7, was mailed to those parties not accepting electronic notifications.  *See, e.g.*, *Curto v. Med. World Commc'ns, Inc.*, 783 F. Supp. 2d 373, 378-79 (E.D.N.Y. 2011) (attorney-client privilege waived where plaintiff voluntarily filed memoranda "on the publicly-accessible electronic docket, without undertaking to file the documents under seal or *in camera*, and . . . served copies of the [memoranda] upon Defendants' counsel directly.") (internal citation omitted); *Cruz v. Coach Stores, Inc.*, 196 F.R.D. 228, 230 (S.D.N.Y. 2000) (attorney-client privilege waived where privileged document was publicly filed as part of a motion); *First Am. CoreLogic, Inc. v. Fiserv, Inc.,* 2010 WL 4975566, at *2 (E. D. Tex. Dec. 2, 2010) (finding waiver of attorney-client privilege when party

attached privileged communications to motion for protective order and served the documents on the defendants).

Even if the initial disclosure of Exhibit 13 during discovery was inadvertent, that inadvertent disclosure was compounded by Defendants permitting the use of Exhibit 13 at Mr. Maxim's deposition, publicly filing it, and serving it on the other parties in this case.

As to the deposition testimony related to Exhibit 13, the attorney-client privilege applies to communications made in confidence between a client and his attorney for the purpose of obtaining legal advice. *See In re Richard Roe*, Inc., 68 F.3d 38, 39 (2d Cir. 1995). Such requirements were not met during Mr. Maxim's deposition, at which Plaintiffs' counsel and a court reporter, at minimum, were present, and during which Mr. Maxim was not seeking legal advice.

Exhibit 13 and related deposition testimony are not precluded on grounds of the attorney-client privilege. The Court will DENY the motion *in limine*, but will reserve judgment until trial, when the motion is placed in the appropriate factual context, to determine whether this evidence is relevant, and whether its probative value is substantially outweighed by a danger of prejudice.

SO ORDERED at Bridgeport, Connecticut this fourth day of December, 2015.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE