IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EAST POINT SYSTEMS, INC., | ) | |
| THOMAS MARGARIDO, JASON | ) | |
| MARGARIDO, AND PAUL TAFF | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | CIVIL ACTION NO. 3:13-cv-215 |
| | ) | |
| | ) | |
| STEVEN MAXIM, S2K, INC., MAXIM | ) | |
| ENTERPRISES, INC., MAXIM FIELD | ) | |
| SERVICE SUPPLY, INC., EDWIN | ) | |
| PAJEMOLA, AND CLEVELAND FIELD | ) | |
| SYSTEMS, LLC | ) | April 29, 2016 |
| Defendants. | ) | |

**PLAINTIFFS' MOTION FOR ATTORNEY'S FEES**

Having prevailed on the ninth and fifteenth counts of their complaint against the Maxim Defendants, the plaintiffs respectfully request that this Court award them reasonable attorney's fees in the amount of $337,972.79 under the Software Source Code Access and Indemnity Agreement, admitted at trial as Exhibit Five at trial. In support thereof, the plaintiffs submitted the accompanying memorandum of law in support of the requested award.

Date:   April 29, 2016

By: /s/ Bruce H. Raymond
Bruce H. Raymond ct04981
Evan K. Buchberger ct29973
Raymond Law Group LLC
90 National Drive, Suite 3
Glastonbury, CT 06033
P: 860-633-0580
F: 860-633-0438
raymond@raymondlawgroup.com
Attorneys for Plaintiffs

1

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| EAST POINT SYSTEMS, INC., | ) | |
| THOMAS MARGARIDO, JASON | ) | |
| MARGARIDO, AND PAUL TAFF | ) | |
| | ) | |
| Plaintiffs, | ) | |
| vs. | ) | CIVIL ACTION NO. 3:13-cv-215 |
| | ) | |
| | ) | |
| STEVEN MAXIM, S2K, INC., MAXIM | ) | |
| ENTERPRISES, INC., MAXIM FIELD | ) | |
| SERVICE SUPPLY, INC., EDWIN | ) | |
| PAJEMOLA, AND CLEVELAND FIELD | ) | |
| SYSTEMS, LLC | ) | April 29, 2016 |
| Defendants. | ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR
ATTORNEY'S FEES**

## I.    INTRODUCTION

The plaintiffs initiated this action in a fifteen count complaint relating to allegations that the

Maxim Defendants and Pajemola had, in violation of various agreements and legal requirements,

improperly copied and usurped elements of the plaintiffs' Field-Comm.net database to market a

competing product. At trial the plaintiffs prevailed on their claims against the Maxim Defendants

for a constructive trust under the Software Source Code Access and Indemnity Agreement

(Plaintiffs' Exhibit 5) as well as for specific performance under the Cross-Purchase Agreement

(Plaintiffs' Exhibit 4). Decision (Doc. 214). Prior to the plaintiffs' success on these claims, the

Maxim Defendants had filed an answer and counterclaims, alleging various causes of action

1

against the plaintiffs. Answer (Doc. 63). The plaintiffs successfully defended these counts and proceeded to trial, where they prevailed on the referenced counts of their complaint. (Doc. 66). As set forth herein, the plaintiffs are entitled to their reasonable attorney's fees and costs in presenting their case-in-chief as well as in defending said counterclaims.

## II.   ARGUMENT

### A. Plaintiffs are entitled to the award of the entirety of their reasonably incurred attorney's fees and costs

Through the litigation of the above-captioned matter, the plaintiffs have incurred great expense, for which they are entitled reimbursement. By successfully litigating their claim for constructive trust over Field-Comm.net elements contained within Maxim Defendants' computer systems in count 15 and their claim for specific performance under the cross-purchase agreement contained in count 9, the plaintiffs became entitled to fees and costs under the Software Source Code Access and Indemnity Agreement. *See* Pls. Ex. 5. Additionally, they are entitled to any fees and costs associated with defending the counterclaims raised by the defendants.

### 1.   Plaintiffs are entitled to attorney's fees and costs, based on the Software Source Code Access and Indemnity Agreement

Under the American Rule governing recovery of attorney's fees, a litigant may only recover if there is some statutory or contractual basis. (Internal quotation marks omitted*.) TES Franchising, LLC v. Feldman*, 286 Conn. 132, 148, 943 A.2d 406 (2008)(*quoting  Rizzo Pool Co. v. Del Grosso*, 240 Conn. 58, 72, 689 A.2d 1097 (1997).  "In reviewing a claim that attorney's fees are authorized by contract, [courts] apply the well-established principle that "[a] contract must be construed to effectuate the intent of the parties, which is determined from [its]

language . . . interpreted in the light of the situation of the parties and the circumstances connected with the transaction." *FCM Group, Inc. v. Miller*, 300 Conn. 774, 811, 17 A.3d 40 (2011).

The plaintiffs are entitled to the payment of all of their reasonably incurred legal fees that arose during the course of litigation. As this Court held in its decision, under count 15 of the plaintiffs' complaint, the defendants breached the Software Source Code and Indemnity Agreement. Pls.' Ex. 5. As the Court acknowledged, the agreement provided "access to the Source Code copy for the sole purpose of permitting [MEI] to support its own licensed copies of the computer programs and databases by making modifications to the current software and databases required to meet [MEI]'s unique needs and objectives." Pls.' Ex. 5 ¶2. It further prohibited the use of "any other item made available hereunder except as may be provided in this Agreement." *Id* at ¶3.0. Pursuant to that agreement, this Court found that "Maxim Defendants used an item made available under the Software Source Code Access and Indemnity Agreement, specifically, Field-Comm.net database tables, for a purpose other than the "sole purpose" permitted under that agreement." Dec. at p. 43. Thus, the finding was that the Maxim Defendants violated the Software Source Code Access and Indemnity Agreement. Under its equitable powers, this Court then imposed a Constructive Trust. Because the plaintiffs prevailed in securing the constructive trust under this agreement, the plaintiffs are entitled to reasonable attorney's fees for litigating and prevailing on this claim.

Under the Software Source Code Access and Indemnity Agreement provided that:

[MEI] shall indemnify [East Point] against any costs that result from the unauthorized use of the Source Code. [MEI] undertakes to indemnify, defend, and hold [East Point] harmless from any and all loss, damage, injury, or liability which [East Point] may suffer as a result of the release of [East Point]'s Source

Code to [MEI], Such all-encompassing Indemnity shall Include, but shall not *be* limited to, losses, damages, injury, or liability *which* [East Point] may suffer as a result of the misuse, sale, transfer, or copying of [East Point]'s Source Code by [MEI] or [Pajemola]. Such damages and injuries which may be awarded to [East Point] against [MEI] shall be deemed to include all actual, general, special, and consequential damages awarded to [East Point], its agents, employees, or assigns, against any party who misuses [East Point]'s Source Code, as well as any attorney fees, costs of suit, costs of arbitration, or costs of appeal which may be awarded.

Pls.' Ex. 5 at ¶ 4.0.

"[I]n reviewing a claim that attorney's fees are authorized by contract, [the] contract must be construed to effectuate the intent of the parties, which is determined from [its] language . . . interpreted in the light of the situation of the parties and the circumstances connected with the transaction." (Internal quotation marks omitted.) *Heyman Assocs. No. 5 v. Felcor TRS Guarantor, L.P.*, 153 Conn. App. 387, 415, 102 A.3d 87 (Conn. App. Ct. 2014)(*quoting Total Recycling Services of Connecticut, Inc. v. Connecticut Oil Recycling Services, LLC*, 308 Conn. 312, 327, 63 A.3d 896 (2013). "[T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the [writing]." (Internal quotation marks omitted.) *Connecticut National Bank v. Rehab Associates*, 300 Conn. 314, 319, 12 A.3d 995 (2011).

In the present case, the indemnification provision of the Software Source Code Access and Indemnity Agreement fairly contemplates the award of attorney's fees to the plaintiffs related to their costs in litigating, and successfully securing a constructive trust over the elements of Field-Comm.net, retained by the Maxim Defendants. The language of the provision referring to indemnification is not "talismanic and [does not] automatically [dictate] that the provision allows only an action for indemnification limited to the coverage of only third party claims.

Heyman, 153 Conn. App. at 415. Connecticut courts have previously recognized that an indemnification agreement is not limited to third party actions. *See Id*(quoting Black's Law Dictionary (9th Ed. 2009)("to indemnify is to reimburse (another) for a loss suffered because of a third party's or *one's own act or default*."); 1 D. Dobbs, Law of Remedies (2d Ed.1993), §3.10(3), p. 402).

More important than parsing the definition of a single word is the full consideration so as to "effectuate the intent of the parties, which is determined from [its] language . . . interpreted in the light of the situation of the parties and the circumstances connected with the transaction." *Total Recycling Servcs.*, 308 Conn. at 327. "[T]he intent of the parties is to be ascertained by a fair and reasonable construction of the written words and . . . the language used must be accorded its common, natural, and ordinary meaning and usage where it can be sensibly applied to the subject matter of the [writing]." *Connecticut National Bank*, 300 Conn. at 319.

From the plain meaning of the agreement, the parties contemplated that a result such as this – where the plaintiffs have prevailed in securing a constructive trust as a result of the Maxim Defendants' violation of the Software Source Code Access and Indemnity Agreement – would entitle to the plaintiffs to recover their attorney's fees associated with remedying that violation. At the outset, it should be noted that the agreement as to attorney fees for the plaintiffs was included in the indemnity provision that was described as "all-encompassing" and that the relief available to the plaintiffs "shall Include, but shall not *be* limited to" the forms of relief enumerated in the provision. Pls. Ex. 5 at ¶ 4.0. Moreover, these forms of relief were provided for any "misuse, sale, transfer, or copying of [East Point]'s Source Code by [MEI] or [Pajemola]." *Id*. This provision applies to the misuse of aspects of the East Point database, as the

agreement previously provided that the term "source code" applied to "computer programs and databases." *Id* at ¶ B[1].

Under this provision, it is clear that the Maxim defendants are liable to the plaintiffs for attorney's fees in that they misused the access to Field-Comm.net that they were granted by copying the plaintiffs' database tables. As this Court held, "the similarity between the databases of Field Navigator and Field-Comm.net…Maxim Defendants used an item made available under the Software Code Access and Indemnity Agreement, specifically, Field-Comm.net database tables, for a purpose other than the 'sole purpose' permitted under that agreement." Dec. at p. 43 (Doc. 214). This unauthorized copying led to the present litigation and the plaintiffs' incurring attorney's fees and costs.

Although the plaintiffs did not prevail on every one of their claims against the defendants, they should still be awarded the full amount of attorney's fees that they incurred for the present litigation. The factual and legal issues of all counts of the plaintiffs' complaint are so intertwined as a warrant such a result. A district court is justified in refusing to apportion "an award of attorney's fees based on the success or failure of the plaintiff on particular issues where the facts and legal theories are interrelated." *Tomick v. UPS*, 135 Conn. App. 589, 623, 43 A.3d 722 (2012)(*citing Hensley v. Eckerhart*, 461 U.S. 424, 438 (1983). "When certain claims provide for a party's recovery of contractual attorney's fees but others do not, a party is nevertheless entitled to a full recovery of reasonable attorney's if an apportionment is impracticable because the claims arise from a common factual nucleus and are intertwined." *MacDermid Printing Solutions, LLC v. Cortron Corp.*, Case No. 3:08-cv-01649 (MPS) 2015 U.S. Dist. LEXIS 16504,

---

[1] The agreement also provided in its Exhibit A that the agreement granted Pajemola and MEI access to Field-Comm.net SQL database.

at *3-4 (D. Conn. Feb. 11, 2015)(*quoting* "The award need not be automatically reduced if its recipient fails to prevail on all of his claims." *Russell v. Dean Witter Reynolds*, 200 Conn. 172, 194, 510 A.2d 972 (1986)(*quoting Total Recycling Servcs,* 308 Conn at 312).

In the present case, all of the plaintiffs' claims centered around a common factual nucleus. In prevailing on count 15 of the plaintiffs' complaint, the plaintiffs vindicated their rights in recovering their property, which had been wrongfully usurped by the Maxim Defendants. Ultimately, the three contracts in question in the present litigation, all concerned the legal relationship whereby the Maxim Defendants would be permitted limited access to the plaintiffs' Field-Comm.net program. The elements of proof needed for count 15 of the plaintiffs' complaint was inextricably linked to each and every other count. Each and every count of the plaintiffs' complaint against the Maxim Defendants alleged the wrongful copying and misuse of FieldComm.net, with the exception of count nine – another claim upon which the plaintiffs obtained relief.

The fact that some of these claims were pled under a breach of the shareholder agreement, the confidentiality and non-competition agreement; a breach of both statutory and common law fiduciary duties; tortious interference with a business expectancy; the Connecticut Uniform Trade Secrets Act; and the Connecticut Unfair Trade Practices Act, is of little consequence. The factual underpinnings were the same. Essentially, the Maxim Defendants had a duty to keep the Field-Comm.net software secure, and to not use it to compete or advance interests other than those of the plaintiffs. If the plaintiffs' had only pled their claim for constructive trust under Count 15, the level of proof would have been the same. Therefore, the fact that the plaintiffs were not successful on the other counts of the complaint, which sought to

remedy the same wrong is of no moment. The plaintiffs expended much time and effort to recover their property that was wrongfully retained by the Maxim Defendants. Their success in this regard entitles them to full reasonable fees.

### 2. Plaintiffs are entitled to their reasonably incurred attorney's fees and costs associated with defending the Maxim Defendants' counterclaims

In addition to being awarded fees for the preparation and presentation of their case-in-chief, the plaintiffs should also be awarded their reasonable attorney's fees in connection with successfully defending the defendants' counterclaims. In determining whether a plaintiff may recover attorney's fees for successfully defending a counterclaim, it is "the nature—not the nomenclature—of a claim [that] is controlling." *Bernhard-Thomas Bldg. Sys., LLC v. Weitz Co., LLC*, No. 3:04-cv-1317 (CFD), 2011 U.S. Dist. LEXIS 125924, at 14-15 (D. Conn. Oct. 31, 2011)(*quoting Diamond D. Enterprises USA, Inc. v. Steinsvaag*, 979 F.2d 14, 18 (2d Cir. 1992) "Thus, where a fee applicant recovers on a claim subject to a contractual attorney's fee provision and in the process litigates a counterclaim on which he must prevail in order to recover on his claim, then the fee applicant is entitled to his attorney's fees for both the claim and the counterclaim." *Id*. This reasoning has been followed in the U.S. District Court for the District of Connecticut and in the Connecticut Superior Court, applying Connecticut law. *See Rand-Whitney Containerboard L.P. v. Montville*, Civ. No. 3:96CV413 (HBF), 2006 U.S. Dist. LEXIS 75870, at *14 (D. Conn. Sept. 5, 2006)(*reversed, in part, on alternate grounds*)("The law in Connecticut clearly follows the analysis applied in *Diamond*."); *J.P. Sedlak Assocs. v. Conn. Life & Cas. Ins. Co.*, No. 3:98CV145 DFM, 2000 U.S. Dist. LEXIS 18947, at *5-6 (D. Conn. Mar. 31, 2000);

8

*Atlantic Pipe Corp. v. Quadrangle LP*, No CV 87-0336982, 1993 Conn. Super. LEXIS 2860, at *2 (Conn. Super. Ct. Oct. 27, 1993).

In their answer, the Maxim Defendants alleged myriad claims against the plaintiffs sounding in fraud, breach of implied warranty of goods and services etc. Answer at pp. 72-99 (Doc. No. 63). Through their claims of fraud as to Maxim's investment in East Point, the Maxim Defendants claimed that because of the alleged fraud that Maxim was entitled to $250,000 for his stock instead of the appraised value of $57,700 at trial[2]. Had the Maxim defendants been successful on this counterclaim, the plaintiffs would not have been able to prevail on their claim, contained in count nine of their complaint for specific performance of the return of S2K's stock in East Point for an appraised value, which this Court found to be $57,700.

Moreover, the plaintiffs' recovery of their Field-Comm.net software elements via the Court's imposed constructive trust would not have been possible had the Maxim Defendants prevailed on their counterclaims. In their fourth counterclaim, the Maxim Defendants contested the validity of the "Source Code Access Agreement" and denied that they developed software that contained elements of the plaintiffs' Field-Comm.net software. Def. Answer (Doc. 63) ¶¶352-366. Had the defendants prevailed on this count, the plaintiffs would not have been able to prevail on their claim for a constructive trust over the Maxim Defendants' software that contained Field-Comm.net elements. Further, many of the Maxim Defendants' other

---

[2] In arguing that the plaintiffs were successful in gaining specific performance of return of S2K's stock for the price of $57,700, the plaintiffs in no way abandon claims presented in their previously filed motion to amend findings of fact and to amend the judgment (Doc. 218) that the trial court should have assigned a different, lower value to the stock.

counterclaims alleged, and relied upon Field Navigator having been an independently developed software, free of any elements from Field-Comm.net[3].

## III.    Conclusion

For the foregoing reasons, the plaintiffs' submit that they are entitled to the entirety of their reasonably incurred attorney's fees as submitted. The plaintiffs submit that the bills submitted from both Raymond Law Group, attached as Exhibit A, and from Karensky and Capossella, attached as Exhibit B, reflect reasonable amounts of time expended at reasonable rates in view of the complicated technical and legal issues addressed in the litigation of this matter. In light of this, the plaintiffs respectfully request that this honorable court award attorney's fees and costs, in the amount of $337,972.79[4] under the *Lodestar* method[5].

Date:   April 29, 2016                          By: /s/ Bruce H. Raymond
                                                    Bruce H. Raymond ct04981
                                                    Evan K. Buchberger ct29973
                                                    Raymond Law Group LLC
                                                    90 National Drive, Suite 3
                                                    Glastonbury, CT 06033
                                                    P: 860-633-0580
                                                    F: 860-633-0438
                                                    raymond@raymondlawgroup.com
                                                    Attorneys for Plaintiffs

---

[3] Doc. 63: Counts 9 - ¶398; 10 - ¶409
[4] $255,786.08 incurred from Raymond Law Group, LLC; and $82,186.71 incurred from Kahan & Kerensky & Capossela, LLP.
[5] The plaintiffs submit that the number of hours and rate submitted are both reasonable in light of the complex nature of the litigation and therefore reflect a reasonable amount for attorney's fees. *See Comm'n on Human Rights and Opportunities v. Brookstone Court, LLC,* 107 Conn. App. 340, 341 n.2 (2008); *Hensley,* 461 U.S. at 433.

## **CERTIFICATE OF SERVICE**

I hereby certify that on this date a copy of foregoing pleading was filed electronically and served by mail on anyone unable to accept electronic filing. Notice of this filing will be sent by e-mail to all parties by operation of the court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing. Parties may access this filing through the court's CM/ECF System.

And by MAIL TO

Edwin Pajemola
4223 Morely Drive
Reminderville, OH 44202

Cleveland Field Systems, LLC
4223 Morely Drive
Reminderville, OH 44202

🅐 Neutral

As of: April 29, 2016 3:30 PM EDT

## *MacDermid Printing Solutions, LLC v. Cortron Corp.*

United States District Court for the District of Connecticut

February 11, 2015, Decided; February 11, 2015, Filed

Case No. 3:08-cv-01649 (MPS)

**Reporter**

2015 U.S. Dist. LEXIS 16504

MACDERMID PRINTING SOLUTIONS, LLC, Plaintiff, v. CORTRON CORPORATION, Defendant.

**Prior History:** *MacDermid Printing Solutions, Inc. v. Cortron Corp., 2014 U.S. Dist. LEXIS 79940 (D. Conn., June 12, 2014)*

## Core Terms

attorney's fees, damages, offer to compromise, offer-of-compromise, lodestar, reasonable attorney's fees, antitrust

**Counsel:** **[*1]** For MacDermid Printing Solutions LLC, Plaintiff, Counter Defendant: Ann H. Rubin, Brian Y Boyd, Fatima Lahnin, James K. Robertson, Jr., John R. Horvack, Jr., John R. Horvack, Jr., LEAD ATTORNEYS, John Louis Cordani, jr, Carmody Torrance Sandak & Hennessey, LLP - NH, New Haven, CT; Kathryn E Picanso, LEAD ATTORNEY, Carmody & Torrance - New Haven, New Haven, CT; Paul P. Eyre LEAD ATTORNEY, PRO HAC VICE, Baker & Hostetler LLP - NY, New York, NY.

For Cortron Corp, Defendant, Counter Claimant: Craig A. Raabe, LEAD ATTORNEY, Robinson & Cole, Hartford, CT; Joshua S Johnson, LEAD ATTORNEY, PRO HAC VICE, Vinnson & Elkins LLP, Washington, DC; Nuala E. Droney, LEAD ATTORNEY, Robinson & Cole, LLP-HTFD, Hartford, CT; John P. Elwood, Vinnson & Elkins LLP, Washington, DC; Kristopher I Moore, Robinson & Cole, LLP - Bos-MA, Boston, MA.

**Judges:** Michael P. Shea, United States District Judge.

**Opinion by:** Michael P. Shea

## Opinion

### AWARD OF ATTORNEY'S FEES AND OFFER-OF-COMPROMISE INTEREST

The plaintiff MacDermid Printing Solutions, LLC ("MacDermid") has moved for an award of reasonable attorney's fees and an award of offer-of-compromise interest, following a jury verdict in its favor on all counts. As detailed below, the Court grants both **[*2]** motions and directs the Clerk to enter judgment in the case.

### I. Attorney's Fees

MacDermid's recovery of attorney's fees is governed by federal law as to the federal claims and governed by state law as to the state claims. *Cotton v. Slone, 4 F.3d 176, 181 (2d Cir. 1993)*. Attorney's fees in connection with MacDermid's federal antitrust claim are provided for by statute. *15 U.S.C. § 15(a)* ("[A]ny person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws . . . shall recover . . . the cost of suit, including a reasonable attorney's fee."). State law also provides for attorney's fees related to MacDermid's state antitrust, computer crimes, CUTSA, and CUTPA claims.[1] Although MacDermid would ordinarily not be able to recover attorney's fees for the cost of litigating a breach of contract claim, that claim overlaps with the other claims in the case for

---

[1] *Westport Taxi Serv., Inc. v. Westport Transit Dist.*, 235 Conn. 1, 664 A.2d 719, 742 (Conn. 1995) (state antitrust) ("Like the federal statutes, § 35-35 mandates . . . the award of attorney's fees and costs."); Conn. Gen. Stat. § 52-570b(e) (computer crimes) ("In any civil action brought under this section, the court shall award to any aggrieved person who prevails, reasonable costs and reasonable attorney's fees."); Conn. Gen. Stat. § 35-53 (CUTSA) ("[I]f the court finds wilful and malicious misappropriation, the court . . . may award reasonable attorney's fees to the prevailing party."); Conn. Gen. Stat. § 42-110g(d) (CUTPA) ("In any action brought by a person under this section, the court may award, to the plaintiff, in addition to the relief provided in this section, costs and reasonable attorneys' fees based on the work reasonably performed by an attorney and not on the amount of recovery.").

which attorney's fees are recoverable, as the jury's award makes clear. As a result, the Court will not allocate those hours separately, as it would be impracticable in this case to do so. See *Total Recycling Servs. of Ct., Inc. v. Connecticut Oil Recycling Servs., LLC, 308 Conn. 312, 63 A.3d 896, 908 (Conn. 2013)* ("[W]hen certain claims provide for a party's recovery of contractual attorney's fees but others do not, a party is nevertheless entitled to a full recovery of reasonable attorney's **[\*3]** fees if an apportionment is impracticable because the claims arise from a common factual nucleus and are intertwined.").

Under federal law, "[i]n calculating attorney's fees, the district court must first determine the lodestar—the product of a reasonable hourly rate and the reasonable number of hours required by the case—[which] creates a presumptively reasonable fee." *Stanczyk v. City of New York, 752 F.3d 273, 284 (2d Cir. 2014)* (quotation marks omitted). "[T]he lodestar can be adjusted only by factors relevant to the determination of reasonable **[\*4]** attorneys' fees that were not already considered in the initial lodestar calculation." *Millea v. Metro-North R.R., 658 F.3d 154, 167 (2d Cir. 2011)*. Under Connecticut law, courts awarding attorney's fees also begin with the lodestar figure and "may then adjust this lodestar calculation by other factors." *Conservation Comm'n of Town of Fairfield v. Red 11, LLC, 135 Conn. App. 765, 43 A.3d 244, 256 (Conn. App. 2012)*.[2]

MacDermid has submitted invoices with time entries reflecting total legal fees of $2,641,587 in connection with this matter. ECF No. 469. The defendant Cortron Corporation ("Cortron") does not object to the hours or rates reflected in the invoices. ECF No. 470. The Court finds **[\*5]** the rates and hours to be reasonable, given the complexity of the case and the length of the

discovery and trial process, and finds no grounds for departing from that lodestar figure. MacDermid is therefore awarded attorney's fees in the amount of $2,641,587.

## II. Offer-of-Compromise Interest

Cortron concedes that MacDermid is entitled to offer-of-compromise interest under *Section 52-192a(c) of the Connecticut General Statutes*[3] if MacDermid's total recovery exceeds MacDermid's $15 million offer of compromise. ECF No. 447, at 35-36. "This interest is mandated when the amount recovered is greater than or equal to the offer of judgment, and that amount can include interest and attorney's fees, as well as double or treble damages." *Nunno v. Wixner, 257 Conn. 671, 778 A.2d 145, 153 (Conn. 2001)* (internal citations omitted). "[P]unitive damages . . . are included in the calculus made to determine if a verdict equals or exceeds an offer of judgment." *Kregos v. Stone, 88 Conn. App. 459, 872 A.2d 901, 906-07 (Conn. App. 2005)*. MacDermid's total recovery is $49,938,330 (comprising $19,757,854 in compensatory damages, $27,538,889 in punitive damages (which includes treble damages for the antitrust violations), and $2,641,587 in attorney's fees), which exceeds the $15 million offer of compromise. The Court must therefore calculate and award offer-of-compromise interest.

*Section 52-192a* "award[s] . . . interest on all amounts recovered, including interest and attorney's fees." *Nunno, 778 A.2d at 153*. Eight-percent annual interest runs from June 6, 2011, the date that MacDermid filed the offer of compromise, because the offer was filed more than eighteen months after the complaint was filed. See *Conn. Gen. Stat. § 52-192a(c)*. A total of 1346 days have elapsed since the offer of compromise **[\*7]**

---

[2]   These factors are "(1) the time and labor required, (2) the novelty and difficulty of the questions, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee for similar work in the community, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation and ability of the attorneys, (10) the undesirability of the case, (11) the nature and length of the professional relationship with the client and (12) awards in similar cases." *Conservation Comm'n, 43 A.3d at 256-57*.

[3]   The statute provides as **[\*6]** follows: "After trial the court shall examine the record to determine whether the plaintiff made an offer of compromise which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain specified in the plaintiff's offer of compromise, the court shall add to the amount so recovered eight per cent annual interest on said amount . . . . The interest shall be computed from the date the complaint in the civil action . . . was filed with the court if the offer of compromise was filed not later than eighteen months from the filing of such complaint or application. If such offer was filed later than eighteen months from the date of filing of the complaint or application, the interest shall be computed from the date the offer of compromise was filed." *Conn. Gen. Stat. § 52-192a(c)*.

was made, resulting in interest of [$49,938,330 x 0.08 x (1346/365)] = $14,732,491.

### Conclusion

MacDermid having accepted the Court's remittitur (ECF No. 468), the Court DENIES Cortron's motion for a new trial (ECF No. 436). The Clerk is directed to enter judgment in the amount of $64,670,821, which represents $19,757,854 in compensatory damages, $27,538,889 in punitive damages, $2,641,587 in attorney's fees, and $14,732,491 in offer-of-compromise interest.

**SO ORDERED** this 11th day of February, 2015, at Hartford, Connecticut.

/s/ Michael P. Shea

United States District Judge

◆ Positive
As of: April 29, 2016 3:32 PM EDT

# *Bernhard-Thomas Bldg. Sys., LLC v. Weitz Co., LLC*

United States District Court for the District of Connecticut

October 31, 2011, Decided; October 31, 2011, Filed

3:04-cv-1317 (CFD)

## Reporter

2011 U.S. Dist. LEXIS 125924; 2011 WL 5222682

BERNHARD-THOMAS BLDG. SYS., LLC, Plaintiff, v. WEITZ CO., LLC and FEDERAL INS. CO., Defendants.

**Prior History:** *Bernhard-Thomas Bldg Sys, LLC v. Weitz Co., LLC, 2011 U.S. Dist. LEXIS 91152 (D. Conn., Aug. 16, 2011)*

## Core Terms

costs, attorney's fees, counterclaim, contractual, parties, Documents, defending, provides, reasonable attorney's fees, breach of contract, costs incurred, interest rate, damages, prevailing party, completion, prevailing, argues, entitled to recover, expert witness fees, litigating, contracts, expenses, factors, unpaid

## Case Summary

### Overview

In a subcontractor's breach of contract action, a contractor was entitled to reasonable attorney's fees as the prevailing party under the terms of the parties' agreement. Because the contractor's right of recovery was necessarily tied into a successful defense of the breach of contract claims, it was entitled to fees for both the time spent litigating its counterclaim as well as the time spent in defense of the subcontractor's claims.

### Outcome

Motion granted in part.

## LexisNexis® Headnotes

Contracts Law > Contract Interpretation > Intent

Contracts Law > Formation of Contracts > General Overview

*HN1* Generally, incorporation by reference of existing documents produces a single contract which includes the contents of the incorporated papers. Where the signatories execute a contract which refers to another instrument in such a manner as to establish that they intended to make the terms and conditions of that other instrument a part of their understanding, the two may be interpreted together as the agreement of the parties. The documents incorporated need not be attached to the contract nor signed or initialed unless the contract so requires.

Civil Procedure > Remedies > Judgment Interest > Prejudgment Interest

*HN2* *Conn. Gen. Stat. Ann. § 37-3a* provides a prevailing legal rate of prejudgment interest under Connecticut law. Interest at the rate of ten percent a year, and no more, may be recovered and allowed in civil actions as damages for the detention of money after it becomes payable. *Conn. Gen. Stat. Ann. § 37-3a*. The statute sets the maximum rate of interest a court can award, no more than ten percent, but a trial court will have to decide what the appropriate rate of interest for any such award should be.

Civil Procedure > Remedies > Judgment Interest > Prejudgment Interest

*HN3* Simply to chose 10.0 percent as the interest rate because that is the only reference in *Conn. Gen. Stat. Ann. § 37-3a* is not the proper exercise of judicial discretion.

Civil Procedure > Preliminary Considerations > Federal & State Interrelationships > Erie Doctrine

Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > American Rule

*HN4* In diversity cases, attorney's fees are considered substantive and are controlled by state law. Connecticut follows the common law American rule in assessing the award of attorney fees. Under the American rule, attorney's fees and ordinary expenses and burdens of

2011 U.S. Dist. LEXIS 125924, *125924

litigation are not allowed to the successful party absent a contractual or statutory exception. A successful litigant is entitled to an award of attorney's fees if they are provided by contract.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

**HN5** Connecticut courts determine the reasonableness of attorney's fees by reviewing the twelve factors, which are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. In determining reasonableness, a court is not required to consider each of the twelve factors individually, but instead is required to consider the full panoply of factors and not base its decision solely on one of the elements.

Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > American Rule

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

**HN6** It is the nature, not the nomenclature, of a claim for attorney's fees that is controlling. Thus, where a fee applicant recovers on a claim subject to a contractual attorney's fee provision and in the process litigates a counterclaim on which he must prevail in order to recover on his claim, then the fee applicant is entitled to his attorney's fees for both the claim and the counterclaim. This reasoning has been followed in the United States District Court for the District of Connecticut and in the Connecticut Superior Court, applying Connecticut law. Where a party with a contractual right to recover legal fees must incur attorney's fees to preserve his contractual rights and interest, he may recover those legal fees and damages.

Civil Procedure > ... > Costs & Attorney Fees > Costs > General Overview

**HN7** D. Conn. Civ. *R. 54, Fed. R. Civ. P.* 54(d), and *28 U.S.C.S. § 1920* provide the framework for determining the proper award of statutory costs, available to the

prevailing party in all cases, but do not apply if a contractual provision authorizes costs and expenses, as part of an attorney's fee award.

**Counsel:** [*1] For Bernhard-Thomas Bldg Sys LLC, Plaintiff, Counter Defendant: Alan R. Spirer, LEAD ATTORNEY, Spirer & Cott, Westport, CT.

For Weitz Co, LLC, doing business as Weitz Co - Natl, Defendant: Barry J. Waters, LEAD ATTORNEY, Murtha Cullina LLP, New Haven, CT; Derek T. Werner, LEAD ATTORNEY, Murtha Cullina-Htfd, Hartford, CT; Michael J. Donnelly, LEAD ATTORNEY, Murtha Cullina LLP, Hartford, CT.

For Federal Ins Co, Defendant: Jeffrey M. Donofrio, LEAD ATTORNEY, Ciulla & Donofrio, LLP, North Haven, CT; Louis Joseph Dagostine, LEAD ATTORNEY, Paul M. Cramer, Ciulla & Donofrio, North Haven, CT.

For Weitz Co, LLC, Counter Claimant: Derek T. Werner, LEAD ATTORNEY, Murtha Cullina-Htfd, Hartford, CT; Michael J. Donnelly, LEAD ATTORNEY, Murtha Cullina LLP, Hartford, CT.

For Weitz Co, LLC, Counter Claimant: Michael J. Donnelly, LEAD ATTORNEY, Murtha Cullina LLP, Hartford, CT.

For Federal Ins Co, Counter Claimant: Jeffrey M. Donofrio, LEAD ATTORNEY, Ciulla & Donofrio, LLP, North Haven, CT; Louis Joseph Dagostine, Paul M. Cramer, LEAD ATTORNEYS, Ciulla & Donofrio, North Haven, CT.

For Weitz Co, LLC, Counter Claimant: Barry J. Waters, LEAD ATTORNEY, Murtha Cullina LLP, New Haven, CT; Derek T. Werner, LEAD [*2] ATTORNEY, Murtha Cullina-Htfd, Hartford, CT; Michael J. Donnelly, LEAD ATTORNEY, Murtha Cullina LLP, Hartford, CT.

**Judges:** CHRISTOPHER F. DRONEY, UNITED STATES DISTRICT JUDGE.

**Opinion by:** CHRISTOPHER F. DRONEY

# Opinion

## RULING ON MOTION FOR ATTORNEY'S FEES, INTEREST, AND COSTS

### I. Introduction

2011 U.S. Dist. LEXIS 125924, *2

This case arises out of a breach of contract dispute between the plaintiff, Bernhard-Thomas Building Systems, LLC ("BT"), and the defendants The Weitz Company, LLC d/b/a The Weitz Company-National ("Weitz") and Federal Insurance Company. After a bench trial, this Court awarded Weitz $1,287,604 in damages, plus interest. Weitz has filed a motion for interest, attorney's fees, and costs pursuant to its Subcontract Agreement ("Subcontract") with BT.

## II. Background

BT brought a five-count complaint against the defendants for judgment on a bond (which was substituted for a mechanic's lien) pursuant to *Conn. Gen. Stat. § 49-33* (Count One); breach of contract (Counts Two and Three); breach of the covenant of good faith and fair dealing (Count Four); and unjust enrichment (Count Five). In response, Weitz brought a counterclaim alleging that BT breached the Subcontract.

After a bench trial, this Court filed its Memorandum of Decision on August **[*3]** 16, 2011, holding that Weitz terminated BT for cause and therefore BT was not entitled to recover damages under the Subcontract. The Court awarded damages to Weitz to the extent of its completion costs, in the amount of $1,287,604, plus prejudgment interest, attorney's fees, and costs. Those supplemental amounts were subject to a post memorandum of decision motion by Weitz.

Weitz now moves for interest, attorney's fees, and costs. Weitz seeks $832,184.43 in interest, $427,924.25 in attorney's fees, and $123,049.75 in costs.

## III. Applicable Law and Discussion

### A. Recovery of Interest

Section 11.4 of the Subcontract between Weitz and BT provides, in relevant part:

> 11.4 Consequences of Termination for Cause
>
> The Contractor shall apply any unpaid balance of the Subcontract Sum to pay for such completion costs; provided, that the Contractor may first require the Subcontractor or its surety, if any, to fund any anticipated excess completion costs. In all such events, if the unpaid balance of the Subcontract Sum exceeds the costs of completing the Subcontractor's Work together with interest on such

costs and together with any offsets and deductions available to the Contractor, such excess shall be **[*4]** paid to the Subcontractor. However, if such costs, interest, deductions and offsets exceed such unpaid balance, the Subcontractor or Subcontractor's surety shall pay the difference to the Contractor upon demand.

Although the Subcontract does not specify a rate of interest, it expressly entitles the Contractor, *i.e.*, Weitz, to interest on the unpaid completion costs. In the Standard Form Agreement between Owner and Construction Manager between LCS-Westminister Partnership I LLP and Weitz (the "Prime Contract"), Section 13.6.1 specifies that "[p]ayments due and unpaid under the Contract Documents shall bear interest from the date payment is due at such rate as the parties may agree upon in writing or, in the absence thereof, at the at the legal rate prevailing from time to time at the place where the Project is located." BT argues that it is not bound by this language in the Prime Contract because it was not a party to this contract. The Court disagrees.

The Subcontract between BT and Weitz contains several provisions incorporating the Prime Contract. Under Section 1.2 of the Subcontract, the parties agreed that "the Contractor [Weitz] shall have the benefit of all rights, remedies and **[*5]** redress against the Subcontractor [BT] that the Owner, under the Prime Contract, would have against the Contractor [Weitz]." Further, this section provides, "[t]he provisions of the Subcontract Documents shall be in addition to and not in substitution of any of the provisions of the Prime Contract. The Prime Contract is available for review by the Subcontractor at the Contractor's office." Section 1.7 of the Subcontract provides, "[a]ll defined terms not otherwise defined in the Subcontract Documents are used as defined in the Prime Contract." Section 1.8 defines "Subcontract Documents" to include "the Prime Contract" and includes the following integration language: "The Subcontract Documents together form the contract between the parties thereto, and are as fully a part of the Agreement as if attached thereto or repeated therein. . . . The Subcontract Documents are available for review by the Subcontractor at the Contractor's office."

*HN1* "Generally, incorporation by reference of existing documents produces a single contract which includes the contents of the incorporated papers. Where . . . the signatories execute a contract which refers to another

2011 U.S. Dist. LEXIS 125924, *5

instrument in such a manner as to establish **[\*6]** that they intended to make the terms and conditions of that other instrument a part of their understanding, the two may be interpreted together as the agreement of the parties." *566 New Park Assocs., LLC v. Blardo, 97 Conn. App. 803, 810-11, 906 A.2d 720* (citing *Randolph Constr. Co. v. Kings East Corp., 165 Conn. 269, 275-76, 334 A.2d 464 (1973))*. "The documents incorporated need not be attached to the contract nor signed or initialed unless the contract so requires." Id.

Here, the language of the Subcontract clearly and unambiguously refers to the Prime Contract as part of the contract between Weitz and BT. As stated above, Section 1.8, expressly states that "[t]he 'Subcontract Documents' consist of . . . the Prime Contract" and "[t]he Subcontract Documents together form the contract between the parties." Accordingly, the Court finds that the interest provision in the Prime Contract binds BT, and that provision provides interest at the "legal rate prevailing" in Connecticut.

**HN2** *Conn. Gen. Stat. § 37-3a* provides the prevailing legal rate of prejudgment interest under Connecticut law. [1] See *Milazzo v. Schwartz, 44 Conn. App. 402, 408, 690 A.2d 401 (1997)*. "[I]nterest at the rate of ten per cent a year, and no more, may be recovered **[\*7]** and allowed in civil actions . . . as damages for the detention of money after it becomes payable." *Conn. Gen. Stat. § 37-3a*. The statute sets the maximum rate of interest a court can award, no more than ten percent, but "the trial court will have to decide what the appropriate rate of interest for any such award should be." *Sears, Roebuck and Co. v. Bd. of Tax Review, 241 Conn. 749, 763-66, 699 A.2d 81 (1997)*.

Weitz seeks prejudgment interest at a rate of ten percent (10%) per year. **HN3** "Simply to chose 10.0% as the interest rate because that is the only number referenced in Gen. Stat. *§ 37-3a* is not the proper exercise of judicial discretion." *City of Norwalk v. Barton, No. FSTCV020187554S, 2009 Conn. Super. LEXIS 82,* *2009 WL 323785, at \*11 (Conn. Super. Ct. Jan. 27, 2009)*. Based on recent Connecticut decisions, one in this District and the others in Connecticut Superior Court, this Court exercises its discretion and awards an interest rate of four percent (4%). See also **[\*8]** *Hartford Steam Boiler Grp., Inc. v. SVB Underwriting, Ltd., No. 3:04cv2127 SRU, 2011 U.S. Dist. LEXIS 53743, 2011 WL 1899392, at \*11 (D. Conn. May 19, 2011)* (awarding an interest rate of four percent); *DiLustro v. Pascarella, No. CV106015451S, 2011 Conn. Super. LEXIS 2244, 2011 WL 4424756, at \*4 (Conn. Super. Ct. Sept. 7, 2011)* (applying an interest rate of five percent); *Ulbrich v. Groth, No. X06CV84016022S, 2011 Conn. Super. LEXIS 1946, 2011 WL 3672032, at \*5 (Conn. Super. Ct. July 26, 2011)* (applying an interest rate of seven and one-half percent).

The Court agrees with Weitz that it should use the last date upon which Weitz requested payment for its completion costs—the date of the last change order, March 9, 2005—to begin the interest calculation. The amount owed on this date was $1,287,604. Interest of four percent (4%) per year on this amount, accruing from March 9, 2005 to October 31, 2011 (the day the judgment enters), totals $342,332.86. [2]

**B. Recovery of Attorney's Fees**

It is a well-established principle that **HN4** "[i]n diversity cases, attorney's fees are considered substantive and are controlled by state law." *Bristol Tech., Inc. v. Microsoft Corp., 127 F. Supp. 2d 64, 66 (D. Conn. 2000)* **[\*9]** (quoting *United States v. One Parcel of Prop. Located at 414 Kings Highway, No. 5:91-CV-158 EBB, 1999 U.S. Dist. LEXIS 10522, 1999 WL 301704, at \*4 (D. Conn. May 10, 1999)*); see also *Kaplan v. Rand, 192 F.3d 60, 70 (2d Cir. 1999)*. Connecticut follows the common law "American" rule in assessing the award of attorney fees. Under the "American" rule, "attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception." *Ames v. Comm'r. of*

---

[1]   The Court refers to Conn. Gen. Stat. § 37-3a for an applicable rate of interest; it does not look to the statute to determine whether Weitz is entitled to interest because the Subcontract and Prime Contract expressly provide for interest.

[2]   Interest is calculated as follows:

| | |
|---|---|
| Principal | $1,287,604 |
| Per annum (4%) | $51,504.16 |
| Per Diem (365 days) | $141.11 |
| March 9, 2005 to October 31, 2011 | 2,426 days |
| Total Interest | $342,332.86 |

2011 U.S. Dist. LEXIS 125924, *9

*Motor Vehicles, 267 Conn. 524, 532, 839 A.2d 1250 (2004)*. "A successful litigant is entitled to an award of attorney's fees if they are provided by contract." *Jones v. Ippoliti, 52 Conn. App. 199, 209, 727 A.2d 713 (1999)*; see also *MD Drilling and Blasting, Inc. v. MLS Constr., LLC, 93 Conn. App. 451, 457-58, 889 A.2d 850 (2006)*.

Here, Section 12.1 of the Subcontract provides:

12.1 <u>Attorney's Fees</u>

In the event it shall become necessary for either party to institute legal proceedings against the other party for recovery of any amounts due and owing under the Agreement, it is expressly agreed that the prevailing party in any such action shall be entitled to recover from the non-prevailing party all costs, including reasonable attorney's fees, of pre-suit **[*10]** collection attempts, suit, and post judgment or settlement collection including those incurred on appeal.

Likewise, Section 13.4.3 of the Prime Contract, which the Court has found was integrated into the Subcontract, provides: "In the event of any litigation between the parties, the prevailing party shall be entitled to reimbursement for all reasonable attorneys' fees, expert fees, court costs, and all other third-party costs of the litigation incurred by the prevailing party."

*HN5* Connecticut courts determine the reasonableness of fees by reviewing the twelve factors cited in *Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir. 1974)*. See, e.g., *Ernst v. Deere & Co., 92 Conn. App. 572, 576, 886 A.2d 845 (2005)*; *Home Funding Grp., LLC v. Kochmann, No. 3:06CV1234 (HBF), 2008 U.S. Dist. LEXIS 70809, 2008 WL 4298325, at *5 (D. Conn. Sept. 18, 2008)*. These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) **[*11]** the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. See *Johnson, 488 F.2d at 717-19*. In determining

reasonableness, "[t]he court ... [is] not required to consider each of the twelve factors individually, but instead [is] required to consider the full panoply of factors and not base its decision solely on one of the elements." *Riggio v. Orkin Exterminating Co., Inc., 58 Conn. App. 309, 318, 753 A.2d 423 (2000)*.

Weitz seeks attorney's fees in the amount of $394,772.00 paid to Murtha Cullina LLP and $33,152.25 paid to Ciulla & Donofrio. [3] In support of its application, Weitz's counsel submitted detailed billing records and an affidavit listing attorney billing rates. Federal Insurance Company's counsel also submitted detailed billing records and an affidavit.

1. <u>Murtha Cullina Fees</u>

BT contends that Weitz's claim for the Murtha Cullina attorney's fees does not distinguish between the fees attributable **[*12]** to the litigation of Weitz's counterclaim and the fees attributable to the defense of BT's claims. BT argues that the Subcontract language limits the award of attorney's fees to those attributable to the recovery of the prevailing party's claim and, therefore, Weitz may only recover the attorney's fees attributable to the recovery of its breach of contract counterclaim. BT cites one Connecticut decision to support this proposition, see *Total Recycling Services of CT, Inc. v. Connecticut Oil Recycling Services, LLC, 129 Conn. App. 296, 20 A.3d 716 (2011)*. This decision, however, does not address the issue of whether defendant must "distinguish between fees incurred in prosecuting the successful breach of contract claims and defending plaintiffs' unsuccessful breach of contract claims." See *id. at 302 n.3* (noting that the court would not reach this issue because the trial court did not address it). Instead, in <u>Total Recycling Services</u>, the defendant sought attorney's fees on its counterclaims for breach of three separate contracts, but only two of the three contracts contained provisions allowing for the recovery of attorney's fees. *Id. at 299*. In its motion for attorney's fees, the defendant "did **[*13]** not distinguish the items of work on the separate contracts with respect to which the defendant successfully counterclaimed." Id. The trial court refused to award any fees to the defendant because it concluded that it was "necessary for the defendant to identify which reasonable attorney's fees were incurred in prosecuting its breach of contract counterclaim with regard to the contracts that specifically provide for attorney's fees." Id.

---

[3]   Murtha Cullina represented Weitz and Ciulla & Donofrio represented Federal Insurance Company in this action.

Here, under the Subcontract and the Prime Contract, the prevailing party is entitled to reasonable attorney's fees in a suit for recovery of any amounts owed under the Subcontract. The parties agree that this provision entitles Weitz to attorney's fees incurred in furtherance of its breach of contract counterclaim. The parties disagree over whether this provision entitles Weitz to attorney's fees incurred in defending BT's claims for judgment on a bond pursuant to *Conn. Gen. Stat. § 49-33* (Count One), breach of contract (Counts Two and Three), breach of the covenant of good faith and fair dealing (Count Four), and unjust enrichment (Count Five).

The U.S. Court of Appeals for the Second Circuit has dealt with this issue in *Diamond D Enterprises USA, Inc. v. Steinsvaag, 979 F.2d 14, 18 (2d Cir. 1992)*. **[*14]** In Diamond, the plaintiff sued the defendant for breach of a franchise agreement and the defendant asserted three affirmative defenses and eight counterclaims. Similar to this case, the counterclaim(s) arose out of a common nucleus of facts. The jury found for the plaintiff and rejected the counterclaims, and the plaintiff then moved for attorney's fees under the franchise agreement, which was governed by New York law. The defendant argued, similar to BT here, that the plaintiff was not entitled to recover attorney's fees for defending against the counterclaims. The Second Circuit rejected this argument and held that *HN6* it is "the nature—not the nomenclature—of a claim [that] is controlling." Id. "Thus, where a fee applicant recovers on a claim subject to a contractual attorney's fee provision and in the process litigates a counterclaim on which he must prevail in order to recover on his claim, then the fee applicant is entitled to his attorney's fees for both the claim and the counterclaim." Id. (citations omitted). This reasoning has been followed in the U.S. District Court for the District of Connecticut and in the Connecticut Superior Court, applying Connecticut law. See *Rand-Whitney Containerboard L.P. v. Montville, Civ. No. 3:96CV413 (HBF), 2006 U.S. Dist. LEXIS 75870, 2006 WL 2839236, at *14* **[*15]** (D. Conn. Sept. 5, 2006) ("The law in Connecticut clearly follows the analysis applied in Diamond."); *J.P. Sedlak Assocs. v. Conn. Life & Cas. Ins. Co., No. 3:98CV145 DFM, 2000 U.S. Dist. LEXIS 18947, 2000 WL 852331, at *5-6 (D. Conn. Mar. 15, 2000); Atlantic Pipe Corp. v. Quadrangle LP, No CV 87-0336982, 1993 Conn. Super. LEXIS 2860, 1993 WL 454203, at *2 (Conn. Super. Ct. Oct. 27, 1993).* "Where a party with a contractual right to recover legal fees must incur attorney's fees to preserve his contractual rights and interest, he may recover those legal fees and damages." *Atlantic Pipe, 1993 Conn. Super. LEXIS 2860, 1993 WL 454203, at *2.* These decisions explained that if the defendants had successfully prosecuted their counterclaims, the plaintiffs' rights of recovery on the contracts would have been extinguished. Thus, the courts found that the plaintiffs were entitled to attorney's fees for defending against such counterclaims.

In this case, had BT successfully prosecuted its claims, Weitz's right of recovery on its breach of contract counterclaim would have been extinguished. Because Weitz's right of recovery under the Subcontract was necessarily tied into a successful defense of BT's claims, Weitz is entitled to fees for both the time spent litigating its counterclaim and its defense of BT's **[*16]** claims. Further, the time that Weitz spent successfully litigating its counterclaim was intertwined with the time spent in defense of BT's claims because BT's claims and Weitz's counterclaim arise from a common nucleus of facts. Because the same factual circumstances led to both Weitz's and BT's breach of contract claims, and BT's others claims are dependent on its breach of contract claim, Weitz is entitled to all of its reasonable attorney's fees.

Next, the Court must determine whether the fees incurred by Weitz are reasonable. Counsel for Weitz asserts that the legal fees are reasonable in light of the fact that BT brought this action for a sum in excess of $3,450,000. BT does not challenge the amount of attorney's fees submitted by Murtha Cullina on the basis of unreasonableness. Taking this into account, and based on the *Johnson* factors, the Court finds that Weitz is entitled to the full amount it seeks in attorney's fees paid to Murtha Cullina, totaling $394,772.00.

### 2. Ciulla & Donofrio Fees

BT further argues that Weitz is not entitled to the attorney's fees it paid to Ciulla & Donofrio, counsel for Federal Insurance Company, because (1) Weitz chose to incur the costs of the bond **[*17]** rather than pursuing its statutory remedy to seek discharge of the mechanic's lien; (2) the fees do not relate to the recovery of the prevailing party's claim; and (3) no statute or contractual provision exists to waive the American rule on attorney's fees in this context.

In April of 2004, BT filed a mechanic's lien against the construction project, and Weitz substituted a bond in lieu of the mechanic's lien in the sum of $3,877,211.20,

with Federal Insurance Company as surety. The only claim against Federal Insurance Company in this action is Count One, for judgment on the bond pursuant to *Conn. Gen. Stat. § 49-33 et seq.* Because the Court found that Weitz terminated BT for cause, and therefore BT was not entitled to recover damages under the Agreement, it found that BT could not recover on the bond.

Federal Insurance Company was not a party to the contract between Weitz and BT and therefore it is not entitled to fees under Section 12.1 of the Subcontract. Although the Court finds that Weitz is entitled to the attorney's fees it incurred in litigating its counterclaim and defending against BT's claim, the Court finds that Weitz is not entitled to the fees incurred by Ciulla & Donofrio **[*18]** in defending Federal Insurance Company against Count One of the complaint. At oral argument, counsel for Weitz conceded that the fees incurred by Federal Insurance Company were entirely defensive and therefore not intertwined with the pursuit of Weitz's counterclaim. Thus, the Court denies Weitz's request for the Ciulla & Donofrio attorney's fees.

### C. Recovery of Costs

Weitz seeks costs pursuant to Section 12.1 of the Subcontract in the amount of $123,049.75. [4] Weitz's counsel submits an itemization of costs in support of its claim, specifying the following costs: trial transcripts; deposition transcripts; expert witness fees; trial witness travel and subsistence costs; copying costs; premiums paid upon the bond; removal from state court filing fee; and costs incurred by Ciulla & Donofrio.

BT argues that Weitz's itemization of costs does not distinguish between those costs incurred in the successful prosecution of Weitz's counterclaim (for which reimbursement would be allowed) and those costs incurred in the defense of BT's claims (for which it argues no contractual basis exists to seek reimbursement). BT claims that **[*19]** much of the deposition transcript costs, the bond premium costs, and the Ciulla & Donofrio costs were not incurred in litigation of Weitz's counterclaim. BT also argues that the Subcontract does not allow for the recovery of expert witness fees. Further, BT asks the Court to deny Weitz's claim for costs and allow Weitz to file a taxation of costs pursuant to *28 U.S.C. § 1920*, which would exclude much of the expert witness fees and some other costs.

Based on the discussion above, the Court finds that Weitz does not need to distinguish its costs between costs incurred in litigating its counterclaim and costs incurred in defending against BT's claims. At issue, however, is whether Weitz is entitled to "all costs" under the Subcontract and Prime Contract or whether the costs should be limited to those taxable as costs under *Local Rule 54 of the District of Connecticut*, *Fed. R. Civ. P. 54(d)*, and *28 U.S.C. § 1920*.

*HN7* These rules provide the framework for determining the proper award of statutory costs, available to the prevailing party in all cases, but do not apply if a contractual provision authorizes costs and expenses, as part of an attorney's fee award. **[*20]** *Austrian Airlines Oesterreichische Luftverkehrs AG v. UT Fin. Corp., No. 04 Civ. 3854 (LAK)(AJP), 2008 U.S. Dist. LEXIS 90985, 2008 WL 4833025, at *8 (S.D.N.Y. Nov. 3, 2008)*; see, e.g., *Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U.S. 437, 445, 107 S. Ct. 2494, 96 L. Ed. 2d 385 (1987)* ("[A]bsent explicit statutory or contractual authorization for the taxation of the expenses of a litigant's witness as costs, federal courts are bound by the limitations set out in *28 U.S.C. § 1821* and *§ 1920*."); *Rangolan v. County of Nassau, 370 F.3d 239, 250 (2d Cir. 2004)* ("[T]he district court has no discretion to award costs not authorized by statute or contractual provision." (citations omitted)).

Here, the contractual attorney's fee provision in the Subcontract and Prime Contract clearly provides for "all costs, including reasonable attorney's fees" and "all reasonable attorney's fees, expert fees, court costs, and all other third-party costs of the litigation," rendering *Local Rule 54* and *28 U.S.C. § 1920* inapplicable. *UT Fin. Corp., 2008 U.S. Dist. LEXIS 90985, 2008 WL 4833025, at *9*; see also *Air Brake Sys., Inc. v. TUV Rheinland of N. Am., Inc., No. 3:07-cv-01364 (CSH), 2010 U.S. Dist. LEXIS 56746, 2010 WL 2388439, at *1 (D. Conn. June 9, 2010)* (awarding the defendant *all* costs under the parties' contract because the contract provided that "in **[*21]** the event of any legal action, the prevailing party shall be entitled to recover from the other party all costs, expenses and reasonable attorney's fees, expert witness fees, and any other costs incurred to bring or defend such action"); *Ursa Minor Ltd. v. Aon Fin. Prods., Inc., No. 00 Civ. 2474 (AGS), 2001 U.S. Dist. LEXIS 7455, 2001 WL 1842042, at *9 (S.D.N.Y. May 30, 2001)* (awarding costs under contractual attorney's fee provision, including

---

[4]    The costs incurred by Ciulla & Donofrio are included in this amount.

"photocopying, printing, computerized legal research, travel expenses, long distance telephone charges, staff overtime, and courier fees").

The Court finds that Weitz is entitled to its requested costs, including the expert witness fees, as a component of its contractual attorney's fees award. Although the Subcontract does not specify expert fees, the Prime Contract does, and therefore this Court finds that Weitz is entitled to such costs.

The Court, however, does not award the costs of Ciulla & Donofrio, totaling $4,179.74, because its costs were incurred in defending Federal Insurance Company, not Weitz, and Federal Insurance Company was not a party to the Subcontract or Prime Contract. In sum, the Court awards Weitz a total of $118,870.01 in costs.

**IV. Conclusion**

For the **[*22]** reasons set forth above, the defendant's motion for attorney's fees [Dkt. # 150] is GRANTED in part. BT shall pay Weitz $1,287,604 in damages plus $342,332.86 in prejudgment interest plus $513,642.01 in attorney's fees and costs, in accordance with this ruling.

The Clerk is ordered to enter judgment in favor of the defendants and close this case.

SO ORDERED this 31st day of October 2011, at Hartford, Connecticut.

**/s/ Christopher F. Droney**

**CHRISTOPHER F. DRONEY**

**UNITED STATES DISTRICT JUDGE**

● Warning
As of: April 29, 2016 3:42 PM EDT

# *Rand-Whitney Containerboard L.P. v. Montville*

United States District Court for the District of Connecticut

September 5, 2006, Decided ; September 5, 2006, Filed

CIV. NO. 3:96CV413 (HBF)

**Reporter**
2006 U.S. Dist. LEXIS 75870; 2006 WL 2839236

RAND-WHITNEY CONTAINERBOARD LIMITED PARTNERSHIP, PLAINTIFF v. TOWN OF MONTVILLE and TOWN OF MONTVILLE WATER POLLUTION CONTROL AUTHORITY, DEFENDANTS

**Subsequent History:** Motion denied by, Motion for new trial denied by, Remittitur denied by *Rand-Whitney Containerboard L.P. v. Town of Montville, 2007 U.S. Dist. LEXIS 52301 (D. Conn., July 19, 2007)*

**Prior History:** *Rand-Whitney Containerboard L.P. v. Town of Montville, 2005 U.S. Dist. LEXIS 22799 (D. Conn., Sept. 29, 2005)*

## Core Terms

costs, entries, reduction, attorney's fees, defendants', attorneys, vague, counterclaims, billed, rates, copying, issues, parties, services, preparation, travel, spent, associates, courts, prevailing rate, law firm, deducted, electronic, totaling, travel time, indemnification, paralegals, prevailing, documents, expenses

## Case Summary

### Procedural Posture

Plaintiff manufacturer sued defendants, a town and its water pollution control authority, alleging breach of a water supply agreement for the operation of a paper manufacturing plant in the town. A jury awarded the manufacturer recovery. After the court granted the manufacturer's motion for entitlement to recover fees and costs, the manufacturer filed an application detailing the fees and costs it sought. Defendants contested the application.

### Overview

The manufacturer sought $ 3,831,633 in attorney's fees and $ 474,650 in costs for a lawsuit involving voluminous discovery, more than 80 motions, and two trials over nearly a 10 year period. Although recovery of fees and costs was provided in the parties' contract, defendants opposed the application as excessive and unreasonable. The court found that the manufacturer's counsel was entitled to compensation for defending against defendants' counterclaims, which were integral to the lawsuit, but it applied a rate reduction as to some of the manufacturer's attorneys. There were some vague billing entries, which warranted a three percent reduction. The court also found that a five percent reduction was appropriate as some of the hours billed were excessive, redundant, or otherwise unnecessary. In accordance with circuit practice, the court reduced the travel hours request by 50 %. In addition, the court awarded the manufacturer's counsel electronic research costs, but reduced its request for in-house copying in half as unreasonable. Coding and scanning costs and mediation costs were not recoverable, and the court reduced the amount sought for miscellaneous travel and room-related costs.

### Outcome

The court awarded fees of $ 2,668,691 and costs of $ 401,058.

## LexisNexis® Headnotes

Civil Procedure > Preliminary Considerations > Federal & State Interrelationships > Erie Doctrine

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > General Overview

**HN1** In diversity cases, attorney's fees are considered substantive and are controlled by state law.

Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > American Rule

**HN2** Connecticut follows the common law "American" rule in assessing the award of attorney fees. Under the "American" rule, attorneys fees and ordinary expenses

and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception. A successful litigant is entitled to an award of attorneys fees if they are provided by contract.

> Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > American Rule

> Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN3* Connecticut law has established that, where there is a contractual provision for attorney's fees, the term "reasonable" is implied by law. There must be an evidentiary showing of reasonableness, with an award to be based on a number of considerations not limited to the actual fee incurred by the party. Attorney's fees should not be based on the costs of the successful party but should be based on the market value of the legal services rendered.

> Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > American Rule

> Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN4* Connecticut law requires an evidentiary showing of reasonableness where recovery is sought under a contract clause which provides for payment of reasonable attorney's fees.

> Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > American Rule

> Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN5* It is a firmly established principle under Connecticut law that there is an undisputed requirement that the reasonableness of attorney's fees and costs must be proven by an appropriate evidentiary showing. Courts have a general knowledge of what would be reasonable compensation for services which are fairly stated and described. Courts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees. However, courts may not rely on their general knowledge alone. Evidence, in addition to a court's knowledge, is necessary to support a finding of reasonableness. While courts have been careful not to limit the contours of what particular factual showing may suffice a threshold evidentiary showing is a prerequisite to an award of attorney's fees.

> Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

> Evidence > Burdens of Proof > Allocation

*HN6* Under prevailing Connecticut law, the burden of proving the reasonableness of an attorney's fee application rests with the moving party. A fee application must have sufficient evidentiary support so as to afford a non-moving party a reasonable opportunity to object. If the non-moving party fails to object, he/she will be considered to have effectively acquiesced in the request, and consequently, on appeal will not be heard to complain about that request. However, the burden does not shift to the non-moving party to present countervailing evidence of the application's unreasonableness. Plaintiff retains the burden to prove the reasonableness of the fees it seeks.

> Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN7* Connecticut courts determine the reasonableness of fees by reviewing 12 factors. These 12 guidelines, which essentially parallel Conn. R. Prof. Conduct 1.5(a), include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee for similar work in the community; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

> Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN8* In determining reasonableness of fees, a court is not required to consider each of the 12 factors individually, but instead is required to consider the full panoply of factors and not base its decision solely on one of the elements.

> Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN9* Under Connecticut law, absent a showing of specialized expertise, an attorney who handles a case in Connecticut is subject to the prevailing market rates in Connecticut.

Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > American Rule

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

**HN10** It is the nature--not the nomenclature--of a claim that is controlling. Where a fee applicant recovers on a claim subject to a contractual attorney's fee provision and in the process litigates a counterclaim on which he must prevail in order to recover on his claim, then the fee applicant is entitled to his attorney's fees for both the claim and the counterclaim.

Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > American Rule

**HN11** Where a party with a contractual right to recover legal fees must incur attorney's fees to preserve his contractual rights and interest, he may recover those legal fees and damages.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

**HN12** Counsel applying for fees are not required to record in great detail how each minute of their time was expended. However, counsel should at least identify the general subject matter of his time expenditures. Specifically, counsel are obliged to keep and present records from which a court may determine the nature of the work done, and the need for and the amount of time reasonably required; where adequate contemporaneous records have not been kept, a court should not award the full amount requested.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

**HN13** A court may refuse to award fees based on time entries that provide a vague description of the work performed. Entries stating such vague references as "review of file," "review of correspondence," "research," "conference with client," and "preparation of brief" do not provide an adequate basis upon which to evaluate the reasonableness of the services and hours expended on a given matter.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

**HN14** A court may attempt to clarify vague entries in a fee application by looking at the context of adjacent entries. However, courts have stated that it is neither

practical nor desirable to review each entry in a massive case. Instead, the United States Court of Appeals for the Second Circuit has approved a percentage reduction method as a practical means of trimming fat from a fee application.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

**HN15** As cases may be overstaffed, and the skill and experience of lawyers vary widely counsel for a prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary. In that vein, an award of attorney fees is not to serve as full employment or continuing education programs for lawyers and paralegals. A trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

**HN16** It is well recognized that when more lawyers than are necessary are assigned to a case, the level of duplication of effort increases. On the other hand, courts should be mindful of the fact that complex modern litigation may require multiple attorneys to handle even seemingly simple tasks.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

**HN17** Most courts agree that percentage reductions are proper when determining an appropriate decrease in hours for excessive hours/overstaffing. In many cases in which prevailing parties seek an award of attorneys fees, it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application. For that reason, many courts have endorsed percentage cuts as a practical means of trimming a fee application.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

**HN18** Most courts allow counsel to recover the travel time spent working and preparing a case. Travel time spent resting or not working is not appropriately billed at the full rate. The United States District Court for the District of Connecticut has adopted a 50 % reduction method. The United States Court of Appeals for the Second Circuit has affirmed the 50 % reduction method. Connecticut state courts have recognized this approach.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

Civil Procedure > ... > Costs & Attorney Fees > Costs > General Overview

**HN19** The United States Court of Appeals for the Second Circuit has adopted the line of reasoning holding that the use of online research services likely reduces the number of hours required for an attorney's manual search, thereby lowering the lodestar, and that in the context of a fee-shifting provision, the charges for such online research may properly be included in a fee award.

Civil Procedure > ... > Costs > Costs Recoverable > Reproduction Costs

**HN20** A plaintiff is entitled to recover reasonable out-of-pocket expenses that were incurred during the litigation and are normally charged to a fee-paying client. Recoverable expenses include those items not associated with an attorney's routine overhead, such as duplicating, postage and telephone costs. Whether photocopying costs are recoverable depends, in part, on whether a fee shifting statute or local rule allows for such recovery.

Civil Procedure > ... > Costs & Attorney Fees > Costs > General Overview

**HN21** Coding and scanning documents into software for both case management and trial presentation are administrative costs. Administrative costs are considered an attorney's overhead and are not recoverable.

**Counsel:** **[*1]** For Rand-Whitney Containerboard Limited Partnership, Plaintiff: Andrew C. Phelan, Daniel L. Goldberg, Bingham McCutchen, Boston, MA; Ann M. Siczewicz, Ben M. Krowicki, Brian R. Hole, Bingham McCutchen, Hartford, CT.

For Town of Montville, Defendant: Andrew J. Brand, Suisman, Shapiro, Wool, Brennan, Gray & Greenberg, New London, CT; Christopher F. Girard, Robinson & Cole, Hartford, CT US; Dina S. Fisher, James A. Wade, Robert Stephen Melvin, Robinson & Cole, Hartford, CT; Paul M. Geraghty, Geraghty & Bonnano, LLC, New London, CT; Susan Mara Phillips, Susan M. Phillips, Attorney-at-Law, LLC, New London, CT.

For Montville Water Pollution Control Authority, Defendant: Christopher F. Girard, Robinson & Cole,

Hartford, CT US; Dina S. Fisher, James A. Wade, Robert Stephen Melvin, Robinson & Cole, Hartford, CT; Paul M. Geraghty, Geraghty & Bonnano, LLC, New London, CT.

For Dept of Envir Protection, Notice: Carmel A. Motherway, Attorney General's Office, Hartford, CT.

For Gary Leavitt, Witness: Gail Suzanne Shane, Attorney General's Office, Hartford, CT.

For Roy Frederickson, Bill Hogan, Witness: Gail Suzanne Shane, Attorney General's Office, Hartford, CT.

For Town **[*2]** of Montville, Counter Claimant: Andrew J. Brand, Suisman, Shapiro, Wool, Brennan, Gray & Greenberg, New London, CT; Dina S. Fisher, Robert Stephen Melvin, Robinson & Cole, Hartford, CT; Paul M. Geraghty, Geraghty & Bonnano, LLC, New London, CT; Susan Mara Phillips, Susan M. Phillips, Attorney-at-Law, LLC, New London, CT.

For Montville Water Pollution Control Authority, Counter Claimant: Barbara M. Quinn, Andrews Cosgrove Young, New London, CT; Dina S. Fisher, Robert Stephen Melvin, Robinson & Cole, Hartford, CT; Paul M. Geraghty, Geraghty & Bonnano, LLC, New London, CT.

For Rand-Whitney Containerboard Limited Partnership, Counter Defendant: Andrew C. Phelan, Daniel L. Goldberg, Bingham McCutchen, Boston, MA; Ann M. Siczewicz, Ben M. Krowicki, Bingham McCutchen, Hartford, CT.

**Judges:** HOLLY B. FITZSIMMONS, UNITED STATES MAGISTRATE JUDGE.

**Opinion by:** HOLLY B. FITZSIMMONS

# Opinion

RULING ON PLAINTIFF'S APPLICATION FOR INDEMNIFICATION FOR FEES AND COSTS

I. INTRODUCTION

While this case has been extensively litigated over the past ten years, the end of this protracted litigation is in sight, at least in this Court. The impassioned controversy culminates with plaintiff's application **[*3]** for fees and costs.

On November 16, 2005, the plaintiff, Rand-Whitney Containerboard Limited Partnership, filed an application for indemnification for fees and costs [Doc. # 508], together with supporting exhibits contained in five separate appendices. This application is based upon the Court's finding that the defendants breached the Supply Agreement, and is made in accordance with the Court's September 29, 2005 ruling which held that plaintiff was entitled to make an application for attorney's fees and costs pursuant to Section 11.1 of the Supply Agreement. [Doc. # 502]. On February 2, 2006, the defendants, Town of Montville and Town of Montville Water Pollution Control Authority, filed an opposition to plaintiff's Application for Indemnification for Fees and Costs. [Doc. # 516]. On February 15, 2006, plaintiff responded. [Doc. # 522]. Not surprisingly, defendants filed a motion to file a sur-reply in response to plaintiff's response to defendants' opposition to plaintiff's application. [Doc. # 523]. As the law had been adequately addressed, the Court denied defendants' motion and requested that the parties focus their energy on narrowing the issues and arguments to be **[*4]** presented to the Court at the hearing on the application for fees and costs. [Doc. # 526].

On May 16, 2006, a hearing was conducted on plaintiff's application for fees and costs and defendants' opposition to plaintiff's application. For the reasons that follow, plaintiff's application [Doc. # 508] is **GRANTED** to the extent set forth below.

II. BACKGROUND

The Court assumes familiarity with the background facts of this case and will discuss only those facts essential to the disposition of this application for fees and costs.

This case was filed in 1996, and arose from a dispute over agreements entered into by the plaintiff, Rand-Whitney Containerboard, and the defendants,

the Town of Montville (the "Town") and the Town of Montville Water Pollution Control Authority (the "Authority"), to operate a paper manufacturing plant in the Town. Plaintiff alleged, *inter alia,* that defendants breached certain sections of the Water Supply Agreement. Plaintiff's complaint also included a count for indemnification under Section 11.1 of the Supply Agreement. [1]

**[*5]**  On summary judgment, the Court determined as a matter of law that the defendants breached the Water Supply Agreement, and that the defendants had several defenses to liability that would require a trial. See Ruling on Cross Motions For Summary Judgment, and Plaintiff's Motion For Order Discharging it from Settlement Bond Obligations (March 4, 2002). [Doc. # 106]. A jury trial was held from July 15 through August 9, 2002. The first jury found in favor of defendants on the fraud counterclaim, and thus never reached the indemnification issue.

Distinct from the issue of the breach of the Supply Agreement, the first jury found that the Town breached the Service Fee provision of the Modification Agreement by overcharging Rand-Whitney and awarded Rand-Whitney damages of $ 344,872 on that claim.

On September 30, 2003, the Court set aside the jury's verdict on the fraud counterclaim, ruling that there was insufficient evidence to support its finding. See Ruling on Plaintiff's Motion for Judgment, or, in the Alternative, for a New Trial (September 30, 2003). [Doc. # 316]. As defendants had no remaining defenses to liability, a second trial on plaintiff's damages and defendants' **[*6]** defenses to damages was held in May, 2005. The second jury delivered a verdict in favor of plaintiff in the amount of $ 10 million. As part of their deliberations, the Court asked the second jury, by interrogatory, to determine whether Section 11.1 of the Water Supply Agreement applied to "claims between Rand Whitney

---

[1]   Section 11.1(a) provides, in relevant part, that:

each party shall indemnify . . . the other party . . . against all damages, losses or expenses suffered or paid as a result of any and all claims, demands, suits penalties, causes of action, proceedings, judgments, administrative and judicial orders and liabilities (including reasonable counsel fees incurred in any litigation or otherwise) assessed, incurred or sustained by or against such other party . . . with respect to or arising out of . . . any breach by the indemnifying party of its warranties, representations, covenants or agreements . . ., including . . . the failure to deliver Treated Water which complies with the volume and quantity standards set forth [in the Supply Agreement] . . .

and Montville." [Jury Instruction 5]. [2] The jury's response to this question was understood by the parties to be determinative on the question of whether attorneys' fees and costs could be recovered by a party to this litigation. The jury found that Section 11.1 did apply to claims between Rand-Whitney and Montville.

[*7]   Throughout this entire process, the parties participated in voluminous discovery practice, including the production of approximately 75,000 pages of documents, an estimated 18 depositions, and preparation of approximately 19 discovery requests and responses. Additionally, the complex nature of the claims, as well as the high stakes and the thoroughness and creativity of counsel, resulted in the filing of over eighty (80) motions, both dispositive and non-dispositive. These motions led to over 40 substantive rulings, as well as numerous rulings and orders on non-substantive issues. This contentious litigation is evidenced by the fifty-four page docket sheet which contains 530 docket entries to date.

Having prevailed on the breach of the Supply Agreement claim, and pursuant to Sections 11.1 and 11.4 [3] of the Supply Agreement, plaintiff filed a Motion for Entitlement to Recover Costs and Fees on June 15, 2005. [Doc. # 454]. After considering numerous oppositions, replies, and sur-replies, the Court granted plaintiff's motion for entitlement to recover fees and costs on September 29, 2005. [Doc. # 502].

[*8]   On November 16, 2005, plaintiff filed this application for indemnification for fees and costs. In its application, plaintiff seeks $ 3,831,633 in attorney fees and $ 474,649.91 [4] [*9] in costs. In support of its application, plaintiff submitted five appendices. A sixth appendix was attached to plaintiff's reply to defendants' opposition. [5] Plaintiff's fees include billable hours for approximately twenty-five attorneys and paralegals. The majority of the billable hours, however, are attributable to the senior litigation partner, Dan Goldberg; junior partners, Ben Krowicki and Andrew C. Phelan; three associates, Susan Kim, Ann Siczewicz, and Brian Hole;

---

[2]   The Court instructed the jury:

"You must determine what the parties intended by this provision, and specifically whether, at the time of the contract, the parties intended it to apply to claims between Rand-Whitney and Montville. Intent is determined from the language used in the agreement, interpreted in light of the surrounding circumstances, and in light of the motives of the parties and the purposes which they sought to accomplish . . . ."

The court also instructed the jury on giving a "a fair and reasonable construction of the written words;" construing Section 11.1 in light of the other contract provisions; the parole evidence rule; "reading each provision in light of the other provisions, and giving effect to every provision if it is possible to do so, so that the contract as a whole makes sense;" integration clauses; the circumstances surrounding the drafting of the term ("when choosing among reasonable meanings of an ambiguous agreement or term, where both parties have not had input into the drafting, you may choose the meaning that operates against the party that supplied the words you are considering. This may not apply when the contract terms have been negotiated. It is up to you to decide what significance, if any, to attach to any evidence you heard about how this provision came into being."). Finally, the court instructed the jury that, "[d]epending on your finding, the court will determine what amount is due Rand-Whitney under Section 11.1." Jury Charge.

[3]   Section 11.4(a) states, in pertinent part, that:

Except as set forth in Section 11.4(b), in the event that party is obligated to indemnify and hold the other Party . . . harmless under Section 11.1 hereof, the amount owing to the indemnified party will be the amount of such Party's actual out-of-pocket loss net of any insurance or other recovery.

[4]   Plaintiff's original claim for costs totaled $ 474,699. However, plaintiff conceded that deductions from its Hotel and Travel Costs were appropriate for three expenses inadvertently submitted as costs, namely: 1) a $ 36.93 movie charge; 2) a $ 10.65 gift shop charge; and 3) a $ 1.48 stamp charge. Phelan's Second Aff. at 6.

[5]   The First Appendix contains an affidavit of Attorney Andrew C. Phelan, a copy of the court docket sheet, and several letters from plaintiff's counsel to the Court. The Second Appendix is a document containing line-by-line billing entries for plaintiff's 312-page bill, with information such as the date, name of the attorney performing the work, description of the work, the time charged, and the billing rate. The Third Appendix consists of three volumes of supporting documentation for plaintiff's costs. The Fourth Appendix contains a sampling of the voluminous discovery requests and responses prepared and exchanged between the parties. The Fifth Appendix contains forty (40) of the Court's more significant rulings in this case.

2006 U.S. Dist. LEXIS 75870, *9

and two paralegals, Gina Palmieri and Melissa Brennan. In preparing its fee application, plaintiff represents that it either reduced hours or eliminated hours for matters which were not covered by the indemnification agreement, such as: "Beloit [issues], noise disputes, tax issues, Secretary of State filings, Stone Container, arbitration preparation work, Service Fee overcharges, failure to provide Capacity Report required by the Treatment Agreement, and DEP enforcement matters". [6] Phelan Aff. at 6.

 [*10]  Defendants do not attempt to relitigate plaintiff's entitlement to fees and costs. Instead, defendants oppose plaintiff's application by arguing that it is both excessive and unreasonable. Specifically, defendants argue that plaintiff's application for fees must be reduced on five grounds: 1) that plaintiff is not entitled to compensation for defending against defendants' counterclaims for fraudulent inducement/misrepresentation, breach of covenant of good faith and fair dealing, breach of contract, Connecticut Unfair Trade Practices Act ("CUTPA"), quantum meruit, and nuisance/violation of ordinances and regulations (the "Diamond Reduction"); [7] 2) as plaintiff's attorneys fees are "excessively high", an excessive rate reduction should apply; 3) as a number

of plaintiff's billing entries are inadequately vague, a vagueness reduction is proper; 4) a deduction for excessive time/overstaffing by plaintiff's counsel is necessary; and 5) a 5% reduction is necessary to balance against plaintiff's improper charge for travel time. From plaintiff's $ 3,831,633 in fees, the defendants seek a total reduction of $ 2,794,970, which includes:

1) a Diamond Reduction of $ 1,228,353;

2) [*11] an excessive rate reduction of $ 1,307,458;

3) a 10% reduction for vagueness totaling $ 129,579;

4) a 5% excessive hours/overstaffing reduction totaling $ 64,790; and

5) a 5% reduction for travel costs totaling $ 64,790.

Defendant concludes that the Court should grant plaintiff's application for attorney's fees in the amount of $ 1,036,633.

Plaintiff also seeks costs in the amount of $ 474,649.91. A specific breakdown of these costs includes:

| Deposition Transcripts - | $ 40,649.17 |
| Third-Party Copy Services - | $ 49,761.36 |
| Electronic Research - | $ 137,107.95 |
| Travel & Hotel Costs - | $ 69,487.66 |
| Third Party Professional Services - | $ 25,020.30 |
| In-House Photocopying - | $ 78,254.02 |
| Expert Costs - | $ 74,369.59 |

Plaintiff represents that it deducted $ 27,571.02 for costs incurred prior [*12] to April 1988, as the underlying invoices could not be located. Phelan Aff. at 19.

Defendants object to certain costs, arguing that: 1) plaintiff is not entitled to recover the cost of electronic research ($ 137,107.95); 2) plaintiff's copying costs --

The Sixth Appendix, attached to plaintiff's response to defendants' opposition, contains a Second Affidavit of Attorney Phelan. The Sixth Appendix also contains excerpts of fee petitions submitted to bankruptcy courts in Massachusetts, Connecticut, and New York. Petitions submitted to these bankruptcy courts by defense counsel's law firm are part of this Appendix.

[6]   At the hearing, the Court asked Attorney Phelan whether he kept track of the number of hours eliminated from the bill. Attorney Phelan stated that he tracked partial deductions but did not track instances where hours were completely eliminated. From plaintiff's itemized submission, it appears the partial deductions total approximately 271 hours.

[7]   This terminology was created and utilized by the defendants based on the case of Diamond D Enterprises USA, Inc. v. Steinsvaag, 979 F.2d 14 (2d Cir. 1992).

both in-house and by third parties -- are administrative costs and, therefore, should be reduced by a total of $ 103,698, or, alternatively, an across the board reduction of 75% should be applied; 3) plaintiff's coding costs of $ 18,007 are also an administrative cost and should be disallowed; 4) plaintiff should bear its own costs of mediation totaling $ 4,467.29; and 5) plaintiff's travel costs should not include various items such as the car rental, supplies, and laundry, and, therefore, should be reduced by $ 5,332.35. At the hearing, defendants' counsel conceded that an error occurred when challenging plaintiff's cost for the rental of banquet rooms. [8] Originally, defendants sought a reduction of $ 7,912 for the rental of these rooms. During the hearing, defense counsel stated that the room rental reduction sought was actually in the amount of $ 4,728. In total, defendants seek a reduction in costs of $ 268,837, conceding a total **[*13]**  costs award of $ 205,862.00.

III. DISCUSSION

A. Standard of Review

It is a well-established principle that *HN1* "[i]n diversity cases, attorney's fees are considered substantive and are controlled by state law." *Bristol Tech., Inc. v. Microsoft Corp., 127 F. Supp. 2d 64, 66 (D. Conn. 2000)* (quoting *One Parcel of Property Located at 414 Kings Highway, 1999 U.S. Dist. LEXIS 10522, No. 5:91-CV-158, 1999 WL 301704, at \*4 (D. Conn. May 11, 1999))*. See also, *Kaplan v. Rand, 192 F.3d 60, 70 (2d Cir. 1999)*; *Northern Heel Corp. v. Compo Indus., Inc., 851 F.2d 456, 475 (1st Cir. 1988)*. The application of Connecticut state law to this fee petition is the only issue on which the parties agree.

*HN2* Connecticut follows the common **[*14]**  law "American" rule in assessing the award of attorney fees. Under the "American" rule, "attorneys fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception." *Ames v. Comm'r. of Motor Vehicles, 267 Conn. 524, 532, 839 A.2d 1250 (2004)*. "A successful litigant is entitled to an award of attorneys fees if they are provided by contract . . . ." *Jones v. Ippoliti, 52 Conn. App. 199, 209, 727 A.2d 713 (1999)* (citations omitted); see also, *MD Drilling & Blasting v. MLS Construction, LLC, 93 Conn. App. 451, 457-58, 889 A.2d 850 (2006)*. Here, the indemnification clause,

found in Section 11.1(a) of the Supply Agreement, controls the compensability of fees and costs to the plaintiff. Specifically, Section 11.1(a) provides in relevant part:

> each party shall indemnify . . . against all damages, losses, or expenses suffered or paid as a result of any and all claims, demands, suits, penalties causes of action, proceedings, judgments . . . and liabilities (including ***reasonable*** counsel fees incurred in any litigation or otherwise) . . . with respect to **[*15]**  or arising out of (a) any breach by the indemnifying party . . .

Section 11.1(a) (emphasis added). According to these terms, the defendants must indemnify plaintiff for reasonable counsel fees and costs arising out of the breach. Plaintiff claims that the reasonableness of fees can be measured by the language in Section 11.4(a) of the Supply Agreement. Section 11.4(a) states, in part:

> [the] amount owing to the indemnified party will be the amount of such Party's actual out-of-pocket loss net of any insurance or other recovery.

Id. While Section 11.4(a) identifies the reimbursable amount as "out-of-pocket" losses, the Court finds that Section 11.1(a) still requires a determination that the "out-of-pocket" losses claimed by plaintiff for counsel fees are reasonable.

*HN3* Connecticut law has also established that, where there is a contractual provision for attorney's fees, the term "reasonable" is implied by law. *Crest Plumbing and Heating, Co. v. DiLoreto, 12 Conn. App. 468, 480, 531 A.2d 177 (1987)* (citing *Storm Assoc. Inc. v. Baumgold, 186 Conn. 237, 245-46, 440 A.2d 306 (1982)*. There must be an evidentiary showing of reasonableness, **[*16]**  "with the award to be based on a number of considerations not limited to the actual fee incurred by the party." *DiLoreto 12 Conn. App. at 480* (citing *Bizzoco v. Chinitz, 193 Conn. 304, 310, 476 A.2d 572 (1984))*; *Copeland v. Marshall, 205 U.S. App. D.C. 390, 641 F.2d 880, 899-900 (D.C. Cir. 1980)* ("attorney's fees should not be based on the costs of the successful party … [but] should be based on the market value of the legal services rendered.").

Thus, the issue becomes what constitutes "reasonable" fees and costs under Connecticut law. *Storm Assoc.,*

---

[8]   Defendants originally claimed that the bills indicated that plaintiff rented two rooms during both the 2002 and 2005 trials. At the hearing, defense counsel conceded that the bills indicated that only one room was rented during these time periods.

*186 Conn. at 245-46.* (*HN4* "[Connecticut law] requires an evidentiary showing of reasonableness where recovery is sought under a contract clause which provides for payment of reasonable attorney's fees.").

*HN5* It is a firmly established principle under Connecticut law that there is an "undisputed requirement that the reasonableness of attorney's fees and costs must be proven by an appropriate evidentiary showing." *Smith v. Snyder, 267 Conn. 456, 471, 839 A.2d 589 (2004)* (quoting *Hartford Elec. Light Co. v. Tucker, 183 Conn. 85, 91, 438 A.2d 828*, cert. denied, [*17] *454 U.S. 837, 102 S. Ct. 143, 70 L. Ed. 2d 118 (1981))*; accord *Barco Auto Leasing Corp. v. House, 202 Conn. 106, 121, 520 A.2d 162 (1987)*; see also *Appliances Inc. v. Yost, 186 Conn. 673, 680-81, 443 A.2d 486 (1982)*; *Stelco Industries, Inc. v. Cohen, 182 Conn. 561, 567-68, 438 A.2d 759 (1980)*. "Courts have a general knowledge of what would be reasonable compensation for services which are fairly stated and described." *Smith, 267 Conn. at 471* (quoting *Shapero v. Mercede, 262 Conn. 1, 9, 808 A.2d 666 (2002))*. Therefore, "[c]ourts may rely on their general knowledge of what has occurred at the proceedings before them to supply evidence in support of an award of attorney's fees." *Smith, 267 Conn at 471-72* (quoting *Andrew v. Gorby, 237 Conn. 12, 24, 675 A.2d 449 (1996))*.

However, courts may not rely on their general knowledge alone. Evidence, in addition to the court's knowledge, is necessary to support a finding of reasonableness. *Appliances, Inc., 186 Conn. at 680-81* (supplement of attorney's itemized services combined with court's knowledge was sufficient); *Piantedosi v. Floridia, 186 Conn. 275, 279, 440 A.2d 977 (1982)* [*18] (evidence of services "fairly stated and described" combined with court's knowledge was sufficient, and expert testimony was not needed); *Miller v. Kirshner, 225 Conn. 185, 199-01, 621 A.2d 1326 (1993)* (sworn affidavit with attached itemization together with the court's knowledge supported the award for attorney's fees); *Shapero, 262 Conn. at 10* (the Court's general knowledge together with the evidentiary findings as to counsel's experience, reputation, novelty and complexity of issues, and the prevailing rates in the community supported the award of attorney's fees). While the courts have been "careful not to limit the contours of what particular factual showing may suffice … a threshold evidentiary showing is a prerequisite to an award of attorney's fees." *Smith, 267 Conn. at 477*.

1. Movant's Burden

Plaintiff argues that, once the moving party makes "an appropriate evidentiary showing, the burden shifts to the opposing party to object and show that [the requested fees and costs] are unreasonable." Plf's. Memo. at 4; Plf's Reply Memo. at 6. In support of this argument, plaintiff cites *Storm Associates, 186 Conn. at 246.* [*19] Defendants object to this position, claiming that the burden remains on the moving party to prove the reasonableness of the requested attorney fees while providing sufficient information for the opposing party to object.

In Storm Associates, the plaintiff filed an action to recover a commission provided for in a real estate contract. *Id. at 238*. Under the listing contract, plaintiff was entitled to recover "all costs, disbursements and attorney's fees incurred in any action to collect any commission earned pursuant to the above." *Id. at 245-46*. Based on that language, plaintiff submitted a bill in the amount of $ 1,200 for attorney's fees. Id. Defendant never objected to this amount. Id. The trial court denied attorney's fees, holding that the plaintiff did not provide evidentiary support as to the bill's reasonableness. Id. The Supreme Court of Connecticut overturned this ruling based on the terms of the contract. Id. Specifically, the Supreme Court stated that, "[u]nder the contract, the plaintiff was entitled to an attorney's fee which it had 'incurred' without express regard to its reasonableness." Id. Thus, where the [*20] contract does not expressly call for attorney's fees to be reasonable and where defendant fails to object to the reasonableness,

> proof of expenses paid or incurred affords some evidence of the value of the services, and if unreasonableness in amount does not appear from other evidence or through application of the trier's general knowledge of the subject-matter, its reasonableness will be presumed.

Id. (quoting *Carangelo v. Nutmeg Farm, Inc., 115 Conn. 457, 462 162 A. 4 (1932)* (presuming the reasonableness of a physician's bill submitted absent objection).

The facts presented in this case, however, can be distinguished from *Storm Associates*. First, Section 11.1(a) of the Supply Agreement expressly requires that the attorney fees be "reasonable". Second, defendants have objected to the reasonableness of plaintiff's fees on several grounds. As stated in *Smith, 267 Conn. at 479*:

2006 U.S. Dist. LEXIS 75870, *20

… when a court is presented with a claim for attorney's fees, the proponent must present to the court at the time of trial or, in the case of a default judgment, at the hearing in damages, a statement of the fees requested and a description of [*21] services rendered. Such a rule leaves no doubt about the burden on the party claiming attorney's fees and affords the opposing party an opportunity to challenge the amount requested at the appropriate time.

*Id.* Therefore, **HN6** under prevailing Connecticut law, the burden of proving the reasonableness of an attorney's fee application rests with the moving party. The fee application must have sufficient evidentiary support so as to afford the non-moving party a reasonable opportunity to object. If the non-moving party fails to object, he/she will be considered to have "effectively acquiesced in the request, and consequently, … [on appeal] will not be heard to complain about that request." *Id. at 481.* However, the burden does not shift to the non-moving party to present countervailing evidence of the application's unreasonableness. Plaintiff retains the burden to prove the reasonableness of the fees it seeks.

2. Reasonableness of Fees

"There are no certain or scientific rules to govern the determination of a reasonable attorney's fee." *Bridgeport Singer Emp. Fed. Credit Union v. Piczko, 3 Conn. Cir. Ct. 621, 622, 222 A.2d 749 (1966).* [*22] [9] Instead, it is an issue that has "plagued and perplexed the legal

system". *Id.* Regardless, the majority of courts agree that "attorney's fees should be awarded 'with an eye towards moderation' seeking to avoid either the reality or the appearance of awarding 'windfall fees.'" *Ham v. Greene, 2000 Conn. Super. LEXIS 1556, No. 322775, 2000 WL 872707, at *14-15 (Conn. Super. Ct. June 12, 2000)* (citing *Smart SMR of New York, Inc. v. Zoning Com'n., 9 F. Supp. 2d 143, 147 (1998))* (quoting *New York State Ass'n. for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1139 (2d Cir. 1983)).* "A court has few duties of a more delicate nature than that of fixing [reasonable] counsel fees." *Laudano v. New Haven, 58 Conn. App. 819, 822, 755 A.2d 907 (2000)* (internal quotations omitted).

[*23]    **HN7** Connecticut courts determine the reasonableness of fees by reviewing the twelve factors cited in *Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717-19 (5th Cir. 1974).* These twelve guidelines, which essentially parallel *Rule 1.5(a) of the Rules of Professional Conduct,* include:

(1) the time and labor required;

(2) the novelty and difficulty of the questions;

(3) the skill requisite to perform the legal service properly;

(4) the preclusion of other employment by the attorney due to acceptance of the case;

(5) the customary fee for similar work in the community;

---

[9]   When attorney's fees are awarded by way of a fee shifting statute under federal law, the lodestar method of determining reasonable attorney's fees is utilized. The lodestar figure is calculated by multiplying the number of hours reasonably expended in the litigation by a reasonable hourly rate. *Hensely v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983).* In determining the reasonable hourly rates, the Court must determine the "prevailing market rates for the type of services rendered, i.e. the fees that would be charged for similar work by attorneys of like skill in the area." *Bristol Tech., Inc., 127 F. Supp. 2d at 67.* "There is a strong presumption that the lodestar figure represents a reasonable fee." *Quaratino v. Tiffany & Co., 166 F.3d 422, 425 (2d Cir. 1997).* Connecticut law uses this lodestar calculation in analyzing reasonable fees under the Connecticut Unfair Trade Practices Act. *Bristol Tech., Inc., 127 F. Supp. 2d at 67. See also, Societa Bario E Derivatti v. Kaystone Chem., Inc., 1998 U.S. Dist. LEXIS 23066, No. 5:90-CV-599, 1998 WL 182563, at *11 (D. Conn. Apr. 15, 1998); Kaplan v. Gruder, 2000 Conn. Super. LEXIS 1361, No. CV960334308S, 2000 WL 767679, at *1 (Conn. Super. May 25, 2000).*

Plaintiff argues that under Connecticut contract law the lodestar method does not apply, and therefore, evidence of prevailing rates is not necessary. Connecticut law does require a plaintiff to meet a sufficient evidentiary burden, but does not specify how this burden must be met. *Appliances, Inc., 186 Conn. at 680* (plaintiff satisfied its evidentiary burden by providing an itemized list of services, and evidence of the attorney's ordinary rate or prevailing rates from the community was not necessary).

While plaintiff is correct in stating that the lodestar method does not apply, the Court notes that the Johnson factors, discussed infra., utilized in determining reasonable fees under Connecticut law parallel the lodestar approach. Specifically, Factor 5 looks to the prevailing rates in the community. Therefore, evidence of prevailing rates is one factor that will be considered by the Court.

(6) whether the fee is fixed or contingent;

(7) the time limitations imposed by the client or the circumstances;

(8) the amount involved and the results obtained;

(9) the experience, reputation and ability of the attorneys;

(10) the undesirability of the case;

(11) the nature and length of the professional relationship with the client; and

(12) awards in similar cases.

*Id.* See also, *Simms v. Chaisson, 277 Conn. 319, 332, 890 A.2d 548 (2006)* ("Connecticut courts traditionally examine the factors enumerated in *Rule 1.5(a) of the Rules of Professional Conduct* **[*24]** in calculating a reasonable attorneys fee award"); *Steiger v. J.S. Builders, Inc., 39 Conn. App. 32, 38, 663 A.2d 432 (1995)* (a motion for attorney's fees is analyzed under the Johnson factors); *Schoonmaker v. Lawrence Brunoli, Inc., 265 Conn. 210, 259, 828 A.2d 64 (2003)* ("it is well established that a trial court calculating a reasonable attorney's fee makes its determination while considering the factors set forth under *rule 1.5(a)*"); *Rodriguez v. Ancona, 88 Conn. App. 193, 202-03, 868 A.2d 807 (2005); Burrell, v. Yale, (X02) CV000159421S, 2005 Conn. Super. LEXIS 1529, at \*10 (Conn. Super. May 26, 2005); Sorrentino v. All Services, Inc., 245 Conn. 756, 775, 717 A.2d 150 (1998)*.**HN8** In determining reasonableness, "[t]he court … [is] not required to consider each of the twelve factors individually, but instead [is] required to consider the full panoply of factors and not base its decision solely on one of the elements." *Riggio v. Orkin Exterminating Co., 58 Conn. App. 309, 318, 753 A.2d 423 (2000)*.

Following the above standard, the **[*25]** Court will first consider the reasonableness of the rates charged by plaintiff's counsel before evaluating the reasonableness of the hours billed.

## B. Reasonable Attorney Rates

The rates plaintiff's attorneys seek can be broken into three categories: partners, associates, and paralegals. There were three primary partners assigned to handle the litigation in this matter. The experience of these partners varied, and their charged rates ranged from $ 240.00 to $ 607.50 per hour, over a nine year period. [10] Approximately 17 associates performed work in this case over the years. The associates had varying degrees of experience (0-23 years), with rates ranging from $ 125.00 to $ 318.75 per hour. Approximately five different paralegals, with levels of experience extending from 2 to 11 years, worked on this case. The hourly rates charged for their work ranged from $ 93.50 to $ 148.75.

**[*26]** Defendants object to the above rates, claiming they are excessive and unreasonable. Defendants cite only one factor, out of the twelve listed in Johnson, in making this argument. Defs'. Opp. at 18-27. Specifically, defendants argue that the "average prevailing rate in this community between 1996 and 2005 for experienced trial attorneys is $ 224." [11] Defs'. Opp. at 24. Defendants also argue that the average prevailing rates for associates and paralegals during this time period were $ 145 and $ 75, respectively. Defs'. Opp. at 26-27. Based on the above, defendants seek "Excessive Rate Reductions" of $ 1,017,637 for partners, $ 190,840 for associates, and $ 98,981 for paralegals.

Having presided over this case since 1996, the Court is all too familiar with its history, the experience of counsel, the course of this litigation, and the **[*27]** conduct of the litigants and counsel. Although a detailed analysis of the Johnson factors will follow, it is worth noting that the case, from beginning to end, involved: 1) extremely complex issues, including opinions/testimony from several expert witnesses; 2) voluminous discovery on factual, causation, and damage issues; 3) megalithic efforts by both parties to litigate every minute issue, even relitigating some issues repeatedly, as evidenced by the 530 entries on the 54-page docket sheet; 4) very high stakes, as evidenced by the amount actually awarded by the jury; and 5) highly skilled, experienced, and reputable attorneys from prominent law firms on

---

[10]   At oral argument, plaintiff's counsel stated that his law firm had negotiated rates with their client, and these rates were below the rates normally charged during each year of the litigation.

[11]   Defendants allege the $ 224 figure represents the average billing rate applied by the courts in the cases cited by defendants on pages 22-24 of their opposition memorandum.

both sides. The Court will now turn to the applicable *Johnson* factors. [12]

 [*28] 1. The Time and Labor Required, the Novelty and Difficulty of the Questions, and the Experience and Expertise of Counsel

This lawsuit, spanning a period of ten years, involved complex issues not normally found in an ordinary breach of contract case. As such, the time and labor required of counsel were extensive. The briefings filed and arguments presented to the Court involved many diverse issues, such as jurisdictional challenges, amended pleadings, discovery disputes, multiple dispositive motions, and two preliminary injunctions. The affirmative defenses presented by the defendants included fraud, mistake, legal impossibility, physical impossibility, breach of covenant, breach of municipal regulations. The counterclaims raised included fraudulent inducement/misrepresentation, breach of covenant of good faith and fair dealing, breach of contract discharge of excessive waste, failure to comply with local ordinances, prevention of performance; CUTPA, quantum meruit, and nuisance/violation of ordinances and regulations.

This case climaxed with two complex, lengthy trials of approximately five weeks and three weeks, respectively. The factual issues presented -- that is the amount [*29] of TDS in the papermill water and how this TDS affected plant and waste treatment operations -- required significant technical evidence. The parties' experts presented scientific evidence regarding the corrosion of steel, the effect of the mill effluent on wastewater treatment, and available water treatment alternatives. During each trial, numerous evidentiary issues arose including several motions in limine, motions for protective orders, the admissibility of expert evidence, missing witnesses, preclusion of testimony, the binding effect of prior proceedings, and the admissibility of voluminous reports. Many issues were also raised as to the appropriate remedy including the amount of damages, declaratory relief, injunctive relief,

reformation, and rescission. Finally, post-trial briefing was very intensive and included a motion for judgment, an attempt at an interlocutory appeal, and several miscellaneous motions.

In total, the Court ruled on approximately eighty (80) motions. Numerous rulings, orders, and endorsements were entered on non-substantive issues. The high degree of skill and expertise both parties' counsel possessed was certainly necessary to effectively litigate this [*30] case. The complexity, as well as the volume, of issues presented undoubtedly resulted in an increase in both the time and labor spent by counsel. In fact, the Court, itself, spent a considerable amount of time presiding over this case, and hearing, analyzing, and ruling on each of the issues presented.

2. Prevailing Market Rates in Connecticut [13]

Plaintiff claims that, if the Court were to consider the prevailing market rates, the rates to be applied should be from Massachusetts. In support of this argument, plaintiff claims that defendants knew plaintiff's counsel were Massachusetts attorneys and continued to negotiate the contract with these attorneys despite their location. Plaintiff argues that the defendants should  [*31] have, or could have, requested that the indemnification clause limit attorney's fees to the prevailing rates in Connecticut if that is what the defendants had desired or intended.

What plaintiff disregards is Connecticut law. *HN9* Under Connecticut law, absent a showing of specialized expertise, an attorney who handles a case in Connecticut is subject to the prevailing market rates in Connecticut. *Kaplan, 2000 Conn. Super. LEXIS 1361, 2000 WL 767679, at *7* (in order to obtain prevailing New York rates, attorney would have to demonstrate that no competent attorney in Connecticut could have handled the case); *Tsombanidis v. City of West Haven, 208 F. Supp. 2d 263, 277 (D. Conn. 2002)* (although $ 225 may be a reasonable rate for Washington, D.C. attorneys, it is not the prevailing market rate in

---

[12]   Several of these factors are not pertinent to the issues presented here and were not raised or contemplated by the parties. The factors that were considered by the Court, but will not be discussed in depth, include: (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

[13]   Plaintiff argues that prevailing rates should not be a consideration since the "lodestar" method of determining reasonable attorney's fees does not apply. This argument fails, as prevailing rates are one of the *Johnson* factors considered under Connecticut law. See, supra, n. 9.

Connecticut); *Dobson v. Hartford Financial Serv. Group, No. 3:99CV2256, 2002 U.S. Dist. LEXIS 17682, *9 (D. Conn. Aug. 2, 2002)* (exceptions to the general rule regarding prevailing market rates "have been made upon a showing that the special expertise of counsel from a distant district is required") (quoting *Polk v. New York State Dep't of Correctional Servs., 722 F.2d 23, 25 (2d Cir. 1983)).* **[\*32]**

Here, the cause of action centered on breach of contract. Despite the complexity of the issues surrounding the subject matter of this contract litigation and related claims, the underlying legal theories were not novel. Plaintiff's attorneys have failed to demonstrate that their firm possessed any specialized knowledge that would require out-of-state rates. In fact, plaintiff's law firm has an office in Connecticut, and one of the primary participating partners in this case, Ben Krowicki, was from the Connecticut office. Therefore, when examining the prevailing rates factor, the Court will look to the prevailing rates in Connecticut for attorneys with similar expertise.

From 1996 through 2005, courts in Connecticut have recognized reasonable attorney rates in varying amounts. See *Evans v. State of Connecticut, 967 F. Supp. 673 (D. Conn. 1997)* (in Title VII action, rates of $ 200 for attorney and $ 50 for law students/paralegals were reasonable); *Wallace v. Fox, 7 F. Supp. 2d 132 (D. Conn. 1998)* (in class action shareholder derivative suit, average rate of $ 300 to $ 375 was reasonable); *Jacques All Trades Corp. v. Laverne Brown, et al, 1998 Conn. Super. LEXIS 873, CV 900381618S, 1998 WL 161228* **[\*33]** (Conn. Super. Mar. 17, 1998) (in CUTPA action, $ 150 for partners, $ 100 for associates, and $ 55 for paralegals was reasonable); *Hardy v. Saliva Diagnostic Sys., Inc., 52 F. Supp. 2d 333 (D. Conn. 1999)* (in breach of employment contract case, rates of $ 185 to $ 200 were reasonable); *St. George v. Mak, 2000 U.S. Dist. LEXIS 20365, No. 5:92CV587, 2000 WL 305249 (D. Conn. Feb. 15, 2000)* (in *§ 1983* action, rates of $ 250 and $ 175 were not challenged as unreasonable); *Kaplan, 2000 Conn. Super. LEXIS 1361, 2000 WL 767679, at *7* (in CUTPA case, reduced reasonable rate for NY attorney was $ 350); *Evanauskas v. Strumpf, 2001 U.S. Dist. LEXIS 14326, No.*

*3:00CV1106, 2001 WL 777477, at *23 (D. Conn. June 27, 2001)* (in a Fair Debt Collections Act case, an attorney with "extensive experience" was entitled to $ 275 per hour); *Tsombanidis, 208 F. Supp. 2d at 275-77* (in motion for attorney's fees under *§ 1988*, partner rate of $ 275, associate rate of $ 165, and paralegal rate of $ 50 were reasonable); *Petronella v. Acas, 2004 U.S. Dist. LEXIS 14371, No. 3:02cv1047, 2004 WL 1688525 (D. Conn. Jan. 23, 2004)* (in an interpleader action $ 225 was a reasonable rate which could be reduced to $ 113 after a deduction **[\*34]** for travel time was made); *Stanley Shenker & Assoc., Inc. v. World Wrestling Fed'n. Entm't., 2005 Conn. Super. LEXIS 561, No. X05CV000180933S, 2005 WL 758135 (Conn. Super. Mar. 1, 2005)* (in a complex secured transactions case, $ 285 for a partner and $ 195 for an associate was reasonable); *Sony Electronics, Inc. v. Soundview Tech., 389 F. Supp. 2d 443, (D. Conn. 2005)* (in complex trademark litigation, $ 400 is the highest rate Connecticut has allowed for an attorney with vast experience); *Galazo v. Pieksza, 2006 U.S. Dist. LEXIS 1697, No. 3:01-CV-01589, 2006 WL 141652 (D. Conn. Jan. 19, 2006)* (in *§ 1983* case, $ 350 for partner and $ 250 for associate were reasonable rates).

Additionally, plaintiff has submitted fee petitions filed with the United States Bankruptcy Court for the District of Connecticut by attorneys from various Connecticut law firms. [14] **[\*35]** These petitions include rates requested by various associates and partners from the law firm of Robinson & Cole, defendants' law firm. [15]

At the hearing, defendants argued that these petitions should not be considered in determining the prevailing market rates. In support of this argument, defendants claim that bankruptcy law requires "specialized knowledge", the bankruptcy fee petitions were made without objection, and that the bankruptcy court does not make a determination of reasonableness in bankruptcy cases.

Plaintiff contests the defendants' analysis. First, plaintiff points out that the bankruptcy fee petitions, even those filed by defendants' law firm, contain language stating that, "[t]he fees R&C is applying for in this case are charged *at the same hourly rates that it charges for*

---

[14]   Plaintiff also submitted fee petitions submitted to the United States Bankruptcy Courts for the Districts of Massachusetts and New York. The Court will only consider the prevailing rates in Connecticut, for the reasons previously stated.

[15]   At oral argument, defense counsel stated that the rates charged by defense counsel in this case ranged from $ 130 to $ 250 an hour. Defense counsel agreed that these were negotiated rates with the Town and were not the normal market rates charged by the law firm.

2006 U.S. Dist. LEXIS 75870, *35

*similar cases, for other matters outside the bankruptcy field,* and for bankruptcy matters that are not compensated by the bankruptcy estate." Plf's. Sixth Appendix **[*36]** at C2 (emphasis added); see also Plf's. Sixth Appendix at C1, C3, C6, C11, C18, etc. Second, plaintiff argues that creditors who believe that attorney's fees are too high would surely object to the petition, as an unreasonable amount paid to attorneys would affect the percentage that the creditor would obtain from the bankruptcy estate. Third, plaintiff argues that the bankruptcy judge has to approve the fee applications,

and therefore, a determination of reasonableness is made. Defendants' counsel did not respond to these arguments.

Most of the fee petitions contain assertions by the submitting attorney that the rate charged in the bankruptcy petition was the same rate charged for non-bankruptcy work. As such, the Court will consider the following partner rates sought in the Connecticut bankruptcy petitions, namely:

| CT Law Firm | *2*Year Work Performed & Range of Rates | |
|---|---|---|
| Robinson & Cole | 2004 | $ 490 - $ 330 |
| | 2003 | $ 430 - $ 320 |
| Greenberg Traurig | 2004 | $ 575 - $ 515 |
| Day, Berry & Howard | 2004 | $ 450 |
| | 2003 | $ 475 - $ 420 |
| | 2002 | $ 450 - $ 350 |
| | 2001 | $ 335 |
| Paul Hastings | 2001 | $ 535 - $ 380 |
| [16] Stroock & Stroock | 2000 | $ 585 - $ 425 |
| | 1999 | $ 550 - $ 410 |
| | 1998 | $ 550 - 405 |
| | 1997 | $ 505 - $ 395 |
| Akin, Gump | 1999 | $ 540 - $ 275 |
| Caplin & Drysdale | 1999 | $ 530 - $ 305 |
| | 1998 | $ 530 - $ 290 |
| | 1997 | $ 515 - $ 270 |
| | 1996 | $ 475 - $ 270 |

Similarly, the Court will consider the following associate rates charged in the Connecticut bankruptcy petitions, namely:

| CT Law Firm | *2*Year Work Performed & Range of Rates | |
|---|---|---|
| Robinson & Cole | 2005 | $ 380 - $ 160 |
| | 2004 | $ 320 - $ 170 |
| | 2003 | $ 200 - $ 160 |
| Greenberg Traurig | 2004 | $ 400 - $ 340 |
| Day, Berry & Howard | 2004 | $ 335 - $ 180 |
| | 2003 | $ 320 - $ 255 |

---

[16]   **[*37]** Plaintiff has submitted fee petitions filed in the United States Bankruptcy Court for the District of Connecticut by the firms of Stroock & Stroock; Akin, Gump; and Caplin & Drysdale. Although referenced in the table, the Court will not consider the prevailing rates of these out-of-town firms in determining the prevailing rates in Connecticut.

2006 U.S. Dist. LEXIS 75870, *38

| CT Law Firm | *2*Year Work Performed & Range of Rates | |
|---|---|---|
| | 2002 | $ 225 - $ 195 |
| | 2001 | $ 245 - $ 170 |
| Paul Hastings | 2001 | $ 370 - $ 220 |
| Stroock & Stroock | 2000 | $ 395 - $ 115 |
| | 1999 | $ 375 - $ 120 |
| | 1998 | $ 350 - $ 140 |
| | 1997 | $ 335 - $ 140 |
| Akin, Gump | 1999 | $ 275 - $ 195 |
| Caplin & Drysdale | 1999 | $ 200 - $ 150 |
| | 1998 | $ 200 - $ 180 |
| | 1997 | $ 170 |
| | 1996 | $ 220 |

[*38] 3. Rates to be Applied

Determining the "reasonable" rates in this case, when compared to the "prevailing" rates charged in Connecticut by similarly experienced counsel performing complex and significant litigation, is also complicated by the fact that both parties were represented by large, full-service law firms with national reputations and offices around the country. [17] As Judge Underhill observed in *Conn. State Dep't of Soc. Servs. v. Thompson, 289 F. Supp. 2d 198, 2003 U.S. Dist. LEXIS 18987 (D. Conn. 2003)*:

> There are several [additional] factors that affect actual billing rates by attorneys in this District. First, large firms generally bill at higher rates than do small firm lawyers or solo practitioners …. Second, lawyers at firms with offices in major metropolitan areas outside this state generally charge higher rates than do lawyers from firms that practice almost exclusively within Connecticut . . . . [A]nd hourly rates charged by lawyers in the larger cities in Connecticut are higher than the hourly rates charged by lawyers based in smaller towns. Each of these factors reflect, in large part, the dramatically different overhead expenses shouldered [*39] by lawyers in different practice settings and in different parts of the state.

*2003 U.S. Dist. LEXIS 18987, at *16-17, Id. at 206*.

Clearly, the hourly rates charged to clients are impacted by the significant overhead of maintaining large offices in multiple locations. Corporate and other institutional clients engage such firms in part because they are full-service firms which are staffed to enable the firm to devote whatever resources are necessary to the client's matters. Prevailing fees for this kind of service are surely greater than the fees charged by an equally skilled litigator practicing in a smaller firm. As such all-consuming litigation requires full-time services and counsel available to perform such services are most often located in these big firms, these skilled and experienced litigators can charge a premium for their time because it is a scarce commodity.

Another complication [*40] illustrated by this case is that corporate and other institutional clients may gravitate to firms with which they have had an on-going relationship. While a history of dealings may well benefit the client and justify a premium rate, that history -- and the extent of the client's business -- also provides leverage which the client may use to negotiate a fee for a particular matter below the firm's retail or general market rates. Both parties in this litigation paid their attorneys less than market rates, according to counsel.

Based on the decisions cited above; my specialized knowledge regarding this litigation, the parties, and the law firms involved; the analysis of the applicable *Johnson* factors; and my knowledge of prevailing rates for legal services in the District of Connecticut, I find that reasonable hourly rates for plaintiff's counsel, broken down by year, are the following amounts:

---

[17]   For example, the law firm of Bingham McCutchen was created during this litigation by the merger of east and west coast-based law firms.

2006 U.S. Dist. LEXIS 75870, *40

|  |  |  | 1998 | 1999 | 2000 |
|---|---|---|---|---|---|
| *6*PARTNERS |  |  |  |  |  |
| Goldberg | 314.50 | 321.72 | [18] 296.25 | 333.95 | 345.18 |
| Krowicki | 240.00 | 212.50 | 212.50 | 206.25 | 263.41 |
| Phelan |  |  |  |  |  |
| *6*ASSOCIATES 1-3 YEARS OF EXPERIENCE |  |  |  |  |  |
| Hole, Brian (571.3) |  |  |  |  |  |
| Short, Brian |  |  |  |  |  |
| Tymchenko, Tanya |  |  |  |  |  |
| White, Kimberly |  |  |  |  |  |
| Bigelow, Brandon |  |  |  |  |  |
| Elizabeth Calvert |  |  |  |  |  |
| Erich Gaston |  |  |  |  |  |
| Hackett, Virginia (22.6) |  |  |  |  |  |
| Eggert, Celia |  |  |  |  |  |
| Kim, Susan (166.3 hrs.) |  |  |  |  |  |
| Downie, Marianne | 94.50 |  |  |  |  |
| *6*ASSOCIATES 4-8 YEARS OF EXPERIENCE |  |  |  |  |  |
| Kim, Susan (237.5) & (97.4) |  |  |  |  |  |
| Baxter, Larry |  |  |  |  |  |
| Savery, Donald |  |  |  |  |  |
| Goldberg, Gerald | 110.00 |  |  |  |  |
| *6*ASSOCIATES WITH OVER 8 YEARS EXPERIENCE |  |  |  |  |  |
| Siczewicz, Ann | 150.00 |  |  |  |  |

---

[18]   **[*42]** The actual rate charged by Attorney Goldberg decreased from 1997 to 1998. Likewise, the actual rate charged by Attorney Krowicki decreased from 1998 to 1999. The Court incorporated these decreases in calculating the reasonable rates. As a result, the rates awarded for Attorney Goldberg in 1998 and Attorney Krowicki in 1999 also decreased.

|  | 1998 | 1999 | 2000 |
|---|---|---|---|
| *6*PARALEGALS AND LAW CLERKS |  |  |  |
| Brennan, Melissa |  |  |  |
| Curran, Theresa |  |  |  |
| Palmieri, Gina |  |  | 55.00 |
| Lindsay, Gretchen |  |  |  |
| Blake, Thomas |  |  |  |
| Hackett, Virginia (12.2) |  |  |  |
| Gelbwasser, Lara |  |  |  |
| Gibbs, Michael |  |  |  |

[*41]

|  | 2001 | 2002 | 2003 | 2004 | 2005 |
|---|---|---|---|---|---|
| *6*PARTNERS |  |  |  |  |  |
| Goldberg | 355.00 | 360.61 | 368.83 | 378.45 | 391.48 |
| Krowicki | 270.91 | 275.19 | 281.46 | 288.80 | 298.74 |
| Phelan | 270.91 | 275.19 | 281.46 | 288.80 | 298.74 |
| *6*ASSOCIATES 1-3 YEARS OF EXPERIENCE |  |  |  |  |  |
| Hole, Brian (571.3) |  |  |  | 142.50 | 150.00 |
| Short, Brian | 122.00 | 129.00 | 135.00 |  |  |
| Tymchenko, Tanya | 122.00 | 129.00 | 135.00 |  |  |
| White, Kimberly |  |  | 135.00 |  |  |
| Bigelow, Brandon |  | 129.00 |  |  |  |
| Elizabeth Calvert | 122.00 | 129.00 |  |  |  |
| Erich Gaston |  | 129.00 |  |  |  |
| Hackett, Virginia (22.6) |  | 129.00 |  |  |  |
| Eggert, Celia | 122.00 |  |  |  |  |
| Kim, Susan (166.3 hrs.) | 122.00 |  |  |  |  |
| Downie, Marianne |  |  |  |  |  |

| | 2001 | 2002 | 2003 | 2004 | 2005 |
|---|---|---|---|---|---|
| *6*ASSOCIATES 4-8 YEARS OF EXPERIENCE | | | | | |
| Kim, Susan (237.5) & (97.4) | | 150.00 | 158.00 | | |
| Baxter, Larry | | 150.00 | 158.00 | | |
| Savery, Donald | | 150.00 | | | |
| Goldberg, Gerald | | | | | |
| *6*ASSOCIATES WITH OVER 8 YEARS EXPERIENCE | | | | | |
| Siczewicz, Ann | 190.00 | 200.00 | 210.00 | | |
| *6*PARALEGALS AND LAW CLERKS | | | | | |
| Brennan, Melissa | | | | | 75.00 |
| Curran, Theresa | 60.75 | 67.50 | 67.50 | | 75.00 |
| Palmieri, Gina | 60.75 | 67.50 | 67.50 | 75.00 | 75.00 |
| Lindsay, Gretchen | 60.75 | 67.50 | 67.50 | | |
| Blake, Thomas | 60.75 | | | | |
| Hackett, Virginia (12.2) | 60.75 | | | | |
| Gelbwasser, Lara | | 67.50 | | | |
| Gibbs, Michael | | 67.50 | | | |

Now that the reasonable rates have been set, the court must determine the reasonable number of compensable hours.

### C. Reasonable Billable Hours

With respect to the reasonable number of billable hours, defendants seek reductions on a number of different grounds: 1) the "Diamond Reduction"; [19] 2) vague entries; 3) excessive time/overstaffing; and 4) travel time.

[*43] 1. The Diamond Reduction

Defendants argue that a reduction in hours must be taken for time spent by plaintiff's counsel in defending against the defendants' counterclaims, for fifty percent of the activities aimed at settlement, for plaintiff's efforts to block defendants' interlocutory appeal, and for permit applications and dealings with the DEP - all termed the "Diamond Reduction". Fisher Aff. 6. Defendants allege that working on these matters did not involve prosecution of plaintiff's breach of contract claim and, therefore, the hours billed are not compensable under the indemnification provision. Defs'. Opp. at 6. Defendants argue that 4,256.65 hours must be

---

[19]   Once again, this terminology was created and utilized by the defendants based on the case of Diamond D Enterprises USA, Inc. v. Steinsvaag, 979 F.2d 14 (2d Cir. 1992).

deducted as non-compensable activity under the Diamond Reduction. Defs'. Opp. Exhibit C at 34.

Plaintiff argues that the defendants' counterclaims [20] and settlement discussions are "inextricably linked" to the breach of contract claim. In support of this argument, plaintiff points to the fact that four of the six counterclaims were identical to corresponding affirmative defenses. Plaintiff claims that if it did not prevail in defending against these counterclaims and affirmative defenses, it would not have prevailed [*44] on its breach of contract claim. [21] Lastly, plaintiff alleges that it has already reduced or eliminated fees allocated to non-recoverable items. Phelan Aff. at 6-9. [22]

 [*45]  In *Diamond D Enterprises USA, Inc. v. Steinsvaag, 979 F.2d 14 (2d Cir. 1992)*, the United States Court of Appeals for the Second Circuit dealt directly with the issue of non-compensable billing. In *Diamond,* the plaintiff sued the defendant for the breach of a franchise agreement, and the defendants asserted three affirmative defenses and eight counterclaims. *Id. at 16*. Although the counterclaims alleged various theories of liability including contract, tort, and statutory violations, the claims shared the same factual basis and, therefore, had a "common nucleus". Id. Ultimately the jury returned a verdict for plaintiff and rejected all of the counterclaims. *Id. at 17*. Plaintiff then moved for attorney's fees, which were awarded by the court. Id. Defendant appealed, arguing that plaintiff was not entitled to recover for defending against the counterclaims.

The Second Circuit rejected this argument. Specifically, the Court stated that **HN10** it is the "nature - not the nomenclature-of a claim [that] is controlling". *Id. at 18*.

Thus . . ., where a fee applicant recovers on a claim subject to a contractual [*46] attorney's fee provision and in the process litigates a counterclaim on which he must prevail in order to recover on his claim, then the fee applicant is entitled to his attorney's fees for both the claim and the counterclaim.

*Id.* (quoting *Singer v. Shannon & Luchs Co., 670 F. Supp. 1024, 1028 (D.D.C. 1987))*; *Towers Charter & Marine Corp. v. Cadillac Ins. Co., 894 F.2d 516, 525 (2d Cir. 1990)* (affirming contractual award of attorney's fees to party "required to defend each action in order to establish its right to recover"); *Burger King Corp. v. Mason, 710 F.2d 1480, 1496-97 (11th Cir. 1983)* ("affirming award of fees incurred developing overlapping issues relevant to both compensable and non-compensable matters."). The Court also found the fact that most of these counterclaims never went to the jury irrelevant, stating, "[that] fact . . . affects the amount of the fee award, not whether their defense was compensable." *Diamond 979 F.2d at 18*.

Defendants argue that Diamond is not the prevailing law in Connecticut and thus, should not be applied to this fee petition. The Court finds to the contrary. [*47] **The law in** Connecticut **clearly follows the analysis applied in Diamond**. In *Atlantic Pipe Corp. v. Quadrangle Ltd. P'ship, 1993 Conn. Super. LEXIS 2860, No. CV 87-0336982, 1993 WL 454203 (Conn. Super. Oct. 27, 1993)*, plaintiff filed an action seeking to foreclose on a mechanic's lien and for damages on a breach of contract claim. The defendants responded by filing a multiple count counterclaim, alleging that plaintiff breached its contract, breached various warranties, and negligently performed the contract. The Court held that

[t]he counterclaim and a third-party complaint filed by the defendants transformed a relatively straightforward mechanic's lien foreclosure and contract action into a protracted, tortuous thicket which spanned six years . . .

*1993 Conn. Super. LEXIS 2860, at *3, [WL] at *1*. Thus, **HN11** "[w]here a party with a contractual right to recover legal fees must incur attorney's fees to preserve his contractual rights and interest, he may recover those legal fees and damages." *1993 Conn. Super. LEXIS 2860, at *3, [WL] at *2*. (citing *Fullerton v. McGowan, 6*

---

[20]   The counterclaims include: 1) fraudulent inducement/misrepresentation, (2) breach of the covenant of good faith and fair dealing, (3) breach of contract (discharge of excessive waster, failure to comply with local ordinances, prevention of performance), (4) CUTPA, (5) quantum meruit, and (6) nuisance/violation of ordinances and regulations.

[21]   Defendants pled fraud as affirmative defenses # 1 and # 10; breach of covenant as affirmative defense # 12; and breach of contract and nuisance as affirmative defenses # 3, # 4, and # 5.

[22]   At the hearing, plaintiff's counsel stated that if the entire time entry was related to non-compensable issues the entire entry was deleted. Plaintiff did not keep a running total of completely eliminated entries. If only a portion of the time entry was related to non-compensable issues, a reduction in billable hours was taken. This reduction is evidenced on Plaintiff's Exhibit B and totals approximately 212 hours.

2006 U.S. Dist. LEXIS 75870, *47

*Conn. App. 624, 631, 507 A.2d 473 (1986)* (when plaintiff sought specific performance of a breach of contract, fees in defending foreclosure action were recoverable); [*48] *Mechanics Sav. Bank v. Tucker, 178 Conn. 640, 647-48, 425 A.2d 124 (1979)* (in foreclosure action, plaintiff was awarded attorneys fees in defending against antitrust claim); *J.P. Sedlak Assoc. v. Connecticut Life & Cas. Ins. Co., 2000 U.S. Dist. LEXIS 18947, No. 3:98CV145 (DFM), 2000 WL 852331, at *6 (D. Conn. Mar. 31, 2000)* (adopting the same line of reasoning applied by the Connecticut Superior Court and finding that plaintiff was entitled to attorney's fees for defending against counterclaims).

In this case, all but two of defendants' counterclaims were raised as affirmative defenses. Whether couched in terms of affirmative defenses or counterclaims, if plaintiff had not prevailed on the fraud, breach of covenant, CUTPA, breach of contract, and nuisance counterclaims, plaintiff would have been defeated on its breach of contract claim and would have ultimately lost this lawsuit. Although plaintiff did not necessarily have to win the quantum meruit counterclaim to prevail, the Court finds the cost of defending this counterclaim also recoverable. The quantum meruit counterclaim arose out of the parties' failed settlement agreement relating to efforts to obtain a WPCF permit to [*49] separate treatment of plaintiff's discharge into the WPCF. The Court finds that the settlement efforts were certainly interrelated with plaintiff's breach of contract claim.

Clearly, a common nucleus binds all of these counterclaims. In fact, defense counsel admitted at the hearing that it was likely that defendants would not have brought these counterclaims had they not been sued by the plaintiff. Therefore, plaintiff is entitled to seek compensation for the hours spent defending these claims.

Additionally, by repeatedly attempting to resurrect counterclaims and re-litigate issues previously decided by the Court, defendants exacerbated the amount of time plaintiff's counsel spent in litigating this case and defending against these counterclaims. [23] A review of the Court's rulings demonstrates that, even when the counterclaims and defenses were denied and dismissed, defendants did not acquiesce. Rather, the defendants wholly disregarded the Court's rejection(s) and dismissal(s), and continually fought to reinstate the claims. See Ruling on Plaintiff's Motion to Strike or Dismiss (May 23, 2002) [Doc. # 135]; Ruling on Defendants' Motion for Reconsideration (June 2002) [Doc. [*50] # 154]; Ruling on Defendants' Motion to Amend Answer (June 26, 2002) [Doc. # 153]; and Ruling on Defendants' Motion for Leave to File Amended Counterclaim (July 10, 2002) [Doc. # 178]. In fact, the Court was "puzzled" by defendants' reassertion of rejected defenses. See Ruling on Plaintiff's Motion to Strike or Dismiss (May 23, 2002) [Doc. # 135]. As such, defendants cannot now be heard to complain generally about the amount of time expended by plaintiff in defending against these aggressive tactics. Defendants' strategy undoubtedly exacerbated this controversy and expanded the work for plaintiff to defend against these repeated attempts. As best stated by Judge Tierney of the Connecticut Superior Court,

> [t]his case was bitterly contested. Appellants mounted a Stalingrad defense, resisting [plaintiff] at every turn and forcing her to win her hard-earned victory from rock to rock and from tree to tree. Since a litigant's staffing needs often vary in direct proportion to the ferocity of her adversaries' handling of the case, this factor weighs heavily in the balance.

*Anom v. Ofori-Tenkorang, FA010184721S, 2005 Conn. Super. LEXIS 419, at [*51] *23-24 (Conn. Super. Feb. 18, 2005)* (quoting *Johnson v. Spencer Press of Maine, Inc. 2004 U.S. Dist. LEXIS 16560, No. 02-73-P-H, 2004 WL 1859791, at *4 (D. Me. Aug. 19, 2004))* (citing *Lipsett v. Blanco, 975 F.2d 934, 939 (1st Cir. 1992))*. See also, *City of Riverside v. Rivera, 477 U.S. 561, 581 n. 11, 106 S. Ct. 2686, 91 L. Ed. 2d 466 (1986)* ("[t]he government cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response.") (quoting *Copeland, 641 F.2d at 904*).

The Court declines to impose a further, so-called "Diamond Reduction" to plaintiff's billable hours than those plaintiff [*52] has already made. We must now turn to the defendants other bases for challenging the fee petition.

---

[23]  Defendants argue that allowing plaintiff the entire amount sought in the fee petition would be punitive in nature, only punishing the defendants for defending the case. The Court does not agree. The magnitude of the fees sought is the unfortunate, but inevitable, result when counsel from two large law firms choose to extensively litigate and relitigate every minute detail.

## 2. Vagueness

Defendants claim that plaintiff's fee application "reveals a significant number of instances in which billing entries inadequately identify the subject matter of the work performed." Defs'. Opp. at 29. The defendants, in a marked-up version of plaintiff's Exhibit B, have identified approximately 613 allegedly vague time entries. Based on the volume of allegedly vague entries, the defendants seek a ten (10) percent reduction, for a total of $ 129,579, from plaintiff's fee application.

Conversely, plaintiff argues that most of the time entries are adequately detailed. Plf's. Reply Mem. at 11, n. 10. Plaintiff also contends that the limited entries which do not contain specific details can only be considered vague "by ignoring adjacent billing entries and the docket sheet." Id. Plaintiff states that the defendants cannot rely on such segregated time entries, and, instead, the time sheets for each attorney must be read in conjunction with the whole application.

*HN12* Counsel applying for fees are "not required to record in great detail how each minute of [their] **[\*53]** time was expended." *Hensley v. Eckerhart, 461 U.S. 424, 437 n.12, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)*. However, counsel should at least "identify the general subject matter of his time expenditures." *Id.* Specifically, counsel are:

> obliged 'to keep and present records from which the court may determine the nature of the work done, [and] the need for and the amount of time reasonably required; where adequate contemporaneous records have not been kept, the court should not award the full amount requested.'

*Rabin v. Wilson-Coker, 425 F. Supp. 2d 269, 272 (D. Conn. 2006)* (quoting *F.H. Krear & Co. v. Nineteen Named Trustees, 810 F.2d 1250, 1265 (2d Cir. 1987))*. See also, *Ham, 2000 Conn. Super. LEXIS 1556, 2000 WL 872707, at \*13 n. 4*; *N.Y. State Ass'n for Retarded Children, 711 F.2d at 1148* (billing entries should specify the attorney, the date, the time expended, and the "nature of the work done sufficient to evaluate its appropriateness").

*HN13* "A court may . . . refuse to award fees based on time entries that provide a vague description of the work

performed." *Smart SMR of New York, Inc., 9 F. Supp. 2d at 150*. "Entries stating **[\*54]** such vague references as 'review of file', 'review of correspondence', 'research', 'conference with client', and 'preparation of brief' do not provide an adequate basis upon which to evaluate the reasonableness of the services and hours expended on a given matter." *Rabin, 425 F. Supp. 2d at 273* (quoting *Mr. & Mrs. B. v. Weston Bd. of Educ., 34 F. Supp. 2d 777, 781 (D. Conn. 1999))*.

*HN14* A court may attempt to clarify vague entries by looking at the context of adjacent entries. *Conn. Hosp. Ass'n v. O'Neill, 891 F. Supp. 687, 691 (1994)*. However, courts have stated that it is "neither practical nor desirable" to review each entry in a massive case. *Copeland, 641 F.2d at 903* ("a district court [should not], in setting an attorney's fee, become enmeshed in a meticulous analysis of every detailed facet of the professional representation."). Instead, the Second Circuit has approved a percentage reduction method "as a practical means of trimming fat from a fee application". *Conn. Hosp. Ass'n 891 F. Supp. at 691* (citations omitted) (court reduced attorney fee petition by ten percent for vague entries); *Wilder v. Bernstein, 725 F. Supp. 1324, 1337 (S.D.N.Y. 1989)*, **[\*55]** rev'd. on other grounds, *944 F.2d 1028 (2d Cir. 1991)* (reducing the amount of fee request by twenty percent for vague entries); *Grogg v. General Motors Corp., 612 F. Supp. 1375, 1380 (D.C.N.Y. 1985)* (reducing attorney fee award by fifty percent for vague entries); *Gonzalez v. Town of Stratford, 830 F. Supp. 111, 114 (D. Conn. 1992)* (reducing fee petition by ten percent to account for vague entries).

The court has undertaken a painstaking review of the time records submitted by plaintiff's counsel. This review included the estimated 613 challenges made by defendants for vagueness. [24] In some instances, the allegedly vague entry can be clarified by reviewing adjacent time entries. For example, in 1996, there were numerous billing entries that described the work performed as either "review agreements", "review and revise pleadings and correspondence", "conferences with Mr. Cobery", "conferences with Mr. Kraft", "internal strategy conference", and "attention to hearing issues."

---

[24] Due to the length of the submitted bill, 304 pages, and the number of challenged entries, the Court will not discuss each allegation of vagueness. Instead, the Court has extracted examples of contested entries from different time periods and will analyze these samples in group fashion.

[25] See Defs'. Ex. B at pp. 1-10. [26] The court agrees that these time entries are vague when read in isolation. However, when viewed in conjunction with [*56] the surrounding time entries, it is clear that these descriptions, and the hours billed, relate to plaintiff's review, strategy, and drafting of the preliminary injunction/initial pleadings -- as well as attendance at the preliminary injunction hearing conducted on June 4, 1996. As time entries do not have to be considered in a segregated manner, these descriptions are not vague.

[*57] In June of 1999, there are several entries detailed as "review and revise letter to Judge Fitzsimmons" and "attention to status report." [27] Once again, a review of the surrounding entries establishes that these hours were billed in preparation for a settlement conference and in preparation of plaintiff's response to the Court's Order for a status report. Read in this context, the entries are not vague.

Likewise, in 2001, there are several allegedly vague descriptions such as, "review documents", "attention to document review", "review documents received", and "letter to Ms. Fisher". Defs'. Opp. Ex. B at 27-42. [28] It is evident from the adjoining entries that plaintiff was engaged in extensive discovery during this time period. Defendants were engaged [*58] in this same discovery process and likely produced some of the documents identified by plaintiff's counsel as "documents received". These identified time entries clearly relate to this exchange of discovery. The defendants cannot now claim that these entries are vague or do not provide sufficient information to challenge the time charged.

Also, defendants claim that Attorney Krowicki's description which states, "[a]ttend Bowen deposition, conference with Judge Fitzsimmons; conference with Mr. Goldberg" is vague. There is nothing unclear about

the description of the work performed that day. Attorney Krowicki attended the deposition of Mr. Bowen and had a conference with Judge Fitzsimmons. [*59] Undoubtedly, defendants participated in this conference and are aware of its content. As for the conference with Attorney Goldberg, it is reasonable to infer that the purpose of this conversation was to advise him of the day's events.

The last examples extracted by the Court deal with entries from 2002. These entries include descriptions such as, "attention to expert reports", "attention to trial outline", "review of deposition transcripts", "prepare for trial", "conference with []", and "trial preparation". [29] Defs'. Ex. B at 91-164. Defendants may have a valid challenge to the number of hours billed by plaintiff's counsel in preparation for the five-week trial held in July 2002. This does not mean, however, that the references to trial preparation are vague. While not detailing their trial preparation in detail, this general description is certainly sufficient to survive a vagueness challenge.

[*60] There are instances, however, where plaintiff's counsel do not adequately describe their time expenditures, and the time entries are too vague to justify the time claimed. For example, on June 2, 1999 and June 4, 1999, Attorney Ben Krowicki spent a combined total of 5.4 hours to "review orders", with no further detail of what "orders" were reviewed. A comparison of the time entries with the court docket revealed that the only order issued between January and August of 1999 was an Order for a Status Report [Doc. # 28]. Since it would not take 5.4 hours to review such a basic Order, the Court is uncertain as to what "Orders" Attorney Krowicki reviewed. Other such examples include:

1) On June 5, 2001, Attorney Krowicki spent 4.1 hours "atten[ding] to brief". Reviewing surrounding

---

[25] Whether these entries constitute duplicative billing or overstaffing will be discussed infra.

[26] Specific dates include 1/22/96; 1/24/96; 1/26/96; 1/29/96; 1/30/96; 2/6/96; 2/7/96; 2/8/96; 2/20/96; 2/23/96; 2/29/96; 3/4/96; 3/5/96; 3/6/96; 3/7/96; 3/8/96; 3/11/96; 3/13/96; 3/14/96; 3/15/96; 3/18/96; 3/19/96; 3/20/96; 3/21/96; 3/23/96; 3/24/96; 3/25/96; 3/26/96; 3/27/96; 3/28/96; 3/29/96 . . .

[27] See 6/30/99; 7/6/99; 7/7/99; 9/3/99; 9/8/99; 9/9/99; 9/10/99; 9/15/99; 9/16/99; 9/28/99; 10/11/99; 10/12/99; 10/13/99. There was also a "review and revise status report" billed on 9/13/99. Surprisingly, defendants did not challenge this entry as vague.

[28] See 5/23/01; 5/24/01; 5/30/01; 5/31/01; 6/4/01; 6/5/01; 6/11/01; 6/13/01; 6/14/01; 6/15/01; 6/18/01; 6/19/01; 6/20/01; 6/22/01; 6/25/01; 6/26/01; 6/27/01; 6/28/01; 6/29/01; 7/5/01; 7/9/01; 7/10/01; 7/12/01; 7/16/01; 7/17/01; 7/18/01; 7/19/01; 7/24/01; 7/25/01; 7/26/01; 7/31/01; 8/1/01; 8/2/01; 8/3/01; 8/6/01; 8/7/01 . . .

[29] See 1/30/02; 2/1/02; 2/8/02; 2/11/02; 2/12/02; 2/13/02; 2/14/02; 2/15/02; 2/15/02; 2/19/02; 2/20/02; 2/21/02; 2/22/02; 2/25/02; 2/26/02; 2/27/02; 2/28/02; 3/1/02; 3/3/02; 3/4/02; 3/5/02; 3/6/02; 3/7/02; 3/8/02; 3/9/02; . . . 6/3/02; 6/6/02; 6/7/02; 6/9/02; 6/10/02; 6/11/02; 6/13/02; 6/14/02; 6/18/02 . . .

time entries as well as cross-referencing the docket did not shed any light on what brief the attorney was working on.

2) There are several instances in which attorneys/paralegals "obtain[ed] documents for Mr. Krowicki". [30] Preceding and subsequent entries do not explain which documents were obtained, from where, and for what purpose.

3) On April 24, 2002, Attorney Krowicki spent 1.4 [*61] hours on "attention to materials received." There is no indication from surrounding entries as to what these material were, who they were from, or to what they related.

4) Attorney Goldberg has several time entries which state, "attention to developments" and "attention to various conferences". [31] Even a review of the adjacent time entries does not enlighten the Court as to which developments Attorney Goldberg was referring.

While not substantial, the Court agrees that these time entries are too vague "to enable the court to consider whether the time was reasonably spent." *Gonzalez, 830 F. Supp. at 114.* Therefore, a percentage reduction is in order. While defendants seek a ten (10) percent reduction, the Court does not find a sufficient number of vague entries to justify such a steep percentage reduction. Instead, the Court will reduce the award of [*62] attorney fees by three (3) percent for vague entries. The fees awarded are reduced by $ 84,531.52.

### 3. Excessive Hours/Overstaffing

In addition to the vagueness challenges, defendants also claim that "the time spent on certain tasks was excessive, warranting an across-the-board reduction." Defs'. Opp. at 32. The defendants also allege that these excessive hours were caused by overstaffing -- "having multiple attorneys working on a single issue or having all three partners review a particular motion." Id. at 33. Defendants cite several examples in their opposition, including 1) work performed on its Opposition to the Motion to Preclude Woodard; 2) hours expended on discovery; 3) time spent drafting and responding to the

motion for summary judgment; [32] 4) hours spent taking ten depositions; and 5) time spent on trial preparation. Defendants seek a five (5) percent reduction from the fee petition, a total of $ 64,790, for these excessive hours/overstaffing.

[*63] Plaintiff opposes this reduction, claiming that the staffing was appropriate and that the hours billed were not excessive. For example, plaintiff claims that the trial team structure was such that from 1996 to 2001 only two partners, Attorneys Goldberg and Krowicki, were primarily responsible for the work performed in this case. Phelan Second Aff. at 1. Attorney Phelan joined the trial team in 2001. Id. Thus, while some overlap did occur, plaintiff contends that this happened only on substantial, complex issues. Id. Plaintiff also alleges that the staffing of the Opposition to the Motion to Preclude Woodard was appropriate, that is, with the majority of the work performed by one associate and one partner. *Id. at 2.* Likewise, plaintiff's counsel claims that only three attorneys spent a significant amount of time on the preliminary injunction portion of this lawsuit and such staffing was appropriate. *Id. at 2-3.*

*HN15* As "[c]ases may be overstaffed, and the skill and experience of lawyers vary widely . . . [c]ounsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary . . . [*64] ." *Hensley, 461 U.S. at 434.* In that vein, an award of attorney fees is not "to serve as full employment or continuing education programs for lawyers and paralegals." *Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir. 1992).* Thus, a "trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism." *Id. at 938-39* (citing *United Nuclear Corp. v. Cannon, 564 F. Supp. 581, 590 (D.R.I. 1983)).*

*HN16* "It is well recognized that when more lawyers than are necessary are assigned to a case, the level of duplication of effort increases . . . ." *Farmington Sav. Bank v. Patriot Mech. Servs., LLC, 2004 Conn. Super. LEXIS 307, CV0308273578, 2004 WL 422954, at *9 (Conn. Super. Ct. Jan. 26, 2004)* (quoting *Gatti v. Community Action Agency of Greene County, Inc., 263 F.*

---

[30] See 3/6/02; 3/29/02/ 4/12/02; 8/13/02 . . .

[31] See 10/10/97; 7/6/99; 11/20/01; 1/8/02; 2/7/02; 3/22/04; 2/4/05 . . .

[32] In 2001, plaintiff's counsel spent approximately 132 hours researching and drafting a motion for summary judgment. Based on the complexity of the complaint and on the number of cross-claims filed by defendants, this time does not appear to be excessive or redundant.

*Supp. 2d 496, 518 (N.D.N.Y. 2003))*. On the other hand, courts should be mindful of the fact that complex modern litigation may require multiple attorneys to handle even seemingly simple tasks. *Meriwether v. Coughlin, 727 F. Supp. 823, 827-28 (S.D.N.Y. 1989)* ("[t]he practice of dividing [*65] work among various attorneys in a complex and lengthy litigation is a common place."); *Conn. Hosp. Ass'n, 891 F. Supp. at 691* (the personnel turnover at large firms over an extended period of time justifies having several members of the firm work on the case); *Seigal v. Merrick, 619 F.2d 160, 164 (2d Cir. 1980)* (appearance of more than one attorney at conferences and court proceedings does not automatically preclude an award of fees for time spent by each of those attorneys); *Conn. State Dept. of Soc. Servs., 2003 U.S. Dist. LEXIS 18987, at *22, 289 F. Supp. 2d at 208* ("[p]articipation by several attorneys on conference calls is often the most efficient means of communicating . . . .").

**HN17** Most courts agree that percentage reductions are proper when determining an appropriate decrease in hours for excessive hours/overstaffing. "[I]n many cases in which prevailing parties seek an award of attorneys fees, it is unrealistic to expect a trial judge to evaluate and rule on every entry in an application . . . For that reason, many courts have endorsed percentage cuts as a practical means of trimming . . . a fee application." *Farmington Sav. Bank, 2004 Conn. Super. LEXIS 307, 2004 WL 422954, at *9* [*66] (internal quotations and citations omitted).

This case was bitterly contested, and the nature of the litigation was complex. While plaintiff's counsel were highly professional and performed excellent work, the Court is skeptical about some entries in the fee petition. For example:

In 1996 alone, plaintiff's counsel billed over 278 hours to strategize, research, and draft the preliminary injunction. This time did not include correspondence, meetings with the client/witnesses, or reviewing documents.

From May of 2001 through October 2001, during the initial discovery phase of this litigation, plaintiff's counsel billed well over 800 hours. This did not include time spent on preparing for or taking depositions or subsequent discovery.

From January to March of 2002, plaintiff's counsel spent over 121 hours researching and drafting a motion

to strike or dismiss plaintiff's affirmative defenses and counterclaims. Some claims for which plaintiff sought dismissal had previously been briefed, argued, and decided in the summary judgment ruling. While the Court agrees that defendant prompted the accrual of hours by repeatedly relitigating these issues, the research to rebut these claims [*67] had previously been completed, and little additional time should have been necessary to defend against these claims. Counsel should not have had to spend time reinventing the wheel.

The Court also notes the following examples:

> 1) On October 8 and October 9, 2001, Attorney Krowicki spent a combined 9.3 hours in "preparation for hearing." While the surrounding time entries do not reveal for which hearing Attorney Krowicki was preparing, a review of the docket evidences that a hearing on a motion to amend the complaint took place on October 10, 2001.

> 2) In January of 2002 Attorneys Krowicki and Phelan spent a combined 52.4 hours preparing for and attending the hearing on the motions for summary judgment and defendants' motion to dismiss, which according to the docket sheet lasted approximately three and a half hours.

> 3) On December 22, 2004, Attorney Krowicki spent 1.2 hours "review[ing] court orders." The only order issued by the Court during this time period was a Scheduling Order entered December 17, 2004.

[*68] All the motions and orders discussed above were important and the hearing(s) intense. However, it is not obvious from the entries, read in context with the docket sheet, why Attorney Krowicki spent the designated time. Additionally, while prevailing on dispositive motions is crucial, it should not take two seasoned attorneys over 50 hours [33] to prepare for and argue a motion for summary judgment.

In early 2002, one associate spent over 40 hours preparing and drafting two motions in limine to preclude certain evidence. This effort resulted in two, two-page orders [Docs. # 176 and 200] denying the motions. When deciding the need to staff with multiple attorneys, counsel should take extreme precautions to ensure that an excessive amount of time is not spent on each issue.

---

[33] This 50 hours does not include the 464 hours charged researching and writing the motion as well as its reply to defendants' objection.

Plaintiff's counsel did not always practice such caution. Even if the hours billed appeared higher because drafts were prepared by lower echelon associates and then reviewed by the partners, the Court cannot and should not reward the inexperience of the attorney **[*69]** or summer associate performing the work in determining reasonable billable hours. Fee petitions are not meant to be a venue for continuing legal education or training.

Based on the Court's knowledge of the issues presented and its familiarity with the practice of the law, the Court finds that some of the hours expended by plaintiff's counsel "[w]ere excessive, redundant, or otherwise unnecessary." *Orchano v. Advanced Recovery, Inc., 107 F.3d 94, 98 (2d Cir. 1997)* (citations omitted). Accordingly, a five (5) percent reduction for excessive hours/overstaffing is appropriate. This reduction totals $ 140,885.87.

### 4. Travel Time Reduction

Defendants claim that plaintiff's fee petition contains "unreasonable charges for travel time." Defs'. Opp. at 28. From the billing records, defendants cite 91 dates where plaintiff's counsel billed for travel. Id. Defendants allege that this time was billed at the attorney's "regular hourly rates." Id. Defendants argue that an across-the-board reduction of five (5) percent, or $ 64,790, is necessary because the specific number of hours spent traveling cannot be determined from the time entries. Id.

Although **[*70]** plaintiff appears to agree that it is appropriate to reduce the fee petition for billed travel time, plaintiff's counsel disagrees with the proposed five (5) percent across-the-board reduction. First, plaintiff's counsel allege that some of the entries claimed by defendants to include travel time did not. Phelan Second Aff. at 4. Second, many of the travel dates cited by defendants were instances where plaintiff's counsel stayed overnight, and round-trip travel did not occur. Id.

Plaintiff's counsel also allege that most of the billed travel was conducted by Attorney Phelan. Id. Attorney Phelan claims that his usual billing practice was to deduct two hours from each trip, which totaled the time it would ordinarily take for him to travel from home to work and back. Id. Thus, even assuming defendants are correct in alleging that there were 91 trips consisting of two-hour, round-trip travel from Boston to Hartford/Montville/Bridgeport or between Hartford and Montville/Bridgeport, plaintiff's counsel already deducted any and all time charged above and beyond the two-hour travel time to and from these work-related destinations. Attorney Pehlan deducted for all travel to/from **[*71]** home or any other location. Id. Therefore, the total trips taken (91) must be multiplied by the deducted time it took to conduct the trips (2 hours), making the total billed travel time 182 hours. *Id. at 5.* Plaintiff claims a fifty (50) percent reduction to this travel time is appropriate.

There are cases where courts will not award fees for travel time. *Chrapliwy v. Uniroyal, Inc., 509 F. Supp. 442, 445-55 (N.D. Ind. 1981)*, rev'd. in part, *670 F.2d 760 (7th Cir. 1982)*. **HN18** Most courts, however, allow counsel to recover the "[t]ravel time spent working and preparing for . . . case." *Fabri v. United Techs. Int'l, Inc., 193 F. Supp. 2d 480, 489 (D. Conn. 2002)*. "Travel time spent resting or not working is not appropriately billed at the full rate." Id. (citing *Williams v. N.Y. City Hous. Auth., 975 F. Supp. 317, 324 (S.D.N.Y. 1997)* (50% reduction of hourly travel rate)). This district has adopted this fifty (50) percent reduction method. *Rose v. Heintz, 671 F. Supp. 901, 905 (D. Conn. 1987); Petronella, 2004 U.S. Dist. LEXIS 14371, 2004 WL 1688525, at *4-5.* The Court of Appeals for the Second Circuit **[*72]** has affirmed the fifty (50) percent reduction method. *In re A.H. Orange Product Liability Litigation, 818 F.2d 226, 238 (2d Cir. 1987)*. Likewise, Connecticut state courts have recognized this approach. *Carr v. Town of Bridgewater, 1991 Conn. Super. LEXIS 754, No. CV86 004 36 33 S, 1991 WL 57802, at *4 (Conn. Super. Ct. Apr. 9, 1991)* (although finding travel time was not supported by the evidence, the court recognized the fifty (50) percent reduction method).

In this case, defendants have not presented sufficient evidence to justify a deviation from this practice which has been accepted by the Second Circuit, this court, and the Connecticut state courts. Defendants request for a five (5) percent across-the-board reduction is denied. Instead, the Court will reduce plaintiff's counsel's travel hours by fifty (50) percent. There are 91 dates on which defendants claim plaintiff's counsel traveled the two-hour round-trip from the Boston office to the Connecticut office or from the Connecticut office to the defendant plant, making the total travel time 182 hours. Fifty percent of 182 is 91. Plaintiff's billable hours must be reduced by 91 hours.

The issue then becomes: from whose time entries will **[*73]** the deduction be taken and in what years? As Attorney Phelan admitted that the bulk of the travel was

done by him, the Court deems it appropriate to deduct the entire 91 hours from Attorney Phelan's time entries. Phelan Second Aff. at 4. However, due to the volume of this fee petition, the Court will not delve into individual time entries to determine in which years the 91 hours will be deducted. Instead, the Court finds it appropriate to multiply the travel hours (91) by the average hourly rate for Attorney Phelan over the course of his

Plaintiff states that it did not claim $ 27,571.02 of the costs incurred prior to April 1988, as the underlying [*74] invoices could not be located. Phelan Aff. at 19.

Defendants object to certain costs, alleging that:

1) plaintiff is not entitled to recover the cost of the electronic research ($ 137,107.95); 2) plaintiff's copying costs -- both in-house and by third parties -- are administrative costs, and therefore, total copying costs should be reduced by $ 103,698 or, alternatively, an across-the-board reduction of 75% should be applied; 3) plaintiff's coding and scanning costs are also administrative costs, and a reduction of $ 18,007 is necessary; 4) plaintiff should bear their own costs of mediation, totaling $ 4,467.29; 5) plaintiff's miscellaneous travel costs should not include the car rental, supplies, and laundry, and miscellaneous travel costs must be reduced by $ 5,332.35, and 6) the room rental cost should be reduced by $ 4,728. [34] In total, defendants seek a reduction in costs of $ 273,340.59, conceding a total costs award of $ 201,309.32.

[*75]   Once again, the Court will evaluate the appropriateness of costs under the "reasonableness" standard discussed above.

### 1. Electronic Research

involvement in this litigation ($ 283.02). This equals a reduction in attorney's fees in the amount of $ 25,754.82.

### D. Costs

Plaintiff's counsel also seek costs in the amount of $ 474,649.91. A specific breakdown of costs include:

| | |
|---|---|
| Deposition Transcripts - | $ 40,649.17 |
| Third-Party Copy Services - | $ 49,761.36 |
| Electronic Research - | $ 137,107.95 |
| Travel & Hotel Costs - | $ 69,487.66 |
| Third Party Professional Services - | $ 25,020.30 |
| In-House Photocopying - | $ 78,254.02 |
| Expert Costs - | $ 74,369.59 |

Section 11.1(a) of the Indemnification Agreement states the moving party is entitled to "all . . . expenses . . . paid as a result of any claims, demands . . . ." Therefore, plaintiff seeks recovery for electronic research in the amount of $ 137,107.95. Defendants object, stating that electronic research is not a recoverable cost. Defs'. Opp. at 36.

The question of whether computerized legal research is recoverable under Connecticut law, either as an item of cost or as a component of attorney fees, appears to be unresolved by any published decision. Defendants argue that the United States Court of Appeals for the Second Circuit has held that "computer research is merely a substitute for an attorney's time that is compensable under an application for attorneys' fees and is not a separately taxable cost." *U.S. ex rel Evergreen Pipeline Const. Co., Inc. v. Merritt Meridian Const. Corp., 95 F.3d 153, 173 (2d Cir. 1996). Evergreen*, however, is distinguishable from this case. The cause of action in Evergreen did [*76] not involve a contract provision or fee shifting statute but, instead, involved Rule 11 sanctions. The Second Circuit held that the district court did not abuse its discretion in finding that reimbursement for electronic research was not an appropriate Rule 11 sanction. *Id.*

---

[34]  Originally, defendants sought a room rental reduction in the amount of $ 7,912. At the hearing, however, defense counsel conceded that an error occurred and stated that the room rental reduction sought was actually in the amount of $ 4,728.

Here, the Court is presented with a fee petition under an indemnification agreement and is not presented with a Rule 11 motion. *Evergreen* is not controlling.

There appears to be some disagreement amongst the courts regarding the treatment of electronic research costs. Some courts view the costs of legal research as part of a law firm's overhead, and, as such, "are a factor to be included in the setting of attorneys fees as opposed to ordinary costs." *DFS Group L.P. v. Paiea Properties, 110 Haw. 217, 131 P.3d 500, 507 (S. Ct. Haw. 2006)* (quoting *In re San Juan Dupont Plaza Hotel Fire Litigation, 142 F.R.D. 41, 47 (D.P.R. 1992)*. See also, *Sulkowska v. City of New York, 170 F. Supp. 2d 359 (S.D.N.Y.2001)* (while an attorney can be reimbursed for time spent performing computerized research, the cost of the computer service used in the research is not); [*77] *Ciraolo v. City of New York, 2000 U.S. Dist. LEXIS 14940, No. 97 Civ. 8208(RPP), 2000 WL 1521180 (S.D.N.Y.2000)* (electronic research costs are simply an item of overhead, and as such should be built into the fees charged). In *Haroco, Inc. v. American Nat'l Bank and Trust Co. of Chicago, 38 F.3d 1429, 1440-41 (7th Cir. 1994)*, the Seventh Circuit adopted this line of reasoning, stating that:

> [t]he added cost of computerized research is normally matched with a corresponding reduction in the amount of time an attorney must spend researching. Therefore, we see no difference between a situation where an attorney researches manually and bills only the time spent and a situation where the attorney does the research on a computer and bills for both the time and the computer fee. In both cases the total costs are attorney's fees and may not be recovered as costs.

Id.

Other courts have reached a different result, holding that charges for electronic research should be allowed because these "services presumably save money by making legal research more efficient." *Role Models Am., Inc. v. Brownlee, 359 U.S. App. D.C. 237, 353 F.3d 962, 975 (D.C. Cir. 2004)*. See also, *Robinson v. Ariyoshi, 703 F. Supp. 1412, 1436-37 (D. Haw. 1989)*. [35] [*78] *HN19* The Second Circuit has adopted this line of reasoning, holding that:

> the use of online research services likely reduces the number of hours required for an attorney's manual search, thereby lowering the lodestar, and that in the context of a fee-shifting provision, the charges for such online research may properly be included in a fee award.

*Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany, 369 F.3d 91, 98 (2d Cir. 2004)*.

[*79] The Court finds this reasoning persuasive. Rather than conducting manual research in the stacks at a law library, an attorney charging an hourly rate saves time doing research electronically. The attorney, therefore, loses some economic benefit by not charging for the time saved. It would be inequitable to require attorneys to absorb, in addition to the lost time, the expense of computer generated research assistance programs such as Westlaw or LexisNexus.

The Court awards plaintiff's counsel $ 137,107.95, the full cost for their electronic research.

## 2. Copying Costs

Plaintiff seeks copying costs in the amount of $ 128,015.38 - $ 49,761.36 for third party copying services and $ 78,254.02 for in-house copying. Defendants claim that copying is an administrative cost constituting routine overhead and is not recoverable. Defs'. Opp. at 37. While acknowledging that defendants were charged for

[35] The Robinson court agreed with the analysis set forth in United Nuclear Corp. v. Cannon, 564 F. Supp. 581 (D.R.I.1983), namely that:

Lexis is an essential tool of a modern efficient law office. As such, it saves lawyers' time by increasing the efficacy of legal research. Denial of reimbursement for Lexis charges in a proper case would be an open invitation to law firms to use high-priced attorney time to perform routine research tasks that can be accomplished quicker and more economically with Lexis. This, in turn, would lead inevitably to increased staffing of civil right cases, and thus to larger fee awards.

Id. at 591-592.

large copying jobs [36], defendants claim that plaintiff's counsels' charge for ordinary copying is "patently unreasonable". Id. Defendants seek a reduction in copying costs of $ 103,698, or alternatively, a 75 percent across-the-board reduction, which totals $ 96,011.

 [*80]  *HN20* "[P]laintiff is entitled to recover reasonable out-of-pocket expenses that were incurred during the litigation and that are normally charged to a fee-paying client." *Ham, 2000 Conn. Super. LEXIS 1556, 2000 WL 872707, at *13* (internal citations and quotations omitted). Recoverable expenses include those items not associated with an attorney's routine overhead, "such as duplicating, postage and telephone costs." *Smart, 9 F. Supp. 2d at 153-54* (describing recoverable expenses under fee shifting statute); *Tsombanidis, 208 F. Supp. 2d at 286* ("[i]dentifiable, out-of-pocket disbursements for items such as photocopying, travel and telephone costs are generally taxable . . . and are often distinguished from nonrecoverable routine office overhead") (quotations omitted); *Lambert v. Fulton County, GA, 151 F. Supp. 2d 1364, 1370* ("[i]n short, with the exception of routine office overhead normally absorbed by the practicing attorney, all reasonable expenses incurred in case preparation, during the course of litigation, or as an aspect of settlement of the case may be taxed as costs . . . .") (internal citations and quotations omitted). Whether photocopying [*81] costs are recoverable depends, in part, on whether the fee shifting statute or local rule allows for such recovery.

Here, the indemnification agreement provides that "all . . . expenses . . ." are recoverable. The Court finds that the only limitation as to costs under Section 11.1(a) is that they must be "reasonable". Reasonable costs awarded under a contract may cover a more comprehensive range of expenses than those taxable under local rules. *J.P. Sedlak Associates, 2000 U.S. Dist. LEXIS 18947, 2000 WL 852331* (finding that costs awarded in certain types of cases are broader than in other instances).

Due to the magnitude of this case and the voluminous documents produced both in discovery and for trial, the Court finds that plaintiff's cost of $ 49,761.36 for third-party copying services is reasonable and recoverable. However, the Court finds the cost of $ 78,254.02 for in-house copying unreasonable.

Plaintiff's counsel claim that the firm charged the market rate of 20 cents per page for in-house copying. Counsel

could not provide the exact number of pages copied. Dividing the amount charged per page (20 cents) by the total cost of in-house copying ($ 78,254.02), the Court estimates the number [*82] of pages allegedly copied in-house totals 391,270.01.

This total is both troubling and questionable. For example, plaintiff alleges to have produced an estimated 75,000 pages during initial discovery. Phelan Aff. at 4. Plaintiff also states that more boxes of documents were subsequently provided to defendants. Id. Undoubtedly, many of these documents were later copied to be used as exhibits at the two trials. However, the Court finds it likely that at least some of these copies had to have been made by third-party copying services, and that amount has been submitted as a separate cost. It would be unreasonable to hold defendants responsible for additional in-house photocopying totaling close to 300,000 pages. Therefore, the Court finds that the number of reimbursable pages for in-house copying must be cut in half. The Court also finds that the prevailing rate in Connecticut for copying is 15 cents per page. To summarize, plaintiff is entitled to recover the cost of copying 195,635 pages in-house at 15 cents per page for a total of $ 29,345.25. Combining both in-house and third-party copying, plaintiff's recovery for photocopying costs totals $ 79,106.61.

### 3. Coding/Scanning

 [*83]  Plaintiff claims coding and scanning costs in the amount of $ 18,007. Pl's. Ex. 3, Tab 5. Defendants claim that these are administrative costs and are not recoverable.

The Court finds that *HN21* coding and scanning documents into software for both case management and trial presentation are administrative costs. Administrative costs are considered an attorney's overhead and are not recoverable. Therefore, plaintiff's request for costs for coding/scanning in the amount of $ 18,007 is denied. *St. George v. Mak, 2000 U.S. Dist. LEXIS 20365, Civ. No. 5:92CV587 (HBF), 2000 WL 303249, at *5 (D. Conn. Feb. 15, 2000)*.

### 4. Mediation Costs

Plaintiff claims mediation costs totaling $ 4,467.29. Defendants object to this claim, alleging that prior to the mediation the parties agreed to bear their own mediation costs. Fisher Aff. at 8. Plaintiff alleges that while it

---

[36]   Defense counsel's firm charged $ 6,118.90 for in-house copying and $ 18,198.42 for third-party copying.

agreed to pay the mediation entity directly, it never agreed to forfeit any right to indemnification for such expense. Phelan Second Aff. at 8.

The main purpose of mediation is to facilitate a neutral environment for parties to meet and discuss whether an alternative resolution of the case can be agreed upon prior to incurring the costly [*84] expense of trial. To encourage participation in this mediation practice, the Court finds it important that parties bear their own costs of mediation. Doing so will deter the unnecessary and excessive expenditure of money by parties during settlement negotiations. Thus, the Court declines to award the cost of mediation, and defendants' request to deduct $ 4,467.29 from the total costs is granted.

### 5. Miscellaneous Travel/Room Related Costs

Plaintiff submits miscellaneous travel costs totaling $ 69,536.75. Defendants challenge the following costs: movie rentals ($ 36.92); gift shop charge ($ 10.65); a work room at the Connecticut hotel during each trial ($ 7,831.24 for the 2005 trial and $ 12,652 for the 2002 trial); a one-month minivan rental ($ 1,465.71); laundry costs ($ 733.60); supplies, photocopying, and telephone charges ($ 1,583.97); mileage/parking ($ 1,130.21); and a New York hotel room charge for Attorney Goldberg ($ 371.28). Defs'. Exhibit G. Defendants claim that $ 5,332.35 should be deducted from the total costs.

As to the above listed miscellaneous charges, the Court finds as follows:

1. Plaintiff conceded that the movie and gift shop charges were inadvertently [*85] left in the bill. This amount has already been deducted from the costs originally sought.

2. Plaintiff asserts that the van was necessary to transport electronic equipment and documents to court for trial. After the initial setup, however, all the equipment and documents were left in the locked courtroom at night. One of the benefits of electronic scanning and trial presentation software is to make voluminous cases more manageable by storing all the data/evidence on a laptop. Giving this technology, transporting the necessary materials to the hotel on a laptop to facilitate preparation for the next day of trial should not have been onerous. The Court finds that the $ 1,465.71 cost

of a monthly minivan rental unreasonable and deducts it from the total cost.

3. With respect to the laundry expense, plaintiff's counsel have failed to offer any evidence to support the conclusion that this expense was incurred solely because counsel were living in a Connecticut hotel during the pendency of the civil trials conducted in this case. Plaintiff's counsel have not claimed that this laundry expense would not have been incurred had they been living at home. In the absence of such proof, the Court [*86] finds that the $ 733.60 in laundry costs must be deducted from the total costs.

4. Plaintiff claims that Attorney Goldberg, who was in New York on October 30, 2003, had a hearing in Bridgeport on October 31, 2003. To avoid duplicative and unnecessary travel, Attorney Goldberg stayed in New York on the night of the 30th, instead of traveling back to Boston. This is not unreasonable, and plaintiff is entitled to the cost of the hotel room - $ 371.28.

5. Plaintiff's costs for supplies, photocopying, and telephone charges ($ 1,583.97), as well as mileage/parking ($ 1,130.21) are reasonable. It is well recognized that unforeseen events occur during trial which can result in the need for additional supplies and photocopying. It is also reasonable that counsel be reimbursed for mileage and parking costs.

6. Originally, defendants stated that, as they occupied one work room during the trials, plaintiff's counsel were entitled to seek reimbursement for the cost of one room. Defendants claimed, however, that plaintiff was charging for two work rooms for both the 2002 and 2005 trials. At the hearing, defense counsel conceded that this was a mistake, and that, in fact, plaintiff's counsel only [*87] rented one work room during each trial. Defense counsel, however, still sought a reduction in the amount of $ 4,728. Although uncertain how this figure was derived, the Court finds that plaintiff's costs for procuring one work room during the 2002 trial and 2005 trial were reasonable. Plaintiff is entitled to reimbursement in the total amount of $ 20,483.24 for the rental of these rooms.

### IV. Conclusion

Plaintiff's motion for fees and costs is granted. To summarize, the attorneys fees awarded are calculated as follows:

| Attorney/Paralegal/Law Clerk | *3*Year - Hours x Rate/Hour = | Total | | |
|---|---|---|---|---|
| Goldberg | 1996 | 170.9 | $ 314.50 | $ 53,748.05 |
| | 1997 | 1.65 | $ 321.72 | $ 530.84 |
| | 1998 | 4.2 | $ 296.25 | $ 1,244.25 |
| | 1999 | 24.95 | $ 333.95 | $ 8,332.05 |
| | 2000 | 6.85 | $ 345.18 | $ 2,295.45 |
| | 2001 | 70.15 | $ 355.00 | $ 24,903.25 |
| | 2002 | 669.65 | $ 360.61 | $ 241,482.49 |
| | 2003 | 69.95 | $ 368.83 | $ 25,799.66 |
| | 2004 | 27.40 | $ 378.45 | $ 10,369.53 |
| | 2005 | 374.2 | $ 391.48 | $ 146,491.82 |
| | | | Total | $ 515,197.39 |
| Krowicki | 1996 | 212.70 | $ 240.00 | $ 51,048.00 |
| | 1997 | 32.70 | $ 212.50 | $ 6,948.75 |
| | 1998 | 24.1 | $ 212.50 | $ 5,121.25 |
| | 1999 | 120.20 | $ 206.25 | $ 24,791.25 |
| | 2000 | 33.6 | $ 263.41 | $ 8,850.58 |
| | 2001 | 899.40 | $ 270.91 | $ 243,656.45 |
| | 2002 | 1027.70 | $ 275.19 | $ 282,812.76 |
| | 2003 | 107.30 | $ 281.46 | $ 30,200.66 |
| | 2004 | 15.20 | $ 288.80 | $ 4,389.76 |
| | 2005 | 410 | $ 298.74 | $ 122,483.40 |
| | | | Total | $ 780,302.86 |
| Phelan | 2001 | 580.20 | $ 270.91 | $ 157,181.98 |
| | 2002 | 1729.50 | $ 275.19 | $ 475,941.11 |
| | 2003 | 174.70 | $ 281.46 | $ 49,171.06 |
| | 2004 | 82.20 | $ 288.80 | $ 23,739.36 |
| | 2005 | 1133.50 | $ 298.74 | $ 338,621.79 |
| | | | Total | $ 1,044,655.30 |
| Hole | 2004 | 32.8 | $ 142.50 | $ 4,674.00 |
| | 2005 | 571.3 | $ 150.00 | $ 85,695.00 |

| Attorney/Paralegal/Law Clerk | *3*Year - Hours x Rate/Hour = | | Total | |
|---|---|---|---|---|
| | | | Total | $90,369.00 |
| Short | 2001 | 22 | $122.00 | $2,684.00 |
| | 2002 | 19.3 | $129.00 | $2,489.70 |
| | 2003 | 13.8 | $135.00 | $1,863.00 |
| | | | Total | $7,036.70 |
| Tymchenko | 2001 | 13.2 | $122.00 | $1,610.40 |
| | 2002 | .4 | $129.00 | $51.60 |
| | 2003 | 7.9 | $135.00 | $1,066.50 |
| | | | Total | $2,728.50 |
| White | 2003 | 14.9 | $135.00 | $2,011.50 |
| | | | Total | $2,011.50 |
| Bigelow | 2002 | 21.9 | $129.00 | $2,825.10 |
| | | | Total | $2,825.10 |
| Calvert | 2001 | 44.64 | $122.00 | $5,446.08 |
| | 2002 | 73.18 | $129.00 | $9,440.22 |
| | | | Total | $14,886.30 |
| Gaston | 2002 | 16.10 | $129.00 | $2,076.90 |
| | | | Total | $2,076.90 |
| Hackett | 2001 | 12.20 | $60.75 | $741.15 |
| | 2002 | 22.6 | $129.00 | $2,915.40 |
| | | | Total | $3,656.55 |
| Eggart | 2001 | 315.89 | $122.00 | $38,538.58 |

| Attorney/Paralegal/Law Clerk | *3*Year - Hours x Rate/Hour = | Total | | |
|---|---|---|---|---|
| | | | Total | $38,538.58 |
| Kim | 2001 | 166.83 | $122.00 | $20,353.26 |
| | 2002 | 237.5 | $150.00 | $35,625.00 |
| | 2003 | 97.4 | $158.00 | $15,389.20 |
| | | | Total | $71,367.46 |
| Downie | 1996 | 20.90 | $94.50 | $1,975.05 |
| | | | Total | $1,975.05 |
| Baxter | 2002 | 59.6 | $150.00 | $8,940.00 |
| | 2003 | 71 | $158.00 | $11,218.00 |
| | | | Total | $20,158.00 |
| Savery | 2002 | 68.8 | $150.00 | $10,320.00 |
| | | | Total | $10,320.00 |
| Goldberg | 1996 | 44.9 | $110.00 | $4,939.00 |
| | | | Total | $4,939.00 |
| Siczewicz | 1996 | 30.20 | $150.00 | $4,530.00 |
| | 2001 | 74.50 | $190.00 | $14,155.00 |
| | 2002 | 570.50 | $200.00 | $114,100.00 |
| | 2003 | 2.0 | $210.00 | $420.00 |
| | | | Total | $133,205.00 |
| Brennan | 2005 | 725.1 | $75.00 | $54,382.50 |
| | | | Total | $54,382.50 |
| Curran | 2001 | 13.50 | $60.75 | $820.13 |
| | 2002 | 26.10 | $67.50 | $1,761.75 |

| Attorney/Paralegal/Law Clerk | *3*Year - Hours x Rate/Hour = | Total | | |
|---|---|---|---|---|
| | 2003 | 2.3 | $67.50 | $155.25 |
| | 2005 | 22.7 | $75.00 | $1,702.50 |
| | | | Total | $4,439.63 |
| Palmieri | 2000 | .20 | $55.00 | $11.00 |
| | 2001 | 209.80 | $60.75 | $12,745.35 |
| | 2002 | 978.70 | $67.50 | $66,062.25 |
| | 2003 | 24.30 | $67.50 | $1,640.25 |
| | 2004 | 4.5 | $75.00 | $337.50 |
| | 2005 | 83.4 | $75.00 | $6,255.00 |
| | | | Total | $87,051.35 |
| Lindsay | 2001 | 17.20 | $60.75 | $1,044.90 |
| | 2002 | 81.90 | $67.50 | $5,528.25 |
| | 2003 | 9.0 | $67.50 | $607.50 |
| | | | Total | $7,180.65 |
| Blake | 2001 | 279.10 | $60.75 | $16,955.33 |
| | | | Total | $16,955.33 |
| Gelbwasser | 2002 | 39.9 | $67.50 | $2,693.25 |
| | | | Total | $2,693.25 |
| Gibbs | 2002 | 13.5 | $67.50 | $911.25 |
| | | | Total | $911.25 |

*3*TOTAL ATTOR-  $2,919,863.15
NEY FEES

[*88]  From the award of attorney's fees the following
deductions must be taken:

| | | |
|---|---|---|
| *2*Attorney's Fees Total | $ 2,919,863.15 | |
| | - | |
| *2*Vague Entries | $ 84,531.52 | |
| | - | |
| *2*Excessive Hours | $ 140,885.87 | |
| | - | |
| *2*Travel Deduction | $ 25,754.82 | |
| | Total Fees | $ 2,668,690.94 |

To repeat, costs are awarded as follows:

| | | |
|---|---|---|
| *2*Total Claimed Costs | $ 474,649.91 | |
| | - | |
| *2*Photocopying Deduction | $ 48,908.77 | |
| | - | |
| *2*Coding/Scanning | $ 18,007.00 | |
| | - | |
| *2*Mediation Costs | $ 4,467.29 | |
| | - | |
| *3*Miscellaneous Travel | | |
| *2*Expenses | $ 2,199.31 | |
| | Total Costs | $ 401,067.54 |

SO ORDERED and entered this 5th day of September,   UNITED STATES MAGISTRATE JUDGE
2006, at Bridgeport, Connecticut.

HOLLY B. FITZSIMMONS

◆ Positive

As of: April 29, 2016 3:48 PM EDT

# J.P. Sedlak Assocs. v. Connecticut Life & Cas. Ins. Co.

United States District Court for the District of Connecticut

March 31, 2000, Decided ; March 31, 2000, Filed

CIVIL ACTION NO. 3:98CV145 (DFM)

**Reporter**

2000 U.S. Dist. LEXIS 18947; 2000 WL 852331

J.P. SEDLAK ASSOCIATES, Plaintiff, v. CONNECTICUT LIFE & CASUALTY INSURANCE CO., Defendant. CONNECTICUT LIFE & CASUALTY INSURANCE CO., Defendant, Counter-Claimant, v. J.P. SEDLAK ASSOCIATES, MATTHEW SEDLAK and MARTIN LIPPIETT, Defendants on the Counterclaim.

**Disposition:** **[*1]** Plaintiffs' Application GRANTED in part. Plaintiff and counterclaim defendants awarded $ 552,425.65 in attorneys' fees and costs. Amended judgment entered in favor of the plaintiff and counterclaim defendants in the amount of $ 552,425.65 in attorney's fees and costs.

## Core Terms

counterclaim, costs, parties, contracts, reduction, attorneys', defending, breached, expended, award of fees, fee award, specificity, prevailing, software, charges, time spent, services, copying, argues, fees and costs, misrepresentation, recoverable, allocable, expenses, asserts, damages, non-SLA, agrees, spent, breach of contract

## Case Summary

### Procedural Posture

Plaintiff's applied for attorney's fees, expert fees, and costs in hard-fought litigation involving, in part, plaintiff's allegations of trade secret misappropriation and breach of various contracts intended to result in defendant's new computer system, and defendant's counterclaims alleging fraud, negligent misrepresentation, breach of contract, breach of the implied covenant of good faith and fair dealing, and statutory violations.

### Overview

After a jury returned a verdict in favor of plaintiff on all its claims and a verdict against defendant on all its counterclaims, plaintiff filed an application for approximately $ 636,428 in attorney's fees and costs pursuant to a fee-shifting provision in one of the parties' contracts, a software licensing agreement (SLA). Defendant argued that plaintiff was entitled only to those fees and costs incurred in litigating the SLA. The court, however, concluded there was no reasonable way to segregate counsel's time by contract or claim, that during the litigation the parties' claims were interrelated and the time and money spent, including time spent prosecuting and/or defending the non-SLA claims, were in the pursuit of one common goal. Plaintiff was not entitled, however, to costs and fees on a claim on which it was not successful and which was not interrelated with the rest of the litigation. The court also reduced the requested amount for: fees and costs incurred by lead counsel for entries lacking in specificity, travel time, excessive expert fees, electronic research, and copy costs. The total amount awarded was approximately $ 552,426.

### Outcome

The court granted plaintiff's application for fees and costs in part, awarding approximately $ 552,426. Although plaintiff's claim for fees and costs was based on a provision in only one of the contested agreements, there was no reasonable way for the court to segregate counsel's time by contract or claim, and the claims were interrelated and in pursuit of a common goal.

## LexisNexis® Headnotes

Civil Procedure > Remedies > Costs & Attorney Fees > General Overview

Civil Procedure > ... > Attorney Fees & Expenses > Basis of Recovery > American Rule

**HN1** The general rule of law known as the American rule is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN2* Once a prevailing party proves that he is entitled to an award of fees, the determination of the actual size of the award lies with the trial court's discretion. Generally, the party seeking an award of fees has the burden of establishing his entitlement to such. Applications for fee awards should generally be documented by contemporaneously created time records that specify for each attorney, the hours expended, and the nature of the work done.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN3* Fee applications must meet certain standards of specificity in order for a court to render a determination that the claimed fees represent time reasonably expended on the case, and charged at a reasonable hourly rate considering the prevailing rate in the community, and experience of the person rendering the services.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN4* The trial court may rely on its own knowledge to supply evidence of an attorney's fee award.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN5* Connecticut law provides that a trial court may consider all time spent on a case involving multiple claims and defenses even if only one provides the basis for a fee recovery.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN6* The analytical framework established by the United States Supreme Court for determining whether a plaintiff's partial success requires a reduction in the lodestar is as follows: First, the court must examine whether the plaintiff failed to succeed on claims wholly unrelated to the claims on which he succeeded. The hours spent on such unsuccessful claims may be excluded from the calculation. Next, the court must determine whether there are any unsuccessful claims which are interrelated with the successful claims. If such unsuccessful claims exist, the court must determine whether the plaintiff's level of success warrants a reduction in the fee award. If a plaintiff

obtained excellent overall results the court should compensate the plaintiff for the full amount of attorneys' fees.

Civil Procedure > ... > Pleadings > Counterclaims > General Overview

Civil Procedure > Remedies > Costs & Attorney Fees > General Overview

*HN7* Where a party with a contractual right to recover legal fees must incur attorney's fees to preserve his contractual rights and interests, he may recover those fees and damages.

Civil Procedure > ... > Costs & Attorney Fees > Attorney Fees & Expenses > Reasonable Fees

*HN8* A fee applicant bears the burden of providing documentation to prove that an appropriate amount of time was billed and expended at a reasonable hourly rate. Where a party fails to keep adequate records, courts do not award the full amount requested. Vague entries such as "review of file," "review of correspondence," "research," "conference with client," and "preparation of brief" do not provide a court with an adequate basis upon which to evaluate the reasonableness of a fee application. When time entries are lacking in this regard, courts typically apply an across-the-board reduction.

Civil Procedure > Remedies > Costs & Attorney Fees > General Overview

*HN9* A party is not entitled to recover attorney's fees for hours that are excessive, redundant, or otherwise unnecessary.

Civil Procedure > Remedies > Costs & Attorney Fees > General Overview

*HN10* See *28 U.S.C.S. § 1928*.

**Counsel:** For JP SEDLAK ASSOC, plaintiff: John C. Yavis, Jr., Robert E. Kaelin, Murtha Cullina LLP, Hartford, CT.

For JP SEDLAK ASSOC, plaintiff: Dennis S. Deutsch, Ferrara, Turitz, Harraka & Goldberg, Hackensack, NJ.

For US COURT OF APPEALS, notice only: US Court of Appeals, Office of the Clerk, New York, NY.

For CONNECTICUT LIFE & CASUALTY INS CO, defendant: Theodore J. Tucci, Robinson & Cole, Everett E. Newton, Murtha Cullina LLP, Hartford, CT.

For CONNECTICUT LIFE & CASUALTY INS CO, defendant: Brian E. Moran, Robinson & Cole, Stamford, CT.

For CONNECTICUT LIFE & CASUALTY INS CO, defendant: David Paul Friedman, Shelley R. Sadin, Zeldes, Needle & Cooper, Bridgeport, CT.

For MATTHEW SEDLAK, MARTIN LIPPIETT, counter-defendants: John C. Yavis, Jr., Robert E. Kaelin, Murtha Cullina LLP, Hartford, CT.

For JP SEDLAK ASSOC, counter-defendant: Dennis S. Deutsch, Ferrara, Turitz, Harraka & Goldberg, **[*2]** Hackensack, NJ.

For JP SEDLAK ASSOC, third-party plaintiff: John C. Yavis, Jr., Robert E. Kaelin, Murtha Cullina LLP, Hartford, CT.

For JP SEDLAK ASSOC, third-party plaintiff: Dennis S. Deutsch, Ferrara, Turitz, Harraka & Goldberg, Hackensack, NJ.

For HELEN LEVEILLE, third-party defendant: Brian E. Moran, Robinson & Cole, Stamford, CT.

For CONNECTICUT LIFE & CASUALTY INS CO, counter-claimant: Brian E. Moran, Robinson & Cole, Stamford, CT.

**Judges:** Donna F. Martinez, United States Magistrate Judge.

**Opinion by:** Donna F. Martinez

# Opinion

### RULING ON MOTION FOR FEES AND COSTS

Pending before this court is the Plaintiff's Application for Attorneys' Fees, Expert Fees and Costs (doc. # 145). The application is GRANTED in part as follows.

### I. FACTUAL BACKGROUND

The plaintiff/counterclaim defendant, J.P. Sedlak Associates ("JPS") is a corporation which supplies

systems software and business applications software for the insurance industry. The counterclaim defendant Matthew Sedlak is the President of JPS and the counterclaim defendant Martin Lippiett is the Executive Vice President of the company. The defendant/counterclaimant Connecticut Life & Casualty Insurance Company **[*3]** ("CL&C") is an insurance company that writes a variety of personal lines of insurance and markets its products almost exclusively through telemarketing.

In 1996, CL&C decided to upgrade its computer system in order to make the system year 2000 ready and to acquire a faster, more integrated system that would enhance the on-line telemarketing of its insurance products. In June 1996, CL&C issued a request for proposals, emphasizing that all work was to be completed by August 1, 1998 due to the year 2000 problem. JPS responded to CL&C's request with an initial proposal in July of that year and the parties began negotiations. Ultimately, JPS, through Sedlak and Lippiett, submitted a final proposal to CL&C and assured CL&C of their company's ability to deliver the upgraded computer system within the time frame set forth by CL&C in the request for proposals.

After its acceptance of JPS's final proposal, CL&C executed various agreements with JPS: On May 8, 1997, CL&C and JPS entered into a Hardware Purchase Agreement ("HPA"); on May 9, 1997, CL&C and JPS entered into a Software License Agreement ("SLA"); on May 9, 1997, CL&C and JPS entered into an Agreement for Additional Services ("AAS"); **[*4]** on September 12, 1997, CL&C and JPS entered into a Technical Services and Support Agreement ("TSSA"); and on September 8, 1997, the parties executed a Source Code Escrow Agreement ("SCEA"). The successful performance of all the contracts was to result in CL&C's new computer system.

### II. PROCEDURAL HISTORY

This case has been heavily litigated and hard fought. It began on November 10, 1997 when the plaintiff, JPS, filed this suit in New Jersey Superior Court, alleging that the defendant CL&C breached the HPA, SLA, AAS, and the TSSA contracts. JPS also asserted a trade secret misappropriation count. On December 3, 1997, CL&C removed the case to federal court in New Jersey. *See* doc. # 1. The defendant CL&C filed an answer, affirmative defenses and counterclaims. *See* doc. # 4. CL&C's counterclaims alleged fraud, negligent

misrepresentation, breach of the SLA, breach of the AAS, breach of the TSSA, breach of the SCEA, breach of the implied covenant of good faith and fair dealing, and CUTPA. [1] *See id.* The case later was transferred to the District of Connecticut.

 **[*5]** JPS filed an amended complaint on January 20, 1998. *See* doc. # 18. On May 8, 1998, the defendant CL&C amended its counterclaims to include a claim for innocent misrepresentation against JPS and claims of fraud, negligent misrepresentation, innocent misrepresentation and CUTPA violations against the individual counterclaim defendants Matthew Sedlak and Martin Lippiett. [2] *See* doc. # 18.

On February 27, 1998, JPS filed a third party complaint against Helen Leveille, the defendant's computer consultant. *See* doc. # 37. On March 27, 1998, Leveille moved to dismiss the third party complaint. After extensive briefing on the issue, on October 7, 1998, the plaintiff voluntarily withdrew its claims against her. *See* doc. # 89.

Both parties moved for prejudgment remedies; *see* doc. # # 31, 43; and on March 27, 1998, CL&C moved for a preliminary injunction. *See* doc. # 50. On March 20, 1998, JPS **[*6]** moved for judgment on the pleadings; *see* doc. # 41; and on November 2, 1998, JPS moved for summary judgment. *See* doc. # # 90, 93, 96.

The parties also spent a good deal of time attempting to settle the matter. Private mediation sessions were held during March, May and September 1998. In addition, on November 10, 1998, the parties attended a settlement conference with Magistrate Judge Joan Margolis.

The case proceeded to trial during the first two weeks of December, 1998. Testimony took most of the two weeks. Hundreds of exhibits were introduced into evidence. On December 11, 1998, the jury returned a verdict in favor of JPS on all its claims. It awarded JPS $ 90,232.92 on the HPA claim, $ 114,263.75 on the SLA claim, $ 158,000 on the AASS claim and $ 63,114.10 on the TSSA claim. The jury rendered a verdict against CL&C on all of its counterclaims.

III. *Application for Fees*

JPS filed this application for attorneys' fees on January 8, 1999 (doc. # 145), asserting that it is entitled to an award of fees and costs pursuant to Paragraph 8.3 of the SLA which provides:

> Claims. In the event either party shall institute any court proceeding against the other for **[*7]** breach of any of the terms or conditions of this Agreement, the prevailing party in such proceeding shall recover from the other party all court costs and reasonable attorney's fees, consulting fees, and expert witness fees incurred in connection with such proceeding.

A. *Standard of Review*

*HN1* "The general rule of law known as the 'American rule' is that attorney's fees and ordinary expenses and burdens of litigation are not allowed to the successful party absent a contractual or statutory exception." *Chrysler Corp. v. Maiocco, 209 Conn. 579, 590, 552 A.2d 1207 (1989)*(citing *Alyeska Pipeline Service Co. v. Wilderness Society, 421 U.S. 240, 247, 44 L. Ed. 2d 141, 95 S. Ct. 1612 (1975)*.

*HN2* Once a prevailing party proves that he is entitled to an award of fees, the determination of the actual size of the award lies with the trial court's discretion. *Gagne v. Maher, 594 F.2d 336, 344 (2d Cir. 1979)*, *aff'd, 448 U.S. 122, 65 L. Ed. 2d 653, 100 S. Ct. 2570 (1980)*. Generally, the party seeking an award of fees has the burden of establishing his entitlement to such. *See Savoie v. Merchants Bank, 166 F.3d 456 (2d Cir. 1999)*; **[*8]** *Cruz v. Local Union No. 3 of the Int'l Bhd. Of Elec. Workers, 34 F.3d 1148 (2d Cir. 1994)*. "Applications for fee awards should generally be documented by contemporaneously created time records that specify for each attorney, the hours expended, and the nature of the work done." *Kirsch v. Fleet Street, Ltd., 148 F.3d 149, 173 (2d Cir. 1997)*.

*HN3* Fee applications must meet certain standards of specificity in order for a court to render a determination that the claimed fees represent time reasonably expended on the case, and charged at a reasonable hourly rate considering the prevailing rate in the community and experience of the person rendering the

---

[1]   In support of these counterclaims, CL&C generally alleged that JPS, Sedlak and Lippiett were aware from the beginning and throughout the course of the parties' relationship that JPS was not capable of fulfilling its agreement with CL&C. CL&C further alleged that despite this knowledge, JPS, Sedlak and Lippiett made or condoned a series of fraudulent and/or misleading statements and material omissions regarding JPS's ability to properly upgrade CL&C's computer system by August 1, 1998.

[2]   Throughout this opinion, the court frequently refers to JPS, Matthew Sedlak and Martin Lippiett collectively as "JPS."

services. *See Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)*; *see also Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992)*, cert. denied, *506 U.S. 1053, 122 L. Ed. 2d 132, 113 S. Ct. 978 (1993)*.

JPS seeks a total of $ 636,424.67 in fees and costs. [3] In support of the application, plaintiff's counsel submitted detailed billing records, affidavits, lists of attorney billing rates, and a resume of plaintiff's lead counsel. The defendant raises a number of specific objections to the plaintiff's application. **[*9]** Each will be addressed in turn.

B. *Failure to Meet Burden of Proof*

First, CL&C argues that the application should be denied because JPS failed to meet its burden of proof by failing to provide an affidavit detailing the prevailing rates for legal services in the community. Even if such a defect were in fact fatal; *cf. Rizzo Pool Co. v. Del Grosso, 240 Conn. 58 at 77, 689 A.2d 1097 HN4* (trial court may rely on its own knowledge to supply evidence of fee award); *Smart SMR of NY, Inc. v. Zoning Comm'n, 9 F. Supp. 2d 143, 149 (D. Conn. 1998)*(court may rely on its own knowledge in setting reasonable rate); any defect in the plaintiff's initial application was cured by the later submission **[*10]** of an affidavit in conjunction with the plaintiff's reply brief. *See* doc. # 153.

C. *Non-SLA Work*

Second, CL&C argues that because only one of the four contracts at issue, the SLA, contains a fee shifting provision, the court should award only those fees incurred in connection with the breach of that particular contract. More specifically, CL&C asserts that JPS is entitled only to 26.8% of its requested fee because a large portion of the billable time was spend on "case-wide work," [4] "exclusive non-SLA charges," [5] **[*11]** and "non-segregated work." [6] JPS counters that it is entitled to a full recovery of its fees and costs because *HN5* Connecticut law provides that a trial court may consider all time spent on a case involving multiple claims and defenses even if only one provides the basis for a fee recovery.

In support of its contention, JPS relies on *Russell v. Dean Witter Reynolds, Inc., 200 Conn. 172, 195, 510 A.2d 972 (1986)*. In *Russell*, the Connecticut Supreme Court held that in a multi-count suit, where a party prevails on one claim which provides for the award of attorneys' fees but fails on others, he may nevertheless be entitled to a full award of fees:

> In this case, the plaintiff sought relief on five separate legal theories for losses he had sustained as a result of a transaction that the defendants had arranged. He succeeded **[*12]** in this endeavor by prevailing on three of the five related counts. Because the amounts he expended on litigation, including the dollars spent on his unsuccessful claims, were devoted to the pursuit of a goal that he achieved, the trial court permissibly rejected the defendants' demand that it reduce the demand by two-fifths.

*Id. at 195*.

JPS also relies on a Connecticut Superior Court case, *Jordan v. Learning Clinic, 1998 Conn. Super. LEXIS 2994, 1998 WL 779543* (Conn. Super. Oct. 22, 1998), in support of its claim that it is entitled to a full fee award. In *Jordan*, the defendants successfully defended against a six-count employment action. Only one count, filed

---

[3]   The court's calculations differ from those of JPS. JPS seeks $ 639,924.07. The court calculates Attorney Deutch's fees and costs as $ 245,145.55; Murtha, Cullina, Richter and Pinney, LLP's fees and costs as $ 263,124.47; the plaintiff's costs as $ 19,558.94; and expert fees as $ 108,595.71 for a total of $ 636,424.67.

[4]   CL&C defines "case-wide work" as "time charges for work of a general or case-wide nature, some portion of which is allocable to the SLA breach of contract count and potentially recoverable assuming the charges are reasonable, necessary and non-duplicative." Moran Aff. P 4(3).

[5]   CL&C defines "exclusive non-SLA work" as "time charges that are clearly unrelated to the SLA breach of contract claim and are therefore not recoverable either in whole or in part." Moran Aff. P 4(2).

[6]   CL&C defines non-segregated work as "time charges that are lumped together as part of a single entry and contain both non-recoverable non-SLA work and case-wide work, some portion of which is allocable to the SLA breach of contract count and therefore potentially recoverable." For example, the defendant has identified $ 63,979.50 in non-segregated work performed by Connecticut counsel. It urges the court to reduce that sum by 50% to account for non-SLA work, then reduce that sum by 73.2% to account for the portion allocable for SLA.

pursuant to *Conn. Gen. Stat. § 31-51m*, [7] provided for an award of fees. At the end of the litigation, the defendant moved for an award of fees. The plaintiff filed an opposition, arguing that the defendant was only entitled to those fees allocable to the defense of the whistleblower claim. The court refused to divide the fee and held instead that the defendant was entitled to a reasonable fee for their defense of the entire litigation.

 [*13] Although CL&C maintains that the court must divide the fee because only one contract contains a fee shifting provision, it fails to cite a single case in support of this proposition. Indeed, such a rule is in contravention to well-accepted principles governing the award of attorneys' fees. *See generally, Hensley v. Eckerhart, 461 U.S. 424.* [8] *103 S. Ct. 1933, 76 L. Ed. 2d 40*.

 [*14]    The court declines CL&C's invitation to differentiate between the instant case and those cited above simply because JPS's claims in this case arose from separate agreements. Such a distinction is of no consequence in light of the facts of this case. Although the SLA was only one of the contracts involved in the underlying litigation, it was closely interwoven with the others. The SLA provided the software for the new computer system; the AAS was concerned with customizations of the software; the TSSA was concerned with the technical support for the software; and the HPA was concerned with the hardware necessary to run the software. In addition, the time at trial spent seeking to enforce the SLA was also time spent to enforce the other contracts. In other words, the SLA is so closely connected with the other contracts as to make the evidence on all the contracts completely inextricable. All four of the contracts at issue involve a common core set of facts. If JPS sued the defendants only on the SLA, it would have introduced substantially the same evidence to the jury as it did in this case. The breaches arose out of the same conduct, involved the same parties and occurred in the same [*15] time frame.

An examination of the parties' Joint Trial Memorandum (doc. # 106) reveals examples of how the same witnesses were called to prove the allegations concerning breaches of all four contracts. For example, CL&C stated that Ronald C. Licata would testify about

> his review of JPS' Initial and Final Proposals, discussions with JPS, Mr. Sedlak and Mr. Lippiett, the selection of JPS, contract negotiations with JPS, Mr. Sedlak and/or Mr. Lippiett, contract signing, JPS' breach of the SLA, AAS, TSSA and SCEA, JPS', Mr. Sedlak's and/or Mr. Lippiett's misrepresentations, CL&C's damages, CL&C's efforts to mitigate damages, and the dispute with JPS.

CL&C further wrote that Jeffrey Miszner would testify as to

> discussions with JPS, Mr. Sedlak and/or Mr. Lippiett relative to their lack of performance, discussions with JPS, Mr. Sedlak and/or Mr. Lippiett relative to their breaches of contract, and CL&C's efforts to mitigate damages and CL&C's damages.

Excerpts from the jury instructions further reveal how interrelated, both factually and legally, the parties' claims and affirmative defenses were. For example, the jury was instructed that

> Both parties claim [*16] that the other has breached the contracts. JPS claims that CL&C breached the contracts by failing to pay for goods sold and/or services rendered; CL&C denies breaching the contracts and made a counterclaim against JPS alleging that JPS breached the contracts by failing to adhere to certain terms and conditions in the contracts. JPS also denies breaching the contracts.

* * *

---

[7]  Under Conn. Gen. Stat. § 31-51m, an employer who successfully defends a whistleblower claim is entitled to an award of fees.

[8]  In *Hensley, 461 U.S. at 434-37*, the Supreme Court rejected an approach which would require district courts to allocate fees according to the plaintiff's degree of success where he pursued multiple claims but achieved only partial success. Instead, the court set forth **HN6** an analytical framework for determining whether a plaintiff's partial success requires a reduction in the lodestar. First, the court must examine whether the plaintiff failed to succeed on claims wholly unrelated to the claims on which he succeeded. The hours spent on such unsuccessful claims may be excluded from the calculation. *See id.* at 434-35. Next, the court must determine whether there are any unsuccessful claims which are interrelated with the successful claims. If such unsuccessful claims exist, the court must determine whether the plaintiff's level of success warrants a reduction in the fee award. *See id.* at 436. If a plaintiff obtained excellent overall results the court should compensate the plaintiff for the full amount of attorneys' fees. *See id.* at 435.

Both JPS and CL&C raise the affirmative defense of breach of contract; that is, each party claims that it was excused from performing under the contracts because of a prior breach by the other party.

\* \* \*

Both CL&C and JPS claim as an affirmative defense that the other party's claims are barred by a theory known as the doctrine of unclean hands.

After careful consideration, the court determines that there is no reasonable way to segregate counsel's time by contract or by claim. It is clear that during the entire course of the litigation, the parties' claims were interrelated and the time and money expended, including time spent prosecuting and/or defending the non-SLA claims, were in the pursuit of one common goal. Moreover, as described above, each of JPS' claims is based on a core of common proof.

That **[\*17]** being said, the court nevertheless concludes that JPS is not entitled to those fees incurred on the Leveille claim. The attempt at litigating the third party complaint was unsuccessful. Because the time spent on this claim is not interrelated with the remainder of the litigation and the attorney's fees spent on this claim can be extricated with relative ease; *see Hensley, 461 U.S. at 436*; a reduction of **$ 17,788.75** [9] is warranted.

D. *Counterclaim Defendants*

CL&C next contends that the individual counterclaim defendants Sedlak and Lippiett are not entitled to fees because they, as individuals, were not parties to the SLA. Sedlak & Lippiett, on the other hand, argue that they should be entitled to those costs and fees attributable to their defense of CL&C's counterclaims because if they were not successful in defending against **[\*18]** CL&C's counterclaims, the plaintiff's right of recovery under the SLA would have been extinguished or diminished greatly.

The Connecticut Superior Court was faced with a similar issue in *Atlantic Pipe Corp. v. Quadrangle Ltd. Partnership, 1993 Conn. Super. LEXIS 2860, 1993 WL 454203 (Conn. Super. Ct. 1993)*. In that case, the parties entered into a contract which provided for an award of attorneys' fees. The plaintiff brought suit pursuant to that contract, seeking damages for breach of the contract and to

foreclose a mechanic's lien. The defendants responded by filing a counterclaim and a third party complaint which "transformed a relatively straightforward mechanic's lien foreclosure and contract action into a protracted, tortuous thicket . . . ." *Id.* The defendant opposed the plaintiff's fee application, arguing that the plaintiff was not entitled to recover those fees incurred in defending against the defendant's counterclaim. *Id.* at \*1. The court rejected the defendant's argument and held that **HN7** "where a party with a contractual right to recover legal fees must incur attorney's fees to preserve his contractual rights and interests, he may recover those fees and damages." *Id.* at \*2. **[\*19]** In so holding, the court explained that if the defendant had successfully prosecuted its counterclaim, the plaintiff's right of recovery on the contract would have been extinguished. *Id.*

The court is persuaded by the analysis set forth by the Connecticut Superior court and applies the same reasoning here. In this case, CL&C's counterclaim alleged that JPS breached covenants of good faith and fair dealing, committed fraud, and made various negligent and innocent misrepresentations throughout the course of the parties' dealings. CL&C also claimed that JPS, Matthew Sedlak and Martin Lippiett violated the Connecticut Unfair Trade Practices Act. Similar to the situation in *Atlantic Pipe*, CL&C here aggressively transformed and escalated a dispute about contract performance into a difficult, lengthy, complicated and personal legal battle. CL&C cannot now be heard to complain that time was expended defending against its counterclaims. The time JPS spent successfully prosecuting its claims was completely and inextricably intertwined with the time spent in defense of CL&C's counterclaims. Because the plaintiff's right of recovery was necessarily tied into the successful defense of CL&C's **[\*20]** claims, the award of fees to the individual counterclaim defendants will not be eliminated.

E. *Lack of Specificity*

Next, the defendant argues that New Jersey counsel failed to meet his burden of proving his fees with specificity.

**HN8** A fee applicant bears the burden of providing documentation to prove that an appropriate amount of time was billed and expended at a reasonable hourly

---

[9]   $ 15,679.50 of this figure was expended by Connecticut counsel. *See* Doc. # 152, Ex. A. $ 2109.25 was expended by New Jersey counsel. *See Id.* at Ex. D.

rate. Where a party fails to keep adequate records, courts do not award the full amount requested. *See, Mr. and Mrs. B. v. Weston Bd. of Ed., 34 F. Supp. 2d 777 (D. Conn. 1999)*. Vague entries such as "review of file," "review of correspondence," "research," "conference with client," and "preparation of brief" do not provide a court with an adequate basis upon which to evaluate the reasonableness of a fee application. *Id.; see also Connecticut Hospital Ass'n v. O'Neill, 891 F. Supp. 687, 691 (D. Conn. 1984)*; *Ragin v. Harry Macklowe Real Estate Co., 870 F. Supp. 510 (S.D.N.Y. 1994)*; *Orshan v. Macchiarola, 629 F. Supp. 1014 (E.D.N.Y. 1986)*. When time entries are lacking in this regard, courts typically apply an across-the-board reduction.  **[*21]**  *See id.*

After reviewing the time records submitted by Attorney Deutsch, the court determines that some entries are lacking sufficient specificity [10] and that a reduction is warranted. *See*, doc. # 148. On the other hand, the court is intimately acquainted with the enormous efforts expended by all counsel before and during the trial. Accordingly, a reduction of only 10% is warranted. The fee award for Attorney Deutsch's services shall be reduced by **$ 24,514.56.** [11]

 **[*22]** F. *Duplicative Work/Excessive Fees*

The defendant maintains that the plaintiff's counsel's staffing and billing is excessive and duplicative. It points to a number of instances where local counsel and pro hac vice counsel both attended depositions and charged their full hourly rate. The defendant asserts that counsel are not entitled to be reimbursed for such charges.

The defendant correctly states that *HN9* the plaintiffs are not entitled to recover fees for "hours that are excessive, redundant, or otherwise unnecessary. . . ." *Kirsch v. Fleet Street Ltd., 148 F.3d at 173*. The court disagrees, however, with the defendants' characterization of the lawyering involved. The court finds that the charges for plaintiff's counsel are reasonable, particularly in light of the complicated nature of the litigation and the excellent results achieved. The court will not punish counsel for their thorough preparation and careful attention to detail.

G. *Travel Time*

Next, the defendant argues that plaintiff's counsels' travel time should only be reimbursed at 50% of their usual hourly rate. *Williams v. New York City Housing Authority, 975 F. Supp. 317 at 324*. Counsel **[*23]** for the moving parties billed for their travel time to court, various depositions and settlement negotiations. Although the court is unable to extract from the records an exact figure for travel time, the court has carefully reviewed the submissions and estimates that a reduction of 1.5% is just. Therefore, a reduction of **$ 3946.87** shall be made. (1.5% x $ 263,124.47).

H. *Fees Incurred in Filing Fee Application*

CL&C asserts that, absent a specific contractual provision providing for such, counsel may not be reimbursed for the time spent on this fee application. Where fees are awarded pursuant to a contract, they argue, such an award is impermissible. In making this argument, the defendant relies upon *McGuire v. Wilson, 1994 U.S. Dist. LEXIS 2000, 1994 WL 68222* (S.D.N.Y., Sweet, J. 87cv6161), a case in which the Southern District of New York held that a contract clause which contains a fee shifting provision does not authorize an award for time spent justifying those fees.

The court has read and considered the decisions cited by the defendant and the *McGuire* court but declines to apply their reasoning here. First, *McGuire* is based upon New York law and is not controlling on **[*24]** this court. Second, courts generally award fees for work done on an application such as the instant one. *See Gagne v. Maher, 594 F.2d at 343*. Moreover, to decline to award fees in this instance would be unjust. While the moving parties clearly prevailed in the underlying action and are entitled to fees and costs, the defendant nevertheless filed an extensive and complex opposition, disputing nearly every charge and fee. CL&C cannot now be heard to complain that meeting its opposition was an expensive endeavor.

I. *Expert Witness Fees*

The contract provision which authorizes fees states that the prevailing party shall recover consulting fees as well as expert fees. The defendant argues that the vast

[10]   CL&C relies heavily on *Mr. & Mrs. B. v. Weston Bd. of Ed.*, 34 F. Supp. 2d 777 (D. Conn. 1999) in making the argument that a very significant reduction in the fee award is warranted because of the lack of specificity in the time records. In *Mr. & Mrs. B.*, Judge Smith reduced the fee award by 30%. The court is familiar with the records submitted in support of the fee application in *Mr. & Mrs. B.* The deficiencies that exist here do not rise to the level of those in *Mr. & Mrs. B.*

[11]   This figure represents 10% of $ 245,145.55, Attorney Deutsch's total bill.

majority of these fees generated by the plaintiff's expert should not be allowed.

First, the defendant claims that the expert's time charges are not contemporaneous time records and do not specify the specific subject matter of the work performed. The defendant, however, fails to cite any authority in support of the proposition that the law requires such records to be kept. Although it might be advisable for an expert to submit bills that are more specific, in this [*25] particular case, the court views the expert's fee as reasonable. The expert not only provided testimony at trial but also acted as technical advisor to counsel. The expert's time records, as well as his testimony at trial, made clear that he fully reviewed the contracts, software, computer programming and the complicated computer products at issue in preparation for his participation in the case. Not only was his testimony extremely important in obtaining the success plaintiff achieved, but it was also evident that he engaged in painstakingly precise, lengthy, detailed and time-consuming preparation. Although his fee is admittedly high, the court does not find that a reduction is warranted on this basis.

Second, the defendant asserts that the plaintiff is entitled to recover for only those expert fees which directly related to the SLA because the majority of his testimony concerned the AAS and not the SLA. For the reasons set forth above, the court rejects this argument and declines to allocate the expert's fees in such a manner.

Third, the defendant maintains that there is no justification for a $ 175/hour in-state rate and a $ 225 out-of-state rate and as such, 16.5 hours of the [*26]

expert's time should be reduced by $ 50/hour. The court agrees and further reduces the fee award by **$ 825.00.**

Next, the defendant asks that 10.5 hours of the expert's travel time be reduced by 50%. The court agrees and further reduces the award by **$ 918.75.**

Lastly, the defendant assert that the expert's bill contains an overcharge of $ 5425.00 on the October 1998 invoice. They point out that the expert charged $ 13,300 for 45 hrs at $ 175/hour; the correct amount is only $ 7875.00. The defendant is correct; a reduction of **$ 5425.00** is in order.

### J. Costs Incurred by Local Counsel

The defendant next argues that Connecticut counsel's costs should be greatly reduced because many of them do not constitute "court costs." The court agrees that some costs are not recoverable, but rejects the defendant's claim that the court may only award those costs delineated in *28 U.S.C. § 1920*. [12]

   [*27]    The SLA provides that "court costs" are recoverable. Although that term is not defined, it is well established that costs and expenses, such as the ones the plaintiff seeks here, may be awarded pursuant to this court's discretion. *See* Wright, Miller & Kane, *Federal Practice and Procedure Civil* 3d, §§ 2668, 2676, 2677, 2678 (1998).

With these principles in mind, the court disallows the following costs:

(1) The plaintiff may not recover those costs incurred for LEXIS and Westlaw computer research. Accordingly, a

---

[12]    *HN10* The court has the discretion under *28 U.S.C. § 1920* to tax the following costs against the losing party:

   (1) Fees of the clerk and marshal;

   (2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in this case;

   (3) Fees and disbursements for printing and witnesses;

   (4) Fees for exemplification and copies of papers necessarily obtained for use in this case;

   (5) Docket fees under section 1923 of this title;

   (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

*28 U.S.C. § 1928*.

reduction of **$ 1884.33** shall be made. *See* Moran Aff., Exh. C; *U.S. ex rel Evergreen Pipeline Const. Co. v. Merritt Meridian Const. Corp., 95 F.3d 153, 173 (2d Cir. 1996)*(computer research is a substitute for attorney's time and is not taxable as a separate cost).

(2) 50% of the plaintiff's copy costs shall be eliminated because they are not identified with specificity. A further reduction in the amount of **$ 4738.73** shall be made. *See* Moran Aff., Exh. G.

(3) JPS is not entitled to recover those copying costs related to exchange of documents during discovery because the parties agreed that each would assume its own copying costs. **[*28]** In light of the parties' agreement, the court agrees and declines to award these costs. The court is unable to discern, however, how much of the copying costs are attributable to discovery. The court has examined the parties' submissions and estimates this amount to be **$ 5000.**

### K. *Costs Incurred by Lead Counsel*

Next, the defendant argues that certain costs claimed by Attorney Deutsch should be greatly reduced.

The defendant disputes Attorney Duetsch's flat rate of 6% for telephone calls, copying and postage. They contend that this charge is not recoverable because it is not based on any actual expenses and is not adequately documented. The court agrees and reduces the award by **$ 10,953.53.**

Next, the defendant claims that the copying costs on Attorney Deutsch's invoices should be eliminated because they are not identified with specificity. While the court does not find that a complete reduction is appropriate, the copying costs shall be reduced by 50% for lack of specificity. A reduction of **$ 1320.81** shall be made. *See* Moran Aff., Exh. H.

### L. *Costs Incurred by Counterclaim Defendants*

Finally, the defendant asserts that certain of the counterclaim defendants' **[*29]** costs should be reduced.

The defendant contends that out of pocket expenses should be reduced by $ 2576.01 because they were incurred by the individual counterclaim defendants, Sedlak and Lippiett. This argument is again rejected.

Finally, the defendant maintains that the plaintiff may not request reimbursement for its share of the private mediation because the parties agreed to bear their own costs. In light of the parties' agreement, the court agrees with the defendant and orders that a further reduction of **$ 6678.69** be made.

### IV. CONCLUSION

Accordingly, the plaintiffs' Application is GRANTED in part. The plaintiff and counterclaim defendants are awarded $ 552,425.65 in attorneys' fees and costs.

SO ORDERED at Hartford, Connecticut this *31st* day of March, 2000.

Donna F. Martinez

United States Magistrate Judge

*AMENDED JUDGMENT* - FILED APR 4 '00

This action having come on for consideration of the plaintiff's application for Attorneys' Fees, Expert Fees and Costs before the Honorable Donna F. Martinez, United States Magistrate Judge and,

The Honorable Donna F. Martinez having considered the application and the full record of the case including applicable principles **[*30]** of law, and having filed a Ruling granting the application in part, it is hereby

ORDERED, ADJUDGED and DECREED that the amended judgment be and is hereby entered in favor of the plaintiff and counterclaim defendants in the amount of **$ 552,425.65** in attorney's fees and costs.

Dated at Hartford, Connecticut, this 4th day of April, 2000.

◆ Positive

As of: April 29, 2016 3:50 PM EDT

## *Atlantic Pipe Corp. v. Quadrangle Ltd. Partnership*

Superior Court of Connecticut, Judicial District of Hartford - New Britain, at Hartford

October 27, 1993, Decided ; October 28, 1993, Filed

NO. CV 87-0336982

**Reporter**

1993 Conn. Super. LEXIS 2860

ATLANTIC PIPE CORPORATION v. QUADRANGLE LIMITED PARTNERSHIP, et al

**Notice:** **[*1]** THIS DECISION IS UNREPORTED AND MAY BE SUBJECT TO FURTHER APPELLATE REVIEW. COUNSEL IS CAUTIONED TO MAKE AN INDEPENDENT DETERMINATION OF THE STATUS OF THIS CASE.

## Core Terms

mechanic's lien, attorney's fees, substituted, costs, surety, damages, foreclosure, provisions, Statutes, counterclaim, provides, parties, lienor, legal fees, awards

## Case Summary

**Procedural Posture**

Plaintiff lienholder filed an action to foreclose a mechanic's lien on property owned by defendant property owner, sought damages, interest, and attorney's fees for breach of contract, and sought to recover under a bond issued by defendant surety on behalf of the property owner in consideration of the lienholder's release of its mechanic's lien.

**Overview**

The lienholder built a retaining wall for the property owner under a contract between the parties. The lienholder timely and properly filed a mechanic's lien for the amount due. The property owner substituted a bond issued by the surety in consideration of the release of the mechanic's lien under *Conn. Gen. Stat. § 49-37*. The court found that a valid contract existed and that the lienholder was entitled to recover its reasonable attorneys fees against the property owner. The fees were incurred because the lienholder had to defend a meritless multiple count counterclaim brought by the property owner and surety. The counterclaim and a third-party complaint transformed a straightforward mechanic's lien foreclosure and contract action into a protracted, tortuous thicket that spanned six years. Further, the court found that the mechanic's lien was valid and that the lienholder was entitled to the amount of the lien. The surety was liable on the bond because it took the place of the principle, the property owner. The surety owed statutory interest because the provisions of *Conn. Gen. Stat. § 49-37* were read into the bond. The surety was jointly and severally liable for the amount due.

**Outcome**

The court found in favor of the lienholder and against the property owner and the surety in the lienholder's action to foreclose a mechanic's lien, for damages, interest, and attorney's fees, and to recover under a bond issued by the surety on behalf of the property owner in consideration of the lienholder's release of its mechanic's lien.

## LexisNexis® Headnotes

Civil Procedure > Remedies > Costs & Attorney Fees > General Overview

Contracts Law > Remedies > Specific Performance

Real Property Law > ... > Remedies > Damages > General Overview

Real Property Law > Purchase & Sale > Remedies > Specific Performance

*HN1* Where a party with a contractual right to recover legal fees must incur attorney's fees to preserve his contractual rights and interest, he may recover those legal fees as damages.

Civil Procedure > ... > Pleadings > Complaints > General Overview

Civil Procedure > Settlements > Offers of Judgment > General Overview

Civil Procedure > Settlements > Offers of Judgment > Acceptances

Civil Procedure > Remedies > Costs & Attorney Fees > General Overview

Civil Procedure > Remedies > Damages > Monetary Damages

Governments > Courts > Clerks of Court

*HN2* *Conn. Gen. Stat. § 52-192a(a)* provides: After commencement of any civil action based upon contract or seeking the recovery of money damages plaintiff may, before trial, file with the clerk of the court a written offer of judgment signed by him or his attorney, directed to defendant or his attorney, offering to settle the claim underlying the action and to stipulated to a judgment for a sum certain. After trial the court shall examine the record to determine whether plaintiff made an offer of judgment which defendant failed to accept. If the court ascertains from the record that plaintiff has recovered an amount equal to or greater than the sum certain stated on his offer of judgment, the court shall add to the amount so recovered twelve per dent annual interest on said amount. In actions commenced on or after October 1, 1981, the interest shall be computed from the date the complaint in the civil action was filed with the court if the offer of judgment was filed not later than eighteen months from the date of filing of the complaint. If such offer was filed later than eighteen months from the date of filing of the complaint, the interest shall be computed from the date the offer of judgment was filed.

Civil Procedure > ... > Bonds > Sureties > Procedural Matters

Real Property Law > ... > Liens > Nonmortgage Liens > Mechanics' Liens

*HN3* The liability of principal and surety on a bond which has been substituted for a mechanic's lien depends on the validity of the lien.

Civil Procedure > ... > Bonds > Sureties > Procedural Matters

Contracts Law > ... > Priorities > Liens > Mechanics' Liens

Real Property Law > ... > Liens > Nonmortgage Liens > Mechanics' Liens

*HN4* *Conn. Gen. Stat. § 49-37* provides: Whenever any mechanic's lien has been placed upon any real estate the owner of the real estate may make an application to any judge of the superior court that the lien be dissolved upon the substitution of a bond with surety. If the judge

is satisfied that the applicant in good fait intends to contest the lien, he shall, if the applicant offers a bond, with sufficient surety, conditioned to pay the lienor, such amount as a court of competent jurisdiction may adjudge to have been secured by the lien, with interest and costs, order the lien to be dissolved and such bond substituted for the lien.

Real Property Law > ... > Liens > Nonmortgage Liens > General Overview

Real Property Law > ... > Liens > Nonmortgage Liens > Mechanics' Liens

*HN5* In a mechanic's lien foreclosure action where there is no underlying obligation by the landowner to pay attorney's fees, such as this action, then any attorney's fees awarded are, in effect, only recoverable to the extent of the value of the liened property because a mechanic's lien is a claim on the land only. *Conn. Gen. Stat. § 49-33(b)*. Where a lien is substituted for a bond, the extent of the owner's liability becomes the amount of the bond plus interest and costs under *Conn. Gen. Stat. § 49-37*.

**Judges:** Aurigemma

**Opinion by:** BY THE COURT; AURIGEMMA

# Opinion

### *MEMORANDUM OF DECISION*

The plaintiff, Atlantic Pipe Corporation ("Atlantic Pipe") has brought an action in three counts against Quadrangle Limited Partnership ("Quadrangle"). Schnip Building Company ("Schnip"), and Seaboard Surety Company ("Seaboard").

The first count seeks to foreclose a mechanic's lien on property owned by Quadrangle. The second count seeks damages, interest and attorney's fees for breach of contract. In the third count the plaintiff alleges that the mechanic's lien in question was released in consideration of the substitution of a bond on which Quadrangle was the principal and Seaboard was the Surety.

The court finds that Atlantic Pipe and Schnip entered into a contract under the terms of which Atlantic Pipe agreed to supply material and perform services in connection with the erection of a retaining wall on the

property of Quadrangle. Atlantic Pipe supplied the materials and performed the services called for in the agreement commencing [*2] on June 30, 1986 and ending of July 14, 1986. Atlantic Pipe billed Schnip in the total amount of $ 115,592.57 and timely and properly filed a mechanic's lien for that amount. On September 14, 1988 Quadrangle substituted a bond in the amount of $ 115,592.57 in consideration for the release of the plaintiff's mechanic's lien pursuant to *Connecticut General Statutes Section 49-37*. The court finds that the reasonable value of the materials supplied and services performed by Atlantic Pipe is $ 115,592.57 and awards Atlantic Pipe that amount as damages.

The contract between Schnip and Atlantic Pipe provides in pertinent part:

> There will be a finance charge at the rate of 1.5% per month on all balances over 30 days old. Customer agrees to pay reasonable attorneys fees in the event that any balance due after default is referred to an attorney of collection.

Based on the foregoing language Atlantic Pipe is entitled to recover its reasonable attorneys fees against Schnip. The attorneys fees incurred by Atlantic Pipe are largely attributable to its defense of a multiple count counterclaim brought by the defendants wherein the defendants claimed that Atlantic Pipe breached its contract [*3] with Schnip, breached various warranties, and negligently performed the contract with Schnip.

The counterclaim and a third-party complaint filed by the defendants transformed a relatively straightforward mechanic's lien foreclosure and contract action into a protracted, tortuous thicket which spanned six years and ultimately required the presence of Atlantic Pipe's attorneys in court for more than a month for jury selection and trial of the counterclaim. Moreover, after causing Atlantic Pipe such protracted delay and legal fee expenditure, the defendants failed to produce *any* evidence that Atlantic Pipe was negligent or failed to perform under the contract in any way.

Having dragged Atlantic Pipe into a quagmire of litigation, the defendants now argue that Atlantic Pipe is not entitled to recover legal fees it incurred in defending against the groundless counterclaim.

**HN1** Where a party with a contractual right to recover legal fees must incur attorney's fees to preserve his contractual rights and interest, he may recover those legal fees as damages. *Fullerton v. McGowan, 6 Conn. App. 624, 631, 507 A.2d 473 (1986)*. In *Fullerton* the plaintiff sought specific performance [*4] of a contract to sell real estate. After he commenced his action, he incurred attorney's fees in defending a foreclosure action against the real estate. The court held that those fees were properly included in the damage award.

In *Mechanics Savings Bank v. Tucker, 178 Conn. 640, 647-648, 425 A.2d 124 (1979)* the plaintiff in a foreclosure action was awarded the legal fees it incurred in defending against an antitrust action filed against it by the defendant and in participation in bankruptcy proceedings.

The counterclaim contained allegations which, if proved, would have diminished, or extinguished, Atlantic Pipe's right of recovery on the contract with Schnip and against the property of Quadrangle. Therefore, the reasonable attorney's fees incurred by Atlantic Pipe in defending against the counterclaim are a proper element of damage against Schnip. The court finds that the attorney's fees claimed by Atlantic Pipe are reasonable and awards it $ 120,201 against Schnip.

The court also awards Atlantic Pipe the amount of $ 149,115, which is the amount of the finance charge on the unpaid balance pursuant to the contract between Atlantic Pipe and Schnip.

On March 5, 1991, Atlantic [*5] Pipe filed an offer of judgment in the amount of $ 250,000 against the defendants. **HN2** *Section 52-192a(a) of the Connecticut General Statutes* provides:

> After commencement of any civil action based upon contract or seeking the recovery of money damages . . ., the plaintiff may, before trial, file with the clerk of the court a written "offer of judgment" signed by him or his attorney, directed to the defendant or his attorney, offering to settle the claim underlying the action and to stipulated to a judgment for a sum certain. After trial the court shall examine the record to determine whether the plaintiff made an "offer of judgment" which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated on his "offer of judgment", the court shall add to the amount so recovered twelve per dent annual interest on said amount. . . In . . . actions commenced on or after October 1, 1981, the interest shall be computed from the date

1993 Conn. Super. LEXIS 2860, *5

the complaint in the civil action was filed with the court if the "offer of judgment" was filed not later than eighteen months from the date of filing of the [*6] complaint. If such offer was filed later than eighteen months from the date of filing of the complaint, the interest shall be computed from the date the "offer of judgment" was filed.

Count Two of the complaint seeks money damages from Schnip. The amount recovered by Atlantic Pipe in this action exceeds $ 250,000. Therefore, the court awards Atlantic Pipe interest at the rate of 12% from March 15, 1991, $ 120,320.85.

The plaintiff also seeks to recover the amount of $ 115,592 from Seaboard, the surety on the bond which the parties agreed to substitute in consideration of the release of the mechanic's lien. *HN3* The liability of principal and surety on a bond which has been substituted for a mechanic's lien depends on the validity of the lien. *Six Carpenters, Inc. v. Beach Carpenters Corporation, 172 Conn. 1, 7, 372 A. 2d 123 (1976)*. The court finds that Atlantic Pipe's mechanic's lien was valid and that Atlantic Pipe proved that $ 115,592 was due pursuant to that lien against the property of Quadrangle. Therefore, Atlantic Pipe may recover the amount of $ 115,592 from Seaboard pursuant to the bond.

Seaboard has contested its liability for statutory interest on the bond for the [*7] reason that the bond does not contain any provision for interest. This court is not aware of any case law which addresses the issue of whether a mechanic's lienor may recover interest on a bond substituted for a mechanic's lien. Therefore, it is necessary to examine the relevant statutes, case law on surety bonds in general, and the language of the bond itself.

*HN4* *Section 49-37 of the Connecticut General Statutes* provides in pertinent part:

> (a) Whenever any mechanic's lien has been placed upon any real estate. . . .the owner of the real estate. . .may make an application to any judge of the superior court that the lien be dissolved upon the substitution of a bond with surety. . . .If the judge is satisfied that the applicant in good fait intends to contest the lien, he shall, if the applicant offers a bond, with sufficient surety, conditioned to pay the lienor, such amount as a court of competent jurisdiction may adjudge to have been secured by the lien, *with interest and costs,* order the lien to be

dissolved and such bond substituted for the lien. . . (emphasis added).

The bond in question is entitled "Release of Mechanic's Lien Bond" and provides that Quadrangle and Seaboard [*8] are jointly and severally liable in the sum of $ 115,592.57 for all judgments rendered against Quadrangle's property in favor of Atlantic Pipe on the mechanic's lien. It recites the date of the mechanic's lien, October 6, 1986, and the volume and page of the land records in which the lien was recorded. It further states:

> Whereas, Quadrangle Limited Partnership, seeks to discharge said lien pursuant to *Connecticut General Statutes Section 49-37*.

The plaintiff argues that the language of *§ 49-37*, which requires that a mechanic's lien bond secure interest and costs, should be read into the bond at issue. Notwithstanding the language from the bond set forth above, Seaboard argues that the bond was not substituted for the lien pursuant to the provisions of *§ 49-37*, but was done by agreement of the parties on a voluntary basis and, therefore, the provisions of *§ 49-37* do not apply to the bond.

In *Six Carpenters, Inc. v. Beach Carpenters Corporation, supra,* the lienor claimed that where the parties agreed to substitute a bond for a mechanic's lien without court intervention, that the principal and surety on the bond could not move to modify or reduce the bond under *§ 49-37(b)* [*9] because the bond had not been substituted for the lien pursuant to *§ 49-37(a)*. The Court held that the provisions of *§ 49-37* applied to the bond, whether it was ordered substituted by the Court, or voluntarily substituted for the lien by agreement of the parties. The Court stated:

> The construction urged by the [lienor] would discourage the substitution of bonds by agreement because of a fear of waiving defenses to the underlying lien. Moreover, it would lead to public mischief by compelling judicial intervention when not needed nor desired.

In this case the construction urged by Seaboard would discourage lienors from agreeing to substitute bonds for liens because of a fear of waiving rights under the lien. This would also encourage needless resort to the courts and would contravene the legislative intent of *§ 49-37* to enable the owner of property to obtain a

1993 Conn. Super. LEXIS 2860, *9

dissolution of the mechanic's lien so long as the lienor's rights are not prejudiced. *Henry F. Raab Construction, Inc. v. J.W. Fosher Co., 183 Conn. 108, 115, 438 A.2d 834 (1981)*; *Six Carpenters, Inc. v. Beach Carpenters Corporation, supra, at p. 6*.

Reading the interest and cost provisions of *§ 49-37* into **[*10]** the bond is also warranted under *International Harvester Co. v. L. G. DeFelice & Son, Inc., 151 Conn. 325, 333, 197 A.2d 638 (1964)*; *New Britain Lumber Co. v. American Surety Co., 113 Conn. 1, 6 154 A. 147 (1931)*, which provide that where a statutory bond is given, the provisions of the statute are read into the bond so that it is immaterial that the bond varies from the wording of the statute.

The provisions of *§ 49-37* which require that a mechanic's lien include payment of interest and costs must be read into the present bond and, therefore, Seaboard is liable to the plaintiff for statutory interest in the amount of $ 83,655.60 and costs provided by statute. [1]

Atlantic Pipe also seeks to recover **[*11]** $ 115,592, statutory interest and attorney's fees from Quadrangle. Quadrangle denies that it is liable in any amount because Atlantic Pipe's demand for relief in its amended complaint of January 4, 1989, seeks no damages or attorney's fees from Quadrangle. However, the Stipulation of Facts dated January 27, 1993 and executed by all parties to this action provides:

> 12. [Atlantic Pipe Corporation] has made demand on Schnip, Quadrangle and Seaboard for the payment of the $ 115,592.57 in principal claimed to be due and owing [Atlantic Pipe Corporation] in addition to accrued interest and attorney's fees pursuant to the Agreement.

This court assumes that the variation between the demand for relief and the Stipulation is attributable to the nature of this action against Quadrangle. The first count of the complaint seeks to foreclose the lien on Quadrangle's property. Such an action is not one for damages. This may explain the plaintiff's failure to include a damage claim as to Quadrangle in its claim for relief. However, by virtue of the substitution of the bond for the lien, Quadrangle's liability as owner of the property subject to foreclosure changed to liability as a **[*12]** principal under the bond. As such, Quadrangle is jointly and severally liable with Seaboard under the bond and the court awards Atlantic Pipe the following amounts as to Quadrangle for the same reasons they were awarded against Seaboard: $ 115,592.57 in principal damages and $ 83,655.60 as statutory interest as well as costs recoverable by statute.

Atlantic Pipe cannot recover attorney's fees against Quadrangle because the bond does not provide for attorney's fees and there is nothing in *§ 49-37* which requires the parties to a mechanic's lien bond to pay attorney's fees.

Atlantic Pipe has argued that *A. Secondino & Son, Inc. v. Lo Ricco, 19 Conn. App. 8, 561 A.2d 142 (1989)* provides for the award of attorney's fees in mechanic's lien foreclosures. To the extent that argument is correct, it fails to recognize the difference between the award of attorney's fees in a foreclosure and the award of attorney's fees as damages on a bond.

*HN5* In a mechanic's lien foreclosure action where there is no underlying obligation by the landowner to pay attorney's fees, such as this action, then any attorney's fees awarded are, in effect, only recoverable to the extent of the value of the liened **[*13]** property because a mechanic's lien is a claim on the land only. *Section 49-33(b)*. Where a lien is substituted for a bond, the extent of the owner's liability becomes the amount of the bond plus interest and costs under *§ 49-37*. The court has awarded Atlantic Pipe the entire amount of the surety bond plus interest and costs. Attorney's fees cannot properly be awarded against Quadrangle on the bond because the amount of the bond, which is the limit of Quadrangle's liability, is insufficient to pay them.

By the Court

Aurigemma, J.

---

[1]    Many of the costs claimed by Atlantic Pipe are not costs which are recoverable under the statutes governing costs i.e., *§ 52-257 of the Connecticut General Statutes.* The court interprets the provisions of *§ 49-37* referring to the recovery of costs on a bond to be limited to statutory costs.